# EXHIBIT B

Exhibit A

# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

MAY 15 1981

MEMORANDUM

TO: The Secretary

FROM: Deputy Assistant Secretary — Land and Water Resources

SUBJECT: Record of Decision - Stanislaus River Basin Alternatives and Water Allocation - New Melones Unit, Central Valley Project, California

Attached for your concurrence is a decision I have approved authorizing the Commissioner for Water and Power Resources Service to implement alternative plan No. 2 for the New Melones Unit, Central Valley Project, California.

[signature]

Attachment

United States Department of the Interior

WATER AND POWER RESOURCES SERVICE
WASHINGTON, D.C. 20240

IN REPLY
REFER TO: 736
511.

APR 20 1981

Memorandum

To: Assistant Secretary — Land and Water Resources

From: Commissioner

Subject: Record of Decision—Stanislaus River Basin Alternatives and Water Allocation—New Melones Unit, Central Valley Project, California

A. Recommended Decision: I recommend proceeding with alternative plan No. 2 as presented in the special report on the Stanislaus River Basin Alternatives and Water Allocation (SRBAWA), dated September 1980 and the final supplement to the final environmental statement (FES) FES 80-33 dated September 12, 1980, which presents the environmental impacts of the recommended and alternative plans. This plan includes the following:

1. New Melones Reservoir would be operated to its full maximum capacity as authorized.

2. Basin 2 would be adopted by the Secretary of the Interior as the Stanislaus River Basin for the New Melones supply.

3. After meeting the water requirements of basin 2, the remaining firm water supply of 49,000 acre-feet in year 2020 would be allocated to the Central San Joaquin Water Conservation District.

4. The interim water supply of 85,000 acre-feet in year 2000 would be allocated on a conjunctive use basis to the Central San Joaquin Water Conservation District, the Stockton-East Water District, and the South Delta Water Agency. The interim water supply would be available first to the Central San Joaquin Water Conservation District and then to the Stockton-East Water District in wet, above normal, normal, and below normal water years. In dry and critically dry water years the entire interim water supply would be available to the South Delta Water Agency. In dry and critically dry water years the Central San Joaquin Water Conservation District could pump groundwater as replacement water for the interim water supply. The Stockton-East Water District could pump groundwater or pump water from the Sacramento-San Joaquin Delta as replacement water. Before the South Delta Water Agency could receive an interim water supply from New Melones it would have to comply with Reclamation law (specifically the

acreage limitation provisions) and be willing to pay the Central Valley Project (CVP) delta water charge. If the South Delta Water Agency is not willing to comply with Reclamation law and pay for the interim water, then the interim water supply would be allocated to the Central San Joaquin Water Conservation District and the Stockton-East Water District in all water year types.

5. Any firm or interim supply available not desired by the basin area or local adjacent areas would be made available on an interim basis first to the Montpelier subarea and then to other CVP areas.

Approval of this recommendation would allow the Water and Power Resources Service (Water and Power) to operate the project as authorized, designate the "Stanislaus River Basin" as required by the authorizing law, and allow Water and Power to negotiate and enter into water service contracts for firm and interim water supplies.

B. <u>Description of the Recommended Plan:</u> The recommended plan would include the authorized project with a 2,400,000 acre-feet New Melones Reservoir (water surface elevation of 1,088 feet) with basin 2 as the Stanislaus River Basin area. The New Melones Reservoir would provide the releases for downstream fishery purposes, water quality, downstream water rights, and a water supply yield estimated at about 180,000 acre-feet to meet present and future agriculture and municipal and industrial (M&I) water needs for year 2020 conditions. It includes the existing water rights agreement with the Oakdale and South San Joaquin Irrigation Districts. It is also estimated that for year 2000 conditions, the yield available would be approximately 230,000 acre-feet. The reservoir yield for year 2020 conditions would be utilized to meet the needs within basin 2 and the remaining available yield of about 49,000 acre-feet would be allocated to the Central San Joaquin Water Conservation District. The interim water supply (85,000 acre-feet in year 2000) would be allocated as discussed in item A.4. above. Any firm or interim supply not desired by the basin or local adjacent areas could be made available on an interim basis first to the Montpelier subarea and then to other CVP areas. A detailed description of the recommended plan may be found on pages 92-105 of the SRBAWA.

The major adverse environmental effects of implementing the recommended plan would include the loss of about 9 miles of white water; 169 archeologic, 255 historic, and 18 prehistoric sites in the reservoir area; 34 caves in the reservoir area; 10,500 acres of wildlife habitat in the reservoir area with a corresponding loss of 600 hunter days; and a loss of about 70,000 angler days of fishery use. Major beneficial environmental effects would be 180,000 acre-feet of additional water supply for agricultural and M&I use downstream which would decrease dependence on the overdrafted groundwater supply; 1,490 new jobs; the production of 455 gigawatt hours of pollution-free energy annually; and flood control and

water quality improvement. The loss of upstream recreation will be partially offset by the establishment of reservoir recreation providing 3 million recreation days ultimately. The loss of resident fishery will be partially offset by the establishment of a downstream anadromous fishery. Currently underway is a cultural resources mitigation program. A detailed description of the environmental impacts may be found on pages D-18 through D-54 of the FES.

C. Alternative Plans Considered: In addition to the recommended plan (Plan 2) the alternative plans listed below were considered. Additional details are discussed on pages 81-126 in the SRBAWA and pages B-3 through B-47 of the FES. The delineation of the basins are shown on Plates Nos. 1, 5, 7, and 8 in the SRBAWA.

Plan 1—Full reservoir as authorized with basin 3 as the Stanislaus River Basin area. This alternative provides for New Melones Reservoir storage at about 2,400,000 acre-feet and a water surface elevation of 1,088 feet. Basin 3 generally includes those areas between the headwaters of the Stanislaus River and its mouth, which are adjacent to that river and now rely, or in the future may need to rely, on the Stanislaus River for a water supply. This basin includes the topographic drainage basin and water rights and water agreement areas, the Farmington and Cooperstown subareas and the Central San Joaquin Water Conservation District.

Plan 3—Full reservoir as authorized with basin 1 as the Stanislaus River Basin area. New Melones Reservoir would be operated utilizing the maximum storage of 2,400,000 acre-feet and a water surface elevation of 1,088 feet. The reservoir yield would be utilized to meet the needs within basin 1 and with the remaining available yield of about 129,000 acre-feet recommended to be allocated to the remaining portions of the Farmington and Cooperstown subareas and Central San Joaquin Water Conservation District for year 2020 conditions. Basin 1 generally includes the topographic drainage basin plus the water rights and water agreement areas.

Plan 4—Minimum storage required to meet the conditions as stipulated in Decision 1422 and the water needs with basin 1 that would be considered as the Stanislaus River Basin area. New Melones Reservoir would require a storage of about 1,150,000 acre-feet with a water surface elevation of about 962 feet. Basin 1 includes the topographic drainage basin plus the water rights and water agreement areas. There would not be any other firm supply that could be allocated and used to meet the water needs within other local areas or other CVP areas.

Plan 5—Minimum storage to meet Decision 1422 conditions and with no delineation of a Stanislaus River Basin area. New Melones Reservoir storage estimated to be required would be about 605,000 acre-feet with a corresponding water surface elevation of about 879 feet. There would be no water supply provided under this type of operation to meet the water needs within Stanislaus River Basin areas or other CVP service areas.

Plan 6—Storage below Parrotts Ferry Bridge and with no delineation of a Stanislaus River Basin area. This alternative would require a storage of about 300,000 acre-feet with a corresponding water surface elevation of 808 feet. This alternative would be maintained, except during the flood control season, and would preserve the 9 miles of stream below Camp Nine Bridge to Parrotts Ferry Bridge that is presently used for white water boating. No new yield or additional water supply would be provided to meet the needs within local Stanislaus River Basin areas or other CVP service areas.

Plan 7—No-action alternative. The no-action alternative is considered to be either plan 1, 2, or 3. Any other type of reservoir operation would deviate from the congressionally authorized project.

D. Reasons for Selection of the Recommended Plan: The following are the primary factors that influenced my recommendation concerning alternative plans:

1. Operation of New Melones Reservoir under plans 4, 5, and 6, with less than the full reservoir as authorized, would substantially reduce the project accomplishments for agriculture, M&I water supply, electrical energy, and reservoir recreation and fishery. Plan 6 would also eliminate a way to help improve water quality in the San Joaquin River. Plans 4, 5, and 6 would require a reauthorization of the project functions (Public Law 87-874) and a new cost allocation.

2. Operation of New Melones Reservoir under plan 1, recommended plan, and plan 3 are consistent with the law authorizing the project (Public Law 87-874) and can be implemented without further need to go back to the Congress.

3. The monetary benefits amounting to $32 million annually for the project water supply for irrigation use, energy production, reservoir recreation, and fishery with the recommended plan far outweigh the monetary benefits of $5.8 million from rafting activities in the 9-mile reach of white water. We, of course, recognize that this full reservoir recommendation will eliminate a unique form of recreation activity and natural study area.

4. The recommended plan encompasses the largest water service areas and subareas nearest the Stanislaus River which probably could not be served economically from any other source because of the high elevations.

5. The Solicitor has found that the recommended plan comprises the largest area and subareas which could be legally served by New Melones Reservoir.

6. The areas and subareas recommended to receive a water allocation from New Melones Reservoir most closely fit the criteria considered in allocating the water supply.

7. The recommended plan will help improve the ground-water overdrafting problem in the Central San Joaquin and the Stockton-East Irrigation Districts.

E. Most Environmentally Acceptable Plan: The most environmentally acceptable plan would be plan 6. This plan would preserve all white water and have the least impact on cultural resources in the reservoir area. However, most of the authorized project functions would be foregone.

F. Implementing the Decision: Implementation of the decision would be consistent with the authorizing law and Water and Power rules and regulations for water resources projects. The only remaining items necessary before full reservoir operation are reservoir clearing and archeological mitigation.

The Corps of Engineers has been requested to proceed with its clearing contract based on our anticipated operating schedule through 1981.

It is the goal of the Heritage Conservation and Recreation Service's (HCRS) archeologist that the remaining field work necessary for mitigation be completed by May 1981.

We intend to maintain the reservoir below the level required to complete any archeological mitigation, if possible, until such mitigation is completed. In doing so, we will limit releases during high inflow periods to 3,500 cubic feet per second in the Stanislaus River below Goodwin Dam unless special circumstances dictate otherwise. We will proceed to operate the New Melones Dam as authorized by the Congress. We anticipate that under normal conditions the reservoir's surface elevation could reach a maximum elevation of 841 feet in 1981.

C. Comments Received on the FES: Written comments were received from the city of Redding, Friends of the River, the Forest Service, the Advisory Council on Historic Preservation, and the State of California.

The city of Redding was concerned with consideration of future upstream water needs above New Melones Reservoir in Alpine, Calaveras, and Tuolumne Counties. They also were concerned with obtaining adequate future supplies for the city of Redding and Shasta County. The future estimated water needs through the year 2020 for the upstream counties above New Melones Reservoir were discussed in detail in the FES. The project inflow was modified to reflect those possible upstream uses in determining the firm yield of New Melones Reservoir that was estimated at 180,000 acre-feet. Consequently, our future water allocations and contracting for the New Melones supply will recognize and protect future uses in the upstream counties. It was also suggested in regard to future water supplies for Shasta County, that the city of Redding express those concerns as part of the review of the Draft Environmental Statement on the Reauthorization of the CVP and the Coordinated Operating Agreement for CVP-SWP.

The comments from Friends of the River were primarily a list of questions and statements requesting additional background information relating to statements made in the FES on the New Melones Project and Basin Areas or were general concerns regarding other aspects and current policies on operation of the CVP. The pertinent impacts for all alternatives considered and the position of Water and Power regarding such matters as water rights and other agreements are discussed and presented in the FES.

The Forest Service did not have any comments since National Forest System lands and resources are not involved in the project.

Comments from the Advisory Council on Historic Preservation concerned the responsibilities of the Crops of Engineers and the Department of the Interior for mitigation of project impacts on historic and cultural properties. HCRS is preparing a response to the Advisory Council outlining the various activities concerning New Melones.

The State of California reiterated the comments it had on the draft environmental statement and commented on what it felt was necessary for compliance with the State Water Resources Control Board Decision 1422.

We have included for your information a copy of the special report and final supplement to the final environmental impact statement.

R. N. Broadbent

Enclosures

Approved:

David C. Russell
Deputy Assistant Secretary for
Land and Water Resources

5/6/81
Date

I Concur:

Donald Paul Hodel
Undersecretary of the Interior

6/29/81
Date

.hibit 8

## SUMMARY OF NEW MELONES LITIGATION

1. Environmental Defense Fund, Incorporated v. Armstrong, Civil Case No. C-72-1057-CBR -- This litigation challenged the adequacy of the environmental impact statement prepared by the Corps of Engineers and sought to enjoin further work on the project. The plaintiff's request for preliminary injunction was denied; however, further documentation on the use and impacts of New Melones Reservoir was required. Supplemental information was prepared in January 1978 and a final analysis and comparison of the impacts of various alternative uses of New Melones water supply in September 1980. Two other issues raised by plaintiff concerned the Bureau's compliance with the National Historic Preservation Act and the State Water Resources Control Board Decision 1422. This suit was dismissed early in 1981.

2. California v. Morton, Civil Case No. S-2924 -- A decision by the California State Water Resources Control Board (identified as D-1422) restricted storage in New Melones Reservoir to 98,000 acre-feet for fish and wildlife purposes and additional undetermined amounts necessary to maintain water quality standards established by the Board. An additional 654,000 acre-feet was authorized to satisfy vested rights. The Bureau determined the storage required to accomplish these purposes would be 605,000 acre-feet (water surface elevation 879 feet). In addition, up to 450,000 acre-feet of storage space would need to be available for flood control purposes. Water for consumptive use or for power generation over and above these amounts could not be stored. This decision further required that prior to any impoundment of water, a reservoir operation study and operation schedule be furnished for the Board's approval. The Bureau of Reclamation could not supply New Melones water to CVP areas outside the counties of Stanislaus, Calaveras, Tuolumne, and San Joaquin without demonstrating to the Board that water to such areas was not available from other CVP sources. On June 12, 1973, the State of California brought a lawsuit in the United States District Court, California v. Morton, Civil Case No. S-2924, for declaratory judgment that the United States is bound by all the terms and conditions placed in Bureau of Reclamation permits. The United States subsequently filed United States v. State of California. The lawsuit California v. Morton was stayed pending the outcome of United States v. California.

3. United States v. State of California, Civil Case No. CV-80-27, 509 F. Supp. 867 (E.D. Cal 1981) -- On October 15, 1973, the United States initiated a suit against the State of California seeking a determination that the State could not place terms and conditions on its New Melones Project permits. The District Court, on October 16, 1975, granted summary judgment for the United States, holding that a State could not place any terms and conditions in Bureau of Reclamation permits on New Melones. The Ninth Circuit Court of Appeals affirmed the District Court decision on August 12, 1977. The State appealed to the United States Supreme Court, which ruled that the State could, under Section 8 of the 1902 Act, impose conditions on control, appropriation, use or distribution of water in a Reclamation project which are not inconsistent with congressional authorization of a given project. The case was remanded to the District Court for further proceedings, California v. United States, 438 U.S. 645 (1978). In United States v. California, CV-80-27k, 509 F. Supp. 867 (E.D. Cal 1981) the District Court held that the State may properly require the Federal Government to enter into water supply contracts before it can store water for consumptive use. However, the court also held that conditions imposed on storage for power generation are inconsistent with congressional authorization. Both the State and the United States have appealed this decision and are currently waiting for a ruling by the Ninth Circuit Court of Appeals.

4. United States v. State Water Resources Control Board -- The United States has filed a Petition for Writ of Mandate in Calaveras County Superior Court, requesting that the May 20, 1982, SWRCB Order WR-82-3 denying the Bureau of Reclamation right of direct diversion from New Melones and the Stanislaus River be rescinded and that the Court clarify the rights granted to the Bureau under D-1422. The suit arose when the Bureau, pursuant to D-1422 petitioned the Board for the right to deliver, by direct diversion, water for Central San Joaquin on a temporary basis. The Board denied that petition declaring that D-1422 did not grant the Bureau the right to directly divert.

5. South Delta Water Agency v. United States, Civil Case No. 82-567-MLS. The Southern Delta Water Agency has filed suit against the United States in Federal District Court, Eastern Division, claiming that poor water quality in the Southern Delta is in part due to the operation of the Central Valley Project. The second cause of action in SDWA's complaint centers on the alleged obligation of the Bureau to mitigate water quality damage by making water available to them from New Melones and the Stanislaus River. SDWA challenges the Secretarial designation of the Stanislaus River Basin which does not include SDWA.

EXHIBIT C




## DESIGNATED STANISLAUS RIVER BASIN AND ADJACENT AREAS

**UPSTREAM REQUIREMENTS**
*Areas upstream from New Melones Lake considered in determining reservoir yield*

- Calaveras County: Calaveras Subarea, Murphys Subarea, West Point
- Tuolumne County: Mi-Wuk, Tuolumne Ditch, Sonora
- Alpine County

**PRIMARY RESERVOIR SERVICE AREA**
*Designated Stanislaus River Basin below New Melones Dam*

- Calaveras County: Copperopolis
- Tuolumne County: Lower Tuolumne
- Stanislaus and San Joaquin Counties: Cooperstown, Farmington, Oakdale I.D., South San Joaquin I.D.

**REMAINING FIRM YIELD**
*Reservoir yield available after meeting year 2020 inbasin requirements*

- San Joaquin County: Central San Joaquin W.C.D.

**INTERIM WATER**
*Temporary supplies available during buildup to full inbasin requirements*

*Normal-Range Water Years*
- San Joaquin County: Central San Joaquin W.C.D., Stockton-East W.D.

*Dry or Critically Dry Water Years*
- San Joaquin County: South Delta Water Agency

**ANY AVAILABLE SUPPLIES NOT DESIRED BY BASIN USERS AND ADJACENT AREAS**

- Stanislaus and Merced Counties: Montpelier Subarea
- Other CVP Areas: San Luis Unit, Corning Canal, Tehama-Colusa Canal, Delta-Mendota Canal, Kings County W.D.

FACT SHEET

1. Project and State: New Melones Unit, Central Valley Project (CVP), California.

2. Contracting Entities: Tuolumne Regional Water District, Central San Joaquin Water Conservation District, and Stockton-East Water District.

3. Objective of Contract: To provide water service from New Melones Reservoir to the above contracting entities.

4. Authority: Acts of August 4, 1939 (53 Stat. 1187) and December 22, 1944 (58 Stat. 887), and specifically, the Act of October 23, 1962 (76 Stat. 1173).

5. Basis of Negotiation: Basis of Negotiation for the general contracting program was approved February 1, 1982.

6. Status of Environmental Action: No. FES 80-33 dated September 12, 1980.

Supplement to the Final Environmental Impact Statement on New Melones Lake - Stanislaus River, California - Alternative Stanislaus River Basin Areas, Water Allocations, and Reservoir Operations.

7. Water Supply: The proposed contracts provide a total of 158,200 acre-feet of water to: Tuolumne Regional Water District (3,200 acre-feet of water), Central San Joaquin Water Conservation District (80,000 acre-feet of water), and Stockton-East Water District (75,000 acre-feet of water). The quantities provided pursuant to these contracts represent 88 percent of the total yield (180,000 acre-feet) from New Melones Unit, CVP. Of the total quantity contracted, 92 percent is for agricultural use and 8 percent is for M&I use.

The quantities of water provided by the proposed contracts are as follows:

| Contractor | Water Supply | Use | Quantity Acre-Feet | Total Acre-Feet |
|---|---|---|---|---|
| Tuolumne (within Basin) | Firm | M&I | 3,000 | |
| | Firm | Agricultural | 200 | |
| | | | | 3,200 |
| Central (outside Basin) | Firm | Agricultural | 49,000 | |
| | Interim | Agricultural | 31,000 | |
| | | | | 80,000 |
| Stockton-East (outside Basin) | Interim | M&I | 10,000 | |
| | Interim | Agricultural | 65,000 | |
| | | | | 75,000 |
| | | | | 158,200 |

8. <u>Conveyance and Distribution System</u>: No conveyance or distribution systems have been authorized. We are currently doing preliminary work on a feasibility study for conveyance and distribution facilities. The districts intend at this point, however, to construct their own facilities.

9. <u>Construction Cost of Central Valley Project as of September 30, 1981</u>: (New Melones is financially integrated in CVP)

| | |
|---|---|
| Federal | $2,378,257,205 |
| Nonfederal | 178,504,581 |
| Total Cost | $2,556,761,786 |

10. <u>Plant in Service of CVP as of September 30, 1981</u>: (New Melones is financially integrated in CVP)

| | | |
|---|---|---|
| Reimbursable | | |
| Irrigation | $1,103,260,125 | |
| M&I | 99,407,965 | |
| Commercial Power | 356,511,411 | |
| State of California | 171,926,000 | |
| Deferred Use | 2,425,000 | |
| Total | | $1,733,530,501 |
| Nonreimbursable | | 249,038,264 |
| Total investment | | $1,982,568,765 |

Reimbursement to date of the reimbursable functions is $314,809,645.

11. <u>Repayment Period</u>: The repayment period for the proposed contracts is almost 40 years.

12. <u>Cost of Agricultural Water</u>: $3.50 per acre-foot — CVP minimum water rate based on the proposed CVP ratesetting policy. This rate is for CVP storage costs only since Federal conveyance and distribution facilities are not authorized. Payment capacity studies for the contractors were not prepared; however, we estimate the payment capacity would not exceed the minimum CVP water rate for agricultural water.

13. <u>Cost of M&I Water</u>: $9.00 per acre-foot - CVP minimum water rate based on the proposed CVP ratesetting policy. This rate is for storage costs only since Federal conveyance and distribution facilities are not authorized.