# EXHIBIT C

United States Department of the Interior

BUREAU OF RECLAMATION
WASHINGTON, D.C. 20240

IN REPLY REFER TO: 440

July 8, 1983

Memorandum

To: Secretary of the Interior

From: Commissioner

Subject: Proposed Water Service Contracts with Central San Joaquin Water Conservation District, and Stockton-East Water District--New Melones Unit--Central Valley Project (CVP), California

1. Introduction. Attached for your consideration and approval as to form are two proposed water service contracts from New Melones Unit, Central Valley Project. The proposed contracts are with Central San Joaquin Water Conservation District (Central) and Stockton-East Water District (Stockton-East). The contract with Central provides a firm water supply of 49,000 acre-feet and an interim supply of 31,000 acre-feet and the contract with Stockton-East provides an interim supply of 75,000 acre-feet. The proposed contracts were prepared pursuant to the acts of August 4, 1939 (53 Stat. 1187), December 22, 1944 (58 Stat. 887), October 23, 1962 (76 Stat. 1173), and October 12, 1982 (96 Stat. 1263). Also attached are copies of the Record of Decision signed by Under Secretary Donald Paul Hodel on June 29, 1981 (Exhibit A), a summary of the water right lawsuits (Exhibit B), a map of the districts (Exhibit C), a fact sheet setting forth pertinent information concerning the proposed contracts, and a summary of the public comments on the proposed contracts.

2. Contracting Entities and Legal and Policy Considerations. Central and Stockton-East were organized in 1961 and 1948, respectively, and both district offices are located in Stockton, California. Each has general powers to contract with the United States for a water supply pursuant to the California Water Code, Division 21, as described in Section Nos. 74610 and 74611; and Central has special and additional powers as set forth in Chapter 819 of the Statutes of 1971, as amended from time to time. Central and Stockton-East approved the proposed draft contracts on March 15 and 21, 1983, respectively.

The New Melones Unit, CVP, is the subject of several lawsuits which are summarized in Exhibit B. Those lawsuits include: (1) Environmental Defense Fund, Incorporated (EDF) vs. Armstrong, Civil Case No. C-72-1057-CBR; (2) California vs. Morton, Civil Case No. S-2924; (3) California vs. United States, 438 U.S. 645 (1978); (4) United States vs. California, 509 F. Supp. 867 (E.D. Cal. 1981); (5) United States vs. State Water Resources Control Board (Petition for Writ of Mandate); and (6) South Delta Water Agency, et al. vs. United States, et al., Civil Case No. S-82-567-MLS.

The proposed contracts are consistent with Reclamation law and State law. They are also in conformance with "New Melones Lake, Stanislaus River, Central Valley Project - California, Supplement to the Final Environmental Impact

SE 00798

Statement, Basin Alternatives, Water Allocations, and Reservoir Operations," Statement No. FES 80-33, September 12, 1980. The availability of energy generation at the New Melones Powerplant was published in the Federal Register April 5, 1982 (Volume 47, Number 65) (Copy attached).

Public participation requirements have been met throughout the negotiations. A notice of intent to initiate this contracting program was published in the Federal Register on February 5, 1982. Negotiations have been further announced quarterly in the Federal Register in the notice entitled "Quarterly Status Tabulation of Water Service and Repayment Contract Negotiations." A concurrent news release was made to local newspapers. A local news release was made September 30, 1982, announcing the availability of the proposed contracts for review and comment. Comments were received from Congressman George Miller, Friends of the River, Environmental Defense Fund, and Department of Water Resources for the State of California. A summary of these comments is attached. We believe that we have accommodated and/or explained the concerns that were identified by Senator Cranston, Congressman Miller, officials of the Environmental Defense Fund, California State Department of Water Resources, and Friends of the River. Resolutions from each of the districts approving the proposed contracts are included with the summary.

The proposed contracts have been reviewed by the Regional Solicitor, Pacific Southwest Region, and Office of the Solicitor, Washington, D.C., and have been found legally sufficient.

3. Background. New Melones Dam and Reservoir are located on the Stanislaus River about 60 miles upstream from its confluence with the San Joaquin River in California. The New Melones Project was authorized by the Flood Control Act of 1944 for construction by the United States Army Corps of Engineers to alleviate serious flooding problems along the Stanislaus and lower San Joaquin Rivers. The 1962 act reauthorized the project to provide additional benefits and made it an integral part of the CVP. The multipurpose functions of the New Melones Unit now include flood control, irrigation, municipal and industrial (M&I) use, power, preservation and propagation of fish and wildlife, and recreation. The project facilities include the New Melones Dam and Reservoir and a 300,000 kW powerplant. No conveyance or distribution facilities are authorized or have been constructed.

The 1962 reauthorization provided, "That, before initiating any diversions of water from the Stanislaus River Basin in connection with the operation of the Central Valley project, the Secretary of the Interior shall determine the quantity of water required to satisfy all existing and anticipated future needs within that basin and the diversions shall at all times be subordinate to the quantities so determined." The Bureau of Reclamation prepared a special report entitled "Stanislaus River Basin Alternatives and Water Allocation," dated September 1980, which recommended the area defined as the Stanislaus River Basin, the water allocations, and priorities to the water supply. In his June 29, 1981, Record of Decision, Under Secretary Hodel approved the plan recommended by the 1980 special report. The plan includes the following: (1) New Melones will be operated to its full ultimate yield of

180,000 acre-feet as authorized; (2) Basin 2 is the area defined as the Stanislaus River Basin; (3) the Basin users are allocated 131,000 acre-feet of New Melones yield, and the remaining firm water supply of 49,000 acre-feet is allocated to Central; and (4) an interim water supply of 85,000 acre-feet is allocated on a conjunctive use basis to Central, Stockton-East, and South Delta Water Agency (Agency). This interim water supply will be made available first to Central (46,000 acre-feet) and then to Stockton-East (39,000 acre-feet) in wet, above normal, normal, and below normal water years. In dry and critically dry years, the entire interim water supply (85,000 acre-feet) will be made available to the Agency, provided it executes a contract with the United States. The Agency must agree to pay the United States for the CVP Delta water charges and comply with Reclamation law. The water supply available on an interim basis will decrease as inbasin demand for the firm water supply develops.

We have been negotiating with two Basin contractors for a long-term water supply—Tuolumne Regional Water District for 3,200 acre-feet and Calaveras County Water District for 500 acre-feet. Those contracts have not yet been completed or approved by the districts. A letter was sent to South Delta Water Agency notifying it the Bureau was in the process of negotiating water service contracts from New Melones Unit. We did not receive a response from the Agency. However, on July 9, 1982, the Agency filed suit against the United States, seeking to require the Secretary of the Interior to set aside the June 29, 1981, Record of Decision defining the Stanislaus River Basin and compel the Secretary of the Interior to redefine the Stanislaus River Basin to include the South Delta Water Agency. A motion to dismiss this case was filed and is still pending. On May 13, 1983, South Delta Water Agency moved for a preliminary injunction against the Bureau. South Delta is seeking to enjoin the contracting activities of the Bureau from New Melones. A hearing is scheduled for June 29, 1983. However, we believe we have considered and adequately provided for the agency's needs.

The map attached as Exhibit C shows the locations of the two proposed contractors:

a. Central San Joaquin Water Conservation District is located in San Joaquin County. It lies astride Littlejohns Creek immediately below Farmington Dam, between Stockton-East on the north and South San Joaquin Irrigation District on the south. Supplemental water is needed to alleviate the present ground water overdraft conditions as the water levels continue to decline in this area. This district includes about 70,000 acres of presently irrigated lands, with about one-half of the area being used for pasture and field crops. The main field and row crops grown in the district include beans, sugar beets, grain, rice, corn, alfalfa, and tomatoes. Grapes and deciduous trees that include cherries, walnuts, peaches and some citrus are the main permanent crops.

b. Stockton-East Water District is located in San Joaquin County and includes the city of Stockton. It lies north of Central San Joaquin Water Conservation District, primarily west of the Folsom South Canal alinement, as proposed, and extends on both sides of the Calaveras River to just south of Mormon Slough. Although ground water constitutes a major source of the district's water supply, the ground water is in a state of overdraft. As a result

of the overdraft, water levels are declining, land subsidence has occurred, and intrusion of brackish water from the west has taken place. There is a need for supplemental water for the district to meet population growth, restore ground water levels and reduce or eliminate overdraft. The district includes over 114,500 acres, with about 75,000 acres devoted to intensively irrigated agriculture. The crops include grain, fruits, nuts and grapes, field crops, and pasture. The population within the district is about 212,000. The district is intending to serve an M&I water supply to the city of Stockton with a population of 162,000.

Central and Stockton-East have been planning on the American River from the Folsom South Canal, Auburn-Folsom South Unit, CVP, for a firm water supply to supplement their existing water supply. The United States, however, has been unable to contract with the districts pending resolution of the minimum flows in the Lower American River and approval of construction of the remaining reaches of the canal. The water supply provided by the proposed contracts is not intended to impact the districts' ability to attain a firm water supply from the Folsom South Canal, especially as the major portion of the districts' supply pursuant to the proposed contracts is interim water only.

4. Contract Negotiations, Terms, and Conditions. The proposed contracts are consistent with recent contracts for water service from the CVP.

Because of the Basin priority, the New Melones contracting program differentiates between the long-term firm water supply offered contractors within the Basin and that offered contractors outside the Basin. We project the long-term firm water supply will not be fully utilized within the Basin until after the year 2020. During that buildup period, the unused Basin allocation is being marketed to users outside the Basin on an interim basis. As the Basin needs develop, the interim water supply will be withdrawn and made available to Basin users. Central and Stockton-East are outside the Basin. Central has been allocated both a firm and an interim water supply, while Stockton-East has been allocated an interim water supply.

The definition for agricultural water in Article 1 of Central's and Stockton-East's contracts limits the use to "tracts of land operated in units of more than five acres." The 5-acre limit for agricultural water is consistent with Section 426.10(e) of the rules and regulations for the Reclamation Reform Act of 1982 as published in the Federal Register on May 3, 1983. That section states "Landholders of small tracts of less than 5 acres or of tracts which produce less than $5,000 of gross annual sales in agricultural commodities are exempt from the certification and reporting requirements."

The termination date for the proposed contracts is December 31, 2022. Central is given the right to renew its firm water supply; however, the quantity of firm water may be less if reduced earlier, or upon renewal if the Contracting Officer determines the Basin needs will exceed the amount of water reserved for Basin use. Central and Stockton-East do not have the right to renew their interim water supply.

Article 2(b) provides that initial water availability shall not be declared until all applicable requirements of State and Federal law with respect to utilization and delivery of Stanislaus River water have been complied with. With respect to Federal law, this includes land certification requirements. Central and Stockton-East were certified as irrigable as part of the Folsom South Unit, CVP, service area; however, we are also negotiating with several contractors who have not been certified. To be consistent, we included this provision in all contracts in the New Melones contracting program. With respect to State law, this includes the water conservation requirment in the recent Board amendment to its Decision D-1422.

Article 2(c) of the Stockton-East contract includes a 5-year termination provision. Because Stockton-East's contract provides an interim water supply only, there is a risk the district may not be able to complete its main conveyance system, obtain the necessary financing, receive electorate approval, and finally construct the conveyance facilities, all for an interim water supply. Therefore, article 2(c) provides that, if within the first 5 years, Stockton-East does not have adequate conveyance facilities or is not, in the opinion of the Contracting Officer, diligently proceeding toward completion of those facilities, the contract will terminate. Stockton-East approved the draft form of contract subject to its concern that it be clearly understood there is a risk the district may not be able to complete its main conveyance system for delivery of New Melones water.

The water quantities provided each contractor (article 3) differ from the quantities estimated to be needed by the 1980 special report. Those quantities are compared in Table 1, attached. The water quantities allocated in the 1980 report were Central a firm water supply of 49,000 acre-feet and an interim water supply of 46,000 acre-feet and Stockton-East an interim water supply of 39,000 acre-feet. These allocations were based on the water requirements estimated in the Folsom South Unit planning reports. As part of the "Folsom South Lower American River Alternatives Study," the water requirements for the Folsom South Unit were recently reanalyzed based on projected crop demand and cropping patterns, available ground water supplies, canal losses, and reuse of tailwater. The reanalysis reduced the total estimated supplemental canalside requirements; Central's from 90,000[1/] acre-feet to 72,000 acre-feet, and Stockton-East's from 145,000 acre-feet to 98,000 acre-feet. Although the reanalysis was made for the Folsom South Unit, the results represent the quantities of supplemental water required by these districts, whether from the Folsom South Unit or the New Melones Unit. Based on our current data, the quantities we are willing to contract from the New Melones Unit have been revised as follows: Central 49,000 acre-feet firm and 31,000 acre-feet interim; and Stockton-East 75,000 acre-feet interim. The allocation for firm water to Central was not revised, only the interim supply. Stockton-East is requesting 75,000 acre-feet which is higher than the original

---

1/ This does not include 5 percent conveyance losses that resulted in the figure of 95,000 acre-feet for Central used in the 1980 report.

39,000 acre-feet allocated in the 1980 report, but is not more than our present estimate of its long-term supplemental needs. Stockton-East is aware that if it contracts for 75,000 acre-feet, withdrawal of its interim water supply will begin sooner than anticipated with the previous interim supply of 39,000 acre-feet. Stockton-East has a firm supply of water from the Corps of Engineers' New Hogan Reservoir and is also entitled to interim water from New Hogan. The interim supplies from New Hogan and New Melones, supplementing the firm supply, will provide the district with a full water supply.

Central and Stockton-East both objected to the quantities being reduced. The districts do not agree with our estimate of the quantity of ground water supply available to them. San Joaquin County has initiated a ground water study by a consultant which will be completed in approximately 2 years. Therefore, article 3(e) in Central's and Stockton-East's contracts provides that the maximum water quantity may be adjusted upon mutual agreement following completion of this ground water restudy. The contracts limit each district to a maximum of 90,000 acre-feet. Anything beyond that would require renegotiating the contracts.

Central's and Stockton-East's contracts require a 10-year buildup period for agricultural use, with minimum requirements of 35 percent in years 6 through 8 and 70 percent in years 9 and 10. Agricultural water unused after year 11, will no longer be contractually reserved for the district. The buildup period for maximum M&I water use is completed in 23 years.

The water supply will be provided to the water users according to the following priority: first to contractors within the Basin; second to Central, which is outside the Basin but has been allocated a long-term firm supply of 49,000 acre-feet; and last to contractors allocated an interim water supply. The 1981 Record of Decision and 1980 report stated that Central has first priority to interim water allocated from New Melones Reservoir. Therefore, Central will be provided an interim water supply to meet its full needs before Stockton-East is provided an interim water supply. When the Basin demand develops to the point that the available interim water supply must be withdrawn, it will be reduced from Stockton-East first. Central's interim water supply will not be withdrawn until Stockton-East's water supply is totally withdrawn.

Central's firm and interim water supplies are subject to reduction by the Contracting Officer pursuant to the conditions outlined in Article 3(a). That article permanently allocates the district its firm water supply until December 31, 2017, even though the district is outside the Basin. The 1980 report estimated the Basin demand will not fully develop until the year 2020, and even then we project 49,000 acre-feet of annual yield will be available to Central. Beginning the year 2017, and every 5 years thereafter, and also at contract renewal, the Basin demand will be reviewed. If the Basin demand exceeds the amount of water reserved for the Basin, the district's firm water

supply may be reduced in subsequent years. We believe it is adequate protection for the Basin water users and is advantageous to the United States, for the Bureau to review and, if necessary, reduce Central's firm water supply in the year 2017, five years prior to contract renewal.

Central's interim water supply may be reduced with a 1-year notification as the Basin use develops. Similarly, Stockton-East's interim water supply will be reduced, pursuant to its article 3(a), as the Basin use develops or if the interim water supply to Central is increased. Article 3(a) in both Central's and Stockton-East's contracts also provides that in the event South Delta Water Agency contracts with the United States for an interim water supply in dry and critically dry water years, the entire interim water supply available to Central and Stockton-East may be reduced or eliminated during those dry and critically dry water years. This will not be a withdrawal of the districts' allocations, but a reduction in the quantity of interim water supply. If the Agency does contract with the United States, but not all of the interim water supply is withdrawn for its use, the remaining supply will be allocated first to Central and then to Stockton-East. Central's firm supply is not to be reduced to make water available to the Agency.

Article 9, "Water Shortage and Apportionment," specifies conditions under which Central's and Stockton-East's water supply will be reduced. The allocation of the water supply during water short years will be in the same priority as the water allocation. Central's first priority to the allocation and withdrawal of its interim water supply will also apply to water shortages imposed during dry and critically dry water years. Thus, in water short years, the interim water supply to Stockton-East will be reduced completely before the interim water supply to Central is reduced. Central's firm supply of 49,000 acre-feet will be reduced to zero before the water supply to Basin users is reduced in water short years.

Payment required pursuant to article 5 is $3.50 per acre-foot for agricultural water and $9.00 per acre-foot for M&I water. These rates are based on CVP storage costs only since Federal conveyance and distribution facilities are not authorized. No energy costs are involved since no Federal pumping is required for conveyance of the water. The article provides that the rates shall be redetermined annually in accordance with the current agricultural and M&I rate policy of the CVP; this will permit annual rate adjustment to recover full O&M costs as required by the Reclamation Reform Act of 1982. Both contracts contain a proviso that in the event litigation by a third party prevents delivery of project water for a period of time, the minimum payments may be suspended for that same period. The districts requested this provision because of the pending lawsuit by South Delta Water Agency and possibility of an injunction.

The proposed contracts include all standard contract provisions applicable to water service contracts of this type, including the standard article on water conservation and updated language relating to excess lands.

5. Findings and Recommendations. The proposed contracts with Central and Stockton-East provide irrigation and M&I water to the districts. Central and Stockton-East are in immediate need of this water supply to reduce the ground water overdraft in their districts. The proposed contracts are in the best interests of the United States and the districts.

Although constructed by the Corps of Engineers, the New Melones Unit is not excluded by section 212 from the terms of the Reclamation Reform Act enacted October 12, 1982 (P.L. 97-283). Accordingly, the proposed contracts comply or require compliance with applicable provisions of that act, specifically with respect to excess lands, rate review and adjustment to ensure recovery of appropriate costs, and water conservation.

We recommend that you approve the form of the proposed contracts for Central and Stockton-East, each identified as "Rev. R.O. 3/2-1983." Your approval should be with the understanding that prior to execution, minor changes may be made which are consistent with overall contract objectives. Thereafter, pursuant to existing delegation of authority and after execution by each district, the Regional Director, Mid-Pacific Region, will execute the contracts in behalf of the United States and will serve as Contracting Officer on your behalf.

6. Urgency of Approval. The districts wish to proceed now with planning and construction programs to utilize New Melones water. To meet their schedules, your expedited approval would be appreciated.

/s/ R. N. Broadbent

Attachments

Approved:

/s/ Garrey E. Carruthers
Secretary of the Interior
and Returned

July 24, 1983
Date

bc: Secretary's Surname
Secretary's Reading Files - LBR (2)
AS/LW (2)
Associate Solicitor - Energy and Resources
Regional Director, Sacramento, California
((w/o attachments)
W.O. Code 140

RO Draft Revised
LBR:FEEllis:cm:6/6/83:343-5671