# EXHIBIT A

# PART 1

# NEW MELONES DIRECT DIVERSION PROJECT

## PETITION FOR ASSIGNMENT OF APPLICATION 14858 AND APPLICATIONS 27319, 27320 AND 27321 OF THE U. S. BUREAU OF RECLAMATION STANISLAUS RIVER

AMENDED By WR 88-6

## DECISION 1616




JANUARY 1988

STATE WATER RESOURCES CONTROL BOARD

STATE OF CALIFORNIA

*George Deukmejian, Governor*

STATE WATER RESOURCES
CONTROL BOARD

*W. Don Maughan, Chairman*
*Darlene E. Ruiz, Vice Chairwoman*
*Edwin H. Finster, Member*
*Eliseo Samaniego, Member*
*Danny Walsh, Member*

●

*James L. Easton, Executive Director*

1616

STATE OF CALIFORNIA
STATE WATER RESOURCES CONTROL BOARD

| | | |
|---|---|---|
| In the Matter of the Petition for Assignment of Application 14858 and Applications 27319, 27320, and 27321 of the | ) | DECISION 1616 |
| U. S. BUREAU OF RECLAMATION, | ) | |
| Petitioner and Applicant, | ) | SOURCE: Stanislaus River |
| OAKDALE IRRIGATION DISTRICT, SOUTH SAN JOAQUIN IRRIGATION DISTRICT, and LAWRENCE FAMILY TRUST, | ) | COUNTIES: Tuolumne, Calaveras, Stanislaus and San Joaquin |
| Protestants. | ) | |

DECISION APPROVING APPLICATION 27319 AND
PETITION FOR ASSIGNMENT OF APPLICATION 14858
AND DENYING APPLICATIONS 27320 AND 27321

THIS DECISION WAS AMENDED BY WR 88-6

TABLE OF CONTENTS


| | | PAGE |
|---|---|---|
| 1.0 | INTRODUCTION | 1 |
| 2.0 | BACKGROUND | 2 |
| 3.0 | SUBSTANCE OF PETITION FOR ASSIGNMENT AND APPLICATIONS | 3 |
| 3.1 | Petition for Assignment of Remaining Portion of Application 14858 | 3 |
| 3.2 | Application 27319 | 4 |
| 3.3 | Application 27320 | 4 |
| 3.4 | Application 27321 | 4 |
| 4.0 | PROJECT DESCRIPTION | 4 |
| 5.0 | PROTESTS | 5 |
| 5.1 | Protests Dismissed or Resolved Prior to the Hearing | 5 |
| 5.1.1 | Delta Water Users Association, et al. | 5 |
| 5.1.2 | California Department of Fish and Game | 6 |
| 5.1.3 | Calaveras County Water District | 7 |
| 5.1.4 | Tuolumne Regional Water District | 9 |
| 5.2 | Unresolved Protests | 12 |
| 5.2.1 | Lawrence Family Trust, Eleanor Gikas and Mike Gikas | 12 |
| 5.2.2 | Oakdale Irrigation District and South San Joaquin Irrigation District | 13 |
| 5.2.2.1 | Joint Use of Facility | 15 |
| 5.2.2.2 | Accretion Flows | 15 |
| 5.2.2.3 | Power Generation Rights | 18 |
| 6.0 | CONTRACTS FOR CONSUMPTIVE YIELD | 20 |
| 7.0 | NEED FOR DIRECT DIVERSION RIGHTS | 20 |
| 8.0 | AVAILABILITY OF UNAPPROPRIATED WATER | 22 |

8.1 Decision 1422 . . . . . . . . . . . . . . . . . . . . . . 22

8.2 Amount and Season Requested for Consumptive Use and Other Non-Power Purposes . . . . . . . . . . . 22

8.3 Amount and Season Requested for Power Purposes . . . . . 24

8.4 Conclusions Regarding Availability of Water and Limitations on Rate and Quantity of Diversions . . . . . . . . . . . . . . . . . . . . . . 24

9.0 ASSIGNMENT OF STATE APPLICATION 14858 . . . . . . . . . . 25

10.0 COMPLIANCE WITH THE CALIFORNIA ENVIRONMENTAL QUALITY ACT . . . . . . . . . . . . . . . . . . . . . . 26

11.0 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 27

ORDER . . . . . . . . . . . . . . . . . . . . . . . . . 27

STATE OF CALIFORNIA
STATE WATER RESOURCES CONTROL BOARD

| | |
|---|---|
| In the Matter of the Petition for Assignment of Application 14858 and Applications 27319, 27320, and 27321 of the<br><br>U. S. BUREAU OF RECLAMATION,<br><br>Petitioner and Applicant,<br><br>OAKDALE IRRIGATION DISTRICT, SOUTH SAN JOAQUIN IRRIGATION DISTRICT, and LAWRENCE FAMILY TRUST,<br><br>Protestants. | DECISION<br><br>SOURCE: Stanislaus River<br><br>COUNTIES: Tuolumne, Calaveras, Stanislaus and San Joaquin |

DECISION APPROVING APPLICATION 27319 AND PETITION FOR ASSIGNMENT OF APPLICATION 14858 AND DENYING APPLICATIONS 27320 AND 27321

BY THE BOARD:

## 1.0 INTRODUCTION

The United States Bureau of Reclamation (Bureau) having filed a petition for assignment of the remaining portion of Application 14858 and having filed Applications 27319, 27320, and 27321 for permits to appropriate unappropriated water; protests having been filed against the petition for assignment and applications; a public hearing having been held on June 23, 1987 by the State Water Resources Control Board; the applicant, protestants, and interested parties having appeared and presented evidence; the evidence having been duly considered; the Board finds as follows:

## 2.0 BACKGROUND

The Bureau initially filed applications to appropriate water by direct diversion and storage for the New Melones Reservoir project in 1960. Board Decision 1422 was entered in 1973 authorizing issuance of permits for storage of water in New Melones Reservoir, but the quantity of water which could be stored was limited to the amount needed for fish and wildlife enhancement, maintenance of water quality, satisfaction of prior rights and flood control until such time as a specific need for water for consumptive use was demonstrated. Similarly Decision 1422 did not authorize direct diversion except for production of hydroelectric power at New Melones Reservoir. New Melones Dam was completed in 1978 at a location about three-quarters of a mile downstream from the original Melones Dam. New Melones Reservoir has a capacity of 2,400,000 acre-feet.

In Order Nos. WR 80-20, 82-3, 82-9 and 83-3, the Board interpreted and revised certain conditions and restrictions of the New Melones permits. Order No. WR 83-3 allowed the Bureau to fill the reservoir for consumptive use purposes. Rediversion of stored water at Goodwin Dam, Knights Ferry Diversion Dam and various other locations between New Melones Dam and the mouth of the Stanislaus River was authorized on August 9, 1985. The petition and applications presently before the Board request direct diversion of water at New Melones Reservoir and downstream locations for consumptive use. The Bureau also requests an increase in its existing rights for direct diversion for hydropower purposes at New Melones Reservoir.

3.0 SUBSTANCE OF PETITION FOR ASSIGNMENT AND APPLICATIONS

3.1 Petition for Assignment of Remaining Portion of Application 14858

Application 14858 was originally filed on June 16, 1952 by the Department of Finance under the provisions of Water Code Section 10500 et seq. governing applications for water intended for development as part of a general or coordinated state plan. The application was transferred to the Board pursuant to Water Code Section 10504. The application covers year round direct diversion of 8,800 cubic feet per second (cfs) and storage of 980,000 acre-feet per annum (afa) from October 1 of each year to July 1 of the succeeding year. In Decision 1422, the Board assigned the storage portion of this application to the Bureau and issued a permit subject to specified terms and conditions. The current petition requests assignment and approval of the direct diversion portion of the application for 8,800 cfs with the total amount of water not to exceed 1,000,000 afa. The requested purposes of use are irrigation, domestic, municipal, industrial, recreation, water quality control, and fish and wildlife enhancement uses. The water will be diverted at New Melones Dam, Goodwin Dam, Knights Ferry Diversion Dam and at various unspecified locations between New Melones Dam and the confluence of the Stanislaus River and the San Joaquin River. Water will be used for consumptive purposes within the portion of Tuolumne, Calaveras, Stanislaus and San Joaquin Counties shown on the revised application map dated August 16, 1984 on file with the Board.

3.2 Application 27319

Application 27319, filed on May 3, 1982, requests a right to divert 4,000 cfs by direct diversion for hydropower generation at the New Melones power plant.

3.3 Application 27320

Application 27320 was filed on May 3, 1982 for year round direct diversion of 2,250 cfs with the total amount of water diverted not to exceed 1,000,000 afa. The purposes of use, points of diversion and places of use are the same as those stated above for Application 14858.

3.4 Application 27321

Application 27321 was filed on May 3, 1982 for year round direct diversion of 8,800 cfs with the total amount of water not to exceed 1,000,000 afa. The purposes of use, points of diversion, and places of use are the same as those stated above for Application 14858.

4.0 PROJECT DESCRIPTION

Direct diversion of water for consumptive use is proposed by pumping from New Melones Reservoir into pipelines leading both north and south into areas where water is needed. Direct diversion for consumptive use is also proposed through canals at Goodwin Dam and at Knights Ferry Diversion Dam. There are also points of diversion proposed between Goodwin Dam and the confluence of the Stanislaus River with the San Joaquin River which have not been specifically located. Points of rediversion may be established in the future. Water will be

delivered to various users within the four county place of use specified in the applications. Water will be used consumptively for irrigation, domestic, municipal and industrial uses.

The project will also involve an increase in the authorization for diversion of water for hydroelectric purposes at New Melones Dam. The Bureau presently holds Permit 16598 (Application 14859) which authorizes year round direct diversion of 6000 cfs of water for hydroelectric purposes at New Melones Dam. Issuance of a permit on Application 27319 would allow the Bureau to divert an additional 4,000 cfs for hydroelectric power production at the existing New Melones power plant which can utilize a total rate of flow of 10,000 cfs with a production capacity of 300,000 kilowatts.

5.0 PROTESTS

Seven protests were filed and accepted against the applications and petition for assignment. One of the protests was dismissed by the protestant and three were conditionally resolved prior to the hearing.

5.1 Protests Dismissed or Resolved Prior to the Hearing

5.1.1 Delta Water Users Association, et al.

The Delta Water Users Association withdrew its protest on the basis of an October 1986 agreement between the Bureau, the Department of Water Resources and the South Delta Water Agency and the fact that the Bureau and the South Delta Water Agency were continuing negotiations regarding scheduling of the water quality releases required by Decision 1422. The protest withdrawal was conditioned upon the Board

reserving jurisdiction in any permits issued on these applications for further review of the downstream effects of the Bureau's diversions. In this regard, the Board's standard permit term 80 (Reservation of Jurisdiction -- Delta and Tributary Rivers) was acceptable to the Association and the protest was subsequently dismissed.

5.1.2 California Department of Fish and Game

The Bureau and the California Department of Fish and Game (DFG) entered into an agreement in June 1987 which allowed for dismissal of the DFG protest provided that any permits issued on Applications 14858, 27319, 27320 andd 27321 contain provisions sufficient to implement paragraph III of the agreement. Paragraph III of the agreement calls for the Bureau to make specified instream flow releases for fishery purposes on an interim basis in accordance with a detailed plan of study attached to the agreement. Paragraph III of the agreement also sets forth the parties' intentions to reach a final agreement on long-term fishery resource protection measures and to request mutually that the Board require implementation of such measures as a condition of the appropriate permits or licenses issued. If a final agreement on long-term fishery protection measures cannot be made within a prescribed period, the parties agree that either may submit its independent recommendations and request to the Board.

The Board recognized the need for detailed studies to determine an appropriate instream flow schedule for fishery protection when it approved issuance of the first New Melones water right permits in

Decision 1422. The June 1987 agreement between the Bureau and DFG prescribes a reasonable method for conducting those studies as well as an agreed upon approach for making interim instream flow releases during the period of the study. Following completion of the studies, the intention of the parties and the Board is to establish long-term instream flow standards for protection of the fishery.

In order to obtain necessary information on appropriate instream flows and to protect the fishery, the Board concludes that any permits issued pursuant to the applications under consideration should include a condition requiring that a fishery study be conducted as agreed to by the Bureau and DFG and that interim instream flows be maintained pursuant to the June 1987 agreement. A condition should also be included providing that the Board reserves jurisdiction to revise instream flow standards for fishery and water quality purposes. Including such conditions in any permits issued will serve to protect public trust resources affected by Stanislaus River flows and will allow for further Board action as appropriate when the instream flow studies are complete.

5.1.3 Calaveras County Water District

In accordance with an agreement reached with the Bureau in April 1985 Calaveras County Water District (CCWD) agreed to withdraw its protest provided that the substance of paragraphs one through four of a July 31, 1972 agreement between the Bureau and CCWD be included in any permits issued. With the exception of the first condition, no testimony was presented relative to the intent or purpose of the specified conditions which are as follows:

"1. 'The United States agrees to recognize the priority of the water rights of Calaveras [County Water District] upon the Stanislaus River including the priority Calaveras has obtained through permits granted by the former California State Water Rights Board in Decision 1114 and as amended by Decision 1226.'

"2. 'The United States agrees to recognize the priority of State Water Right Applications 5647 and 5648 as they pertain to the Stanislaus River, the North Fork of the Stanislaus River and its tributaries for diversion into Calaveras County.'

"3. 'The United States further agrees that within the limitations of permits that may be issued on Applications 14858 and 19304, to determine the quantities of water ultimately required for the reasonable and beneficial uses of those areas shown on Exhibit A attached hereto within Calaveras County that can be economically supplied from New Melones Reservoir; and to, within the limitations of Federal Reclamation Laws, negotiate primarily a contract with Calaveras or secondarily, contracts with any appropriate governmental agency for the purchase of water from New Melones Reservoir for use on this area.'

"4. 'Within the limitations of available funds and authority, the United States will undertake studies to provide an appraisal of the water requirements for the entire county, the available water supplies from all sources -- Calaveras, Mokelumne, and Stanislaus Rivers, and the proposed East Side Division of the Central Valley Project and a desirable plan for meeting those requirements.'"

The permitted applications approved in Board Decision 1226 include Applications 18727, 18728, 19148 and 19149 of CCWD which are junior in priority to Application 14858. CCWD contends that condition 1 of the July 31, 1972 agreement subordinates any assignment to the Bureau of Application 14858 to CCWD's rights acquired under permitted Applications 18727, 18728, 19148 and 19149. Under cross-examination, the Bureau representative apparently agreed with CCWD's position.

(T,20:9-22:16.) In addition, the Bureau did not respond when Board Chairman Maughan asked, in effect, if there were any objections to reversing priority. (T,111:5-112:21.) Therefore, in accordance with the parties' agreement, the rights acquired under any permit issued to the Bureau under Application 14858 should be subordinate to CCWD's rights under permitted Applications 18727, 18728, 19148 and 19149.

Condition 2 of the July 31, 1972 agreement merely emphasizes the priority of state filed Applications 5647 and 5648. Application 5647, however, is for diversion from the Mokelumne River watershed and no information was provided as to why it should be referenced in a permit to appropriate water from the Stanislaus River.

Conditions 3 and 4, for the most part, deal with matters outside the normal scope of a water right permit except for the provision relative to the purchase of Stanislaus River water. Therefore, with the exception of requiring that the Bureau make water available for sale to CCWD or other appropriate governmental agency, the Board concludes that the provisions of Conditions 3 and 4 should not be included in any permits issued on the applications under consideration.

5.1.4 Tuolumne Regional Water District

The Bureau and Tuolumne Regional Water District (TRWD) entered into an agreement in June 1987 in which TRWD agreed to withdraw its protest provided that the substance of paragraphs one, two and four of a November 29, 1972 agreement between the Bureau and TRWD be included, by way of reference or otherwise, in any permits issued. These conditions are as follows:

"1. 'The United States agrees that any person, district, agency, corporation, utility or entity, including T.C.W.D. #2[1] may divert and/or impound water from the Stanislaus or any tributary thereto for the reasonable and beneficial use within the T.C.W.D. #2 service area delineated on Exhibit A, attached hereto and made a part hereof, or anywhere else within the Stanislaus River Basin; and that the right to do so, whenever initiated, shall be prior and superior to any rights of the United States to divert or impound any of the waters of the Stanislaus River. It is recognized that use within T.C.W.D. #2 service area may be supplied in part by water from Tuolumne River Basin and to that extent need for Stanislaus River water would be decreased correspondingly.'

"2. 'The United States further agrees that in the event T.C.W.D. #2 or any user within T.C.W.D. #2 should desire to purchase water impounded by the United States in New Melones Reservoir, for release as replacement water in order to satisfy other prior rights downstream from New Melones Dam, or for other reasonable and beneficial purposes, that the United States will sell such water to such user or T.C.W.D. #2 at prices not exceeding those applicable for such water to other New Melones Unit customers for the use to which T.C.W.D. #2's water will be put out.'

* * *

"4. 'The United States further agrees that any permits issued to it for the diversion or storage of water at New Melones shall be subordinate and junior to any present or future appropriation or use of water out of the Stanislaus River or any of its tributaries for the generation of hydroelectric power, which will aid in financing and the construction of any works to provide water for beneficial uses within T.C.W.D. #2. Such present or future appropriation or use of water shall not include export, unless returned to the Stanislaus River above New Melones, of any water from the Stanislaus River Basin solely for the production of power, except to the extent that the right to do so

---

1 The name of Tuolumne County Water District #2 was changed to Tuolumne Regional Water District in September 1981.

exists on the date of this agreement in T.C.W.D. #2 or any other entity.

'Nothing in this paragraph, however, shall prohibit the district or any person or entity from filing applications to appropriate water for any purpose whatsoever.'"

There was no testimony presented regarding the intent or purpose of these conditions though condition 1 clearly subjects any rights granted the Bureau to all existing and future appropriations in the Stanislaus River Basin. It is not limited to appropriations either by TRWD or for use within the TRWD service area due to the phrase "or anywhere else within the Stanislaus River Basin". This excessively infringes on the priority of any vested rights granted the Bureau for diversion from the Stanislaus River to the point where, in theory at least, the rights could ultimately have little value. Furthermore, insofar as the condition pertains to diversions from the Stanislaus River for use outside the boundaries of TRWD, TRWD would have no standing to request enforcement of the condition. Therefore, the Board concludes that any permits issued on the pending applications should be conditioned to make the Bureau's rights subject to any existing and future appropriations of water within the TRWD service area. The 1972 agreement provides no basis, however, for subjecting the Bureau's rights to future appropriations for use in areas outside of the TRWD service area.

Conditions 2 and 4 of the 1972 agreement address matters within the Board's jurisdiction which were part of the basis for resolving the protest of TRWD. The Board concludes that any permits issued in this proceeding should be conditioned accordingly.

5.2 Unresolved Protests

5.2.1 Lawrence Family Trust, Eleanor Gikas and Mike Gikas

The Lawrence Family Trust, Eleanor Gikas and Mike Gikas (collectively referred to herein as LFT) filed a protest alleging that the proposed appropriations will result in injury to vested rights, will not best conserve the public interest, will be contrary to law, and will have an adverse environmental impact. The protestants claimed that the proposed appropriations will reduce Stanislaus River inflow to the San Joaquin River resulting in various water quality problems, lower water levels in the Middle and Old Rivers, and detrimental effects on navigation fishery resources, recreational uses, aesthetic values, the agricultural economy and riparian vegetation. By letter dated May 27, 1987, LFT advised the Board that their protest could be withdrawn provided that the Board reserves jurisdiction to: (1) review the effect of the appropriation on LFT's prior rights and public trust uses, and (2) further condition any permits issued in the event that LFT continues to encounter water level or water quality problems in the future.

Although LFT was represented at the hearing, no evidence was presented in support of their protest or the need for the requested permit conditions. However, since all permits are issued subject to prior rights, the Board always has jurisdiction to review complaints of infringement on prior rights. This jurisdiction includes the authority to take action to protect prior rights including amendments

to the conditions of water right permits, if necessary, following notice and opportunity for a hearing. Therefore, although the record provides no basis for including the specific conditions requested by LFT, the Board has sufficient jurisdiction to protect LFT's rights against infringement by the Bureau under any permits which may be issued.

5.2.2 Oakdale Irrigation District and South San Joaquin Irrigation District

Oakdale Irrigation District and South San Joaquin Irrigation District filed separate protests alleging that the proposed appropriations will result in injury to vested rights, will utilize points of diversion which are not within the Board's jurisdiction, will not best conserve the public interest, and will be contrary to law. Both Districts' protests state that although the Districts own Goodwin Dam and the canals which extend from that dam, the Bureau has made no arrangements for the use of the Districts' facilities.

In October 1972, prior to issuance of the storage permits for New Melones Reservoir, the two Districts (jointly referred to herein as OSSJID) and the Bureau entered into an agreement intended to quantify the yield for consumptive purposes of the OSSJID water rights on the Stanislaus River. The agreement provided that, upon completion of New Melones Dam and Reservoir, the Bureau would provide OSSJID the following annual quantities of water in recognition of the Districts' rights:

"1. 200,000 acre-feet from New Melones storage,

"2. 36,000 acre-feet for storage in Woodward Reservoir,

"3. That portion of the New Melones Reservoir inflow required to meet the Districts' direct diversion requirements but not to exceed 1,816.6 cubic feet per second.

"Subject to the following limitation:

"The maximum quantity of water delivered each year is limited to 654,000 acre-feet or the total quantity of New Melones Reservoir inflow during the water year (October 1 of one year through September 30 of the succeeding year), whichever is the smaller." (USBR, 8.)

The Bureau's position is that the above conditions of the agreement fully compensate OSSJID for its consumptive use water rights on the Stanislaus River. (T,29:29-30:7; 5,32:18-33:1.)

The agreement, however, did not address OSSJID power rights at the Tulloch power plant or compensation for the taking of OSSJID property and loss of power revenues arising out of the construction of New Melones Dam. Similarly, the agreement did not address the status of tributary inflow (accretion flows) below New Melones Dam to Tulloch and Goodwin Reservoirs. OSSJID made an evidentiary presentation at the hearing on these issues and alleged operational problems at Tulloch and Goodwin Dams. The issuance of direct diversion rights, per se, was not opposed by OSSJID though they requested that three conditions be included in any direct diversion permits issued to the Bureau. As discussed in the following sections, these conditions involve joint use of facilities, accretion flows and recognition of OSSJID rights to water for power production at Tulloch Reservoir.

5.2.2.1 Joint Use of Facility

The first permit condition requested by OSSJID is as follows:

> "Bureau will not utilize, or permit the utilization by any contractor or water purchaser of the Bureau, of the Joint Districts, [sic] Goodwin Dam and/or facilities regulating water or diverting or transporting water from such facility, until such time as and only upon the condition that, a written agreement between the Joint Districts and the entities desiring to utilize such dam or other facilities has been entered into providing for the use of those facilities and other customary conditions in regard to payment, regulation, priority and similar conditions. The completion of such agreement shall be a precondition to exercise of the diversion rights at Goodwin Dam or from the Goodwin Dam Pool to be granted the Bureau herein." (OSSJID,7; T,94:4-95:11.)

In essence, this condition would require the Bureau's contractors to enter into an agreement with OSSJID, for the regulatory use of Goodwin Reservoir, prior to directly diverting water from the Goodwin Dam Pool for consumptive purposes. The Bureau recognizes the need for such an agreement, provided it is limited to Goodwin Dam, and has been discussing the matter with OSSJID. (T,29:8-15; T,39:10-41:6; T,42:4-18.)

Two of the Bureau's contractors, Stockton East Water District and Central San Joaquin Water Conservation District also recognize the need for an agreement but are opposed to requiring it as a permit condition. This opposition, however, is apparently based on a concern that the agreement would not be limited to the regulatory use of Goodwin Reservoir. (T,131:18-135:5; T,136:8-13.)

Based on the language proposed by OSSJID, the Board concludes that the intent of the requested condition is to limit the agreement to the operation of Goodwin Reservoir. Inasmuch as OSSJID own and operate this regulatory reservoir, and in view of the recognized need for an

operations agreement, the Board concludes that the consumptive use permit should be conditioned to require an executed agreement with OSSJID regarding operation of Goodwin Reservoir prior to direct diversion from the Goodwin Dam Pool.

5.2.2.2 Accretion Flows

The second permit condition requested by OSSJID is as follows:

> "Bureau shall in its releases downstream of New Melones Reservoir and Tulloch Reservoir recognize that the accretion flows downstream of New Melones Reservoir and upstream of Goodwin Dam are waters available to the Joint Districts for satisfaction of their water rights for consumptive and non-consumptive purposes and shall provide for those waters to be released to the Joint Districts to the extent of their rights." (OSSJID,7; T,95:18-23.)

The requested condition arises from a dispute regarding the interpretation of the October 1972 agreement between the Bureau and each of the two Districts. (USBR,8.)

The issue in dispute is whether OSSJID is entitled to receive the total quantity of New Melones inflow plus the accretion flows from tributary streams between New Melones and Goodwin Dam or whether the quantity of water received at Goodwin Dam is limited to the amount of inflow at New Melones Reservoir. OSSJID accepts that the maximum quantity of water which it ever has a right to receive is 654,000 afa, but contends that the Districts should receive the benefit of the accretion flows plus the inflow to New Melones up to their maximum entitlement of 654,000 afa. (T,82:14-22.) The Bureau contends that the quantity of inflow at New Melones is the limit of OSSJID's total