# EXHIBIT A

# PART 2

entitlement at Goodwin Dam, irrespective of the amount of accretion between New Melones Dam and Goodwin Dam. (T,38:1-39:1.)

The agreement itself is ambiguous with respect to the parties' intent. In the "whereas" clause, the agreement states that "the parties wish to agree upon the yield for consumptive purposes of the Districts' water rights on the Stanislaus River". This language could be construed as referring to the Districts' total rights on the Stanislaus River, not just those rights that would be affected by New Melones Reservoir. Yet, as counsel for OID points out, the underlying intent of the agreement was simply to address the effect of New Melones Reservoir on the Districts' rights. Arguably, there is no reason to assume the agreement would address water not controlled by New Melones Reservoir, such as the accretion flows at issue.

The agreement goes on to state that the United States "will deliver each year to the Districts for diversion at Goodwin Diversion Dam the following quantities of water...." The language cited is of no assistance in resolving the ambiguity. Since the water the Districts are to receive is to be measured at Goodwin Dam, it could be concluded that the agreed upon quantity was to include any inflows above Goodwin Dam, including the accretion flows in question. Similarly, it could be argued that if the focus was only on inflow to New Melones, then the agreement would have called for releases of a specified quantity of water from New Melones. On the other hand, the use of the term "deliver" seems to imply that the Bureau has control over the water in question, an inference which would be erroneous with respect to the accretion flows in question.

In summary, the 1972 agreement is inherently ambiguous with respect to accretion flows. No other evidence was presented which is sufficient to resolve the ambiguity of the agreement. In the absence of more certainty regarding the parties intentions, the Board declines the OSSJID request to condition any permit(s) which may be issued to provide that the Districts have a right to the accretion flows plus the inflow to New Melones up to a maximum entitlement of 654,000 afa.

The 1972 agreement was intended to resolve a disagreement regarding the extent of the Districts' rights. Unfortunately, the parties to the agreement now disagree on its interpretation and the wording of the agreement itself is unclear. In the face of such ambiguity, the Board concludes that any permits issued for direct diversion from the Stanislaus River in this proceeding should be specifically subject to all existing water rights as determined by the Stanislaus River Adjudication (San Joaquin County, Superior Court No. 16873) as amended by all applicable supplemental decrees, provided that such adjudicated rights are maintained. If either party desires to obtain a judicial interpretation of the 1972 agreement, it may file an action in the appropriate court for such a determination.

5.2.2.3 Power Generation Rights

The third permit condition requested by OSSJID is as follows:

> "In the operations of New Melones Reservoir and of Tulloch Reservoir, the Bureau shall not, without an operating agreement with the Joint Districts, and pursuant to that agreement's terms, store or delay the receipt of inflow to New Melones or of accretion flows

> to Tulloch Reservoir in such a manner that those flows are not available for power generation by the Joint Districts at Tulloch Reservoir under their power generation rights." (OSSJID,7; T,96:4-5.)

At the outset, we note that the applications before the Board are for direct diversion and not for storage. Therefore, imposing a restriction on the storage of water at New Melones in any permits which may be issued in this proceeding would be ineffectual. The evidence in the record shows a definite need for coordinating the releases from New Melones Reservoir with the OSSJID operations at Tulloch Reservoir. (T,68:6-71:13.) In addition, the October 1972 agreement which was made with respect to the Bureau's original petition for assignment of Applications 14858 and 14859 states that the parties intend to negotiate an agreement on the use of water for power generation at the Tulloch Power Plant under the District's rights. Unfortunately, attempts to negotiate a coordinated operating agreement for New Melones and Tulloch Reservoirs have been unsuccessful. (T,71:14-72:1.)

One of the major issues in dispute concerning the effect of New Melones Reservoir on power generation at Tulloch Reservoir is the lost power generation experienced by OSSJID during the filling of New Melones. (T,96-08-97:8.) The effect of the initial filling of New Melones on OSSJID power revenues has already occurred. The filling of the reservoir was undertaken pursuant to permits authorizing the storage of water which are not presently before the Board. Therefore, the Board does not believe it is appropriate to condition the direct diversion permits upon the Bureau and OSSJID reaching an agreement with respect to lost power revenues.

There will be ongoing operational problems to consider in order to protect OSSJID's prior rights for power generation. Consequently, the Board concludes that any direct diversion permits granted should be conditioned to require the Bureau to conclude an operations agreement with OSSJID governing operations at New Melones and Tulloch Reservoirs. If no agreement can be reached within a reasonable period of time, the Bureau or either of the Districts should have the right to petition the Board to prescribe operating criteria governing releases from New Melones Reservoir which will protect the prior rights of OSSJID at Tulloch Reservoir.

## 6.0 CONTRACTS FOR CONSUMPTIVE YIELD

In December 1983, Central San Joaquin Water Conservation District and Stockton East Water District entered into contracts with the Bureau for 49,000 afa on a firm basis and 106,000 afa on an interim basis. In addition, contracts for 5,000 afa and 400 afa have been negotiated with Tuolumne Regional Water District and Calaveras County Water District, respectively. Calaveras County Water District is reluctant to execute the proposed contract, however, until the Bureau receives direct diversion rights from the Stanislaus River.

## 7.0 NEED FOR DIRECT DIVERSION RIGHTS

In the operation of a large reservoir project such as New Melones, where there is inflow during periods that water is being diverted to beneficial uses, direct diversion rights are usually essential to

maximize the yield of the project. If the project operator could divert water only pursuant to storage rights, then the use of water would be restricted to when water could be withdrawn from storage. Anytime that inflow to the reservoir exceeds the bypass flow requirements, the diversion of water to beneficial use would be viewed as a direct diversion of water rather than a withdrawal from storage. In order to divert and use water during periods of high inflow to the reservoir, direct diversion rights are needed.

For the February 1983 hearing, which resulted in Board Order No. WR 83-3, the Bureau submitted a study demonstrating operation of New Melones without direct diversion rights. In this study all deliveries to project contractors were made from storage. The resulting yield from releases under storage rights only was 33,400 afa or about 20 percent of the estimated consumptive yield under both storage and direct diversion rights. (USBR,28,12.; T,10:23-11:9; T,47:13-48:1.)

The Board concludes that direct diversion rights from the Stanislaus River are necessary to provide operational flexibility and to maximize the beneficial use of water from the New Melones project particularly if water is to be supplied on a year round basis for municipal, domestic and industrial uses.

No evidence or testimony was provided in opposition to the applicant's exercise of direct diversion rights, per se, except for the concern of OSSJID that, without an operating agreement, these rights would further complicate regulation of flows at Goodwin Dam. The subject of regulation of flows at Goodwin Dam was addressed in Section 5.2.2.1 above.

## 8.0 AVAILABILITY OF UNAPPROPRIATED WATER

### 8.1 Decision 1422

In Decision 1422 the Board found that there was unappropriated water available in the Stanislaus River watershed to satisfy the then proposed New Melones project which included both storage and direct diversion. The season of availability, however, was limited to the period November 1 through June 30. No evidence or testimony was offered to challenge these findings.

In a report (Bureau Exhibit 20 from the 1972 hearing) which identified the demand for Stanislaus River water, allowances were made for active and dormant riparian rights, adjudicated rights, appropriative rights and nearly 9,000 afa of undefined "other rights". The appropriative right demand included allowances for all applications on file with the Board as of 1972, even though some had a lesser priority than Application 14858. (Staff, 8, New Melones Engineering Staff Analysis, February 16, 1973.)

The number of filings on the Stanislaus River since 1972 were found to be relatively insignificant by the Bureau, but in any event such applications would normally be considered junior in priority to Application 14858.

### 8.2 Amount and Season Requested for Consumptive Use and Other Non-Power Purposes

In the petition for assignment of State Filing 14858 and Applications 27320 and 27321, the Bureau has requested an appropriation totaling 19,850 cfs, not to exceed 3 million afa, with a year round diversion season for irrigation, domestic, municipal, industrial and recreation

purposes, water quality control and fish and wildlife enhancement. The annual amount requested exceeds available supply, by the Bureau's own determination, and the diversion season is not consistent with Decision 1422.

The only reason offered by the Bureau for filing the applications as they did was to be in accordance with the way the Bureau originally filed for direct diversion in 1960. During cross-examination, however, the Bureau stated they would be willing to accept a diversion season consistent with the findings of Decision 1422 and that a direct diversion rate of 2,250 cfs should be adequate for the above purposes. (USBR,28,3; T,43:24-44:25.) In addition, since the issuance of Decision 1594, the Board has included Standard Permit Term 91 in permits for direct diversion of one cfs or more within the Sacramento-San Joaquin watershed. Thus, in some years, the November through June season of diversion could be further restricted depending on the availability of water in the particular year.

An annual limitation on direct diversion of 1,000,000 af, as requested under Application 14858, would be consistent with a diversion rate of 2,250 cfs for an 8-month period. In addition, an annual limitation of this amount offers the flexibility of using direct diversion in wet to very wet years in amounts that would exceed the normal year yield of the project. At the time of licensing, the annual limitation will be based on the recorded maximum annual use which may be less than that authorized under the permit.

8.3 Amount and Season Requested for Power Purposes

In Application 27319, the Bureau has requested an appropriation of 4,000 cfs with a year round diversion season for the purpose of power generation. Under Permit 16598 (State Filed Application 14859), the Bureau has direct diversion rights for 6,000 cfs for power generation at the New Melones power plant. The capacity of the plant, in terms of rate of flow, is 10,000 cfs. Application 27319 is for the difference between the power plant capacity and existing rights. A substantial portion of the water that would be diverted through the power plant is water that the Bureau is obligated to supply downstream of New Melones for satisfaction of prior rights, fishery purposes and water quality control. (Staff,7,WR No. 83-3.)

8.4 Conclusions Regarding Availability of Water and Limitations on Rate and Quantity of Diversions

Based on Sections 8.1 through 8.3, the Board concludes that unappropriated water is available to serve the direct diversion needs of the New Melones project subject to the following limitations on the diversion of water for any purposes other than the power production:

1. The season of direct diversion should conform to the availability of unappropriated water which is normally the months of November through June. This season may be further restricted in years when it is necessary to implement Standard Permit Term 91. (Condition 17 of Section 11.1.)

2. The rate of direct diversion should be reduced from 19,850 cfs to 2,250 cfs;

3. The maximum amount to be diverted should be limited to 1,000,000 afa;

4. Applications 27320 and 27321 are not needed and should be denied as the recommended rate of diversion and annual amount can be met by Application 14858.

9.0 ASSIGNMENT OF STATE APPLICATION 14858

The Board may assign applications filed in accordance with Water Code Section 10500 and held by the Board when the assignment is for the purpose of development not in conflict with a general or coordinated plan looking toward the development, utilization, or conservation of the water resources of the State or with water quality objectives established pursuant to law. No such assignment may be made that will deprive the county in which the water covered by the application originates, or any such water necessary for the development of the county. (Water Code Sections 10504 and 10505.)

In Decision 1422, the Board determined that the New Melones project was not in conflict with any such general plan or with water quality objectives and assigned the storage portion of Application 14858 to the Bureau. A partial assignment of the direct diversion portion of the application should be subject, in conformity with Section 10505 of the Water Code, to any and all rights of any county in which the water sought to be appropriated originates to the extent that any such water may be necessary for the development of such county. As so conditioned, the assignment will not deprive any such county of any water necessary for its development. Any additional permit issued pursuant to Application 14858 should contain a similar term.

The counties of origin are further protected by Public Law 87-874. It provides that the needs of the Stanislaus River basin have priority in allocating water developed by the New Melones Project.

10.0 COMPLIANCE WITH THE CALIFORNIA ENVIRONMENTAL QUALITY ACT

Issuance of permits for the direct diversion of water is among a series of approvals needed for the eventual overall development of the New Melones project. Previous environmental documents have been prepared that describe the project and its impacts to the extent possible at the time of their publication. In accordance with the "staged EIR" approach provided for in Section 15167 of the CEQA Guidelines (Title 14, California Administrative Code, Section 15000 et seq.), the Board circulated a supplement titled "Draft Supplement to Previous Environmental Documents for the Stanislaus River Direct Diversion Applications" on April 28, 1987. The document focused on water quality and fisheries issues.

The Board received four letters commenting on the Draft Supplement. A "Final Supplement to Previous Environmental Documents for the Stanislaus River Direct Diversion Applications" (December 1987) was prepared which responds to all comments received on the Draft Supplement. With respect to the comment of Calaveras County concerning the need to analyze the specific land use impacts of the proposed Farmington Canal, the Final Supplement explains that CEQA allows a segmented or "staged" approach to environmental documentation

for large capital projects such as the New Melones Project. (Title 14, California Administrative Code, Section 15167.) The impacts of the proposed Farmington Canal water delivery facilities will be addressed in the environmental documents for that project. The Final Supplement has been reviewed and considered by the Board prior to Board action on the pending applications. The Board has certified that the Final Supplement complies with the California Environmental Quality Act.

11.0 CONCLUSION

Based on the foregoing findings, the Board concludes as follows:

a. The petition for assignment of the direct diversion portion of Application 14858 should be approved in part and a permit should be issued subject to the terms and conditions specified in the Order which follows.

b. A permit should be issued on Application 27319 subject to the terms and conditions specified in the Order which follows.

c. The purposes of use proposed by the petition for assignment of Application 14858 and Application 27319 are beneficial.

d. Applications 27320 and 27321 are not necessary for the direct diversion of water proposed by the Bureau and should be denied.

ORDER

IT IS HEREBY ORDERED that the petition for assignment of the direct diversion portion of Application 14858 be approved in part and a permit be issued to the

petitioner subject to prior rights and subject to the terms and conditions specified below.

IT IS FURTHER ORDERED that Application 27319 be approved and a permit be issued subject to prior rights and subject to the terms and conditions specified below.

IT IS FURTHER ORDERED that Applications 27320 and 27321 be denied.

Application 14858

In addition to standard permit terms 6 and 10 through 13,[2] the permit issued on Application 14858 shall include the following terms:

1. The water appropriated shall be limited to the quantity which can be beneficially used and shall not exceed 2,250 cubic feet per second to be diverted from November 1 of each year through June 30 of the succeeding year. The maximum amount diverted under this permit shall not exceed 1,000,000 acre-feet per annum.

2. Complete application of the water to the authorized use shall be made by December 31, 1997.

3. Rights under this permit are, and shall be, specifically subject to existing rights determined by the Stanislaus River Adjudication, Superior Court, San Joaquin County dated November 14, 1929, Action No. 16873 with supplemental decrees dated February 24, 1930; March 8, 1934; May 8, 1935; and November 29, 1960, insofar as said adjudicated rights are maintained.

---

2 A copy of the Board's standard permit terms is available upon request.

4. This permit shall be subject to appropriation by storage upstream from New Melones Reservoir for stockwatering and recreational purposes, provided the individual capacities of reservoirs for such purposes do not exeed 10 acre-feet and the reservoirs are kept free of phreatophytes.

5. Permittee shall comply with the following provisions which are derived from the agreement between permittee and the Calaveras County Water District (CCWD) executed on July 31, 1972 and filed with the State Water Resoures Control Board:

   a. This permit is specifically subject to the prior rights of the CCWD under appropriations issued pursuant to Applications 11792, 12910, 12911, 12912, 13091, 13092, 13093 and is also subject to the priority of state filed Application 5648 insofar as it pertains to the Stanislaus River, the North Fork of the Stanislaus River and its tributaries for diversion into Calaveras County.

   b. The rights acquired under this permit shall be junior to the rights acquired under permits issued pursuant to Applications 18727, 18728, 19148 and 19149 of the CCWD.

   c. Within the limitations of Federal Reclamation Laws, permittee shall, upon request, negotiate a contract(s) primarily with the CCWD or secondarily, with any appropriate governmental agency, for the sale of water authorized for diversion under this permit that can be economically supplied for reasonable and beneficial uses within Calaveras County.

Inclusion in this permit of certain provisions of this agreement shall not be construed as disapproval of other provisions of the agreement or as affecting the enforceability, as between the parties, of such other provisions insofar as they are not inconsistent with the terms of this permit.

6. Permittee shall comply with the following provisions which are derived from the agreement between the permittee and the Tuolumne Regional Water District (TRWD) executed on November 29, 1972 and filed with the State Water Resources Control Board:

   a. Any person or entity, including TRWD, may divert and/or impound water from the Stanislaus River or any tributary thereto for reasonable and beneficial use within the TRWD service area and the right to do so, whenever initiated, shall be prior and superior to the rights authorized under this permit.

      Use within TRWD service area may be supplied in part by water from the Tuolumne River Basin and to that extent the need for Stanislaus River water shall be decreased correspondingly.

   b. This permit shall be subordinate and junior to any present or future appropriation or use of water from the Stanislaus River or any of its tributaries for the generation of hydroelectric power which will aid in financing and the construction of any works to provide water for beneficial uses within TRWD. Such present or future appropriation or use of water shall not include water diverted out of the Stanislaus River watershed solely for the production of power unless such water is

returned to the Stanislaus River above New Melones Dam except to the extent that the right to do so exists as of November 29, 1972 in TRWD or any other entity.

c. In the event TRWD or any use within TRWD should desire to purchase water authorized for diversion under this permit as replacement water in order to satisfy other prior rights downstream from New Melones Dam, or for other reasonable and beneficial purposes, permittee shall sell such water to such user or TRWD at prices not exceeding those applicable for such water to other New Melones Unit customers for the use to which TRWD's water will be put.

Inclusion in this permit of certain provisions of this agreement shall not be construed as disapproval of other provisions of the agreement or as affecting the enforceability, as between the parties, of such other provisions insofar as they are not inconsistent with the terms of this permit.

7. Permittee shall negotiate an agreement with Oakdale and South San Joaquin Irrigation Districts governing diversion and release of water at New Melones and Tulloch Reservoirs for power generation purposes. If no agreement is reached within two years from the date of this permit, then either the permittee or Oakdale and South San Joaquin Irrigation Districts may petition the State Water Resources Control Board to specify terms and conditions which will protect the prior water rights for power generation of the Districts at Tulloch Reservoir.

8. This permit shall not be construed as conferring upon the permittee right of access to any points of diversion downstream of New Melones Dam.

9. No water shall be diverted under this permit from the Goodwin Dam Pool (point of diversion 2) until an agreement(s) has been executed between the Oakdale and South San Joaquin Irrigation Districts and the permittee's contractor(s) and/or the permittee providing for the joint use of Goodwin Reservoir.

10. No diversion under this permit from point of diversion 4, shall be made until a description of the specific location of the particular point of diversion and statement of the maximum rate of diversion and quantity of water to be diverted is filed with the State Water Resources Control Board.

11. The equivalent of the continuous flow allowance for any 30-day period may be diverted in a shorter time, provided there be no interference with other rights and instream beneficial uses; and provided further that all terms or conditions protecting instream beneficial uses be observed.

12. For the protection of water quality, no consumptive use diversion is authorized under this permit when the mean monthly total of dissolved solids concentration in the San Joaquin River at Vernalis is greater than 500 parts per million or the dissolved oxygen concentration in the Stanislaus River is less than that specified in Water Quality Control Plan, San Joaquin River Basin 5C, State Water Resources Control Board, April 1975.

In the event that the water quality control plan is amended or superseded the foregoing water quality objectives shall be modified to conform to then current criteria.

13. Permittee shall file with the State Water Resources Control Board an annual report showing a daily record of total dissolved solids at Vernalis, and a daily record of minimum dissolved oxygen level for the day at Ripon or at an alternate location approved by the Board. The record of total dissolved solids and minimum dissolved oxygen levels shall be submitted as a specific report for the New Melones Project.

14. For the protection of fish and wildlife, permittee shall, in conjunction with the permits issued pursuant to Applications 14858A, 14859, 19303, and 19304, provide such interim instream flows and shall conduct such instream flow and fisheries studies as are required by the June 1987 "Agreement Between California Department of Fish and Game and the United States Department of the Interior, Bureau of Reclamation Regarding Interim Instream Flow and Fishery Studies in the Stanislaus River below New Melones Reservoir" on file with the State Water Resources Control Board.

15. The State Water Resources Control Board reserves jurisdiction over this permit for the purpose of revising instream flow requirements for water quality objectives and fishery purposes and for establishing dry year criteria pursuant to studies to be conducted by the permittee and other parties in an effort to better define water needs.

16. The State Water Resources Control Board reserves jurisdiction over this permit to change the season of diversion to conform to later findings of the Board concerning availability of water and the protection of beneficial uses of water in the Sacramento-San Joaquin Delta and San Francisco Bay. Any action to change the authorized season of diversion will be taken only after notice to interested parties and opportunity for hearing.

17. This permit is subject to prior rights. Permittee is put on notice that during some years water will not be available for the diversion during portions or all of the season authorized herein. The annual variations in demands and hydrologic conditions in the permit are such that in any year of water scarcity the season of diversion authorized herein may be reduced or completely eliminated on order of this Board made after notice to interested parties and opportunity for hearing.

18. No diversion is authorized by this permit when satisfaction of inbasin entitlements requires releae of supplemental Project water by the Central Valley Project or the State Water Project.

a. Inbasin entitlements are defined as all rights to divert water from streams tributary to the Sacramento-San Joaquin Delta or the Delta for use within the respective basins of origin or the legal Delta, unavoidable natural requirements for riparian habitat and conveyance losses, and flows required by the State Water Resources Control Board for maintenance of water quality and fish and wildlife. Export diversions and Project carriage water are specifically excluded from the definition of inbasin entitlements.

b. Supplemental Project water is defined as water imported to the basin by the projects, and water released from Project storage, which is in

excess of export diversions, Project carriage water, and Project inbasin deliveries.

The State Water Resources Control Board shall notify the permittee of curtailment of diversion under this term after it finds that supplemental Project water has been released or will be released. The Board will advise the permittee of the probability of imminent curtailment of diversion as far in advance as practicable based on anticipated requirements for supplemental Project water provided by the Project operators.

19. This permit does not authorize the use of any water outside the counties of origin which is necessary for the development of the counties.

20. Before making any change in the project determined by the State Water Resources Control Board to be substantial, permittee shall submit such change to the Board for its approval in compliance with Water Code Section 10504.5(a).

21. Prior to any diversion of water for municipal, domestic or irrigation purposes, Permittee shall consult with the Chief of the Division of Water Rights and develop a Water Management Program in conformance with State Water Resources Control Board requirements as appropriate. The proposed program shall be presented to the Board for approval. Board approval of the program shall also fulfill the requirements of Term 26 of Permits 16597 (Application 14858A) and 16600 (Application 19304).

All cost-effective measures identified in the water management program shall be implemented in accordance with the schedule for implementation found therein.

Application 27319

In addition to standard permit terms 6 and 10 through 13, the permit issued on Application 27319 shall include the following terms:

1. The water appropriated shall be limited to the quantity which can be beneficially used and shall not exceed 4,000 cubic feet per second to be diverted from January 1 to December 31 of each year.

2. Same as Application 14858.

3. Same as Application 14858.

4. Same as Application 14858.

5. Same as Application 14858 except delete paragraph c.

6. Same as Application 14858 except delete paragraph c.

7. Same as Application 14858.

8. Same as Condition 13 of Application 14858.

9. Same as Condition 14 of Application 14858.

10. Same as Condition 15 of Application 14858.

11. Water diverted under this permit is for nonconsumptive uses and is to be released to the Stanislaus River within the NE1/4 of NE1/4 of Section 15, T1N, R13E, MDB&M (New Melones Power Plant).

CERTIFICATION

The undersigned, Administrative Assistant to the Board, does hereby certify that the foregoing is a full, true, and correct copy of decision duly and regularly adopted at a meeting of the State Water Resources Control Board held on January 21, 1988.

AYE: W. Don Maughan
Eliseo M. Samaniego
Danny Walsh

NO: None

ABSENT: Darlene E. Ruiz
Edwin H. Finster

ABSTAIN: None

Maureen Marche
Administrative Assistant to the Board