# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---oOo---

| | |
|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, COUNTY OF SAN JOAQUIN, CITY OF STOCKTON, and CALIFORNIA WATER SERVICE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES,<br><br>Defendants. | Case No. 04-541L |

---oOo---

DEPOSITION OF CHESTER BOWLING

Pursuant to Rule 30(b)(6) Deposition Notice

Wednesday, July 13, 2005

Taken at the location of:
LAW OFFICES OF HERUM, CRABTREE & BROWN
2991 W. March Lane, Suite B-100
Stockton, California 95207

Reported by Antonia Kirk, CSR #3430

09:15:30 today.

09:15:31 Just for the record, we are continuing
09:15:34 today with a Rule 30(b)(6) deposition notice issued
09:15:38 to the United States by the plaintiffs. It's
09:15:42 previously marked as Exhibit 210. When we began the
09:15:46 30(b)(6) deposition, the 30(b)(6) deposition began
09:15:53 with Peggy Manza being designated by the United
09:15:56 States as representative witness for Topics 1
09:15:57 through 5 in Exhibit 210.

09:16:00 That deposition occurred the first week in
09:16:02 June, although, I don't remember the specific date.

09:16:05 So we are continuing that deposition
09:16:07 today, and I understand that you have been
09:16:09 designated to testify on behalf of the United States
09:16:11 as to some of the topics in that notice, so I'd like
09:16:16 to start out by giving you a copy of the notice,
09:16:18 which was Exhibit 210 and having you walk through
09:16:21 with me which topics you are being designated to
09:16:25 testify to today.

09:16:38 A. My understanding is that I have been
09:16:41 designated to address Topics 14, 15, 17 and 18.

09:16:59 Q. Have you seen this notice before?

09:17:02 A. Yes, I have.

09:17:04 Q. And since the time of your last deposition
09:17:07 in this case, I understand officially retired?

09:17:10 A. I did retire and I have come back working for the government as an intermittent rehired annuitant.

09:17:22 Q. And so what is your position with the government? What do you do?

09:17:26 A. My position right now is -- is doing research to be able to help answer some of the questions on some of the topics.

09:17:37 Q. In this case?

09:17:38 A. In this case.

09:17:39 Q. Are you working on anything other than this case?

09:17:41 A. No.

09:17:49 Q. Are you getting paid by the hour?

09:17:54 A. I am getting paid by the hour for -- yes, for the hours I work. It's the difference between the retirement annuity and my salary.

09:18:07 Q. Okay.

09:18:08 MR. SIEGEL: Ms. Spaletta, I would just like to note that Mr. Bowling did correctly state that he is being produced for Topics 14, 15, 17 and 18.

09:18:20 I would like to indicate that for topics 14 and 15 to the extent that plaintiff's counsel wishes to go into questions regarding electronic

In the United States Court of Federal Claims

-----------------------------x

Stockton East Water District, Central San Joaquin Water Conservation District, et al :

: NO. 04-541 L

v. :

:

United States of America :

-----------------------------x

August 30, 2005

DEPOSITION OF:

Roger Patterson,

a witness, called by counsel pursuant to notice, commencing at 9:00 a.m., which was taken at Marzulla and Marzulla, 1350 Connecticut Ave., N.W., Washington, D.C.

Page 38

Q. Do what you can.
A. Kirk Rodgers, Wayne White, John Davis, John Renning, Roger Guinea, Peggy Manza, Derik Hilts, one page out of -- Mike Delamore, Chet Bowling. I think that's all that I looked at portions of.
Q. If you think of anyone else, please let me know.
So you looked at the contracts --
A. I look at one contract.
Q. Stockton East or Central?
A. Central.
Q. You looked at NOAA fisheries document that you provided to me today, is that correct?
A. Yes.
Q. You looked at the law review article from the University of Colorado?
A. Yes.
Q. And portions of depositions?
A. Yes.
Q. Anything else that you looked at in

Page 39

advance of this deposition?
A. No.
Q. Did you talk to anyone about this deposition outside of your counsel?
A. Other than legal counsel, I spoke very briefly with John Davis.
Q. What did you talk about?
A. It was really short.
MR. SIEGEL: I just want to caution the witness to the extent that there was an attorney either from the Department of Justice or from the Solicitor's Office who participated in those discussions and provided the witness here with legal advice, communications between counsel are privileged.
BY MS. PATCHING:
Q. But not your communication with John Davis.
A. When I met with John Davis, Jim Turner from, the from the Solicitor's Office was also at the meeting.

Page 40

Q. Excluding what Jim Turner said to you, what did you talk about with John Davis?
MR. SIEGEL: To the extent that any of the communications with Mr. Davis took place in the presence of Mr. Turner when Mr. Turner was participating in the conversation, those communications are privileged and should not be revealed.
A. Nothing really specific.
It was more I had been provided copies from their office, basically by John or John directed somebody to provide copies of this information that had been produced that I had reviewed and I didn't want to drag all of that along with me so I asked John if he had extra copies of that stuff around so I could take a look at some of it, and checked on my status with the Bureau because I am an employee as a retired annuitant, raised that with John.
BY MS. PATCHING:
Q. Can you explain that to me?
A. It's not that easy to explain. No, it's

Page 41

actually not that complicated.
The federal government many times, after people have retired, asks them to come back to help out on certain things and they reemploy you as what's called a rehired annuitant which essentially says it's an employee that was drawing an annuity and they come back on the rolls as an employee, that kind of classification to it.
Q. Have you been hired as such an individual?
A. I am in the employ as a retired annuitant, yes.
Q. Of the Bureau?
A. Of the Bureau.
Q. Out of the mid-Pacific region?
A. Out of the mid-Pacific.
Q. When did this start?
A. July 25.
Q. What will you be doing for the mid-Pacific region?
A. I don't know. I don't know. I met with Kirk last week when I was there and John Davis and

Page 42

we talked about some ideas but that's as far as it went.
Q. So you've been hired as of July 25 but you haven't completed any work as of yet?
A. No.
Q. Have you received a paycheck?
A. No.
Q. When do you expect to begin work for them?
A. I don't know.
Q. When did you have this meeting with John Davis?
A. Last Wednesday I was in Sacramento and I went by the Bureau office for a while.
Q. Is that the same time you reviewed all the documents?
A. I've been reviewing the documents off and on for the last probably two weeks.
Q. Have you had questions that have arisen that you have talked to legal counsel about, reading the documents?
A. No, not really questions. I have spoken

Page 43

with legal counsel about some of the issues, some of the information that I reviewed. I don't know if there were any questions.
Q. Have they provided you their theory of the case?
MR. SIEGEL: Objection.
I caution the witness that communications between counsel both from the Department of Justice and the Solicitor's Office are privileged, should not be revealed.
BY MS. PATCHING:
Q. You may answer the question.
A. I don't think so.
Q. Going back to the 1983 contracts with central. San Joaquin and Stockton east and its relationship to the 1980 special report, were you aware that the special report which is exhibit seven defined in basin and out of basin?
A. I was not aware of that.
Q. Are you aware of it now?
A. Only because I saw reference to that in

Page 44

the Central San Joaquin contract when I reviewed it recently.
Q. What is your understanding of those terms?
MR. SIEGEL: Objection to the extent it calls for a legal conclusion of the witness.
A. I'm not sure I have any specific understanding other than the basin was tied to -- it was mentioned in the contract. There's no definition, that I recall, in the contract.
BY MS. PATCHING:
Q. Did you need to take a break or anything?
A. I'm fine.
Q. Why don't we talk about CVPIA?
A. Central Valley Project Improvement Act.
Q. Can you tell me about your involvement in the passage and enactment of CVPIA?
A. I didn't have much involvement in the passage of it. Obviously, that was driven by Congress. It passed, as I recall, in late 1992.
I had been in California in the regional director's position for I guess a little over a year

Page 45

at that point but certain responsibilities, certainly the Bureau of Reclamation responsibilities for implementing the act fell to me as part of my position and including interpreting what all was required by the act and essentially organizing the staff and others to begin the implementation actions associated with the act.
The Fish and Wildlife Service had some responsibilities under CVPIA that they were dealing with as well.
It was a major piece of legislation, certainly for the Bureau of Reclamation and for the Central Valley Project, it was a very sizable effort to unravel what was intended and begin implementation of the act.
Q. You said it was implemented about a year after you started at the Bureau. Did you kind of have a heads up that it was coming down?
A. I knew it was coming down. I kept very close tabs on what was going on in Congress relative to passage. I knew that it was coming.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---o0o---

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, COUNTY OF SAN JOAQUIN, CITY OF STOCKTON, and CALIFORNIA WATER SERVICE COMPANY, Plaintiff, | ) | |
| vs. | ) | No. 04-541L |
| UNITED STATES, Defendants. | ) | |

---o0o---

DEPOSITION OF LOWELL PLOSS

Tuesday, June 14, 2005

Taken at the location of:

LAW OFFICES OF HERUM, CRABTREE & BROWN

2991 W March Lane, Suite B-100

Stockton, California 95207

---o0o---

Reported by Mary Jackson, CSR #8688

Q. And what was your position in 1985?
A. I was the project superintendent in the Willows field office.
Q. And what was your next position with Bureau of Reclamation?
A. I stayed in Willows in about 1990 -- about 1990 I was retitled as the construction engineer for the Mid-Pacific Region still located in Willows.
Q. And your next position?
A. 1993 I relocated to Sacramento and took over the position as the operations manager for the Central Valley Project.
Q. And how long did you remain in that position?
A. I remained in that position until 2000. At that time I became deputy regional director.
Q. How long did you remain in the position of deputy regional director?
A. Until I retired in February 2002.
Q. Why did you decide to retire in February 2002?
A. I was eligible to retire, and other opportunities came available at that time, which interested me.