**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOCKTON EAST WATER DISTRICT, et al., Plaintiffs, v. UNITED STATES, Defendant. | No. 04-541 L<br>Judge Christine Odell Cook Miller |

**PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EXPERT REPORT OF PEGGY MANZA**

Plaintiffs, Stockton East Water District, Central San Joaquin Water Conservation District, County of San Joaquin, City of Stockton, and California Water Service Company, hereby move this Court for an order *in limine* prohibiting Defendant from offering in evidence the expert testimony or expert report of Peggy Manza.

## ARGUMENT

### I. Motions *in Limine* Are Favored by This Court Because They Filter out Irrelevant Evidence and Simplify Issues for Trial.

A motion *in limine* is a favored method of this Court as a means of simplifying and streamlining issues for trial. *See, e.g., White Mountain Apache Tribe v. United States*, 10 Cl. Ct. 115, 116 (1986); *Baskett v. United States*, 2 Cl. Ct. 356, 359 (1983), *aff'd mem.*, 790 F.2d 93 (Fed. Cir. 1986) (citing 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE and PROCEDURE § 1525, pp. 586-89 (1971)).

The basic purpose of a motion *in limine* is "to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion

enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial." *Inslaw, Inc. v. United States*, 35 Fed. Cl. 63, 65-66 (1996) (quoting *Basket v. United States*, 2 Cl. Ct. 356, 367-68 (1983), *aff'd mem.*, 790 F.2d 93 (Fed. Cir. 1986).

**II. Ms. Manza's Testimony Is Inadmissible Because It Is Irrelevant and Does Not Relate to Any Legitimate Issue in This Case.**

Federal Rule of Evidence 702 provides that expert testimony is admissible only if the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. If expert testimony does not relate to any issue in the case, then it is inadmissible. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Expert testimony which does not relate to any issue in the case is not relevant and . . . non-helpful.") (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence 702-18 (1988)); *see also United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.")

Plaintiffs have designated Avry Dotan, a highly qualified hydrologist with more than twenty years of experience with San Joaquin River water supplies (including the Stanislaus River), as their expert witness on the issues of impossibility and force majeure. Mr. Dotan provided an expert report in compliance with RCFC 26(a)(2)(B), which is attached hereto as Exhibit A.

In an effort to rebut Mr. Dotan's expert opinion, Defendant has proffered Ms. Manza and supplied an expert rebuttal report (that fails to satisfy the requirements of RCFC 26(a)(2)(B)), which is attached hereto as Exhibit B. Defendant proffers Ms. Manza's testimony on the same

two issues on which Mr. Dotan will testify: (1) whether enactment of CVPIA made performance of the contracts impossible (sovereign act defense); and (2) whether in every year since 1993 a shortage has occurred due to drought or other causes beyond the control of the United States (*force majeure* defense). A review of her expert report and deposition testimony, however, demonstrates that she offers no relevant expert opinion on either of these two issues.

**A. Ms. Manza's Expert Rebuttal Report Does not Comply With RCFC 26(a)(2)(B) and, therefore, Her Report and Testimony Should not be Allowed into Evidence.**

Pursuant to RCFC 26(a)(2)(B) an expert must provide a "written report" that contains, *inter alia*, "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data and other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." RCFC 26(a)(2)(B). Although it arguably states an opinion (that Mr. Dotan's conclusion is "fatally flawed"), Ms. Manza's expert report does not state the reasons for her opinion and does not identify any data or other information considered in forming her opinions. When, in an effort to determine what data Ms. Manza may have relied upon, Plaintiffs requested her to bring "all documents, files, and other tangible things, supporting the opinions expressed or underlying her Rebuttal Expert Report dated August 25, 2006, including but not limited to all items: [relating to various quoted opinions from her report]", Ex. C, Ms. Manza produced only a prior draft of her expert report and a one page printout from a 1996 model run that did not relate in any way to her report or her opinion.

Without a rationale on which she can reach an expert opinion, and without data to support that opinion, Ms. Manza's proffered expert report falls short of the rule's requirements. The deficiencies in Ms. Manza's expert report warrant exclusion from trial of that report and testimony related to the opinions expressed in that report. The appropriate sanction for any

party's failure to provide an expert witness report that complies with RCFC 26(a) is to bar that witness from providing the expert testimony at trial and admission of information contained in that report. *See* RCFC 37(c)(1) ("a party that without substantial justification fails to disclose information required by RCFC 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial . . . any witness or information not disclosed."); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.")

**B. Ms. Manza's Testimony Is Irrelevant Because She Offers No Opinion on Whether or Not the CVPIA Made Performance of Plaintiffs' Contracts Impossible.**

This Court has ruled that at trial, Defendant must prove that passage of CVPIA rendered performance of its water supply contracts impossible: "[i]n order to take advantage of the sovereign acts doctrine, defendant has the burden of proving that performance in the face of the supposed sovereign act—in this case, the CVPIA—was impossible." *Stockton East Water Dist. v. United States*, 70 Fed. Cl. 515, 530 (2006).

To be relevant on the impossibility issue, Ms. Manza's testimony would have to opine that, by reason of the passage of CVPIA, it was impossible for Reclamation to furnish water to Plaintiffs in accordance with their contracts. Surprisingly, however, she opines to the contrary, admitting that Plaintiffs' expert, Mr. Dotan, is in fact correct in stating that it was physically possible for Reclamation to furnish 155,000 acre-feet per year to Plaintiffs in each year under examination (1993-2004). Ms. Manza's report states:

> The basic conclusion of the Dotan Report (page 8) is, "I have concluded that, after making all releases and diversions from New Melones that were actually historically made, it was physically possible for the USBR to deliver 155,000 acre-feet of water to Plaintiffs each year."

> . . . Based on examination of historical releases and hydrology for the period 1993 through 2004, it may have been physically possible to make additional releases of up to 155,000 acre-feet each year and not completely empty the reservoir.

Ex. A at 4 (Expert Rebuttal Report of Peggy Manza, Hydraulic Engineer) (hereinafter "Manza Report").

Although Ms. Manza's report goes on to quibble with some aspects of Mr. Dotan's methodology, she never testifies that his conclusion is incorrect, nor that the passage of CVPIA made it either impossible or even impracticable for Defendant to furnish water to Plaintiffs in compliance with their contracts. In fact, she testified at deposition that she could not render an opinion as to whether more water would have been available for Plaintiffs if CVPIA had not been enacted:

> Q. In your operation of the New Melones Project, if you had not had to make releases for CVPIA purposes, would there have been additional water available to provide to the contractors?
>
> [Discussion between counsel.]
>
> A. That would be impossible to answer because the IPO takes the CVPIA into account as an integral part of it. If CVPIA had not come into being, the IPO either wouldn't exist or would have a different format than what it does now.

Manza Dep. Trans. (April 5, 2005) at 49 (attached as Ex. D).

Ms. Manza's testimony purports to be rebuttal to the testimony of Mr. Dotan. Mr. Dotan's testimony, as he states in his expert report, will be that it was, in fact, possible for Defendant to furnish to Plaintiffs the maximum of 155,000 acre-feet per year under the contract in every year from 1993 through 2004. Mr. Dotan's report states:

> I have concluded that the USBR had sufficient water in New Melones to serve the Plaintiffs with 155,000 acre-feet each year in the years 1993 through 2004. . . .

Ex. A at 31. Because Ms. Manza does not disagree with Mr. Dotan's conclusion, her "expert rebuttal" testimony is irrelevant and inadmissible. And, since she testified that in her opinion it

is impossible to determine whether more New Melones water would have been available to Plaintiffs in the absence of CVPIA, she has no testimony bearing on the issue of impossibility resulting from passage of CVPIA.

**C. Ms. Manza's Testimony Is Irrelevant Because She Offers No Opinion on Whether or not a Water Supply Shortage Resulted from Drought or Other Causes Beyond the Control of the United States.**

The second issue on which Defendant proffers Ms. Manza's expert opinion is the *force majeure* defense based on Article 9 of the contracts. To prevail on that defense, Defendant must demonstrate that a shortage due to drought or other causes beyond the control of the United States occurred in each and every year between 1993 and 2004. In its April 10 order, this Court stated:

> Perhaps more important is defendant's allegation that the Government's liability is excused under Article 9(a) because the CVPIA, passed by Congress, was a circumstance "beyond the control of the United States." Again, Article 9(a) provides, in pertinent part:
>
> > [T]he United States will use all reasonable means to guard against a condition of shortage in the quantity of water available to the Contractor pursuant to this contract. Nevertheless, if a shortage does occur during any year because of drought, or other causes which, in the opinion of the Contracting Officer, are beyond the control of the United States, no liability shall [accrue] against the United States . . . .

*Stockton East Water Dist. v. United States*, 70 Fed. Cl. 515, 534 (2006) (quoting Stockton East contract, art. 9(a)).

Ms. Manza provides no testimony relevant to this issue. First, as noted, she does not opine that a shortage due to drought, CVPIA, or any other cause beyond the control of the United States occurred in any year under examination. To the contrary, she concedes that furnishing water to Plaintiffs in accordance with their contracts may have been possible in every year: "it may have been physically possible to make additional releases of up to 155,000 acre-feet each

year . . ." Ex. B at 4.

Second, Ms. Manza concedes that the reason Plaintiffs did not receive the water to which they were contractually entitled was not shortage due to drought, CVPIA, or other causes beyond the control of the United States, but because Reclamation decided to operate New Melones using the Interim Plan of Operations which Reclamation and Fish and Wildlife together devised in 1997. Ms. Manza's report states:

> In 1997 Reclamation developed an Interim Plan of Operations (IPO) for New Melones Reservoir . . . . Once the IPO was developed, the guidelines it contained were used as the basis for allocations from New Melones Reservoir.

*Id.* at 6. Under the IPO, the maximum amount of New Melones water that Plaintiffs can receive is 90,000 acre-feet—far less than the 155,000 acre-feet maximum provided in their contracts. As Ms. Manza testified at deposition:

> Q. Now, my understanding is that under the Interim Plan of Operations that was adopted, the annual CVP delivery options range from 0 to 90?
>
> A. Correct.
>
> * * *
>
> A. The IPO does not allocate full water under the contracts. This is a concern. We've had those discussions many times.
>
> * * *
>
> Q. The allocation in the Interim Plan of Operations, is it equal to the contractual amounts in the Stockton-East and Central contracts?
>
> [Discussion between counsel.]
>
> A. That depends on which—or which—which one or ones of the contracts you're referring to. The IPO has allocations to CVP contractors of up to 90,000 acre-feet at a maximum. You hold firm contracts for 49,000. Clearly, 90 exceeds 49. It is, however, less than the full 155 that you do hold.

Ex. D (Manza Dep. Trans.) at 94, 48, 46.

Thus, the amount of water provided to Plaintiffs in the years 1997-2004 was not determined on the basis of shortage due to drought or other causes beyond the control of the United States; rather, the allocations to Plaintiffs were pre-determined by the IPO (an operations plan adopted by, and fully within the control of, the United States):

> The Interim Plan of Operations is very clear under what water supply conditions there is water available to the CVP contracts. It was not necessary for me to say, oh, I need to provide water over here and take it away over here. That was not done. Water was provided under the Interim Plan of Operations, what that plan called for to the contractors. I was not required to make that kind of a decision.

*Id.* at 43-44.

In short, nothing in Ms. Manza's report bears on the question of whether a shortage due to drought or other causes beyond the control of the United States resulted in Plaintiffs' receiving less water than the contracts entitled them to. Accordingly, her testimony is irrelevant and should not be allowed.

**III. Ms. Manza's Testimony Is Speculative and Is Therefore Barred Under *Daubert*.**

The most that can be said of Ms. Manza's proffered testimony is that she thinks Mr. Dotan's conclusion that furnishing 155,000 acre-feet was possible in each year under examination is questionable. Ex. B at 4. Her doubt is predicated on the unpredictability of precipitation: "The basic conclusion of the Dotan Report is fundamentally and fatally flawed because it does not acknowledge that the ability to predict inflows beyond the current water year does not exist." *Id.* She states that Mr. Dotan's report "completely ignores any reasonable rules of the reservoir operation," *id.*, and that "[t]he basic conclusion of the Dotan Report depends on complete accurate knowledge of future years' inflows and operational release requirements for other permit obligations. This knowledge is only achieved in hindsight. This is a fatal flaw." *Id.* at 4-5.

What Ms. Manza fails to provide the Court is any opinion of her own as to how CVPIA impacted Defendant's ability to furnish water to Plaintiffs (CVPIA is not even mentioned in her expert report), or whether drought (or any other cause beyond the control of the United States) caused a shortage in the water which Defendant could furnish to Plaintiffs. Ms. Manza does not provide the Court with a methodology for determining how much water Defendant could have furnished to Plaintiffs, nor an alternative analysis to Mr. Dotan's calculation of the amount that could have been furnished in each year. Although she claims that Mr. Dotan's methodology ignores "reasonable rules of the reservoir operation," Ex. B at 4, she nowhere states what those rules might be. In short, her proffered testimony is no more than an invitation to question Mr. Dotan's conclusions without Ms. Manza's providing any expert methodology or accepted hydrologic principles to apply to the facts of this case. Ms. Manza's proffered testimony is unhelpful, unscientific, speculative and unreliable, and should therefore not be admitted.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), the Supreme Court set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. *Id.* at 593-94. The Court, in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), held that these factors might also be applicable in assessing the reliability of

nonscientific expert testimony, depending upon "the particular circumstances of the particular case at issue." *Id.* at 150.

The Federal Circuit has determined that the *Daubert* rule applies in this Court as well:

> The Supreme Court has stated that we must consider the relevance and helpfulness of an expert's testimony, its reliability, and whether the basis of her opinion is one reasonably relied upon by experts in her field. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The Federal Circuit ruled that "*Daubert* standards of relevance and reliability" must be met in a bench trial as well as a jury trial.

*Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 646-47 (2004) (quoting *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002)).

While Mr. Dotan lays out in detail his methodology for calculating that Defendant could have furnished 155,000 acre-feet each year under review, Ms. Manza seems to ask the Court to simply trust her judgment that this might be incorrect. Such subjective speculation, however, is not expert opinion and does not pass the *Daubert* test: "it seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997).

In *Indiana Michigan Power v. United States*, a spent nuclear fuels case, the expert testimony of one Ms. Supko was offered to show that DOE would be unable to accept spent fuel until the year 2015. Rejecting that testimony, the court ruled that such speculation about possible government agency action was speculative and therefore inadmissible:

> No one doubted that Ms. Supko's expertise involves scientific knowledge, but the purpose of her testimony was to predict a date. Her duty was to guess when a government agency might act. She did not present a "methodology" that could be used by experts in such a field. "The more subjective . . . the expert's inquiry, the more likely the testimony should be excluded as unreliable." Fed. R. Evid. 702, 2000 Amendments Commentary (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a subjective analysis

> should be excluded)). Ms. Supko has only a "subjective belief" that DOE will not meet the current 2010 deadline. *See Daubert*, 509 U.S. at 590.

*Indiana Michigan Power*, 60 Fed. Cl. at 647 (footnote omitted). Simply put, "nothing in either *Daubert* or the Federal Rules of Evidence requires a [court] to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Because Ms. Manza cannot opine, based on an accepted methodology, on the issues in this trial, her proffered expert testimony should be excluded.

**CONCLUSION**

For all of these reasons, this motion *in limine* should be granted.

Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
Marzulla & Marzulla
1350 Connecticut Avenue, N.W.
Suite 410
Washington, D.C. 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: September 29, 2006

Of counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)