# EXHIBIT B

United States Department of the Interior

BUREAU OF RECLAMATION
Central Valley Operations Office
3310 El Camino Avenue, Suite 300
Sacramento, California 95821

IN REPLY
REFER TO:

# Expert Rebuttal Report

**By**

**Peggy Manza**
**Hydraulic Engineer**
**August 25, 2006**

Bureau of Reclamation
Central Valley Operations Office
Mid-Pacific Region
3310 El Camino Avenue, Suite 300
Sacramento, Ca 95821

# Expert Rebuttal Report by Peggy Manza

## 1. Introduction

My name is Peggy Manza. I work for the U. S. Bureau of Reclamation (Reclamation). My mailing address is Central Valley Operations Office, 3310 El Camino Avenue, Suite 300, Sacramento, CA 95821. I have personal knowledge of the technical issues set forth in this Report, and, if called as a witness, I would testify to the same.

I began my career with Reclamation on July 1, 1985 as a Soils Engineering Technician in the Hollister Field Office, San Felipe Division. In the spring of 1988, I was transferred to the Los Banos Field Office as a Construction Inspector, working on the Kesterson reservoir remediation project. I was transferred to the Planning Division (MP-700) of the Mid-Pacific Regional Office in March 1989 as a Hydrologic Engineering Technician. While in the Planning Division, I completed my college degree and was subsequently transferred into the position of Hydraulic Engineer (November 1997). I remained in the Planning Division until July 2000, when I accepted the position of Hydraulic Engineer in the Central Valley Operations Office. I have a Bachelor of Science degree in Hydrologic Sciences through the Engineering Department at California State University, Sacramento.

## 2. Qualifications

**Education**

California State University, Sacramento
School of Engineering
Semester Credits Earned = 43
Major – Special Major – Hydrologic Sciences
Degree – Bachelor of Science
Year 1995

University of California, San Diego
Quarter Hours Earned – 212
Major – Engineering Sciences

**Employment**

Hydraulic Engineer
Start date: July 30, 2000 to current
Central Valley Operations Office
U. S. Bureau of Reclamation

Hydraulic Engineer
Date: November 9, 1997 to July 29, 2000
Planning Division, Mid-Pacific Region
U. S. Bureau of Reclamation

Hydrologic Technician
Date: March 13, 1989 to November 8, 1997

Planning Division, Mid-Pacific Region
U. S. Bureau of Reclamation

Construction Inspector
Date: May 1988 to March 12, 1989
Kesterson Office, Mid-Pacific Region
U. S. Bureau of Reclamation

Materials Engineering Technician
Date: July 1, 1985 to May 1988
San Felipe Project, Mid-Pacific Region
U. S. Bureau of Reclamation

While in the Central Valley Operations Office, I was responsible for the oversight and management of operations in the Stanislaus River Basin. This is a highly controversial basin owing to several factors: the water resources are over-allocated between water rights, CVP contracts, fishery obligations, and permit obligations; the groundwater basin in this area is over-drafted; and releases from the Stanislaus River basin are needed downstream on the San Joaquin River for salinity control. Responsibilities include operations forecast modeling, flood control, ensuring compliance with applicable permits and standards, determination of supplies available to CVP contractors under their contracts, coordination/communication with State Water Resources Control Board, coordination with stakeholders, briefing management on status of contentious issues and recommending appropriate responses to those issues.

In the Planning Division, Mid-Pacific Region, I worked as part of the southern CVP (Central Valley Project) modeling team (SANJASM team). My duties included using professional hydrologic principles to develop data sets at differing levels of development. I used professional engineering principles to develop and/or modify existing Fortran code within the model to ensure that the model will operate in the appropriate manner. I developed spreadsheet applications which were used for pre- and post-processing of data and model results.

I am not receiving any additional compensation beyond my basic salary for the preparation of this report.

**3. Purpose of Report**
This report is being prepared to rebut the conclusions of the plaintiff's technical expert, Avry Dotan, and outline flaws in the Expert Report of Avry Dotan, Principal, AD Consultants, dated July 26, 2006 (Dotan Report).

**4. Summary of Conclusions**
The Dotan Report is fundamentally and fatally flawed owing to the fact that it takes advantage of perfect knowledge of reservoir inflows and releases necessary to meet permit obligations, and it assumes that Reclamation should have been able to operate

New Melones Reservoir in accordance with that perfect foreknowledge. This assumption is contrary to all reasonable and prudent standard procedures for reservoir operations.

**5. Overview of Reservoir Operations Procedures**

Reclamation operates its reservoirs in such a manner as to protect the long-term sustainability of the project to meet its permit obligations as well as contractual commitments. This requires the agency to consider not only the current conditions in the system, but also the conditions that might occur in subsequent years. This is frequently referred to as "drought planning". It would be imprudent to allocate every drop of water that comes into a reservoir in any given year without consideration of the need to conserve some in storage for future years use when reservoir inflow is insufficient to meet all project needs and purposes. Different reservoirs require different levels of drought protection based on both the size of the reservoir and its refill potential. Refill potential is the ability of the reservoir to completely refill once it has been substantially drawn down. New Melones Reservoir has a relatively low refill potential. This is due to a combination of factors including its large storage size (2.4 million acre-feet), fairly low average annual inflow (1.1 million acre-feet), and high level of annual demand (releases) from the reservoir. This low refill potential makes it necessary for Reclamation to operate New Melones Reservoir in a fairly conservative manner, such that sufficient water is carried over at the end of the year to be able to protect against potential future occurrence of a series of dry years which would strain the reservoir's ability to continue to meet project purposes without drawing on storage. Reclamation operates New Melones Reservoir based on current conditions and forecasts of future hydrology and demands with emphasis on meeting permit obligations and contractual commitments while still maintaining sufficient storage to provide a buffer for future years so that those project purposes can still be met in the future if a repeat of the drought series were to occur.

**6. Description of Findings on Review of the Dotan Report**

The purpose of the Dotan Report as stated on Page 8, Section 3 "Purpose of this Report" is to:

1) Describe the computer model that was developed by Avry Dotan to simulate the operations of the New Melones Reservoir and Stanislaus River and the ancillary facilities related to the issues in this case;
2) Determine, based on modeling runs, whether it was possible for the USBR to deliver to the Plaintiffs up to 155,000 acre-feet of water each year from New Melones Reservoir, from 1993 through 2004.

The Dotan Report provides a general overview the New Melones Model (NM Model), but does not provide detail sufficient for a comprehensive review. It is stated in the Dotan Report that, "The NM Model essentially performs mass-balance calculations for the New Melones Reservoir, Tulloch Reservoir and Goodwin Diversion Dam, given

hydrologic conditions, prescribed diversions from Goodwin Pool, and prescribed releases from Goodwin Dam to the Stanislaus River."

The NM model imposes a yearly diversion to the Plaintiffs of 155,000 acre-feet, but does not contain coding which would compute other diversions or releases (other than flood control releases) from Goodwin Pool different from the historical diversions or releases for water quality. This renders the NM model useless as an operations or planning model because imposition of the 155,000 acre-feet/year changes New Melones storage levels which in turn may cause reservoir operators to make different operational decisions.

In fact, the Dotan Report does not indicate that all of the operating criteria or water rights conditions and permits can be met through the study period.

The basic conclusion of the Dotan Report (page 8) is, "*I have concluded that, after making all releases and diversions from New Melones that were actually historically made, it was physically possible for the USBR to deliver 155,000 acre-feet of water to Plaintiffs each year*."

In a very limited, but not useful sense, this statement is correct. Based on examination of historical releases and hydrology for the period 1993 through 2004, it may have been physically possible to make additional releases of up to 155,000 acre-feet each year and not completely empty the reservoir. The Dotan Report, however, completely ignores all reasonable rules of reservoir operation in doing so. In 1993 and 1994, Reclamation did not release sufficient water to fully comply with the Vernalis salinity requirement (a permit obligation). The reason Reclamation did not release additional water to fully comply with the permit requirement was due to the extremely low reservoir storage in water year 1993 and going into water year 1994. Since there is no way of knowing exactly how much inflow the reservoir will receive during the rainy season, it is imprudent to release large volumes of water from a reservoir with extremely low storage, with no guarantee that the natural runoff will be sufficient to fill the resulting reservoir storage hole. Yet this is exactly the tactic that the Dotan Report takes in the "expert evaluation" when it provides 155,000 acre-feet to the CVP contractors in those water years. It is readily apparent that the Dotan Report has little to no connection to real life experiences in real-time reservoir operations.

The basic conclusion of the Dotan Report is fundamentally and fatally flawed because it does not acknowledge that the ability to predict inflows beyond the current water year does not exist. The Dotan Report also covered a limited historical time frame and thus did not capture the extreme variability of the historical inflow to New Melones Reservoir. The historical inflow varied from less than 300,000 acre-feet to nearly 3,000,000 acre-feet, and several multi-year sequences of lower than average inflow have occurred. A thorough and complete analysis would recognize this historical variability and develop an operation that anticipates that these sequences may recur at any time.

The basic conclusion of the Dotan Report depends on complete accurate knowledge of future years' inflows and operational release requirements for other permit obligations.

This knowledge is only achieved in hindsight. This is a fatal flaw. Reservoir operation decisions, including allocations to contracts, must be made based upon the best available information available to the reservoir operator at that time.

The basic conclusion of the Dotan Report assumes that diversions will not differ from historical diversions despite the fact that the imposition of additional depletions (up to 155,000 acre-feet) from New Melones Reservoir results in lowered storage and the need to potentially alter diversions from those that occurred historically. This too is a fatal flaw. Again, this error highlights the disconnect between the methodology used in the Dotan Report and that used in real-time reservoir operations.

The Dotan Report contains several technical errors in addition to the fundamental and fatal flaws described above. They are:

1. The 155,000 acre-feet of delivery each year to the Plaintiffs would have resulted in low storage in New Melones that would have certainly resulted in very unfavorable temperature conditions in the Stanislaus River below New Melones. Our experience in 1992 showed that end of water year storages bottoming out in the 100,000 to 200,000 acre-foot range may result in New Melones release temperatures that Reclamation has been informed by the fishery agencies could cause high mortality in salmon eggs spawned in October and November.
2. The simulation of the Dotan Report assumes that flood releases from New Melones are limited to 5,000 cfs at Orange Blossom Bridge, while the actual limitation is 8,000 cfs, as defined in the U. S. Army Corps of Engineers Water Control Manual for New Melones Reservoir.
3. Mr. Dotan claims that calibration of the model used for the expert report was validated against an existing model, HEC-5Q, that had been peer reviewed and approved by Reclamation. In truth, this HEC-5Q model was only reviewed by Reclamation for the specific application of predicting Stanislaus river water temperatures given a New Melones operation. The HEC-5Q model's use and application as a New Melones Reservoir operations model on the Stanislaus River has not been evaluated by Reclamation staff. That is to say, Reclamation has not reviewed the ability of this model to make appropriate decisions on reservoir releases to meet various permit and other obligations, contrary to the statement made by Mr. Dotan on page 23 of the Dotan Report.
4. The Dotan Report did not take into consideration whether or not the CVP contractors were able to physically take delivery of the full 155,000 acre-feet of water in any given year in the report.
5. On page 21, the Dotan Report states that "STANMOD has been one of the primary modeling tools that the USBR used for scheduling water in the Stanislaus River during the period 1993 to 2004". This statement is incorrect because it confuses long-term planning models with tools that are applied on a daily basis to assist in the real-time operations of a reservoir. STANMOD was a planning model only. Planning models are used to do long-term simulations of potential operational criteria on a given reservoir using historical hydrology. They look at the long-term sustainable yield of the reservoir system and provide information on

those operations which can be accomplished within this sustainable project yield. Planning models are usually done on a monthly time step and are not able to take into account the daily variability of system changes that reservoir operators must deal with. Operations forecast models use current hydrological conditions in conjunction with forecasted hydrology (reservoir inflows) and demands to determine the supply available for allocation in any given year. Planning models essentially look back at past hydrology whereas operations models look ahead at future hydrology. In 1997 Reclamation developed an Interim Plan of Operations (IPO) for New Melones Reservoir. STANMOD was used as the modeling tool for the development of the IPO. Once the IPO was developed, the guidelines it contained were used as the basis for allocations from New Melones Reservoir. In recent years, the IPO has been used as a set of guidelines, rather than hard and fast rules guiding allocations. Current reservoir conditions and forecasted hydrology and demands are used in the application of the IPO to determine allocations in any given year.

**7. Conclusion**

The Dotan Report is fundamentally and fatally flawed based on its faulty premise that a reservoir could be operated perfectly even though the reservoir operator has only limited knowledge about what conditions may occur in the future. His presented reservoir operation does not take into account the fact that the operating entity needs to develop and follow a reservoir operations plan which allows the agency to operate the reservoir for the long-term protection of sustainable yield and ability to meet all permit obligations.

August 25, 2006
Date

Peggy Manza
Peggy Manza, Hydraulic Engineer