IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| Plaintiffs, | ) | No. 04-541 L |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' EXHIBIT 282**

Defendant United States hereby submits this motion *in limine* to exclude from trial Plaintiffs' proposed Exhibit 282, which plaintiffs describe as a "Summary of Force Majeure Clauses in Other CVP Contracts." See Pls.' Pretrial Exhibit List (Doc. 110). In addition to submitting Exhibit 282 to Defendant after this Court's deadline, the document is not representative of Central Valley Project ("CVP") contracts, contains significant errors, and has very limited probative value. For the reasons discussed below, Defendant respectfully requests that the Court exclude the document from trial.

Pursuant to the Court's Order, the parties held their meeting of counsel as required by Appendix A ¶ 13, under the Rules of the Court of Federal Claims, on September 11, 2006. See Court Order, dated April 26, 2006 (Doc. 95). Hence, the parties were required to "[e]xchange a list of all exhibits (including summaries, see Fed. R. Evid. 1006) to be used at trial" no later than September 11, 2006. RCFC Appendix A ¶ 13. Plaintiffs transmitted Exhibit

282 to the government at 11:13 p.m. on September 20, 2006, in violation of this requirement. See Def.'s Ex. 1. This late disclosure is sufficient grounds to exclude the proffered document. See Fid Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co., 412 F.3d 745, 753 (7th Cir. 2005) ("No federal rule is needed [] to empower a district judge to prevent a party from springing summaries of thousands of documents on the opposing party so late in the day that the party can't check their accuracy against the summarized documents before trial.") (quoted in Jade Trading, LLC v. United States, 67 Fed. Cl. 608, 613 (2005)).

Plaintiffs' proposed Exhibit 282 is a fifteen-page document, purporting to both summarize "the shortage provisions in each contract" and categorize each contract according to "shortage provision type." Def.'s Ex. 2. The exhibit identifies 137 contracts, approximately half of the total number of CVP water service contracts.[1] There is, therefore, no reason to believe that the contracts plaintiffs have chosen for inclusion in Exhibit 282 are representative of all CVP contracts.[2]

In the short amount of time that the government has had to review this document – six working days – defendant has found significant errors throughout. For example, at page 1 of the document, plaintiffs claim that the 1953 West Stanislaus Irrigation District Contract is a "Type

[1]The actual number of active contracts represented in plaintiffs' summary appears to be much less than the 137 contracts listed in the proposed summary exhibit. Many of the contracts listed have been amended or superceded. Compare Def.'s Ex. 2 at 1 (entry for Mercy Springs Water District contract, dated 1967) with id. at 13 (entry for Mercy Springs Water District Interim Renewal (IR) contract, dated 1995). Moreover, plaintiffs have in several instances identified several consecutive interim contracts for a single district. See, e.g., id. at 12-15 (listing six interim contracts for City of Shasta Lake, Contract No. 04-07-20-W1134).

[2] Assuming each contract is 30 pages long, Defendant would have to review more than 4,000 pages just to check the accuracy of the proffered exhibit. Defendant would have to review approximately 7,500 pages of contracts in order to review all of the CVP contracts.

1" contract, meaning that "in no event shall liability accrue." Def.'s Ex. 2 at 1. While Defendant certainly agrees that the United States would not be liable for shortages under that contract (as in the instant case), the cited contract actually includes language strikingly similar to the shortage provision in this case:

> There may occur at times a shortage during any year in the quantity of water available for furnishing to the District by the United States pursuant to this contract through and by means of the Project, and in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or unavoidable causes.

Def.'s Ex. 3. The 1994 West Stanislaus Irrigation District Contract contains identical language. See Def.'s Ex. 4. Plaintiffs' failure to fully and accurately quote the shortage provisions that they purport to summarize in proposed Exhibit 282 makes this document unreliable as a summary exhibit.

Under the heading "Type 2" in Plaintiffs' proposed Exhibit 282, plaintiffs misquote the Garfield Water District contract, which actually states that no liability shall accrue against the United States for damages "arising from a shortage on account of errors in operation, drought, or unavoidable causes." See Def.'s Ex. 5. Under "Type 3" contracts, plaintiffs insert the phrase "[sometimes 'unavoidable']" in the James Irrigation District contract, when that language does not explicitly appear in the contract itself. See Def.'s Ex. 6. In addition, under "Type 4" contracts, Plaintiffs' proposed Exhibit 282 suggests that the shortage provisions in Stockton East Water District's and Central's contracts are somehow unique when, in fact, other contracts in the same category are indistinguishable. E.g., Def.'s Ex. 7 (Panoche Water District's contract, which is misquoted at page 7 of Plaintiffs' Ex. 282); Def.'s Ex. 8 (Glide Water District's contract,

which is misquoted at page 8 of Plaintiffs' Ex. 282).[3]

These errors are sufficient grounds to exclude the proffered document. See Conoco, Inc. v. Dept. of Energy, 99 F.3d 387, 393 (Fed. Cir. 1997) ("Thus, the rules recognize that the preparation of summaries from other documents carries risks of error or distortion that must be guarded against by giving the opposing party an opportunity to review and object to the underlying documents."); Bannum, Inc. v. United States, 59 Fed. Cl. 241, 245 (2003) (stating that a summary document "must accurately summarize (or reflect) the underlying document(s) and only the underlying document(s)") (internal citation omitted).

Even if plaintiffs corrected these errors, Plaintiffs' proposed Exhibit 282 would be of little probative value to any issue involved in this case, but would be significantly misleading. The proffered exhibit is intended to reference only a portion of a multi-page contract. The excerpts provided quote – at most – one sentence out of a lengthy contract, some of which are sixty pages long. Plaintiffs' proposed comparison of shortage provisions – sometimes even just an excerpt of the shortage provisions – ignores the rest of each contract, and is therefore wholly unreliable.

Consider, for example, the Westland Water District's contract, which plaintiffs say supports their interpretation of the SEWD and Central contracts. See Def.'s Ex. 8. While plaintiffs are correct that the shortage provision of that contract prevents liability from accruing

---

[3] This list of errors is not intended to be exhaustive. Perhaps the most obvious error in plaintiffs' summary, for example, is the column titled "Amount of Water." Like plaintiffs' contracts, the quantities of water identified in these other CVP contracts is only a maximum amount, not a fixed, guaranteed supply as plaintiffs' summary suggests. Instead, as with the Central and SEWD contracts, the quantity of water actually available is determined on an annual basis and that quantity varies. Because plaintiffs failed to comply with the Court's rules, Defendant has not had an adequate opportunity to fully review Plaintiffs' Exhibit.

against the United States for shortages "on account of errors in operation, drought, or any other cause," the intended meaning of that language is the same as in the instant contracts. Indeed, the Westland contract is 40 pages long, and includes elements that are indistinguishable from SEWD's and Central's contracts.

There is no guarantee that Westland's contract – or any contract identified in Plaintiffs' proposed Exhibit 282 – would immunize the government from liability in every circumstance. When it considered the Westlands contract in Barcellos & Wolfsen, Inc. v. Westlands Water District, for example, the district court concluded that despite the "any other cause" language in the shortage provision, the "contract cannot reasonably be read 'to allow the government to willfully injure Movants' property.'" 849 F.Supp. 717, 723 (E.D. Cal. 1993), aff'd, O'Neill v. United States, 50 F.3d 677 (9th Cir. 1995). Hence, the district court concluded the following:

> This is not to say that Movants cannot challenge any cause for a shortage, to show that the cause was unlawful or unreasonable under the contract. Yet Federal Defendants allege that the shortages arise from their mandatory compliance with federal statutes. Mandatory compliance with federal statutes is neither unlawful nor unreasonable.

Id. at 723-24. In discussing whether releases made pursuant to CVPIA and ESA violated Westland's contract, the court stated that "[m]ovants have not established that the Federal Defendants have created an obstacle to their performance or have the ability to remove such an obstacle. Congress has mandated the use of Project water for environmental purposes." Id. at 729. Although Defendant does not concede the limitation inferred by the district court, that decision demonstrates that focusing on one sentence (or less) in a multi-page contract is of limited value in defining contractual rights.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant this motion *in limine* and issue a pre-trial order excluding proposed Exhibit 282.

Dated: September 29, 2006 Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/William J. Shapiro
WILLIAM J. SHAPIRO
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
501 I Street, Room 9-700
Sacramento, CA 95814
TEL (916) 930-2207

Counsel of Record for Defendant

OF COUNSEL:
KRISTINE S. TARDIFF
United States Department of Justice
Environment and Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

LUTHER L. HAJEK
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663

SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Branch of Water and Power
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825