# EXHIBIT A
(Part 1)

103D CONGRESS, 1st Session — COMMITTEE PRINT NO. 4 — PART 2

# LEGISLATIVE HISTORY, MISCELLANEOUS ARTICLES, AND BACKGROUND INFORMATION RELATED TO PUBLIC LAW 102–575 RECLAMATION PROJECTS AUTHORIZATION AND ADJUSTMENT ACT OF 1992

---

PREPARED BY THE MAJORITY STAFF

OF THE

COMMITTEE ON NATURAL RESOURCES

OF THE

HOUSE OF REPRESENTATIVES

ONE HUNDRED THIRD CONGRESS

FIRST SESSION

NOVEMBER 1993

Printed for the use of the Committee on Natural Resources
*George Miller*, Chairman

---

U.S. GOVERNMENT PRINTING OFFICE
73–409 WASHINGTON : 1993

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-041772-4

# MANAGEMENT AND OPERATION OF THE CENTRAL VALLEY PROJECT, CALIFORNIA

## HEARING

BEFORE THE

SUBCOMMITTEE ON
WATER, POWER AND OFFSHORE ENERGY RESOURCES

OF THE

COMMITTEE ON
INTERIOR AND INSULAR AFFAIRS
HOUSE OF REPRESENTATIVES

ONE HUNDRED SECOND CONGRESS

SECOND SESSION

ON

**H.R. 5099**

TO PROVIDE FOR THE RESTORATION OF FISH AND WILDLIFE AND THEIR HABITAT IN THE CENTRAL VALLEY OF CALIFORNIA, AND FOR OTHER PURPOSES

**H.R. 3876**

TO PROTECT, RESTORE, AND ENHANCE FISH AND WILDLIFE HABITAT WITHIN THE CENTRAL VALLEY OF CALIFORNIA, MITIGATE CENTRAL VALLEY PROJECT IMPACTS IN ORDER TO MAINTAIN THE CONTINUED ORDERLY OPERATION OF THE CENTRAL VALLEY PROJECT, AND FOR OTHER PURPOSES

**H.R. 4687**

TO DIRECT THE SECRETARY OF THE INTERIOR TO ENTER INTO NEGOTIATIONS WITH THE STATE OF CALIFORNIA TO TRANSFER THE CENTRAL VALLEY PROJECT TO THE STATE

---

HEARING HELD IN WASHINGTON, DC
MAY 14, 1992

---

**Serial No. 102–91**

---

Printed for the use of the Committee on Interior and Insular Affairs



MANAGEMENT AND OPERATION OF THE CENTRAL VALLEY PROJECT, CALIFORNIA

HEARING

BEFORE THE

SUBCOMMITTEE ON
WATER, POWER AND OFFSHORE ENERGY RESOURCES

OF THE

COMMITTEE ON
INTERIOR AND INSULAR AFFAIRS
HOUSE OF REPRESENTATIVES

ONE HUNDRED SECOND CONGRESS

SECOND SESSION

ON

H.R. 5099

TO PROVIDE FOR THE RESTORATION OF FISH AND WILDLIFE AND THEIR HABITAT IN THE CENTRAL VALLEY OF CALIFORNIA, AND FOR OTHER PURPOSES

H.R. 3876

TO PROTECT, RESTORE, AND ENHANCE FISH AND WILDLIFE HABITAT WITHIN THE CENTRAL VALLEY OF CALIFORNIA, MITIGATE CENTRAL VALLEY PROJECT IMPACTS IN ORDER TO MAINTAIN THE CONTINUED ORDERLY OPERATION OF THE CENTRAL VALLEY PROJECT, AND FOR OTHER PURPOSES

H.R. 4687

TO DIRECT THE SECRETARY OF THE INTERIOR TO ENTER INTO NEGOTIATIONS WITH THE STATE OF CALIFORNIA TO TRANSFER THE CENTRAL VALLEY PROJECT TO THE STATE

HEARING HELD IN WASHINGTON, DC
MAY 14, 1992

Serial No. 102–91

Printed for the use of the Committee on Interior and Insular Affairs

U.S. GOVERNMENT PRINTING OFFICE
60-861 WASHINGTON : 1992

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-040647-1

## COMMITTEE ON INTERIOR AND INSULAR AFFAIRS

HOUSE OF REPRESENTATIVES

GEORGE MILLER, California, *Chairman*

| | |
|---|---|
| PHILIP R. SHARP, Indiana | DON YOUNG, Alaska, *Ranking Republican Member* |
| EDWARD J. MARKEY, Massachusetts | ROBERT J. LAGOMARSINO, California |
| AUSTIN J. MURPHY, Pennsylvania | RON MARLENEE, Montana |
| NICK JOE RAHALL II, West Virginia | JAMES V. HANSEN, Utah |
| BRUCE F. VENTO, Minnesota | BARBARA F. VUCANOVICH, Nevada |
| PAT WILLIAMS, Montana | BEN BLAZ, Guam |
| BEVERLY B. BYRON, Maryland | JOHN J. RHODES III, Arizona |
| RON DE LUGO, Virgin Islands | ELTON GALLEGLY, California |
| SAM GEJDENSON, Connecticut | ROBERT F. SMITH, Oregon |
| PETER H. KOSTMAYER, Pennsylvania | CRAIG THOMAS, Wyoming |
| RICHARD H. LEHMAN, California | JOHN J. DUNCAN, JR., Tennessee |
| BILL RICHARDSON, New Mexico | RICHARD T. SCHULZE, Pennsylvania |
| GEORGE (BUDDY) DARDEN, Georgia | JOEL HEFLEY, Colorado |
| MEL LEVINE, California | CHARLES H. TAYLOR, North Carolina |
| WAYNE OWENS, Utah | JOHN T. DOOLITTLE, California |
| JOHN LEWIS, Georgia | WAYNE ALLARD, Colorado |
| BEN NIGHTHORSE CAMPBELL, Colorado | RICHARD H. BAKER, Louisiana |
| PETER A. DEFAZIO, Oregon | |
| ENI F.H. FALEOMAVAEGA, American Samoa | |
| TIM JOHNSON, South Dakota | |
| CHARLES E. SCHUMER, New York | |
| JIM JONTZ, Indiana | |
| PETER HOAGLAND, Nebraska | |
| HARRY JOHNSTON, Florida | |
| LARRY LAROCCO, Idaho | |
| NEIL ABERCROMBIE, Hawaii | |
| CALVIN M. DOOLEY, California | |
| ANTONIO COLORADO, Puerto Rico | |

DANIEL P. BEARD, *Staff Director*
RICHARD MELTZER, *General Counsel*
DANIEL VAL KISH, *Republican Staff Director*

---

### SUBCOMMITTEE ON WATER, POWER AND OFFSHORE ENERGY RESOURCES

GEORGE MILLER, California, *Chairman*

| | |
|---|---|
| PHILIP R. SHARP, Indiana | JAMES V. HANSEN, Utah |
| BRUCE F. VENTO, Minnesota | DON YOUNG, Alaska |
| BEVERLY B. BYRON, Maryland | RON MARLENEE, Montana |
| SAM GEJDENSON, Connecticut | BEN BLAZ, Guam |
| RICHARD H. LEHMAN, California | JOHN J. RHODES III, Arizona |
| WAYNE OWENS, Utah | ROBERT F. SMITH, Oregon |
| BEN NIGHTHORSE CAMPBELL, Colorado | RICHARD T. SCHULZE, Pennsylvania |
| PETER A. DEFAZIO, Oregon | CHARLES H. TAYLOR, North Carolina |
| TIM JOHNSON, South Dakota | JOHN T. DOOLITTLE, California |
| PETER HOAGLAND, Nebraska | WAYNE ALLARD, Colorado |
| HARRY JOHNSTON, Florida | |
| LARRY LAROCCO, Idaho | |
| EDWARD J. MARKEY, Massachusetts | |
| NEIL ABERCROMBIE, Hawaii | |
| CALVIN M. DOOLEY, California | |

STEVE LANICH, *Professional Staff*
LINDA GORDON STEVENS, *Clerk*
JAMES C. BARKER, *Republican Counsel*





# CONTENTS


| | Page |
|---|---|
| Hearing held: May 14, 1992 | 1 |
| Text of the bills: | |
| H.R. 5099 | 2 |
| Section-by-section analysis of H.R. 5099 | 53 |
| H.R. 3876 | 59 |
| Section-by-section analysis of H.R. 3876 | 116 |
| H.R. 4687 | 122 |
| Section-by-section analysis of H.R. 4687 | 125 |

MAY 14, 1992

| | |
|---|---|
| Statements: | |
| Opening statement of Chairman Miller | 1 |
| Opening statement of Hon. James Hansen, a Representative from the State of Utah | 132 |
| Opening statement of Hon. Richard Lehman, a Representative from the State of California | 130 |
| Opening statement of Hon. John Doolittle, a Representative from the State of California | 122 |
| Opening statement of Hon. Calvin Dooley, a Representative from the State of California | 135 |
| Opening statement of Hon. Don Young, a Representative from the State of Alaska | 190 |
| Panel consisting of: | |
| Hon. Bill Bradley, a Senator from the State of New Jersey | 139 |
| Hon. Gary Condit, a Representative from the State of California | 146 |
| Hon. William Thomas, a Representative from the State of California | 153 |
| Hon. Vic Fazio, a Representative from the State of California | 157 |
| Hon. Wally Herger, a Representative from the State of California | 164 |
| Hon. J. Bennett Johnston, a Senator from the State of Louisiana | 378 |
| Panel consisting of: | |
| Barry Brown, Western Farm Credit Bank, Sacramento, CA | 172 |
| Dan Errotabere, Errotabere Ranches, Riverdale, CA | 183 |
| Tom Graff, senior attorney, Environmental Defense Fund, Oakland, CA | 191 |
| Michael McGill, executive director, Bay Area Economic Forum, San Francisco, CA | 206 |
| Panel consisting of: | |
| Jay Gillette, Dinuba, CA | 234 |
| Phil Larson, Kerman, CA | 240 |
| Report concerning agriculture losses as a result of water allocations from the CVP, by the Fresno County Agricultural Commissioner, dated February 26, 1992 | 246 |
| Zeke Grader, executive director, Pacific Coast Federation of Fishermen's Associations (PCFFA), San Francisco, CA, submitting attachments | 248 |
| 1. Article by William Kier, titled, "In the Nick of Time—Reforming the Federal Central Valley Project to Save the San Francisco Bay Estuary," dated March 1991 | 256 |
| 2. Letter from Lawrence D. Six, executive director, Pacific Fishery Management Council to Roger Patterson, regional director, Mid-Pacific Region, U.S. Bureau of Reclamation, dated May 8, 1992 | 262 |

IV


| | Page |
|---|---|
| Statements—Continued | |
| Panel consisting of—Continued | |
| Zeke Grader, executive director, Pacific Coast Federation of Fishermen's Associations (PCFFA), San Francisco, CA, submitting attachments—Continued | |
| 3. Letter from Randy Fisher, director, Oregon Department of Fish and Wildlife to Hon. John Seymour, U.S. Senator, dated April 15, 1992 | 264 |
| 4. Article by Brad Warren, interim Pacific editor, reprinted from National Fisherman titled, "Stop Subsidizing the Salmon's Ruin," dated June 1992 | 266 |
| Patricia Mulroy, Chair, Western Urban Water Coalition, Las Vegas, NV | 267 |
| Carl Boronkay, general manager, the Metropolitan Water District of Southern California, Los Angeles, CA | 272 |
| Panel consisting of: | |
| Mary Wells, farmer and general manager, Westside Water District, Williams, CA | 311 |
| David McCabe, Grasslands Water District and Grasslands Resource Conservation District, Los Banos, CA | 319 |
| Richard Atwater, general manager, West Basin Water District and Central Basin Water District, Carson, CA | 327 |
| Roger A. Fontes, assistant general manager, Northern California Power Agency, Roseville, CA | 334 |
| Panel consisting of: | |
| Douglas Wheeler, secretary, California Resources Agency, State of California, Sacramento, CA, accompanied by David Kennedy, director, California Department of Water Resources, Sacramento, CA | 350 |
| Hon. Dennis Underwood, Commissioner, Bureau of Reclamation, Washington, DC | 352 |
| 1. Mr. Underwood's prepared statement on H.R. 5099 | 356 |
| 2. Mr. Underwood's prepared statement on H.R. 3876 | 362 |
| 3. Mr. Underwood's prepared statement on H.R. 4687 | 365 |


APPENDIX

MAY 14, 1992


| | Page |
|---|---|
| Additional material submitted for the record: | |
| Attachment to accompany testimony submitted by Mike McGill: Report issued by Bay Area Economic Forum, "Using Water Better: A Market-Based Approach to California's Water Crisis," dated October 1991 | 381 |
| Attachments to accompany testimony submitted by Dan Errotabere: | |
| 1. Report by the California Department of Food and Agriculture, titled, "Adverse Impacts Caused By Reduction in Present Central Valley Project Water Supplies to Agriculture," dated March 1992 | 408 |
| 2. "Analysis of the Economic Impacts of the Central Valley Improvement Act," dated March 10, 1992 | 418 |
| Submitted for the record by Zeke Grader, executive director, Pacific Coast Federation of Fishermen's Associations: | |
| 1. Statement of Nathaniel S. Bingham, PCFFA before U.S. Senate Subcommittee on Water and Power, dated March 18, 1991 | 478 |
| 2. Statement of Nathaniel S. Bingham, PCFFA before U.S. Senate Subcommittee on Water and Power, dated May 8, 1991 | 488 |
| 3. Title from a report to the Joint Legislative Committee on Fisheries and Agriculture from the California Advisory Committee on Salmon and Steelhead Trout, regarding water policy reform, dated March 3, 1992 | 495 |
| Statement submitted for the record by John Reiss, California/Nevada regional director, the Wilderness Society | 497 |
| Statement submitted for the record by the American Farm Bureau Federation [AFBF] | 500 |
| Statement submitted for the record by Mr. Ed Osann, director, Water Resources Program of the National Wildlife Federation | 503 |
| Grassland wetlands fact sheet submitted for the record by Save Grassland Wetlands | 507 |
| Letter from Ronald R. Esau, general manager, Santa Clara Water District to Chairman Miller, dated May 22, 1992 with attached statement | 511 |




V


| | Page |
|---|---|
| Additional material submitted for the record—Continued | |
| Statement submitted by Bob L. Vice, president, California Farm Bureau Federation | 521 |
| Statement submitted by the American Public Power Association | 523 |
| Letter from Mary K. Shell, chairman, Kern County Board of Supervisors to Chairman Miller dated May 12, 1992, with attached resolution adopted by the Board of Supervisors of Kern County, CA, dated March 17, 1992, submitted by Hon. William Thomas, a Representative from the State of California | 531 |
| Department report from Manuel Lujan, Jr., Secretary of the Interior to Chairman Miller on H.R. 5099 and H.R. 3876, dated May 27, 1992 | 534 |
| Letters submitted for the record: | |
| In support: | |
| Letter from George Frampton, Jr., president, the Wilderness Society to Chairman Miller, dated May 12, 1992 | 536 |
| Letter from Richard Spotts, California representative, Defenders of Wildlife to Chairman Miller, dated May 11, 1992 | 538 |
| Letter from Matthew Nicolai, vice president, corporate affairs, Calista Corp., dated May 8, 1992 | 539 |
| Letter from Ivan M. Ivan, representative, Alaska State Legislature to Chairman Miller, dated May 8, 1992 | 541 |
| [EDITOR'S NOTE: Additional letters of support were submitted for the record and can be found in the archival file for this hearing.] | |
| Against: | |
| Letter from Mary K. Shell, chairman, Kern County Board of Supervisors to Chairman Miller, dated May 12, 1992, with attached resolution adopted by the Kern County Board of Supervisors on March 17, 1992 | 543 |
| Letter from David L. Moore, president, Western Growers Association to Chairman Miller, dated May 12, 1992 | 546 |
| Letter from Larry Maben, president, Glenn County Farm Bureau to Chairman Miller, dated May 14, 1992 | 547 |
| Letter from Edward Madigan, Secretary, Department of Agriculture to Chairman Miller, dated May 20, 1992 | 548 |
| [EDITOR'S NOTE: Additional letters in opposition were submitted for the record and can be found in the archival file for this hearing.] | |
| Additional letters for the record: | |
| Letter from Donald M. Demsher, president and chairman of the board, Sacramento River Council and Marcia R. Howe, executive director, Shasta Natural Science Association to Chairman Miller, dated April 22, 1992 | 551 |
| Dear Colleague from Calvin Dooley, Wally Herger, Vic Fazio, John Doolittle, Gary Condit, Richard Lehman, and Bill Thomas, Representatives from the State of California, dated May 4, 1992 | 553 |
| Letter with attachments from Langdon W. Owen, president, Orange County Water District and H.E. "Bill" Hartge, president, Municipal Water District of Orange County, to Chairman Miller, dated May 8, 1992 | 555 |
| Letter from Kenneth A. Weisel, electric utility director, electric department, city of Roseville, CA, to Chairman Miller dated May 11, 1992 | 560 |
| Letter from Hon. Wally Herger, a Representative from the State of California to Chairman Miller, dated May 21, 1992, with attached letter from Evelene D. Payne, city administrator, city of Gridley, CA, to Representative Herger, dated May 7, 1992 | 563 |
| Dear Colleague jointly signed by Chairman Miller and ranking Republican member on Subcommittee on Water, Power and Offshore Energy Resources, dated June 17, 1992 | 567 |
| Letter from Norman Mineta, a Representative from the State of California to Chairman Miller, dated July 10, 1992, with attached letter to Norman Mineta from Ronald Esau, general manager, Santa Clara Water District, CA, dated June 25, 1992 | 568 |
| Letter from Carl Boronkay, general manager, the Metropolitan Water District of Southern California, dated December 1, 1992, and attachments | 572 |

Chairman MILLER. Mr. Dooley.

## OPENING STATEMENT OF HON. CALVIN DOOLEY

Mr. DOOLEY. Thank you, Mr. Chairman. I thank you for holding this hearing.

What I would like to talk about a little bit today are some of the issues which are included in both your legislation and the legislation that many of us that are speaking today have introduced, our CVP bill, H.R. 3876, which was introduced by myself and Mr. Lehman and Mr. Doolittle, Mr. Condit, Mr. Thomas along with Mr. Matsui. The second is your bill 5099.

There are a lot of people who traveled a long ways today to talk about the relative merits of each proposal but I think that we can identify the most difficult issues. The most, I think, is clearly wet water for the maintenance of fisheries in the Central Valley.

Our bill seeks to address fishery problems by authorizing the rapid implementation of operational and structural changes recommended by the California Department of Fish and Game.

It would also create a task force composed of Federal and State agencies, fisheries interests, environmentalist, farmers and others to identify additional actions to mitigate environmental damages and to restore and enhance fish and wildlife habitat.

H.R. 5099 now incorporates somewhat similar provisions but in addition it requires the project to devote one and a half million acre-feet of water to largely unspecified environmental purposes. You will hear a lot of talk today about this one and a half million acre-feet so I take this opportunity to put that number in perspective.

First, it is not clear what the water would be used for. The only data available to support the figure has been compiled by the environmental community which, in turn, relies on numbers included in a 1988 draft proposal by the staff of the state Water Resources Control Board. It is important to note that the draft proposal was never adopted.

You will also hear how the 1.5 million is only a small percentage of all water in California. True, but it represents about half of the water available to non-water rights holders served by the CVP outside of the Friant unit. This year those contractors will receive only 25 percent of their normal allocation because of the drought. If 5099 were in place those 5,000 farmers would receive absolutely no CVP water because H.R. 5099 gives environmental use as a priority. Not equal treatment but a priority over some farmers in a drought. In the arid Central Valley no water means no farming.

Most significantly, the one and a half million acre-feet is not the only water that H.R. 5099 mandates to be delivered for other purposes. The bill, as Mr. Lehman identified, requires the 400,000 acre-feet to be applied to wildlife refuges, another 100,000 acre-feet off the top for urban supplies, and also not included in the one and a half million acre-feet is an additional 200,000 acre-feet for fish flows on the Trinity River.

In all, the one and a half million acre-feet is well over 2 million acre-feet and that is more than a third of the CVP's average annual delivery over the last 20 years of 6 million acre-feet. So you see, it is not only one and a half million acre-feet that we are talking about in H.R. 5099.



A workable compromise will require that water will be made available in specific amounts for specific purposes, that the environmental deliveries be phased in over a reasonable time and that the development of new water supplies in the Central Valley be made the priority.

Simply throwing water at environmental problems is not acceptable. Water for wetlands and wildlife refuges is another important issue but is one which we almost are in complete agreement with. Clearly we have to provide for the Level II water and certainly have to have a commitment to provide for Level IV water supplies for our ducks.

Both bills also would allow, for the first time in the history, water to be transferred to urban areas. However, they differ significantly in how transfers would be regulated. The Chairman's bill simply leaves it up to state law to regulate water sales. The problem is that there is no state law on waters transfers. H.R. 5099 simply allows water to be transferred out of the CVP while providing absolutely no protection to the rural communities that are at risk of being dewatered by wealthy cities and corporations.

As a representative of a rural area I can not possibly endorse that sort of approach. The obliteration of the agricultural community in the Owens Valley of California stands as a vivid reminder of what open water marketing is all about. Our bill's water transfer provisions were negotiated by urban and agricultural water users in California and they include protections for rural communities and ground water supplies in the environment.

Critics of my bill claim that it allows local water districts to veto water transfers. That is not the case. The bill allows districts, as legal water contract holders, to review proposed transfers to ensure that they comply with the community environmental protections. If the transfer does comply the water district has no choice but to approve it. There is no such thing as an arbitrary veto. If the language in that bill is not plain enough on that point I will be happy to change it to make it plain.

Critics also claim that the water transfer provisions in 3876 are a back door attempt to lock in 40 year water contracts. That's baloney and, again, if our bill is not clear on that we'll fix it. In fact, the sponsors of 3876 are willing to discuss any aspect of the transfer provisions so long as it protects real communities from having their life's blood sold entirely to cities and urban based businesses.

There is no question that we have to have a commitment to provide for environmental mitigation. All of the people who represent the CVP, or the vast majority of the CVP area are committed to providing some environmental mitigation providing water through ducts and proficient wildlife habitation and also water to provide for the needs of the growing urban areas of our state. But at the same time we can not at any time support a proposal such as 5099 which, if enacted, would cause the devastation into the rural communities that we represent.

The small farmers that are going to be testifying, that are coming from my district and Mr. Lehman's and Mr. Condit's and Mr. Fazio's, they're going to be testifying today. If 5099 was in

effect over the last five years the chances are they wouldn't be here today. They would probably have gone bankrupt many years ago.

It is ludicrous for me to think that as objective policymakers that we can enact a piece of legislation that would overnight, upon its enactment, ensure that we would have a permanent drought in one of the most agricultural, productive areas of this country.

That is not the appropriate development of policy. Surely we can do better and hopefully as a result of this hearing we will find a way that we can bring the approach that many of us in the valley are offering to an agreement on some type of compromise with the approach that you have offered so that we can meet the needs of the state of California.

[The prepared statement of Congressman Dooley follows:]

STATEMENT OF REPRESENTATIVE CALVIN DOOLEY ON CENTRAL VALLEY PROJECT LEGISLATION: H.R. 3876, H.R. 5099, H.R. 4687

It's been said that when stripped to its essentials, politics—all politics—is about the allocation of scarce resources. If that's true, and I believe it is, this Committee, more than any other in Congress, practices politics at its most basic. The issues that come before us are about the allocation of elemental resources: land, energy, minerals, forage, timber and water. During the past month alone, members of the Committee have been called upon to write a national energy policy, decide which forests to preserve and which to harvest, and determine what is a fair return for the use of public rangelands. And today we begin a process that will change forever how we allocate water in the West. I say the West and not just California because what we do in California will be the model for all the Western states. No one from the West should have any illusions about that.

During the Committee's debates over energy, timber, forage and water, the same basic questions always come to the fore. Is the nation getting a fair return for the development of its natural resources? What are the true costs of that development? How do we meet new and conflicting demands on those resources? How do we correct the damage that may have been done in the past, and how do we avoid doing damage in the future? Are the policies of past and present still workable? And what about the people who have built their lives upon the policies that we may now change? How do we treat them fairly?

Difficult and extremely complex questions. But the answers we always seem to start with are those that are simple, easy and wrong. On one end we have those who insist that the answer is to do nothing—that nothing's wrong, nothing need be changed, that the status quo is just fine and must be maintained at any cost. That view is not only blind to the future of the resource, it's blind to the future of the people who depend upon it for their livelihoods. Because if change is needed it will surely come, and the only choice is whether to help make it orderly and beneficial, or risk being overwhelmed by changes authored by others.

At the other end we have those who say that the solution to resource problems is simply to prohibit any further use of the resource. This view is rooted in the belief that timbering, grazing and irrigated agriculture are inherently wrong and must be curtailed at any cost. Of course, not all critics of federal resources policies believe that, but too many do—despite their assertions to the contrary. The proof is in proposals that are more punitive than corrective and that are advanced without the slightest regard for their human consequences.

Members of this Committee are frequently under intense pressure to rush to one extreme or another. I have been on the Interior Committee for only a short time, but I have been impressed by the willingness of most members to resist such pressure and do the hard work of sorting good ideas from bad.

That's all we ask here today. We have before us two comprehensive proposals for addressing the complex problems associated with the Central Valley Project in California. The third bill on the agenda would transfer control of the CVP to the state. I'll speak to that in a moment.

One of the CVP bills, HR 3876, was introduced by me, Mr. Lehman, Mr. Doolittle on the Committee and Mr. Condit, Mr. Fazio, Mr. Herger, Mr. Matsui and Mr. Thomas. The second, HR 5099, is the Chairman's bill. A lot of people have traveled a long way to talk about the relative merits of each proposal, so I won't take time to



discuss the details of my bill now. Instead, I will address myself to the major issues before us and suggest ways in which they might be resolved.

The most difficult issue is the so-called "upfront" or "wet" water for the maintenance and restoration of fisheries in the Central Valley. Our bill seeks to address fishery problems by authorizing the rapid implementation of operational and structural changes recommended by the California Department of Fish and Game. It also would create a task force composed of federal and state agencies, fishery interests, environmentalists, farmers and others to identify additional actions to mitigate environmental damages and to restore and enhance fish and wildlife habitat. HR 5099 now incorporates somewhat similar provisions, but in addition, it requires the project to devote 1.5 million acre-feet of water to largely unspecific environmental purposes.

You'll hear a lot about the 1.5 million acre-feet today, so I'll take this opportunity to put that number is perspective. First, it's not clear what that water would be used for. The only data available to support the figure have been compiled by the environmental community, which in turn relies on numbers included in a 1988 DRAFT proposal by the STAFF of the State Water Resources Control Board. It's important to note the draft proposal was never adopted.

You also will hear how the 1.5 million is "only" a small percentage of all the water is California. True, but it represents about half the water available to non-water rights holders served by the CVP outside of the Friant unit. This year, those contractors will receive only 25 percent of the their normal allocation because of the drought. If HR 5099 were in place, those 5,000 farmers would receive absolutely no CVP water because HR 5099 gives environmental uses a priority—not equal treatment, a priority—over some farmers in drought. In the arid Central Valley, no water means no farming.

Most significantly, the 1.5 million acre-feet is not the only water that HR 5099 mandates be delivered to other purposes. Far from it. The bill devotes ADDITIONAL water—at least 400,000 acre-feet to wildlife refuges and 100,000 acre-feet for urban supplies. Also not included in the 1.5 million figure is an additional 200,000 acre-feet of fish flows on the Trinity River and an unspecified amount for meeting new Delta water quality standards. In all, the 1.5 million acre-feet is actually well over 2 million acre-feet. That's more than a third of the CVP's average annual delivery of 6 million acre-feet.

So you see, it is not "only" 1.5 million acre-feet that we are talking about in HR 5099.

A workable compromise on upfront environmental water will require that the water be made available in specific amounts for specific purposes; that the environmental deliveries be phased in over a reasonable time; and that development of new water supplies in the Central Valley be made a priority. Simply throwing water at environmental problems is not acceptable.

Water for wetlands and wildlife refuges is another important issue, but it is one where there is broad agreement. Both HR 3876 and HR 5099 would firm up existing water supplies for wildlife refuges and require the development of up to 526,000 acre-feet of refuge water over time. The differences between the bills on this issue are not great, and I'm confident they can be resolved.

Both bills also would allow, for the first time in history, CVP agricultural water to be transferred to urban areas through water marketing. However, they differ significantly in how transfers would be regulated. The Chairman's bill simply leaves it up to state law to regulate water sales. The problem is that there is NO state law on water transfers. HR 5099 simply allows water to be transferred out of the CVP, while providing absolutely no protection for the rural communities that are at risk of being de-watered by wealthy cities and corporations. As a representative of a rural area, I cannot possibly endorse that sort of approach. The obligation of the agricultural community in the Owens Valley of California stands as a vivid reminder of what "open" water marketing is all about.

HR 3876's water transfer provisions were negotiated by urban and agriculture water users in California. They include protections for rural communities, groundwater supplies and the environment.

Critics of my bill claim that it allows local water districts to veto water transfers. Not so. The bill allows the districts, as the legal water contract holders, to review proposed transfers to ensure that they comply with the community and environmental protections. If a transfer does comply, the water district has no choice but to approve it. There is no such thing as an arbitrary veto. If the language in the bill is not plain enough on that point, I will be happy to change it to make plain.

Critics also claim that the water transfer provisions in HR 3876 are a backdoor attempt to "lock in" 40-year water contracts. Baloney. Again, if the bill is not clear

on that, I'll fix it. In fact, the sponsors of HR 3876 have always said that they are willing to discuss any aspect of the transfer provisions, so long as they protect rural communities from having their life's blood sold entirely to cites and urban-based businesses.

The other critical issues of funding for fish and wildlife mitigation and altering the CVP purposes to include fish and wildlife protection probably can be resolved if agreement can be reached on the amount of water to be dedicated to environmental purposes.

The bottom line is that the agricultural community needs certainty. At the end of this process, it must be assured of an absolutely reliable supply of water. The witnesses from the agricultural community are here today to explain that to you. They are not professional advocates, lawyers or lobbyists. They aren't here to spout figures and statistics or debate the merits of various bills. They're here to explain how farming works in the Central Valley and to debunk the popular myth that all farmers in California are getting rich growing surplus crops on poison land with wasteful amounts of subsidized water.

The vast majority of the farmers in the Valley are just like these people, the owners of small, highly efficient farms producing high-value crops. All we ask is that you keep that in mind as the committee moves forward on CVP legislation.

One more issue. The Chairman's bill includes a provision authorizing a study to determine the merits and pitfalls of transferring the CVP to the state of California or another entity. I support that provision. No body can seriously claim to know that transferring this massive project to the state is a good idea. It might be, but let's find out before we do it. I therefore cannot support Mr. Campbell's legislation, though I commend his interest in the issue.

Members of the committee on both sides of the larger CVP debate have expressed their willingness to reach agreement on a CVP bill that provides certainty to both agriculture and the environment. I'm greatly encouraged by that and will work hard to bring about such an agreement. However, if a satisfactory agreement can't be reached, and HR 5099 or anything like it moves forward, I and my colleagues who represent the vast majority of the CVP area will be forced to do anything and everything we can to stop it.

If HR 5099 were enacted, it would result in a permanent drought in my district in Central California. If it had been in place in the past five years of drought, my district would have receive no CVP water. Family farms wouldn't be here.

The bottom line is that for the farming communities of Central California, this debate is more than an exercise in basic politics: It's a matter of survival.

Thank you.

Chairman Miller. Thank you.

Senator Bradley.

## PANEL CONSISTING OF HON. BILL BRADLEY, SENATOR FROM NEW JERSEY; HON. GARY CONDIT, REPRESENTATIVE FROM CALIFORNIA; HON. WILLIAM THOMAS, REPRESENTATIVE FROM CALIFORNIA; HON. VIC FAZIO, REPRESENTATIVE FROM CALIFORNIA; AND HON. WALLY HERGER, REPRESENTATIVE FROM CALIFORNIA;

### STATEMENT OF HON. BILL BRADLEY

Mr. Bradley. Thank you very much, Mr. Chairman. I appreciate the opportunity to come over and spend a few minutes with you and talk about a subject that is not unfamiliar to me or to you or to members of the committee or the people in this room.

I'm familiar with H.R. 5099 and I strongly support the bill and urge the committee to approve it. I'm also familiar with H.R. 3876, the counterpart of the Senate bill that passed. I strongly oppose H.R. 3876. Taken as a whole, it is worse than current law and it is an insult to California's cities, environment, fishery and waterfowl dependent businesses and non-CVP agricultural interests.

Mr. Chairman, I also think that I ought to put something else on the record at this time. You have worked for years with thoughtful



representatives of California business, water, and environmental communities to identify and resolve the real, fundamental problems with the Federal government's management of the Central Valley Project.

You have been there year after year yet you have been opposed on every level by the CVP's political and financial beneficiaries. You have been vilified, you have been lied to and about and you have been threatened. But you also have been right. As we sit here today the CVP beneficiaries are at it again. They are attacking the messenger and hoping to dodge the message. They have invented funny numbers and have threatened to hurt every other western water interest if they don't get their way.

H.R. 3876 is widely and correctly known as the growers bill. In seeking support for their legislation, the advocates of CVP agribusiness would ask us to ignore what we know, abandon our common sense and join them in a bid to paper over California's real water problems.

We are told that fish don't need water, they just need more concrete. We are asked to embrace the fiction that the way to meet California's pressing urban water needs is to give CVP irrigation districts the power under Federal law to veto voluntary water transfers from growers to cities. No urban water user is assured access to water under this legislation.

We are told that the most lavishly subsidized irrigators in the nation can not pay more for their water and certainly can't pay for the environmental damage that they, in part, cause.

Mr. Chairman, you and many of your colleagues don't buy this nonsense and neither do I. Your legislation, H.R. 5099, offers the real reform needed for the CVP to meet California's urban, environmental and agricultural water needs.

This bill proposes a mix of operational, structural and financial measures intended to meet water needs in the Central Valley and around the State of California. It is balanced, effective, and ironically, the bill's effectiveness may be what has most panicked its opponents.

Mr. Chairman, after participating in California water issues for some time—first hearings in Sacramento for six or seven hours, over 75 witnesses in five hearings in California, and in Washington talking with literally hundreds of representatives of California business, agriculture, environmental interests—I have come to the conclusion that there are individuals in the California water development community whose deepest fear is that fish and wildlife problems could be solved and urban water needs met without digging the Peripheral Canal, without damming and diverting a North Coast river, or without dramatically boosting California's share of the Colorado River. They have picked their favored solution and will work to defeat other alternatives, no matter how sensible, cost-effective or timely.

I don't put it past these individuals to have concluded that it is in their interest to push the salmon and striped bass and other species in the Sacramento/San Joaquin Delta toward extinction in order to create crisis-driven leverage for construction and favorable financing of the Peripheral Canal and upsetting the Colorado River Compact to take more of Arizona, Colorado and Wyoming's water.

In closing, Mr. Chairman, let me speak briefly on H.R. 4687, Mr. Campbell's bill which would authorize transfer of the CVP to California. As you know, I have consistently advocated careful study of the CVP's transfer. I see no public benefit, however, in legislation such as this which would turn the fate of the CVP over from Congress to a small group of political appointees who, to this point, have shown little responsibility to the taxpayer, environment, or water users outside the CVP. As far as I can tell, this bill would place the CVP squarely into the hands of the people who have shielded it from public accountability over the past 40 years.

This concludes my remarks. I would be pleased to answer any questions you may have.



Chairman MILLER. Senator, thank you very much. Thank you very much for your remarks. But, more importantly, I wish to thank you for your long effort and your hard work on behalf of reforming the Central Valley Project.

I think, as you quite succinctly pointed out, it is simply a fact that this project is no longer operating in harmony, if you will, with the California environment, with the modern California economy and with the interest of the United States' taxpayers. It is now completely out of synchronization with all that we believe about the needs of our economy, the needs of our environment. And it clearly was fashioned in a bygone era and we can not continue to operate it in modern times.

So I appreciate very much your support, your effort, your dedication to an issue that basically confronts us in California and has not drawn a great deal of attention up until your involvement. I look forward to seeing you in conference.

And I know that you have a time problem but let me just ask other members of the committee if they quickly have any question that they would like to ask the Senator or not?

Mr. LEHMAN. We will see the Senator in conference.

Chairman MILLER. See that? That's encouraging. What the hell, let's go. What are we wasting people's time for?

Mr. BRADLEY. Maybe we should wrap the conference up prior to—not prior to Memorial Day but shortly thereafter.

Chairman MILLER. You will find Mr. Lehman more tenacious than that.

Mr. Rhodes, do you have any opening statement or anything?

Mr. RHODES. No.

Chairman MILLER. Next we go to Mr. Condit. Welcome to the Committee.

## STATEMENT OF HON. GARY CONDIT

Mr. CONDIT. Thank you. I am pleased to have this opportunity to testify before this Subcommittee and I am honored to have one of my constituents, Mr. Phil Larson, present today to testify before the Subcommittee. It is residents of the Central Valley such as Mr. Larson that can inform this Subcommittee on the real impact of why we are here today. Where I live sets squarely within the Central Valley of California, specifically the San Joaquin valley. The residents, businesses and communities in my district depend upon the Central Valley Project for flood control, agriculture and urban water supply, fish and wildlife habitats and recreation.

In the last few years agriculture industries in our state have been hurt by a variety of natural and man-made problems. The six-year drought and the 1990 freeze are beyond the powers of government to solve, but government, by its planning and preparation, can mitigate problems associated with the needs of California in addition to the needs of the environment. There is no doubt that California agriculture and millions of people who depend upon it would not have survived the six consecutive years of drought we are now facing without construction of the Central Valley Project and the California State water projects. It is also without question that the storage capacity in our present water systems must be ex-

panded if we are to meet the needs of growth and adequately prepare for the agriculture and urban and environmental needs for water in our future years.

Unfortunately, many groups and individuals see the water issue as it relates to the Valley in simplistic terms. In an effort to woo votes and support, many officials ignore the vital importance of water to Valley residents and stereotype them as greedy, corporate farmers who do not care for the future of our environment. The truth is quite the opposite. Why would the farmers who farm the community, people who live in this area for many generations, want to destroy an environment that must produce for them every day?

As I have mentioned before, the state is currently facing the sixth consecutive year of drought. At the same time, our state population is rapidly increasing. I eagerly support public policy that responsibly addresses and balances the growing demands on California's limited water supply. I believe that the Central Valley Project should, and more important, can operate in a manner that optimizes human and environmental benefits through maximum operational and water use flexibility, conservation and water transfers. However, I cannot support any legislation measure that would seek to accomplish these goals at a cost that would devastate families, businesses and communities in my District and in the entire San Joaquin Valley.

Mr. Chairman, members of the Committee, H.R. 5099, the Central Valley Improvement Act, mandates over 1.5 million acre-feet of CVP resources to be reallocated to up front water from contract purposes to unspecified environmental purposes. This action would cripple, if not destroy, many segments of agriculture in California, particularly in areas of my district such as Merced County, which rely heavily upon CVP water.

In a wet year, H.R. 5099 legislates a drought for CVP agricultural and urban water contractors. In critically dry or true drought years, these water users will likely receive no water from CVP. Mr. Chairman and members of the Subcommittee, this is not a workable or reasonable means of addressing the CVP issue with balancing the needs of the Central Valley communities and the environment.

In economic terms, the reallocation of such large quantities of CVP water will have a particularly serious impact on the west side of my District, an area of small water districts serving family farms. A recent University of California study concluded that such a tremendous reduction in water supply could result in a farm income decline of $306 per acre-feet. As mandated by H.R. 5099, this would amount to over $91 million in loss for the farmers within my constituency. This would no doubt result in indirect collateral economic damage and dislocation for farm laborers, agricultural businesses, and entire communities. In a district already impacted by economic problems, such as the closing of Castle Air Force Base, the economic cost of H.R. 5099 would be intolerable.

Earlier I expressed my commitment to support public policy that addresses concerns about the impact of the CVP upon the environment as long as such policy accounted for the needs and concerns of those dependant upon the CVP as well. In November of last



year, I co-sponsored legislation H.R. 3876, introduced by my colleagues, Mr. Dooley and Mr. Lehman. As both have stated in their opening remarks, H.R. 3876 would provide mitigation for fish and wildlife impacts of the CVP while providing adequate CVP water for use by urban and rural Californians as well. It is this approach to develop a realistic solution to the Central Valley Project environmental issues that I will continue to support.

Mr. Chairman, I thank you and the members of the Subcommittee for providing me the opportunity to express these views and concerns. The economic vitality of the Central Valley is directly related to agriculture and agriculture is directly related to the availability of water. Hundreds of jobs will be directly impacted on the decision that you will be making in the near future. I urge the Subcommittee to listen carefully to the farmers who will be testifying before you today. It is these individuals whose livelihoods you will be changing.

Mr. Chairman, I thank you very much for the opportunity to be here and ask that I submit any additional documentation to the record, please.

[The prepared statement of Congressman Condit follows:]

73-409 0 - 93 - 6

Statement Of The Honorable
BILL THOMAS
Subcommittee on Water, Power and Offshore Energy Resources
May 14 1992

I appreciate this opportunity to discuss Central Valley Project bills because water allocations are a critical subject for my constituency. I support H.R. 3876 because it strikes an important balance in the water supply issues. I cannot support H.R. 5099 as introduced for reasons I will discuss.

Both H.R. 5099 and H.R. 3876 are intended to improve conditions for fish and wildlife. The people I represent are not opposed to taking reasonable steps to protect wildlife and improve habitat. We do object to the approach H.R. 5099 takes because it would impose significant changes in Central Valley Project water allocations on which millions of Californians depend for jobs and on which millions of others depend for reasonably-priced supplies of fruits, vegetables, and other commodities.

The bill is not going to affect California farmers alone. The state's economy will be cut back by $6 to $9 billion and consumers across the country will find goods such as table grapes, almonds and processed tomato products more expensive because California's San Joaquin Valley is the primary U.S. source of these goods.

H.R. 5099's impact on farming alone would be substantial. It would mean, according to California Department of Food and Agriculture estimates, idling 800,000 acres of farm land and a loss of $1 to $2 billion in farm income. That translates into a loss of millions in wages and thousands of jobs in agriculture. The impact could be even greater because the bill will produce a number of administrative difficulties for San Joaquin Valley communities.

One major problem with the bill lies in its limitation on contract renewals. The bill limits contracts between the Bureau of Reclamation and water districts to twenty years instead of today's forty, a term which will make it harder for farmers to secure long-term financing and make decisions about whether to plant permanent crops because of uncertainties about future water supplies and pricing. The effect could be even more drastic as the bill calls for development of environmental impact statements on all Central Valley Project contracts before they can be renewed. Such a task would be difficult if not impossible to complete, creating a de facto moratorium on contract renewals.

Second, the bill contains a completely unfair approach to the "double subsidy" issue. This bill says that a farmer will pay "full cost" for water if he simply grows a crop for which an acreage reduction program is in effect, absent a USDA decision that domestic stocks are needed for a reserve. The farmer gets penalized regardless of whether he is enrolled in a commodity program. Farmers will also get hit because water deliveries to

districts can be curtailed in relation to the amount of water used to produce "surplus" commodities during the preceding year. Again, the farmer gets hurt even if he does not get a commodity program payment.

Third, this bill asks water agencies to do the impossible in order to obey federal law. H.R. 5099 requires contracts with districts to ensure that meters are installed to monitor all deliveries of surface and groundwater within five years. Districts have no power to compel people to meter their water, especially people who are drawing on groundwater they own. H.R. 5099 also makes districts responsible for compliance with water quality laws with regard to agricultural drainage. The districts do not control discharges, individual farmers do, and the requirement thus puts both farmers who act responsibly and the water districts themselves at risk of being in noncompliance.

Fourth, and perhaps most significant, H.R. 5099 sets immediate allocations of water for fish and wildlife. At least 1.5 million acre-feet would be reallocated and perhaps in excess of 2 million acre-feet would be involved once all the bill's provisions and related projects are implemented. Even if these allocations are cut because of drought, H.R. 5099 still reduces water available to agriculture and urban contractors by a great degree. In a normal year, the bill is going to require cuts in water supplies to these users by as much as 50% of the amount they could normally draw under contract. In a drought year, like this one, farmers and urban users may get no water.

All this is done in the name of trying to double specified populations of fish within the next 10 years. It is not clear whether that is a feasible goal. What we do know is that H.R. 5099 will drastically affect millions of people in the San Joaquin Valley and indeed the rest of the country.

In contrast, H.R. 3876 is designed to improve fish and wildlife habitat through a series of initial actions and, over the next eight years, other steps that include improving existing facilities to aid fish population growth, improving spawning sites, support for fish hatcheries and provision of water supplies. Instead of simply picking a volume of water, H.R. 3876 will force an examination of the effectiveness and costs of various options before habitat improvements are made.

All of us know this subject is a contentious one. Unfortunately, we are not starting with a clean slate where San Joaquin Valley water policy is concerned. The fact is that millions of lives have been built in dependence on today's water supply system and the effect of what we do on those lives cannot be ignored. We need to provide a balance between wildlife and human needs, the approach H.R. 3874 uses to balance a series of competing interests. I urge you to use it as the Subcommittee's markup vehicle and to accept its provisions in conference with the Senate.

Mr. THOMAS.
ocean to the Ne
graphical cross
Mount Whitney
and take a look
example of what
I think that y
has occurred in
culture is that
terms of air pol
Federal governm
the other, attem
more difficult t
Owens Valley a
when the wind l
In addition t
minority comm
ricultural oper
ations are punis
ished.
It is ironic th
trying to hurt
sion to my frie
wants. We are
We didn't desig
medicine to go
to those who wa
What's wron
Valley Project,
dealing with ne
design it that w
It's interesti
black and whit
enties with a
attempting to
It is ironic t
that have been
centuries are t
Federal subsid
built levies tin
again. The Ce
still reaping t
than willing t
You show m
been rebuilt
EIRs and fish
they are naiv
black and wh
salmon and
other? That a
ion of double
this side whit
are people wh
down and wor