R.O. Draft 10/22/1985

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

Contract No.
14-06-200-7773A
Amendatory

AMENDATORY WATER SERVICE CONTRACT
BETWEEN THE UNITED STATES
AND
SAN LUIS WATER DISTRICT

THIS CONTRACT, made this 13th day of January, 19 86 pursuant to the Act of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, including the Act of August 26, 1937 (50 Stat. 844), as amended; and the Act of August 4, 1939 (53 Stat. 1187), as amended, all collectively hereinafter referred to as the Federal reclamation laws, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, represented by the officer executing this contract, hereinafter referred to as the Contracting Officer, and SAN LUIS WATER DISTRICT, hereinafter referred to as the Contractor.

WITNESSETH, That:

EXPLANATORY RECITALS

WHEREAS, the Contractor and the United States entered into a contract for the delivery of Central Valley Project water to the Contractor, contract No. 14-06-200-7773A, dated June 18, 1974, hereinafter referred to as the contract; and

WHEREAS, the United States encourages active conservation programs by users of Central Valley Project water; and

WHEREAS, in the interest of water conservation the parties desire to amend said contract;

NOW, THEREFORE, in consideration of the covenants herein contained, the parties agree as follows:

EFFECTIVE DATE OF AMENDATORY CONTRACT

1. This amendatory contract shall become effective on March 1, 1986

MODIFICATIONS TO CONTRACT

2. (a) Article 1 (f) of the contract is amended to read as follows:

(f) "year" shall mean the period commencing March 1 of each year through and including the last day of February of the following year.

Notwithstanding the provisions of Article 3 (c) of the contract, the quantity of water the United States shall be obligated to furnish, and the Contractor pay for, during the period commencing March 1, 2008, and ending December 31, 2008, shall be 110,000 acre-feet.

OTHER PROVISIONS OF THE CONTRACT

3. Except as specifically modified by the provisions hereof, the contract shall remain in full force and effect as originally written.

IN WITNESS WHEREOF, the parties hereto have executed this amendatory contract the day and the year first above written.

THE UNITED STATES OF AMERICA

By ______________________
Acting Regional Director, Mid-Pacific Region
Bureau of Reclamation

SAN LUIS WATER DISTRICT

By ______________________
President

ATTEST:

______________________
Secretary

JBCYASL

# United States Department of the Interior

BUREAU OF RECLAMATION

MID-PACIFIC REGIONAL OFFICE
2800 COTTAGE WAY
SACRAMENTO, CALIFORNIA 95825

IN REPLY REFER TO: MP-440
832.

DEC 8 1975

Board of Directors
San Luis Water District
Post Office Box 2135
Los Banos, California 93635

Letter Agreement Pertaining to Contract No. 14-06-200-7773A

Gentlemen:

In accordance with the provision in Article 3(c) of your contract, No. 14-06-200-7773A, the maximum quantity of 128,000 acre-feet of water to be made available each year by the United States and to be paid for by the District may be reduced by mutual agreement of the Contracting Officer and the District.

Pursuant to Article 33 of your contract, an approved change within the District boundaries has resulted in a decrease of 1,328 assessed acres requiring a reduction of 2,920 acre-feet of Project water.

Therefore, in accordance with the aforesaid provision in Article 3(c) the maximum quantity of Project water to be furnished by the United States and paid for by the District pursuant to that Article during the remaining term of the contract will not be in excess of 125,080 acre-feet.

If this letter is satisfactory to you, please have the President and Secretary of the District affix their signatures on the duplicate of this letter and return it to the Project Superintendent, Tracy Office (CVP), P. O. Box 1209, Tracy, California 95376, along with a certified copy of your resolution authorizing such action.

Sincerely yours,

M.A. Catino

M. A. Catino
Acting Regional Director

SAN LUIS WATER DISTRICT

[signature]
President

[signature]
Secretary

Date 1/13/76

In Duplicate

CONSERVE AMERICA'S ENERGY

*Save Energy and You Serve America!*

United States Department of the Interior
BUREAU OF RECLAMATION
REGIONAL OFFICE, REGION 2
2800 COTTAGE WAY
SACRAMENTO, CALIFORNIA 95825

IN REPLY REFER TO: MP-440
832.

JUN 11 1975

Board of Directors
San Luis Water District
Post Office Box 666
Los Banos, California 93635

Gentlemen:

During negotiations of the Contract Between the United States and San Luis Water District Providing for Water Service and Superseding Contract No. 14-06-200-7563, dated June 18, 1974 (No. 14-06-200-7773A), certain provisions granting large landowners to sell excess land under recordable contract to another purchaser, including other excess landowners, was deleted.

These deletions were on the basis that the Bureau does not have authority to include such language in water service contracts but if Congress approves the proposed water service contract with Westlands Water District which contains the above language, then the June 18, 1974 contract would be amended accordingly.

It has come to our attention that related language in reference to the sale of excess land under recordable contracts was inadvertently left in subsection (1), subdivision (b) of Article 22 of the June 18, 1974 contract.

We are hereby requesting your concurrence on the duplicate copy of this letter, as indicated in the space below, to revise the contract in lines 16 and 17 on page 37 by changing the comma to a period after the word "provided" and deleting the remaining words of that sentence on the same basis as the aforementioned deletions were made.

Sincerely yours,

H. E. Horton

H. E. Horton
Acting Regional Director

In duplicate

Concur

George Lindemann, President

Joseph W. Carlucci, Secretary-Treasurer

Seal

R.O. Draft 12/4-1972
Rev. W.O. 3/26-1974

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT NO.
14-06-200-7773A

CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND SAN LUIS WATER DISTRICT PROVIDING FOR WATER SERVICE AND SUPERSEDING CONTRACT NO. 14-06-200-7563

Table of Contents


| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1- 3 |
| 1 | Definitions | 3- 5 |
| 2 | Term of Contract--Right to Use of Water | 6- 7 |
| 3 | Water Service to be made Available to the Contractor | 7- 9(a) |
| 4 | Use of San Luis Drain | 9(a)-10 |
| 5 | Schedules for the Delivery of Water and Furnishing of Power | 10-11 |
| 6 | Use of Water Outside the Contractor's Service Area | 12 |
| 7 | Rates and Method of Payment for Agricultural Water and Drainage Service | 12-14 |
| 8 | M&I Use of Water Furnished to Contractor--Measurement--Rates and Method of Payment | 15-17 |
| 9 | Adjustments | 18 |
| 10 | Points of Delivery--Measurement and Responsibility for Distribution of Water--Return Flow--Temporary Reductions | 18-20 |
| 11 | Pumping Plants and Power--Operating Rules and Regulations | 20-21 |
| 12 | Transfer of Operation and Maintenance of Pumping Plants to Contractor | 21 |
| 13 | Operation and Maintenance of Pumping Plants--United States to be Held Harmless | 22-24 |
| 14 | Contractor to Pay Certain Miscellaneous Costs Relating to Pumping Plants | 24 |
| 15 | Review and Inspection of Pumping Plants for Determining Adequacy of Maintenance | 25 |
| 16 | Transfer of Care, Operation, and Maintenance of San Luis Unit to State of California | 26 |
| 17 | Drainage Studies and Facilities | 26 |
| 18 | Water Shortage and Apportionment | 26-31 |
| 19 | Limitations on Delivery of Water | 32 |

| Article No. | Title | Page No. |
|---|---|---|
| 20 | Land Not to Receive Water Furnished to Contractor by United States Until Owners Thereof Execute Certain Contracts | 32-33 |
| 21 | Valuation and Sale of Excess Lands | 34-36 |
| 22 | Excess Lands | 36-39 |
| 23 | Repeal or Amendment of Federal Reclamation Laws | 39 |
| 24 | Water Acquired by Contractor Other than from the United States | 40-42 |
| 25 | Rules, Regulations, and Determinations | 42-43 |
| 26 | General Obligation--Benefits Conditioned upon Payment | 43-44 |
| 27 | Penalty for Delinquent Payments | 44 |
| 28 | Quality of Water | 44-45 |
| 29 | Environment Protection and Pollution Control | 45 |
| 30 | Equal Opportunity | 45-48 |
| 31 | Title VI, Civil Rights Act of 1964 | 48-50 |
| 32 | Books, Records, and Reports | 50 |
| 33 | Changes in Contractor's Organization | 50 |
| 34 | Notices | 51 |
| 35 | Assignment Limited--Successors and Assigns Obligated | 51 |
| 36 | Officials Not to Benefit | 51 |
| 37 | Contingent on Appropriation or Allotment of Funds | 52 |
| 38 | Confirmation of Contract | 52 |
| 39 | Renegotiation | 53 |
| | Signature page | 53 |
| | Exhibit A (Map) | |

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT NO.
14-06-200-7773A

**CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND SAN LUIS WATER DISTRICT PROVIDING FOR WATER SERVICE AND SUPERSEDING CONTRACT NO. 14-06-200-7563**

THIS CONTRACT, made this 18 day of June, 1974, pursuant to the Act of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, all collectively hereinafter referred to as the Federal reclamation laws, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, and the SAN LUIS WATER DISTRICT, hereinafter referred to as the Contractor, a public agency of the State of California, organized, existing, and acting pursuant to the laws thereof, with its principal place of business in Los Banos, California,

WITNESSETH, That:

**EXPLANATORY RECITALS**

WHEREAS, the United States is constructing and operating the Federal Central Valley Project for the purpose, among others, of furnishing water for irrigation, municipal, domestic, and other beneficial uses; and

WHEREAS, the United States is constructing the San Luis Unit of the Federal Central Valley Project which will be operated and used,

Preamble
Explanatory Recitals

in part, for the furnishing of water to the Contractor pursuant to the terms of this contract;

WHEREAS, on February 25, 1959, the United States and the Contractor entered into a contract, No. 14-06-200-7563, hereinafter referred to as the initial contract, which provided for the furnishing from Delta-Mendota Canal of the Central Valley Project a supplemental water supply for agricultural use on lands within said Contractor's service area;

WHEREAS, part of the Contractor's service area lies within the Federal San Luis Unit service area and Project water for this area will be available for furnishing to the Contractor from said Unit; and

WHEREAS, the United States is constructing the San Luis Drain to meet the drainage requirements of the San Luis Unit of the Federal Central Valley Project; and

WHEREAS, it is desired to reduce the quantity of water under the initial contract and, pursuant to the Federal reclamation laws and the laws of the State of California, to provide for the furnishing by the United States of a supply of water from the San Luis Unit and for drainage service by means of the San Luis Drain for which the Contractor will make payment to the United States upon the basis, at the rate, and pursuant to the conditions hereinafter set forth; and

WHEREAS, the Contractor proposes to construct under a contract between the United States and the Contractor pursuant to Public Law 84-130 (69 Stat. 245), as amended, water delivery facilities necessary to utilize water furnished from the San Luis Unit facilities; and

WHEREAS, said contract will be executed at the same time as this contract; and

WHEREAS, investigations of the streamflow in the Sacramento River, the Trinity River, the American River, the San Joaquin River, and their tributaries indicate that there will be available for furnishing to the Contractor from the San Luis Unit a supplemental water supply for surface diversion and direct application for irrigation; and

WHEREAS, it will be to the advantage of the parties to supersede the initial contract;

NOW, THEREFORE, in consideration of the covenants herein contained, it is agreed as follows:

## DEFINITIONS

1. When used herein, unless otherwise distinctly expressed, or manifestly incompatible with the intent hereof, the term:

(a) "Secretary" or "Contracting Officer" shall mean the Secretary of the Interior or his duly authorized representative;

(b) "Project" shall mean the Central Valley Project California, of the Bureau of Reclamation;

(c) "San Luis Unit facilities" shall mean the Project facilities constructed pursuant to the Act of June 3, 1960 (74 Stat. 156), including the San Luis Canal and canalside and relift pumping plant installations and appurtenant facilities such as pump structures, the portions of moss screen structures upon which pumps are set, pumps, motors, manifolds, surge tanks, air chambers, surge suppressor valves, electrical transformation and metering facilities, protection and control equipment and cabinets, and such telemetering, automatic and other control equipment as may be required for starting and stopping the pumps;

(d) "water delivery facilities" shall mean the water conveyance and lateral system to be constructed by the Contractor pursuant to the Act of July 4, 1955 (69 Stat. 244), as amended, for the furnishing of water from the San Luis Unit facilities to Improvement Districts 1, 2, and 3 as described in Exhibit A attached hereto;

(e) "San Luis Drain" shall mean the Project's drainage facilities to be constructed by the United States for the disposal of drainage water from the San Luis Unit pursuant generally to the Act of June 3, 1960;

(f) "year" shall mean a calendar year;

(g) "newly irrigated land" shall mean land on which, as demonstrated to the satisfaction of the Contracting Officer, an

irrigated crop has not been produced prior to the availability of water delivery facilities to such land from the San Luis Unit;

(h) "agricultural use" shall mean water used primarily in the commercial production of agricultural crops or livestock, including domestic use incidental thereto, on tracts of land operated in units of more than 2 acres;

(i) "municipal, industrial, and domestic (hereinafter abbreviated M&I) use, shall mean use of water for other than agricultural use;

(j) "Delta-Mendota Canal service area" and "San Luis Unit service area" shall mean the respective areas to which Project water is delivered from the Delta-Mendota Canal and the San Luis Unit facilities; and

(k) "initial delivery date" shall mean January 1 of the year following (1) the date announced by the Contracting Officer that the water delivery facilities and the San Luis Unit facilities will have been completed to the point where substantially all of the lands can be served from said facilities designed to serve such lands, or (2) the date announced by the Contracting Officer that all funds will have been expended for said facilities: Provided, That the announcement of the initial delivery date shall not be later than July 1 of any year.

TERM OF CONTRACT--RIGHT TO USE OF WATER

2. (a) This contract shall supersede the initial contract dated February 25, 1959

(b) This contract shall be effective on January 1 next following the date first hereinabove written and shall remain in effect through December 31, 2008: Provided, That under terms and conditions agreeable to the parties hereto, renewals of this contract for furnishing water may be made for successive periods not to exceed 40 years each. The terms and conditions of each renewal shall be agreed upon not later than 1 year prior to the expiration of the then existing contract: Provided further, That upon written request by the Contractor of the Secretary not later than 1 year prior to the expiration of this contract, whenever, account being taken of the amount then credited to the costs of construction of water supply works allocated to irrigation, the remaining amount of costs so allocated which is properly assignable for ultimate return by the Contractor as established by the Secretary of the Interior pursuant to (3) of Section 1 of Public Law 643 (70 Stat. 483) probably can be repaid to the United States

within the term of a contract under subsection (d), Section 9 of the 1939 Reclamation Project Act (53 Stat. 1187), this contract, insofar as it pertains to the furnishing of agricultural water, may be converted to a contract under said subsection (d) upon terms and conditions agreeable to the United States and the Contractor.

(c) The right to the beneficial use of water furnished to the Contractor pursuant to the terms of this contract and any renewal hereof shall not be disturbed so long as the Contractor fulfills all of its obligations under this contract and any such renewal.

WATER SERVICE TO BE MADE AVAILABLE TO THE CONTRACTOR

3. (a) Each year, commencing with the effective date of this contract and extending for 5 years after the initial delivery date, the United States shall make available to the Contractor and the Contractor shall pay, as provided in Article 7, for a minimum quantity of 80,000 acre-feet of firm water, but in no event shall the Contractor be entitled in any year to more than 128,000 acre-feet of firm water or such larger amount as may be established pursuant to subdivision (f) of this article.

(b) Each year, commencing with the 6th year and ending with the 15th year after the initial delivery date, the Contractor shall pay for, as provided in Article 7, and the United States shall make available to the Contractor water in the quantities specified in the schedule, or any revision thereof, submitted in accordance with Article 5, but not less than the average annual amount that was furnished to the Contractor



. . . Article 2(b)-(c)
Article 3(a)-(b) . . .

by the United States during the immediately previous 3 years but not less than 80,000 nor more than 128,000 acre-feet.

(c) Commencing with the 16th year after the initial delivery date and each year thereafter, the United States shall be obligated to make available and the Contractor required to pay for 128,000 acre-feet of firm water or such larger amount as may be established pursuant to subdivision (f) of this article: Provided, That the United States and the Contractor by agreement may reduce the quantity of water which the United States is obligated to make available and the Contractor obligated to pay for during the remainder of the term of this contract.

(d) If in any year after the Contracting Officer has approved a schedule or any revision thereof submitted by the Contractor, pursuant to subdivision (a) of Article 5, the United States is unable to furnish any portion of the water in the quantities and at the times requested in the schedule and the Contractor does not elect to receive and does not receive such water at other times during such year, the Contractor shall be entitled to an adjustment as provided in Article 9.

(e) To the extent of the capacity of Project facilities and the availability of Project water developed for use in service areas other than the San Luis Unit service area and in excess of long-term contractual commitments of such other service areas, all as determined by the Contracting Officer, the United States, each year, shall make available to long-term contractors in the San Luis Unit service area an additional quantity of water, hereinafter referred to as interim water.

Available interim water shall be apportioned among said long-term contractors in proportion to the quantity of firm water scheduled to be delivered from the San Luis Unit facilities during that year. The Contractor shall have 60 days to schedule all or any part of its share of interim water. Should any contractor not accept interim water, its share shall be apportioned among the other contractors in the same manner as above.

(f) The United States, with the support of the Contractor shall strive toward the development pursuant to Reclamation law of additional water storage and conveyance facilities as a part of the Project so that additional supplies of firm water can be made available for the Contractor. Such additional supplies of firm water which are to be allocated to the Contractor shall not be furnished from supplies which are necessary for lands to be served by works presently proposed or authorized for development: Provided, however, That the Contractor shall have a priority on a pro rata basis with other long-term contractors for water from San Luis Unit to water which is surplus to the needs of the service area of said additional water storage and conveyance facilities. The Contractor's share of said surplus water shall be in the same proportion as its maximum contractual commitment bears to the total of the maximum contractual commitment of all other long-term contractors for water from the San Luis Unit. If and when

firm water becomes available from the Project either from existing works or from facilities to be constructed in the future by the United States which can be furnished to the Contractor for the remainder of the term of this contract, the United States by written notice shall inform the Contractor of the quantity and the rate per acre-foot to be paid for such water and the Contractor shall have 6 months in which to accept such allocation.

USE OF SAN LUIS DRAIN

4. (a) The Contracting Officer shall notify the Contractor in writing when

(1) the San Luis Drain is available for service from the lands within the San Luis Unit service area of the Contractor, and

(2) the San Luis Drain is completed to and including its outlet.

(b) Drainage facilities of the Contractor may be connected to the San Luis Drain for disposal of the Contractor's subsurface drainage water which originates directly and without further concentration or degradation of said waste water from surface application of water within the Contractor's service area and for the disposal of other waste water as conclusively determined by the Contracting Officer: Provided, That for the period between receipt of written notices pursuant to subsections (1) and (2) of subdivision (a) of this article the Contractor shall only discharge subsurface drainage water into the San Luis Drain in quantities annually not to exceed the amount determined by multiplying the number of acres in the San Luis Unit service area of the Contractor for which tile drains have been constructed by 0.75 acre-feet: Provided further, That commencing with the year following receipt of the written notice pursuant to subsection (2), the portion of the Contractor' subsurface drain water that may be discharged into the San Luis Drain shall be in the proportion that the acre-feet of Project water for which a drainage charge has been paid for by the Contractor pursuant to Article 7 bears to the total acre-feet of Project water applied for agricultural use in the Contractor's service area, as determined by the Contracting Officer.

(c) If there is a shortage of capacity in the San Luis Drain the Contractor's share of said capacity shall be as determined by the Contracting Officer after consultation with the Contractor.

(d) The location of the Contractor's connection to the San Luis Drain shall be agreed upon between the Contractor and the Contracting Officer.

(e) All subsurface drainage water disposed into the San Luis Drain shall be measured by the United States at the connection established pursuant to subdivision (d) of this article with equipment installed, operated, and maintained by the United States.

<u>SCHEDULES FOR THE DELIVERY OF WATER AND FURNISHING OF POWER</u>

5. (a) Before November 1 of each year the Contractor shall submit in writing to the Contracting Officer a schedule, subject to the

provisions of Article 3 hereof in a form and from an operational standpoint satisfactory to the Contracting Officer indicating the desired times and quantities of water to be made available for delivery of water from the Delta-Mendota Canal and San Luis Unit pursuant to this contract during the following year, together with a schedule in a form and from an operational standpoint satisfactory to the Contracting Officer of the power needed to pump water from the San Luis Unit. The United States shall attempt to deliver said water and without cost to the Contractor furnish such power in accordance with said schedule or any revision thereof satisfactory to the Contracting Officer submitted by the Contractor within a reasonable time before the desired change of time or quantities.

(b) If the Contractor during any month is furnished a quantity of water from the Delta-Mendota Canal and/or San Luis Unit in addition to that which it has requested for such month in its schedule and accepts such water, the Contractor shall be deemed to have revised its schedule and ordered such additional water and the United States shall be deemed to have accepted such revision as satisfactory. As soon thereafter as possible the Contractor shall submit a revised schedule to the United States for the remaining quantity to be delivered during that year from either the Delta-Mendota Canal or San Luis Canal or both.

USE OF WATER OUTSIDE THE CONTRACTOR'S SERVICE AREA

6. Water furnished to the Contractor pursuant to this contract shall not be sold or otherwise disposed of for use outside the Contractor's service area described in Exhibit A of this contract without the written consent of the Contracting Officer.

RATES AND METHOD OF PAYMENT FOR AGRICULTURAL WATER AND DRAINAGE SERVICE

7. (a) Unless a lower rate of payment for the ensuing year is announced by the Contracting Officer, the Contractor shall pay for agricultural water at the following rates:

(1) Seven Dollars and Fifty Cents per acre-foot for water furnished from the San Luis Unit facilities;

(2) Three Dollars and Fifty Cents per acre-foot for water furnished from Delta-Mendota Canal: Provided, That this rate shall be redetermined effective in 1996 and, if necessary, every 5th year thereafter by the Contracting Officer in accordance with the agricultural water rate policy of the Project: Provided further, That no later than 1 year prior to the effective date of a change in this rate, the Contracting Officer shall notify the Contractor of the amount of such proposed change and shall make available to the Contractor for its review and comment the data and calculations upon which the proposed change is based; and

(3) Fifty Cents for a drainage charge per acre-foot of:

a. All water made available from the San Luis Unit effective on January 1 of the year following the date announced by the Contracting Officer pursuant to subsection (1) of subdivision (a) of Article 4 that the facilities of the San Luis Drain are substantially completed and available for use from the San Luis Unit service area of the Contractor or at such earlier time as the Contractor commences to utilize said Drain; and

b. That portion of the total acre-feet of water made available from the Delta-Mendota Canal as may be requested by written notice from the Contractor to the Contracting Officer beginning with the year following the date the Contractor is notified that the San Luis Drain is completed pursuant to subsection (2) of subdivision (a) of Article 4: Provided, That the Contractor by written notice may increase or decrease such portion upon written approval by the Contracting Officer.

(b) The Contractor shall make payments to the United States each year at the rates provided in subdivision (a) of this article for the quantity of water which the Contractor is required to pay for during such year pursuant to the provisions of Article 3. Before January 1 beginning the year following execution of this contract the Contractor shall pay the amount payable pursuant to the approved schedule for the months of January and February immediately following. Before the end of said month of January and before the end of each month thereafter the Contractor shall pay the amount payable pursuant to the latest approved schedule, during the second month immediately following. Adjustments between the payment for the scheduled quantities of water and the payment for quantities actually made available each month shall be made during the following month.

(c) In the event the Contractor is unable, fails, or refuses to accept delivery of the quantities of water available for delivery to and required to be accepted by it pursuant to this contract, or in the event the Contractor in any year during the periods described in Article 3 hereof fails to submit a schedule for delivery as provided in subdivision (a) of Article 5, said inability, failure, or refusal shall not relieve the Contractor of the obligation to pay for such water and the Contractor agrees to make payment therefor in the same manner as if said water had been delivered to and accepted by the Contractor in accordance with this contract.

M&I USE OF WATER FURNISHED TO CONTRACTOR--
MEASUREMENT--RATES AND METHOD OF PAYMENT

8. (a) Water furnished from the Delta-Mendota Canal and the San Luis Unit in accordance with Article 3 of this contract may be furnished by the Contractor for M&I use subject to the terms and conditions hereinafter stated.

(1) Except as provided in subsection (2) of this subdivision, water furnished by the Contractor for M&I use shall be measured by the Contractor with equipment installed, operated, and maintained by the Contractor. Said equipment and its installation, service, and use shall be approved by the Contracting Officer. The United States shall have full access at all reasonable times to inspect said measuring equipment to determine the accuracy and conditions thereof and any errors in measurement disclosed by said inspection shall be adjusted. If said facilities are found to be defective or inaccurate they shall be adjusted, repaired, or replaced by the Contractor. In the event the Contractor neglects or fails to make such repairs or replacements within a reasonable time as may be necessary to satisfy the operating requirements of the Contracting Officer, the United States may cause the repairs or replacements to be made and the costs thereof charged to the Contractor, which charge shall be paid

to the United States before April 1 of the year following that in which the cost was incurred and a statement thereof furnished by the Contracting Officer.

(2) Measurements at canalside delivery points established pursuant to Article 10, which are used exclusively to deliver water for M&I use, as determined by the Contracting Officer, shall be made by the United States with equipment installed, operated, and maintained by the United States

(3) The Contractor shall maintain, in a manner satisfactory to the Contracting Officer, records of the quantity of water furnished for use pursuant to subdivision (a) of this article and will submit a report to the Contracting Officer before the 7th day of each month following the month in which water is so furnished showing the quantities of water used.

(b) Within 30 days after a statement has been furnished to the Contractor by the Contracting Officer, the Contractor shall pay an additional amount for the quantity of agricultural water from the Delta-Mendota Canal or the San Luis Unit used for M&I purposes at a rate per acre-foot equal to the difference between the respective rates paid for said water for agricultural use and the following rates:

(1) For water delivered from the Delta-Mendota Canal, $12.50 per acre-foot

(2) For water delivered from the San Luis Unit facilities, $25 per acre-foot.

The rates for M&I water set forth in this subdivision may be readjusted by the Contracting Officer on July 1, 1976, and on July 1 of each 5th year thereafter upon 6 months written notice to the Contractor.

(c) Use of water pursuant to this article shall not constitute a right or commitment during the term of this contract, or any renewal thereof, for delivery of water in addition to that provided pursuant to Article 3.

ADJUSTMENTS

9. The amount of any overpayment by the Contractor by reason of the quantity of water actually available during any year, as conclusively determined by the Contracting Officer, having been less than the quantity of such water which the Contractor otherwise under the provisions of this contract would have been required to receive and pay for shall be applied first to any accrued indebtedness arising out of this contract then due and owing to the United States by the Contractor and any amount of such overpayment then remaining shall, at the option of the Contractor, be refunded to the Contractor or credited upon amounts to become due to the United States from the Contractor under the provisions hereof in the ensuing year. Such adjustment shall constitute the sole remedy of the Contractor or anyone having or claiming to have the right to the use of any of the water supply provided for herein

POINTS OF DELIVERY--MEASUREMENT AND RESPONSIBILITY FOR DISTRIBUTION OF WATER--RETURN FLOW--TEMPORARY REDUCTIONS

10. (a) The water to be furnished to the Contractor pursuant to this contract will be delivered at existing points on the Delta-Mendota Canal and such points on the San Luis Canal as may be agreed upon in writing by the Contracting Officer and the Contractor.

(b) In addition to the measurement of M&I water as provided in subsection (2) of subdivision (a) of Article 8, all other water delivered to the Contractor pursuant to this contract shall be measured by the United States at the points of delivery with equipment installed, operated, and maintained by the United States. Upon the request of the Contractor, the accuracy of such measurements will be investigated by the Contracting Officer and any errors adjusted.

(c) The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water which may be furnished at the delivery points established pursuant to subdivision (a) of this article nor for claim of damage of any nature whatsoever, including but not limited to property damage, personal injury or death, arising out of or connected with the control, carriage, handling, use, disposal, or distribution of such water beyond such delivery points: Provided, That the United States reserves the right to all waste, seepage, and return flow water derived from water furnished to the Contractor hereunder and which escapes or is discharged beyond the Contractor's service area boundaries and nothing herein shall be construed as an abandonment or a relinquishment by the United States of any such water, but this shall not be construed as claiming for the United States any right, as waste, seepage, or return flow, to water being used pursuant to this contract for surface irrigation or under-ground storage within the Contractor's service area boundaries by the Contractor or those claiming by, through, or under the Contractor.

(d) The United States may temporarily discontinue or reduce the quantity of water to be furnished to the Contractor or the service of the drainage facilities herein provided for the purpose of such investigation, inspection, maintenance, repair, or replacement as may be necessary of any of the Project facilities used in the furnishing

of water and drainage service to the Contractor, or any part thereof, but so far as feasible the Contracting Officer will give the Contractor due notice in advance of such temporary discontinuance or reduction, except in case of emergency, in which case no notice need be given In the event of a discontinuance or reduction, the United States, upon resumption of service, will attempt to deliver the quantity of water which would have been furnished to the Contractor in the absence of such contingency.

PUMPING PLANTS AND POWER--OPERATING RULES AND REGULATIONS

11. (a) Without payment or cost to the Contractor, in addition to those provided in Articles 7 and 8, the United States shall furnish and install the San Luis Unit facilities and furnish power necessary to deliver Project water from the San Luis Canal at heads and elevations sufficient to irrigate by gravity the areas located below the 700-foot elevation within the San Luis Unit service area susceptible of service from said Canal which are large enough to justify such installations, all as determined by the Contracting Officer.

(b) The Contractor at its own expense may install temporary pump installations and shall furnish, install, and maintain metering and other electrical facilities, all satisfactory to the Contracting Officer, for use temporarily in lieu of pumping plants to be furnished pursuant to subdivision (a) hereof. Subject to the concurrence of the

Pacific Gas and Electric Company in the conveyance of Project power and subject to the Contractor bearing the costs associated with power facilities as may be assessed by the Company, the United States shall furnish power without additional charge to the Contractor for said temporary pumping installations.

(c) The furnishing of power by the United States shall be in conformance with operating criteria, rules, and regulations established by the Contracting Officer. Such operating criteria, rules, and regulations shall be developed in cooperation with the Contractor and shall be based on acceptable irrigation management practices and the power generation capacity available to the United States for the furnishing of water to the Contractor.

TRANSFER OF OPERATION AND MAINTENANCE OF PUMPING PLANTS TO CONTRACTOR

12. Upon completion of construction of all or any part of the pumping plants provided pursuant to Article 11, the United States, upon giving a 90-day written notice to the Contractor, may transfer to the Contractor all or any part of said plants to be operated and maintained by the Contractor, and real and personal property used or useful in the operation and maintenance of the pumping plants, all in accordance with Article 13.

OPERATION AND MAINTENANCE OF PUMPING PLANTS--
UNITED STATES TO BE HELD HARMLESS

13. (a) Upon the effective date of transfer of the pumping plants provided pursuant to Article 12, the Contractor shall accept and at the Contractor's expense care for, operate, and maintain said pumping plants in full compliance with Federal reclamation laws and the terms of this contract in such manner that said pumping plants will remain in good and efficient condition.

(b) The United States shall bear the cost of major replacements required as determined by the Contracting Officer as a result of disaster or obsolescence. The Contractor at its own cost and expense shall furnish and install in said pumping plants such replacement parts as are required for proper maintenance.

(c) The Contracting Officer or his representative shall at all times have access to and may inspect and investigate the pumping plants for the purpose of ascertaining if they are being kept in safe and proper operating condition.

(d) No change in any of the pumping plants, which in the opinion of the Contracting Officer is substantial, shall be made by the Contractor without first obtaining the written consent of the Contracting Officer. The Contractor promptly shall make any and all repairs and replacements to the pumping plants which in the opinion of the Contracting Officer are necessary. In the event the Contractor

neglects or fails to make such repairs and replacements or in the event of Government operation of the pumping plants pursuant to subdivision (e) of this article, the United States may cause the repairs and replacements to be made and the cost thereof, as determined by the Contracting Officer, shall be paid by the Contractor to the United States upon notice of the payment due but not later than April 1 of the year following that during which such work was completed.

(e) In the event the Contracting Officer determines that the Contractor has not properly cared for, operated, and maintained said pumping plants or has failed to comply with any of the provisions of this article, then at the election of the Contracting Officer the United States may take over from the Contractor the care, operation, and maintenance of the pumping plants by giving written notice to the Contractor of such election and the effective date thereof. Thereafter during the period of Government operation the Contractor shall pay to the United States in advance of the use of such pumping plants its share of the cost of operation and maintenance thereof and replacements therefor, as fixed in notices from the Contracting Officer In the event such advances are inadequate to properly care for, operate, and maintain the pumping plants to the end of any year, the Contracting Officer may give written notice of a supplemental operation and maintenance charge and the Contractor shall pay such amount on or before the

date specified in said notice. Any amount of such advances remaining unexpended or unobligated, at the option of the Contractor either shall be refunded or credited upon amounts to become due to the United States from the Contractor under the provisions of this contract in subsequent years. The pumping plants so taken back by the United States may be returned to the Contractor upon the furnishing to the Contractor of a written 90-day notice of intention to retransfer.

(f) No liability shall accrue against the United States and its officers and employees because of any damage or injury caused by the operation of said pumping plants by the Contractor. The Contractor shall hold the United States harmless from every claim for damage to persons or property arising out of, or connected with any work performed pursuant to this contract by the Contractor.

CONTRACTOR TO PAY CERTAIN MISCELLANEOUS COSTS RELATING TO PUMPING PLANTS

14. During the time the pumping plants are operated and maintained by the Contractor, in addition to all other payments to be made by the Contractor under this contract, the Contractor shall pay to the United States within 60 days following the receipt of a detailed cost statement such specific items of direct cost incurred by the United States for work associated with the pumping plants under this contract normally charged by the United States to water users and properly and equitably chargeable to the Contractor plus a percentage of such direct costs for administrative and general overhead in accordance with the procedures approved by the Secretary.

## REVIEW AND INSPECTION OF PUMPING PLANTS FOR DETERMINING ADEQUACY OF MAINTENANCE

15. (a) The Contracting Officer with the Contractor may, from time to time, make review of maintenance of the pumping plants constructed hereunder and being operated by the Contractor with a view to assisting the Contractor in determining the condition of facilities and the adequacy of the maintenance program. This review may include any part or all of the pumping plants constructed pursuant to this contract. A report of the review, including recommendations, if any, will be prepared and copies will be furnished to the Contractor. Except for such participation by the Contractor as it may desire, the review will be without cost to the Contractor

(b) If deemed necessary by the Contracting Officer or requested by the Contractor, special inspections of the pumping plants constructed hereunder and being operated by the Contractor and of the Contractor's books and records may be made to ascertain the extent of any operation and maintenance deficiencies, to determine the remedial measures required for their correction, and to assist the Contractor in solving specific problems. Any special inspection or audit shall, except in a case of emergency, be made after written notice to the Contractor and the actual cost thereof shall be paid by the Contractor to the United States.

## TRANSFER OF CARE, OPERATION, AND MAINTENANCE OF SAN LUIS UNIT TO STATE OF CALIFORNIA

16. The United States has transferred the San Luis Unit to the State of California for care, operation, and maintenance but such transfer shall not affect the rights or obligations of either party to this contract.

## DRAINAGE STUDIES AND FACILITIES

17. To aid in determining the source and solution of future potential drainage problems the Contractor shall initiate and maintain, in a manner satisfactory to the Contracting Officer, a program of groundwater observation in order to delineate shallow water table areas and shall furnish annually to the Contracting Officer during the term of this contract and any renewal thereof, records and analyses of such observations as they relate to potential drainage problems. The Contractor shall construct such drainage works as are necessary to protect the irrigability of lands within the Contractor's service area

## WATER SHORTAGE AND APPORTIONMENT

18. (a) In its operation of the Project the United States will use all reasonable means to guard against a condition of shortage in the quantity of water available to the Contractor pursuant to this contract. If, nevertheless, a shortage does occur during any year on account of drought, errors in operation, or other causes which, in the opinion of the Contracting Officer, are beyond the control of the United States,

in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect arising therefrom: Provided, That nothing contained herein shall be construed as an assumption of liability by the Contractor with respect to such matters. In a year in which the Contracting Officer determines that there is a shortage in the quantity of water available to customers of the United States from the Project, the Contracting Officer will apportion the available water among the service areas capable of receiving water from the same Project water supply in such manner as he deems equitable and physically possible, subject to the following limitations. Except for quantities of water which have been converted from agricultural use, which in this article are treated as agricultural water, the quantities to water users receiving M&I water service shall not be reduced until the reduction assigned to agricultural water users amounts to 25% of the agricultural (including converted water) contractual commitments for that year. In the event further reductions are necessary, M&I, converted water, and agricultural water supplies shall be reduced by the same percentages: Provided, That the foregoing shall not affect the obligations of the United States under contracts entered into for water service in other service areas prior to the execution of this contract or under water rights settlements.

(b) In any year in which a shortage may occur the United States reserves the right to apportion the available water supply among the Contractor and others entitled under the then existing long-term contracts to receive water from the Delta-Mendota Canal in the manner described in subsections (1) through (3) of this subdivision: Provided, That commencing with the year 1996 shortages in the supply available from the Delta-Mendota Canal shall be apportioned in the manner set forth in subdivisions (c) and (d) of this article

(1) A determination shall be made of the total quantity of firm water scheduled to be delivered during the respective year under all contracts then in force for the delivery of water from the Delta-Mendota Canal, the quantity so determined being herein referred to as the contractual commitments from the Delta-Mendota Canal

(2) The total quantity of water scheduled to be delivered to the Contractor from the Delta-Mendota Canal during the respective year under Article 3 shall be divided by the contractual commitments, the quotient thus obtained being herein referred to as the Contractor's contractual entitlement from the Delta-Mendota Canal.

(3) The supply determined by the Contracting Officer to be available from the Delta-Mendota Canal shall be multiplied by the Contractor's contractual entitlement and the result shall be the quantity of water required to be delivered by the United States to the Contractor for the respective year from the Delta-Mendota Canal.

(c) In a year in which the Contracting Officer determines that there is a shortage in the quantity of water available to customers of the United States from the San Luis Canal, the Contracting Officer reserves the right to apportion the available firm water among the Contractor and others entitled under the then existing long-term contracts to receive water from the San Luis Canal. For purposes of apportioning the available firm supply, firm water for agricultural use shall mean the total quantity of firm water available less the quantity required for M&I use, as determined by the Contracting Officer. Such apportionment shall be made as follows:

(1) A determination shall be made of the total quantity of firm water scheduled to be delivered for agricultural use during the respective year under all contracts then in force for delivery from the San Luis Canal, the quantity so determined being hereinafter referred to as the contractual commitments from the San Luis Canal.

(2) The total quantity of firm water scheduled to be delivered to the Contractor from the San Luis Canal for agricultural use during the respective year under Article 3 shall be divided by the contractual commitments from said Canal, the quotient thus obtained being hereinafter referred to as the Contractor's contractual entitlement from the San Luis Canal.

(3) The firm water determined by the Contracting Officer to be available for agricultural use from the San Luis Canal shall be multiplied by the Contractor's contractual entitlement and the result shall be the quantity of firm water for agricultural use which the Contractor is entitled to from the San Luis Canal for the respective year: Provided, That any reduction in water scheduled to be delivered for agricultural use in excess of 25% shall be made in accordance with subdivision (d) hereof.

(d) If the Contracting Officer determines that the total available quantity of firm water scheduled for any year from the San Luis Canal is less than the sum of 75% of the firm contractual commitments for agricultural water plus 100% of the firm contractual commitments for M&I water from said Canal, apportionment of such water shall be as follows:

(1) A reduced contractual commitment for each entity entitled to water service from the San Luis Canal during the respective year shall be computed by reducing the entity's contractual commitment, if any, for agricultural water use by 25% and adding the reduced amount to the entity's contractual commitment for M&I water.

(2) The quantity of water available from the San Luis Canal during the respective year shall be divided by the sum of the reduced contractual commitments computed pursuant to paragraph (1).

(3) The amount of water which is to be made available to the Contractor from the San Luis Canal during the respective year shall be computed by multiplying the Contractor's reduced contractual commitment computed pursuant to paragraph (1) by the quotient computed in paragraph (2).

(e) The United States agrees that it will not voluntarily and knowingly, by execution of new contracts establishing additional long-term contractual commitments for water from the Sacramento-San Joaquin Delta or otherwise, do anything which would limit its ability to deliver water that is available to it from the Sacramento-San Joaquin Delta to the Contractor and others presently entitled thereto.

LIMITATIONS ON DELIVERY OF WATER

19. Pursuant to the provisions of the Act of June 3, 1960, no water provided from the San Luis Unit pursuant to this contract shall be delivered to any water user in the Contractor's service area for the production on newly irrigated lands of any basic agricultural commodity, as defined in the Agricultural Act of 1949 or any amendment thereof, if the total supply of such commodity, as estimated by the Secretary of Agriculture for the marketing year in which the bulk of the crop would normally be marketed, will be in excess of the normal supply as defined in Section 301(b)(10) of the Agricultural Adjustment Act of 1938, as amended, unless the Secretary of Agriculture calls for an increase in production of such commodity in the interest of national security.

LAND NOT TO RECEIVE WATER FURNISHED TO CONTRACTOR BY UNITED STATES UNTIL OWNERS THEREOF EXECUTE CERTAIN CONTRACTS

20. (a) No water made available pursuant to this contract shall be furnished to any excess lands as defined in Article 22 unless the owners thereof shall have executed valid recordable contracts in form prescribed by the United States, agreeing to the provisions of this article and Articles 21 and 22 hereof, agreeing to the appraisal provided for in Article 21 and that such appraisal shall be made on the basis of the actual bona fide value of such lands at the date of the appraisal without reference to the construction of the Project, all as hereinafter provided, and agreeing to the sale of such excess lands

under terms and conditions satisfactory to the Secretary and at prices not to exceed those fixed, as hereinafter provided. No sale of any excess lands shall carry the right to receive water made available pursuant to this contract, unless and until the purchase price involved in such sale is approved by the Contracting Officer and upon proof of fraudulent representation as to the true consideration involved in such sales the United States may instruct the Contractor by written notice to refuse to furnish any water subject to this contract to the land involved in such fraudulent sales and the Contractor thereafter shall not furnish said water to such lands until written notice is withdrawn.

(b) If Project water furnished to the Contractor pursuant to this contract reaches the underground strata of excess land owned by a large landowner, as defined in Article 22 hereof, who has not executed a recordable contract and the large landowner pumps such Project water from the underground, the Contractor will not be deemed to have furnished such water to said lands within the meaning of this contract if such water reached the underground strata of the aforesaid excess land as an unavoidable result of the furnishing of Project water by the Contractor to nonexcess lands, or to excess lands with respect to which a recordable contract has been executed.

## VALUATION AND SALE OF EXCESS LANDS

21. (a) The value of the excess irrigable lands within the Contractor's service area held in private ownership of large landowners, as defined in the next succeeding article hereof for the purposes of this contract, shall be appraised in a manner to be prescribed by the Secretary. At the option of a large landowner, however, the value of such land may be appraised, subject to the approval thereof by the Secretary, by three appraisers. One of said appraisers shall be designated by the Secretary and one shall be designated by the Contractor and the two appraisers so appointed shall name the third. If the appraisers so designated by the Secretary and the Contractor are unable to agree upon the appointment of the third, the Presiding Justice of the Fifth District Court of Appeal of the State of California shall be requested to designate the third appraiser.

(b) The following principles shall govern the appraisal:

(1) No value shall be given such lands on account of the existing or prospective possibility of securing water from the Project.

(2) The value of improvements on the land at the time of said appraisal shall be included therein, but shall also be set forth separately in such appraisal.

(c) The excess land of any large landowner shall be reappraised at the instance of the United States or at the request of said landowner. The cost of the first two appraisals of each tract of excess land shall be paid by the United States. The cost of each appraisal thereafter shall be paid by the party requesting such appraisal.

(d) Any improvements made or placed on the appraised land after the appraisal hereinabove provided for prior to sale of the land by a large landowner shall be appraised in like manner.

(e) Excess irrigable lands sold by large landowners within the Contractor's service area shall not carry the right to receive water made available pursuant to this contract for such lands so sold until, in addition to compliance with the other provisions hereof, a verified statement showing the sale price upon any such sale shall have been filed with the Contractor and said sale price is not in excess of the appraised value fixed as provided herein.

(f) The Contractor agrees to take all reasonable steps requested by the Contracting Officer to ascertain the occurrence and conditions of all sales of irrigable land of large landowners in the Contractor's service area made subsequent to the execution of this contract and to inform the United States concerning the same.

(g) A true copy of this contract and each recordable contract executed pursuant to this article and Articles 20 and 22 hereof shall be furnished to the Contractor by the United States and shall be maintained on file in the office of the Contractor and like copies in such offices of the Bureau of Reclamation as may be designated by the Contracting Officer and shall be made available for examination during the usual office hours by all persons who may be interested therein.

EXCESS LANDS

22. (a) As used herein the term "excess land" means that part of the irrigable land in excess of 160 acres held within the Contractor's service area in the beneficial ownership of any single person, whether a natural person, a corporation, or the beneficiary of a trust approved by the Contracting Officer. With respect to land held in coownership, such as tenancy in common, joint tenancy, or community property, the beneficial ownership of each coowner shall be that fraction of the total acreage held in coownership which equals the

coowner's fractional interest therein. The term "large landowner" means an owner of excess lands, and the term "nonexcess land" means all irrigable land within the Contractor's service area which is not excess land as defined herein. Lands owned by the State, its political subdivisions, and agencies shall be administered in accordance with Public Law 91-310.

(b) Each large landowner as a further condition precedent to the right to receive water made available pursuant to this contract for any of his excess land shall:

(1) Before any water is furnished by the Contractor to his excess land, execute a valid recordable contract in form prescribed by the United States, agreeing to the provisions contained in this article and Articles 20 and 21 hereof. He will agree to dispose of his excess land in accordance therewith to persons who can take title thereto as nonexcess land as herein provided, or as excess land subject to said recordable contract to any other person. The price shall not exceed the approved, appraised value of such excess land and said land shall be disposed of within a period of 10 years after the date of execution of said recordable contract. If said land is not so disposed of to persons who have taken title thereto as nonexcess land within said period of 10 years, the Secretary shall have the power to dispose of said

land at the appraised value thereof fixed as provided herein or such lower price as may be approved by the owner of such land, subject to the same conditions as would apply to such large landowner. The Contractor agrees that it will refuse to furnish water to any large landowner other than for his nonexcess land until such owner meets the conditions precedent herein stated; and

(2) Within 30 days after the date of notice from the United States requesting a large landowner to designate his irrigable lands within the Contractor's service area which he desires to designate as nonexcess lands, file in the office of the Contractor, in duplicate, one copy thereof to be furnished by the Contractor to the Bureau of Reclamation, his written designation and description of lands so selected to be nonexcess land and upon failure to do so the Contractor shall make such designation and mail a notice thereof to the large landowner, and in the event the Contractor fails to act within such period of time as the Contracting Officer considers reasonable, such designation will be made by the Contracting Officer, who will mail a notice thereof to the Contractor and the large landowner. The large landowner shall become bound by such action on the part of the Contractor or the Contracting Officer and the Contractor will furnish said water only to the land so

designated to be nonexcess land. A large landowner may with the consent of the Contracting Officer designate land other than that previously designated as nonexcess land: Provided, That an equal acreage of the land previously designated as nonexcess shall, upon such new designation, become excess land thereafter subject to the provisions of this article and Articles 20 and 21 of this contract.

REPEAL OR AMENDMENT OF FEDERAL RECLAMATION LAWS

23. In the event that the Congress of the United States repeals the so-called excess land provisions of the Federal reclamation laws, Articles 20, 21, and 22 of this contract will no longer be of any force or effect, and, in the event that the Congress amends the excess land provisions or other provisions of the Federal reclamation laws, the United States agrees, at the option of the Contractor, to negotiate amendments of appropriate articles of this contract, all consistently with the provisions of such amendment.

WATER ACQUIRED BY CONTRACTOR OTHER THAN FROM THE UNITED STATES

24. (a) The provisions of this contract shall not be applicable to or affect water or water rights now owned or hereafter acquired by the Contractor or landowners within the Contractor's service area other than from the United States: Provided, That such water is not transported through the Contractor's facilities constructed or financed by the United States. Water furnished pursuant to the terms of this contract may be transported by means of the same distribution facilities used for other water now available or which may become available to the Contractor or landowners within the Contractor's service area other than pursuant to the terms of this contract if the Contracting Officer determines that such mingling is necessary to avoid a duplication of facilities; and notwithstanding such mingling of water, the provisions of this contract shall be applicable to the quantity of water furnished to the Contractor pursuant to the terms hereof, and such mingling of water shall not in any manner subject to the provisions of this contract the quantity of water acquired by or available to the Contractor or landowners within the Contractor's service area other than from the United States.

(b) With respect to the distribution works or portions thereof in which mingling is permitted as provided in subdivision (a) hereof, the Contractor:

(1) Will be responsible for the operation and maintenance of separate outlets from the distribution system for nonexcess and excess lands as defined in Article 22 hereof. At the request of the Contracting Officer, the Contractor will be responsible for the installation, operation, and maintenance of water-measuring equipment at delivery points to excess lands and, further, will be responsible for the installation, operation, and maintenance of similar equipment for measuring the water available to the Contractor or landowners within the Contractor's service area other than from the Project, and the Contracting Officer may check and inspect said equipment at any time; and

(2) Agrees that the quantity of water furnished to it by the United States during each 24-hour period will be delivered by the Contractor through the aforesaid outlets to eligible lands only. The Contractor shall be deemed to be in breach of this article and Articles 20, 21, and 22 of this contract if at any time there is furnished to all excess lands not covered by recordable contracts and served by the distribution works or portions thereof in which mingling is permitted, a quantity of water which is greater than that which the Contractor or landowners within the Contractor's service area have introduced into said system from the supply available other than pursuant to this contract.

RULES, REGULATIONS, AND DETERMINATIONS

25. (a) The Contracting Officer shall have the right to make, after an opportunity has been offered to the Contractor for consultation, rules and regulations consistent with the provisions of this contract, the laws of the United States and the State of California, to add to or modify them as may be deemed proper and necessary to carry out this contract, and to supply necessary details of its administration which are not covered by express provisions of this contract. The Contractor shall observe such rules and regulations.

Where the terms of this contract provide for action to be based upon the opinion or determination of either party to this contract, whether or not stated to be conclusive, said terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations. In the event that the Contractor questions any factual determination made by the Contracting Officer, the findings as to the facts shall be made only after consultation with the Contractor and shall be conclusive upon the parties.

GENERAL OBLIGATION--BENEFITS CONDITIONED UPON PAYMENT

26. (a) The obligation of the Contractor to pay the United States as provided in this contract is a general obligation of the Contractor notwithstanding the manner in which the obligation may be distributed among the Contractor's water users and notwithstanding the default of individual water users in their obligations to the Contractor.

(b) The payment of charges becoming due hereunder is a condition precedent to receiving benefits under this contract. No water will be made available to the Contractor through Project facilities during any period in which the Contractor may be in arrears in the advance payment of any operation and maintenance or water service charges due the United States. The Contractor shall not furnish water

made available pursuant to this contract for lands or parties which are in arrears in the advance payment of operation and maintenance or toll charges as levied or established by the Contractor

PENALTY FOR DELINQUENT PAYMENTS

27. The Contractor shall pay a penalty on installments or charges which become delinquent computed at the rate of 1% per month of the amount of such delinquent installments or charges for each day from the date of such delinquency until paid: Provided, That no penalty shall be charged to the Contractor unless such delinquency continues for more than 30 days in which event the penalty shall accrue from the initial date of delinquency.

QUALITY OF WATER

28. (a) The operation and maintenance of Project facilities and the construction of new Project facilities for the provision of Project water under this contract shall be performed in such a manner as is practicable to maintain the quality of raw water to be furnished hereunder. The United States is under no obligation to construct or furnish water treatment facilities to maintain or better the quality of water. Further the United States does not warrant the quality of water to be furnished pursuant to this contract.

(b) The Contractor shall not be obligated to accept and pay for any water which contains in excess of 300 parts by weight of chloride per 1,000,000 parts of water. To the extent that any adjustment

is necessary because of the existence of chloride in the water available for furnishing to the Contractor in excess of the quantity herein specified and because of previous payments by the Contractor, such adjustment shall be made in a manner similar to that provided in Article 9 hereof. No adjustment shall be made hereunder in relation to any water actually furnished to and used by, through, or under the Contractor for any purpose.

## ENVIRONMENT PROTECTION AND POLLUTION CONTROL

29. The Contractor shall, within its legal authority, comply fully with all applicable Federal laws, orders, and regulations, and the laws of the State of California, all as administered by appropriate authorities, concerning protection of the environment and pollution of air, streams, reservoirs, groundwater, or water courses with respect to thermal pollution or the discharge of refuse, garbage, sewage effluent, industrial waste, oil, mine tailings, mineral salts, or other pollutants.

## EQUAL OPPORTUNITY

30. During the performance of this contract, the Contractor agrees as follows:

(a) The Contractor will not discriminate against any employees or applicant for employment because of race, color, religion, sex, or national origin. The Contractor will take affirmative action to ensure that applicants are employed, and

that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity clause.

(b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

(c) The Contractor will send to each labor union or representatives of workers with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Contracting Officer advising the labor union or workers' representative of the Contractor's commitments under this Equal Opportunity clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The Contractor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(e) The Contractor will furnish all information and reports required by Executive Order No. 11246 and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts by the Contracting Officer and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the Contractor's noncompliance with the Equal Opportunity clause of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 11246 and such other sanctions may be imposed and remedies invoked as provided in said Executive Order or by rules, regulation or order of the Secretary of Labor, or as otherwise provided by law.

(g) The Contractor will include the provisions of subdivisions (a) through (g) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 so that such provisions will be binding upon each subcontractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as the Contracting Officer may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided however, That in the event the Contracting Officer becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Contracting Officer the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

TITLE VI, CIVIL RIGHTS ACT OF 1964

31. (a) The Contractor hereby agrees that it will comply with Title VI of the Civil Rights Act of 1964 (P.L. 88-352) and all requirements imposed by or pursuant to the Department of the Interior Regulation (43 CFR 17) issued pursuant to that title, to the end that, in accordance with Title VI of that Act and the Regulation, no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of,

or be otherwise subjected to discrimination under any program or activity for which the Contractor receives financial assistance from the Bureau of Reclamation and hereby gives assurance that it will immediately take any measures to effectuate this agreement.

(b) If any real property or structure thereon is provided or improved with the aid of Federal financial assistance extended to the Contractor by the Bureau of Reclamation, this assurance obligates the Contractor, or, in the case of any transfer of such property, any transferee for the period during which the real property or structure is used for a purpose involving the provision of similar services or benefits. If any personal property is so provided, this assurance obligates the Contractor for the period during which it retains ownership or possession of the property. In all other cases, this assurance obligates the Contractor for the period during which the Federal financial assistance is extended to it by the Bureau of Reclamation.

(c) This assurance is given in consideration of and for the purpose of obtaining any and all Federal grants, loans, contracts, property, discounts, or other Federal financial assistance extended after the date hereof to the Contractor by the Bureau of Reclamation, including installment payments after such date on account of arrangements for Federal financial assistance which were approved before such date. The Contractor recognizes and agrees that such Federal

financial assistance will be extended in reliance on the representations and agreements made in this assurance, and that the United States shall reserve the right to seek judicial enforcement of this assurance. This assurance is binding on the Contractor, its successors, transferees, and assignees.

## BOOKS, RECORDS, AND REPORTS

32. The Contractor shall establish and maintain accounts and other books and records pertaining to its financial transactions, land use and crop census, water use, water supply, and to such other matters as the Contracting Officer may require. Reports thereon shall be furnished to the Contracting Officer in such form and on such date or dates as he may require. Subject to applicable Federal laws and regulations, each party shall have the right during office hours to examine and make copies of each other's books and records relating to matters covered by this contract.

## CHANGES IN CONTRACTOR'S ORGANIZATION

33. While this contract is in effect, no change shall be made in the Contractor's organization by inclusion or exclusion of lands, by dissolution, consolidation, or merger or otherwise, except upon the Contracting Officer's written consent.

NOTICES

34. Any notice authorized or required to be given to the United States shall be deemed to have been given when mailed, postage prepaid, or delivered to the Regional Director, Mid-Pacific Region, Bureau of Reclamation, 2800 Cottage Way, Sacramento, California 9581 behalf of the United States and to the Board of Directors of the San Luis Water District, Post Office Box 666, Los Banos, California 93635.

ASSIGNMENT LIMITED--SUCCESSORS AND ASSIGNS OBLIGATED

35. The provisions of this contract shall apply to and bind the successors and assigns of the parties hereto, but no assignment or transfer of this contract or any part or interest therein shall be valid until approved by the Contracting Officer.

OFFICIALS NOT TO BENEFIT

36. (a) No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise herefrom. This restriction shall not be construed to extend to this contract if made with a corporation for its general benefit.

(b) No official of the Contractor shall receive any benefit that may arise by reason of this contract other than as a water user within the Contractor's service area and in the same manner as other water users within the Contractor's service area.

## CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS

37. The expenditure of any money or the performance of any work by the United States hereunder which may require appropriation of money by the Congress or the allotment of funds shall be contingent upon such appropriation or allotment being made. The failure of the Congress so to appropriate funds or the absence of any allotment of funds shall not relieve the Contractor from any obligations then accrued under this contract and no liability shall accrue to the United States in case such funds are not appropriated or allotted.

## CONFIRMATION OF CONTRACT

38. The Contractor, upon execution of this contract, shall promptly secure a final decree of the proper court of the State of California approving and confirming the contract and decreeing and adjudging it and the apportionment of the benefits made thereunder to be lawful, valid, and binding on the Contractor. The Contractor shall furnish to the United States certified copies of such decrees and of all pertinent supporting records.

RENEGOTIATION

39. If, hereafter, the United States enters into, renews, or amends any contract for water from the Project which, because of a change in general reclamation law or generally applicable policy, contains terms and conditions substantially more favorable with respect to matters similar to those contained in this contract, the United States, upon the Contractor's request, will renegotiate this contract for the purpose of providing comparable terms in accordance with the new law or policy.

IN WITNESS WHEREOF, the parties hereto have executed this contract the day and year first above written.

THE UNITED STATES OF AMERICA

By H. E. Horton
Acting Regional Director, Mid-Pacific Region
Bureau of Reclamation

SAN LUIS WATER DISTRICT

By [signature]
President

(SEAL)

Attest:

[signature]
Secretary



Article 39
Signatures


EXHIBIT A
SERVICE AREAS OF SAN LUIS W. D.
AND IMPROVEMENT DISTRICTS 1, 2, & 3
DISTRICT BOUNDARY
IMPROVEMENT DISTRICT 1
IMPROVEMENT DISTRICTS 2 & 3