to respond appropriately, and if necessary to recuse itself. A stay for a reasonable period of time of claims 7-10 asserted in the FAC (portions of which are asserted in the complaint filed with the SWRCB), as well as on claims based on SWRCB determinations (Exhibit B of Federal Defendants' Reply), to enable the SWRCB to decide matters within its jurisdiction and unique competence will aid the efficient resolution of this case. An unreasonable or indefinite delay in adjudication of Plaintiffs' complaint is prejudicial. Before a stay is entered, the parties are directed to jointly inquire of the SWRCB if and when it will act on Plaintiffs's complaint. Absent a response within 30 days, the Court will consult with the parties regarding reference of the state water issues to the SWRCB, as special master. The Court retains jurisdiction over claims 1-6 for which no stay is necessary.

C. Plaintiffs' Motion for Summary Judgment

Plaintiffs seek partial summary judgment by their April 8, 1996, motion, that the Secretary of the Interior is not entitled to release water from New Melones for fishery and habitat purposes (as found in CVPIA § 3406(b)(2)) prior to supplying Plaintiffs with water under their water service contracts. Federal Defendants maintain that this court and the Ninth Circuit have already unequivocally stated that the Secretary does not have to supply water to contractors with rights superior to those of Plaintiffs prior to complying with § 3406(b)(2).

1. Whether the Secretary is Required to Supply Water under the Water Contracts Prior to Releasing Water for the Purposes Stated in CVPIA Section 3406(b)(2)

Plaintiffs argue they hold water service contracts with the Bureau which predate the CVPIA and therefore, the Secretary is required to provide water under such contracts prior to releasing water under § 3406(b)(2) of the CVPIA. Federal Defendants respond that the preamble of each contract specifies that the contract is made in pursuance of the Federal reclamation laws, as amended and supplemented, which include the CVPIA. Plaintiffs quote § 3406(b)(2) to argue the plain meaning of the statute indicates that the Secretary is to release water for fishery and wildlife purposes <u>after</u> flow requirements imposed by other agreements (including contracts), existing as of the effective date of enactment of the CVPIA, October 30, 1992, have been met.

> The Secretary . . . is authorized and directed to . . . dedicate and manage annually 800,000 acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife and habitat restoration purposes . . .
>
> . . . the term "Central Valley Project yield" means the delivery capability of the Central Valley Project during the 1928-1934 drought period <u>after</u> fishery, water quality and other flow and operational requirements imposed by the terms and other conditions existing in licenses, permits and other agreements pertaining to the Central Valley Project under applicable state or Federal law existing at the time of enactment of this title have been met. . . (emphasis added)

P.L. 102-575, § 3406(b)(2).

Plaintiffs argue that under the plain meaning rule, "after" means that water cannot be released for fishery or wildlife purposes until after the water requirements imposed by their contracts have been met. Citing Farr v. United States, 990 F.2d 451 (9th Cir. 1993), cert. denied, 510 U.S. 1023 (1993). Plaintiffs argue that traditional deference to an agency decision does not apply where rights arise under contract.

Plaintiffs maintain that their contracts are similar to those of the Exchange Contractors, held by this court in Westlands Water Dist. v. Patterson, 900 F. Supp. 1304 (E.D.Cal. 1995) to be "agreements pertaining to the Central Valley Project which must be satisfied before the calculation of the CVP yield is made." Id. at 1321. Plaintiffs claim that like the Exchange Contractors, Stockton East and Central have superior water rights which distinguish them from those who have water service contracts for surplus water. However, in contrast to the Exchange Contractors' riparian rights which existed prior to enactment of the CVP, Plaintiffs maintain, their water rights arise from California Water Code § 11460 (entitled "Watershed Protection Statute"). It reads:

> In the construction and operation by the department of any project under the provisions of this part a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom, shall not be deprived by the department directly or indirectly of the prior right to all of the water reasonably required to adequately supply the

> beneficial needs of the watershed, area, or any of the inhabitants or property owners therein.

In response, Federal Defendants argue that Plaintiffs do not have vested water rights cognizable under state law. Citing March 17, 1995 Memorandum Opinion, at 5:22 (Exhibit 4 to Federal Defendants' response). They compare Plaintiffs to Exchange Contractors, who "exchanged" their senior water rights to water in the San Joaquin River for a CVP water supply from the Delta. The Exchange Contractors did not have a contract for water delivery. See Westlands Water District v. Patterson, 864 F. Supp. 1536, 1549 (E.D. Ca. 1994). Federal Defendants note that Plaintiffs conceded in their suit for preliminary injunction against Federal Defendants that the Oakdale Irrigation District and South San Joaquin Irrigation District hold pre-1914 water rights in the Stanislaus River senior to their own. Citing March 17, 1993 Memorandum Opinion at 2-3 (Exhibit 4).

Plaintiffs argue the language of the CVPIA reflects Congressional intent to carry out habitat restoration activities without contravening existing agreements and subject to state water law. They cite CVPIA § 3408(I) (entitled "Water Conservation") to maintain that if Congress intended that 3406(b)(2) water requirements were to prevail over existing water service contracts, then there would be no need to provide conserved water for fishery and wildlife purposes. Citing Westlands Water Dist. v. NRDC, 43 F.3d 457, 461 (9th Cir. 1994) (an interpretation of a statutory scheme which results in the

emasculation of one portion of the statute is improper).

Plaintiffs also cite § 3408(j) as evidence of Congress' intent to require the Secretary to increase CVP yield so as to minimize adverse effects, if any, upon existing Central Valley Project water contractors. Plaintiffs maintain that this section indicates that Congress was uncertain as to whether the CVPIA would have any adverse effects on CVP water contractors. It follows, they maintain, that Congress therefore could not have intended the Secretary to disregard the water contracts, which would certainly have had an adverse effect on the contractors.

Federal Defendants argue that Plaintiffs ignore controlling law holding that Congress may retain sovereign powers to enact legislation which may modify previous contractual expectations. Citing Bowen v. Public Agencies Opposed to Social Security Entrapment, 477 U.S. 41 (1986); and Barcellos and Wolfsen v. Westlands Water District, 899 F.2d 814 (9th Cir.), cert. denied, 498 U.S. 998 (1990). Contracts with the government should be interpreted as retaining the sovereign power to legislate unless that authority is surrendered in unmistakable terms. Madera Irrigation District v. Hancock, 985 F.2d 1397, 1401 (9th Cir. 1993).[4] Federal Defendants argue that this court

---

[4] United States v. Winstar, 116 S. Ct. 2432 (1996), does not change the analysis. In Winstar, the Supreme Court held that the Government was liable for breach of contract with participants in the savings and loan industry, and that the sovereign act doctrine was not applicable.

In order for the sovereign act doctrine to excuse the Government's breach, the court held the Government must

has already considered a similar claim of entitlement to a fixed supply of water under contracts with the United States in Barcellos and rejected the claim that CVP water supply contracts create an unalterable property right. Barcellos, 849 F. Supp. at 722-724. Plaintiffs respond that although federal water service contracts may be subject to abrogation by reason of subsequent legislation, they are not subject to agency action not clearly authorized by Congress.

---

demonstrate that the passage of the statute rendering its performance impossible was a "public and general act not deemed specially to alter, modify, obstruct or violate the particular contracts it enters with private persons. . ." quoting Horowitz v. United States, 267 U.S. 458, 461 (1925). In other words, to be considered "public and general," the action's impact upon public contracts must be merely incidental to the accomplishment of a broader Governmental objective. Winstar, 116 S. Ct. at 2466. The Supreme Court held that FIRREA (the statute at issue) was not a public and general act, and that it had the substantial effect of releasing the Government from its own obligations. Id. at 2469. "The statute not only had the purpose of eliminating the very accounting gimmicks that acquiring thrifts had been promised, but the specific object of abrogating enough of the acquisition contracts as to make that consequence of the legislation a focal point of congressional debate." Id. at 2467. The Supreme Court held that in addition to demonstrating an act was "public and general," the Government must also demonstrate that the "passage of the statute rendering its performance impossible was an event contrary to the basic assumptions on which the parties agreed . . ." Id.

Unlike FIRREA, the CVPIA did not have the specific objective of relieving the government of its contractual obligations. Winstar, 116 S. Ct. at 2469. The passage of the CVPIA was not foreseeable and likely at the time the water contracts were executed. The CVPIA was passed in 1992, several years after the two water service contracts were executed. See 16 U.S.C. §1531 et seq. and P.L. 102-575, Title XXXIV. The parties to the contract cannot reasonably be charged with knowledge of the future environmental and reclamation act legislation. Nor was it foreseeable that such legislative changes would impinge upon the performance of the disputed contracts.

Federal Defendants reply that this court has already interpreted § 3406(b)(2) of the CVPIA in Westlands Water District v. Patterson, 900 F. Supp. 1304, 1321 (E.D. Cal. 1995) and found that water deliveries to senior water rights owners are to be satisfied prior to the contracts of those parties holding entitlements under federal repayment and water service contracts. Id. at 1321-1322. The only reasonable interpretation of the term `available water supply' in a repayment or water service contract is "the amount of CVP water determined to be available after satisfying the claims of Exchange Contractors and other holders of prior rights to CVP water." Id. at 1333.

Federal Defendants argue that like the Westlands Contract, Plaintiffs' contract is not one of the "other flow and operation requirements imposed by terms and conditions . . . pertaining to the Central Valley project." As in Westlands, Federal Defendants argue that Plaintiffs understood that the quantity of "interim" water available for delivery was limited in favor of those with prior rights -- Oakdale and South San Joaquin. Both the Stockton East and Central contracts state that "water availability shall not be declared until all applicable requirements of State and Federal law with respect to utilization and delivery of Stanislaus River water for the purpose of this contract have been complied with . . . (Citing Contracts, Art.2b.), and that CVPIA § 3406(b)(2) is such a requirement of federal law.

Federal Defendants argue that Stockton East's contract

provides for an interim water supply which will be cut off by December 31, 2022. (Contract Art. 1(g)). Central's contract for a firm water supply provides for a reduction in quantity "if the Contracting Officer determines that the Basin needs will exceed the amount of water reserved for Basin use." Citing Central Contract, Arts. 2(a) & 3(a)(1) (Exhibit D of FAC). Accordingly, neither contractor should have expected unalterable contract rights to New Melones water. Federal Defendants maintain Plaintiffs' interpretation of § 3406(b)(2) of the CVPIA is incorrect; Plaintiffs' water contracts were to be fulfilled from the CVP water available after satisfying prior rights holders.

Federal Defendants argue that Plaintiffs' interpretations of other CVPIA sections are also incorrect. For example, § 3408(j) does not reference § 3406(b)(2); it encourages water conservation in addition to the dedication of 800,000 acre-feet CVP yield for CVPIA purposes. Federal Defendants argue that § 3411(b) applies to permittees or licensees not within the CVP. Plaintiffs are existing CVP contractors. Section 3404(a) applies only to "new" contracts with parties who have never received CVP water. Section 3406(b) is part of the section entitled "Fish and Wildlife Restoration Activities" -- not "Deliveries of Water to Stockton East and Central." Therefore, Federal Defendants maintain, the term "all obligations" do not include the contractual obligations with Stockton East and Central.

**In reply, Plaintiffs argue that the Supreme Court held in** Nevada v. United States that federal water service contracts

define property rights cognizable under both state and federal law, and environmental need for additional water was no justification for repudiating such contracts. Nevada, 463 U.S. 110 (1983). Plaintiffs quote Nevada:

> [W]e conclude that the Government is completely mistaken if it believes that the water rights confirmed to it [previously] were like so many bushels of wheat to be bartered, sold or shifted about as the Government might see fit . .
> Id. at 126.

Plaintiffs contend that the court in Nevada did not draw distinctions between the various types of water contracts at issue. Similarly, they argue that any attempt to distinguish between the Exchange Contractors' contracts and Plaintiffs' contracts is without legal effect. Federal Defendants distinguish Nevada on its facts. In Nevada the parties had permanent water rights pre-dating the Project. Neither Stockton East nor Central hold such water rights. Unlike the Exchange Contractors, Plaintiffs in ¶ 5 contracted for available water after other flow and operational requirements of CVP licenses, permits, and other agreements.

> The term "Central Valley Project Yield" means the delivery capability of the Central Valley Project during the 1928-1934 drought period after fishery, water quality, and other flow and operational requirements imposed by terms and conditions existing in licenses, permits, and other agreements pertaining to the Central Valley Project under applicable State or Federal law existing at the time **of enactment of this title have been met.**
> CVPIA § 3406(b)(2) (emphasis added)

Plaintiffs maintain that they fall under "other flow and operational requirements imposed by terms and conditions existing in . . . other agreements pertaining to the Central Valley Project." This Court has held to the contrary. "The CVPIA preserves the distinction in reclamation law between [reclaimed] surplus water [provided] by the construction of the CVP and water that belongs as a matter of right to prior appropriators." Westlands Water Dist. v. Patterson, 900 F. Supp. 1304, 1321 (E.D. Cal. 1995). Appropriative rights and prior water entitlements to water are part of the "other flow and operational requirements . . .," that must be satisfied before the CVP yield is determined. Id. Rights created under contracts -- water service and repayment contracts -- are subordinate to the other flow and operational requirements provision. CVP water is available to fulfill such contracts after the superior claims of holders of prior water rights are satisfied. Id. Plaintiffs, unlike the Exchange Contractors in Westlands, do not, by virtue of their contracts with the Bureau, hold prior appropriative or senior water rights.[5] Absent prior state water rights superior to the Bureau's CVP water rights, Plaintiffs are analogous to the

[5] Plaintiffs claim that their prior rights stem from California Water Code § 11460 (prior right to watershed water). This state law issue cannot be determined without factual analysis of whether Plaintiffs can conveniently be supplied water from the watershed or an area where water originates and what quantity of water is reasonably required to adequately supply the beneficial needs of the watershed, area, or of the inhabitants or property owners therein. Summary judgment as to this issue cannot be granted before that determination is made.

Westlands and San Benito contractors, i.e., their rights are no higher than defined by their contracts. Section 5 of their contracts expressly makes CVP water availability subject to other flow and operational requirements under applicable federal law, as amended or supplemented, such as the CVPIA.

Plaintiffs' contracts countenanced a conditional supply from the CVP. Plaintiffs receive water after priority uses are supplied. Water availability is limited by state and federal law. Several contract provisions support this conclusion. Both contracts are executed "in pursuance of Federal reclamation laws as amended and supplemented." The CVPIA is part of Federal Reclamation Law; the contracts evidence express intent that terms and performance are subject to such laws.

In the Central contract, Article 1(g) provides that "firm water" shall mean the maximum amount of water that can be provided each year on a usable pattern . . with allowable deficiencies in dry . . . years." Article 1(h) reads that "interim water supply" shall mean water supply available . . . [which may be] withdrawn as the needs within the Basin develop." Article 2(a) provides that the "quantity of firm water may be reduced from the amount specified in this contract if the Contracting Officer determines that the Basin needs will exceed the amount of water reserved for Basin use." "Basin needs" is not defined in Article I: Definitions. Such needs include fishery and wildlife habitat.

The Stockton East contract contemplates diminishing water

availability. Article 2(b) provides that "water availability shall not be declared until all applicable requirements of State and Federal law with respect to utilization and delivery of Stanislaus River water for the purpose of this contract have been complied with."

In both contracts, Article 9(a) provides that [I]f a shortage does occur during any year because of drought, or other causes which, in the opinion of the Contracting Officer, are beyond the control of the United States, no liability shall accrue [sic]. . ." "Other causes" in this provision are not defined to exclude federal legislation mandating use of CVP water needed for fishery and habitat purposes. The terminology "other causes" is not the same as defined in Article 11 of the Area I Landowners' contract with the Bureau in Barcellos and Wolfsen v. Westlands Water Dist., 849 F. Supp. 717 (E.D. Cal. 1993), aff'd, O'Neill v. U.S., 50 F.3d 677 (9th Cir. 1995), cert. denied, __U.S.__, 116 S. Ct. 672 (1995). Barcellos held that the provision of Article 11: ". . . a shortage in the quantity of water available . . . arising from a shortage on account of errors in operation, drought or any other causes . . ." excused water delivery obligations in the event of shortage from any cause. The provisions of Stockton East's and Central's contracts are different. Article 9(a) qualifies the "other causes" language with the words "which in the opinion of the contracting officer are beyond the control of the United States, . . ." In Barcellos, as here, the cause for non-delivery of CVP water

arises from statutorily imposed environmental requirements enacted after the contract. Id. at 723. Plaintiffs do not point to any express warranty of uninterrupted water availability in the contract.

Federal Defendants acknowledge Plaintiffs' contracts were in existence when the CVPIA was enacted. Federal Defendants assert the sovereign power to legislate was exercised to enact the CVPIA, which caused the shortage when the Bureau mandatorily complied with a valid law (*e.g.*, the CVPIA or the ESA). Barcellos, 849 F. Supp. at 725. Whether the contracts are immune from subsequently enacted statutes, O'Neill v. United States, 50 F.3d 677, 686 (9th Cir. 1995); cannot be determined as a matter of law on the present state of the record. Enacting legislation that impairs the availability of water to be delivered under the contracts is arguably "within the control of the United States." Whether inclusion of this term, which excludes from excusable cause a water shortage within the control of the United States, is an express surrender by the United States of its sovereign power to legislate cannot be determined from the face of the contracts as a matter of law. The intent and meaning of the term is susceptible to differing interpretations.

Plaintiffs make additional arguments based on the language of the CVPIA. They refer to § 3408(I), which makes no reference to § 3406(b)(2), but rather refers to §3406(b)(3), which encourages the conservation of water by CVPIA irrigation contractors to generate water to be used for wildlife refuges and

fish and wildlife purposes, in addition to the 800,000 acre-feet of CVP yield described by § 3406(b)(2).

Plaintiffs next refer to §§ 3408(j), 3411(b), 3404(a), 3404(c), and 3406(b), as supportive of their interpretation of § 3406(b)(2). Section 3408(j) requires the Secretary of the Interior to develop a plan to increase CVP yield to reduce the burden on CVP contractors caused by use of CVP water for fisheries and wildlife purposes. Section 3411(b), inter alia, prevents the Secretary from taking action "which shifts an obligation that otherwise should be borne by the [CVP] to any other lawful water rights permittee or licensee." Plaintiffs have not alleged they hold a permit or license to CVP water. The United States holds the permits for CVP water.

Section 3404(a) describes "new" contracts, which deliver water to persons or entities that have never received CVP water. The section by its terms does not apply to existing CVP contracts. Section 3404(c) describes procedures to renew existing long-term contracts. It does not apply, as neither Plaintiff seeks to renew its contract with the Bureau.

Section 3406(b) mandates the Secretary to comply with all obligations under State and Federal law, including but not limited to the Endangered Species Act ("ESA") and all SWRCB decisions that impose "conditions on applicable licenses and permits for the project." The section governs fish and wildlife restoration activities. Plaintiffs do not point to any authority that defines "obligations under state and federal law" as

including their contracts.

Plaintiffs' motion for summary adjudication that the Secretary must supply water under the contracts prior to releasing water under § 3406(b)(2) is DENIED. Federal Defendants' cross-motion that Plaintiffs have no contractual entitlement to CVP water, except that is subordinate to the CVPIA is DENIED.

2. Whether Repudiation of the Central and Stockton East Contracts under the CVPIA violates the Fifth Amendment

Plaintiffs argue that Central and Stockton East hold vested contract rights under the rule of Madera ICR. Dist v. Hancock, 985 F.2d 1397 (9th Cir.), cert. denied, 510 U.S. 813 (1993). Based on the Bureau's representation to the SWRCB that it had firm commitments of CVP water to Central and Stockton East, the Bureau filled New Melones Reservoir. Plaintiffs argue that the Secretary waived the sovereign power to adopt differing operating plans for the Unit when the Record of Decision was made and to interpret section 3406(b)(2) to provide for water for fishery habitat in derogation of the vested contractual rights of Central and Stockton East would be a violation of the Fifth Amendment. Citing Madera Irr. Dist. v. Hancock, 985 F.2d 1397 (9th Cir. 1993).

Federal Defendants respond that the court has already rejected the argument of unalterable property rights stemming from water supply contracts. Citing Barcellos and Wolfsen v. Westlands water Dist., 849 F. Supp. 717 (E.D. Cal. 1993).

Violation of expectations stemming from policy (however lacking a cognizable property right) cannot give rise to a Fifth Amendment claim. Madera Irr. Dist., 985 F. 2d at 1403.

This assertion has been addressed above. Plaintiffs do not have cognizable unalterable property rights under federal law. The full extent of their contract rights requires evidentiary development. Nor do Plaintiffs have such rights under Water Code § 11460. In 1931 the California legislature enacted Water Code § 10505 which prohibits the Department of Water Resources from assigning appropriative rights which would deprive a county of origin, water necessary for its development. In 1933, in legislation contemporaneous with the federal law authorizing construction of the CVP, the Watershed Protection Act was enacted by the California Legislature. Section 11460 prevents DWR project operations from "depriving a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom . . . of the prior right to all the water reasonably required to adequately supply the beneficial needs of the watershed area . . . ." The same limitation has been imposed on federal agencies. The California Attorney General has determined that watershed priority does not create an individual "water right." A watershed inhabitant or user must make and perfect a regular application to appropriate water to the SWRCB, which in turn must issue the permit before vested water rights are created. United States v. State Water Resources Control Board, 182 Cal. App. 3d

82, 139-140 (1986).

Plaintiffs do not allege they have applied for the right to appropriate water or a permit to appropriate water ("no inhabitant of a watershed of origin becomes possessed of any presently vested title or right to any specific quantity of water as a result of [the watershed protection statutes]"). 25 Ops. Cal. Atty. Gen. En. 8, 20. Plaintiffs have been given ample opportunity to provide evidence that they have vested rights under the Watershed Protection Act. They have not done so. There appears to be no reason to stay this decision for proceedings before the SWRCB, as Plaintiffs do not allege they hold appropriative permits to water from the relevant watershed. Nor do they proffer any other evidence that they hold senior water rights in the watershed that take precedence over the Bureau's water permits to New Melones unit water. As to the claim that Plaintiffs have unalterable state water rights arising from the Watershed Protection Act of California, Federal Defendants' motion for partial summary judgment is GRANTED.

3. Whether the Secretary must operate the CVP in accordance with the Federal Record of Decision which Specifically Allocated Water to Plaintiffs

Plaintiffs argue that § 3406(b) of the CVPIA requires the Secretary to operate the CVP in compliance with all applicable state and federal laws, and that the Record of Decision, which requires 88% of the firm yield of New Melones Unit to be provided to Plaintiffs, has the binding force of law. Citing Clyde v. Cummings, 35 Utah 461 (1909); and Archambault v. United States,

224 F.2d 925 (10th Cir. 1955). They claim the Secretary's refusal to deliver water to Plaintiffs in 1993-1995 was illegal. Both cases are distinguishable as they concern a duly adopted regulation and a validly enacted statute, not a Record of Decision.

Plaintiffs maintain that Congress formalized the legal status of the Record of Decision by codifying it into the CVPIA at § 3406(c), which provides that the Secretary shall evaluate future basin needs in the Stanislaus Basin, and that "basin needs" include those established in the Secretary's Record of Decision. Plaintiffs' citation of United States v. Quincy-Columbia Basin, 694 F. Supp. 487 (E.D. Wash. 1988) is inapposite. That case held the Reclamation Reform Act of 1982 authorized the Secretary to prescribe regulations, which the Secretary did. Once prescribed, such regulations have the effect of law. 43 C.F.R. 426, et seq..

In response, Federal Defendants argue that Plaintiffs mistakenly consider a Record of Decision as administrative rulemaking. According to Federal Defendants, a Record of Decision is the document issued by a federal agency under NEPA procedures to adopt a particular course of action. Under NEPA regulations promulgated by the Council on Environmental Quality, a Record of Decision is a document prepared by a federal agency that:

1. states what the decision is;
2. identifies all the alternatives that were considered;
3. states whether all practicable means to avoid or

> minimize environmental harm have been adopted.
> 40 CFR § 1505.2

It does not have the force of law.

By contrast, a rule under the APA is "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization or procedure or practice requirements of that agency." 5 U.S.C. § 551(4). A Record of Decision, Federal Defendants contend, is not designed to implement, interpret or prescribe law or policy -- and therefore is not a rule. Citing Daingerfield Island Protective Soc. v. Babbitt, 823 F. Supp. 950, 957 (D.D.C. 1993), aff'd in relevant part, 15 F.3d 442 (D.C. Cir. 1993), opinion supplanted, 40 F.3d 442 (D.C. Cir. 1994).

Federal Defendants argue that the Record of Decision was not codified by the CVPIA, as Plaintiffs assert. Rather, § 3406(c) (entitled "Fish, Wildlife and Habitat Restoration") acknowledges the existence of the Record of Decision and directs the Secretary to use its definitions, and nothing more.

Section 3406(b) of the CVPIA states that "The Secretary . . . shall operate the Central Valley Project to meet all obligations under State and Federal law. . ." Plaintiffs cannot and do not contend the Record of Decision is a state or federal law. The Record of Decision been codified as part of a state or federal law. The mention of the Record of Decision in the CVPIA is for definitional purposes; it aids in the determination of

what "basin needs" are. "The Secretary shall, by no later than September 30, 1996 . . . evaluate and determine existing and anticipated future basin needs in the Stanislaus River Basin." § 3406(c)(1) and (2).

> . . . For the purposes of this subparagraph, "basin needs" shall include water supply for agricultural, municipal and industrial uses, and maintenance and enhancement of water quality, and fish and wildlife resources within the Stanislaus River Basin as established in the Secretary's June 29, 1981 Record of Decision . . . § 3406(c)(2)

The Record of Decision is but one factor to be analyzed in the determination of basin needs. It is not a law or rule. The fact that basin needs may be determined by, among other considerations, reference to the Record of Decision, does not require the Secretary to operate the CVP so as to provide Plaintiffs with 88% of the firm yield of New Melones Unit. Plaintiffs' motion for summary adjudication that the Secretary must operate the CVP to provide Plaintiffs with specifically allocated water as described by the Federal Record of Decision is DENIED.

4. Whether The Secretary must Operate the CVP to meet obligations stemming from decisions of the SWRCB

Plaintiffs argue that the Bureau induced the SWRCB to remove its prohibition on the filling of the New Melones reservoir by providing sworn testimony that the Bureau had agreements to deliver 88% of the consumptive yield to Central and Stockton East. In response, SWRCB authorized the Bureau to fill

New Melones. Plaintiffs maintain that when the SWRCB was not satisfied with the Bureau's commitment, the SWRCB placed conditions on all of the New Melones Permits that the Bureau had both firm commitments to deliver water for consumptive uses and a specific plan for the beneficial use of water. Citing WR 83-3 and California v. United States, 438 U.S. 645 (1978).

Once convinced that the Bureau had begun contracting with Central and Stockton East for water, the SWRCB amended its Decision to allow for storage of 980,000 acre-feet of water, and 1,420,00 acre-feet of water. Citing Conditions 1-a and 1-c of Decision 1422. Plaintiffs maintain that the Board "decided that the Bureau had firm commitments with Central and Stockton East," and that such commitments took priority over other uses such as fish and wildlife enhancement. To operate the CVP in a manner contrary to such decisions by the Board, Plaintiffs maintain, is contrary to § 3406(b), which requires the Secretary to meet all obligations under state and Federal law.

Plaintiffs do not provide a citation for the decision of the Board, nor demonstrate a state or federal law which prioritizes Central and Stockton East water uses over those of fish and wildlife enhancement. Nor does the SWRCB operate the CVP. However, this is an area of state water policy. A SWRCB decision will clarify what rights, if any, Plaintiffs have under state law. The Court defers determination of this claim until the SWRCB has provided a hearing and determination.

///

5. Ultra Vires and Waiver Assertions

Plaintiffs assert that Federal Defendants have acted in an _ultra vires_ manner by failing to supply them water under their water service contracts. For an administrative agency of the United States Government to act _ultra vires_, (1) it must be shown that the Federal agency has acted in a manner not authorized by Congress; and (2) the actions in excess of delegated authority may be invalidated by the reviewing court. Plaintiffs have not shown that Federal Defendants have acted beyond their federal statutory authority, which appoints the Bureau, to manage the CVP and execute and perform water service contracts as part of its operation of the CVP. Nor is it beyond Federal Defendants' statutory authority to immediately implement the CVPIA. _See O'Neill_, 50 F.3d at 686. The _ultra vires_ claim presents no disputed issue of material fact. Federal Defendants' partial summary judgment as to the _ultra vires_ claim is GRANTED. Plaintiffs' _ultra vires_ claim fails.

6. Whether the Secretary must operate the CVP in accordance with Chapter 819 of Statutes of 1979

Plaintiffs argue that the Secretary may not thwart the state policy established in 1979 to mitigate the effects of the overdraft of the Eastern San Joaquin groundwater basin. _Citing_ Chapter 819, California Statutes of 1979. Plaintiffs argue that in _California v. United States_, the court found that new federal policy does not override existing state water policy. _California v. U.S._, 438 U.S. 645, 678 (1978). Where state water law or

policy conflicts with federal water policy, the primacy of state law and policy is one of "those interests created under the old policies which enjoy legal protection." Madera Irr. Dist. v. Hancock, 985 F.2d 1397, 1400 (9th Cir. 1993). Plaintiffs note that in California v. U.S., the Court cited the original authorization for the New Melones Dam:

> The Flood Control Act of 1944, 58 Stat 888, for example, which first authorized the New Melones Dam provides that it is the `policy of the Congress to recognize the interest and rights of the States in determining the development of watershed within their borders and likewise their interests and rights in water utilization and control. 438 U.S. at 678.

Plaintiffs argue that Congress did not intend habitat restoration goals of § 3406(b) to take precedence over the California law implementing protection and preservation of the Eastern San Joaquin groundwater basin. Under § 8 of the Reclamation Act of 1902, Federal Defendants must comply with State water law, unless it conflicts with Federal law. California v. United States, 438 U.S. at 678. The Ninth Circuit has held that the policy of deference to State water law is not so strong that Congressional intent to preempt state law must be explicitly expressed. United States v. State of California, State Water Resources, 694 F.2d 1171, 1176 (1982). Plaintiffs have not provided evidence that Federal Defendants violated state law or § 8 of the 1902 Reclamation Act. However, the SWRCB has not acted on Plaintiffs' complaints concerning alleged state water rights. The decision on this claim is deferred pending

outcome of the State administrative proceedings.

7. Estoppel

Plaintiffs allege that Federal Defendants have engaged in "bureaucratic duplicity" and that the Secretary's "deal" violates the Bureau's own operational plan for New Melones Unit. Federal Defendants interpret this to mean enactment of the CVPIA by Congress, execution of the Principles Agreement, or modification of the Federal government's permits to permit compliance with the Principles Agreement. Here, Federal Defendants contend that they have acted to protect the environment pursuant to statutory mandate under the CVPIA and to protect and enhance water quality under the Principles Agreement. Although Federal Defendants may be mistaken, which cannot yet be determined, there is no evidence that they engaged in conduct which requires application of equitable estoppel against them. Equitable estoppel requires: (1) knowledge of true facts by the party to be estopped; (2) intent to induce reliance or inequitable action inducing reliance by an innocent party; (3) ignorance of the true fact by the relying party; and (4) detrimental reliance to a party's damage or detriment. Bolt v. United States, 944 F.2d 603, 609 (9th Cir. 1991). Estoppel is not to be applied where the government is protecting a public interest. Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917).

Plaintiffs have not provided evidence that Federal Defendants have acted with wrongful intent or engaged in fraudulent conduct or other affirmative misconduct. Although the

actions of Federal Defendants visit extreme hardship upon Plaintiffs, it must be presumed that Congress contemplated the consequences of such action when it enacted the CVPIA. The Court of Appeals in O'Neill has decided that Congress intended the CVPIA be immediately implemented without regard to the consequences of doing so. Plaintiffs had it within their power to protect their interests under these contracts. They could have insisted upon an express surrender of Congress' sovereign authority to legislate the impairment of the rights granted by these contracts. Moreover, Plaintiffs could have required that the defined causes for excuse for non-compliance with the water service requirements under § 9 of each contract, excluding legislative action by the United States; or, made these contracts expressly exempt from Federal governmental action of any kind. They failed to do so. The decision on this claim cannot be finally determined without the decisions of the SWRCB on the state water law issues. The partial summary judgment motion on this claim is deferred.

## V. CONCLUSION

For the foregoing reasons,

(1) Federal Defendants' motion for an order compelling Plaintiffs to exhaust administrative remedies is DENIED;

(2) Federal Defendants' motion for abstention is DENIED. However, the court will stay for a period pending the outcome of SWRCB proceedings to determine state water rights issues (Claims 7, 9 and 10);

(3) Plaintiffs' motion for summary adjudication that the Secretary must supply water under the contracts prior to releasing water as directed under § 3406(b)(2) is DENIED;

(4) Federal Defendants' motion for partial summary adjudication that the Secretary does not have to supply water under Plaintiffs' contracts before compliance with the CVPIA is DENIED;

(5) Federal Defendants' cross-motion for partial summary judgment as to claim 8 concerning Plaintiffs' rights under Water Code § 11460 is GRANTED;

(6) Plaintiffs' motion for summary adjudication that repudiation of the Central and Stockton East Contracts under the CVPIA violates the Fifth Amendment is DENIED;

(7) Federal Defendants' motion for partial summary judgment that the government's actions do not violate the Fifth Amendment is GRANTED.

(8) Plaintiffs' motion for summary adjudication that the Secretary must operate the CVP in accordance with the Federal Record of Decision, which specifically allocated water to Plaintiffs, is DENIED;

(9) Plaintiffs' motion that the Secretary must operate the CVP to meet obligations stemming from decisions of the SWRCB is deferred;

(10) Federal Defendants' motion for partial summary judgment that they did not act <u>ultra vires</u> in not fulfilling Plaintiffs' water contracts is GRANTED; and

(11) Plaintiffs' motion that the Secretary must operate the CVP in accordance with Chapter 819, California Statutes of 1979 is DENIED.

Counsel for Federal Defendants shall prepare an order in conformity with this memorandum opinion and lodge it with the court within five (5) days following date of service of this opinion. Counsel shall schedule a status conference, before the hearing of which, the parties shall submit a proposed joint communication to be sent by the Court to the SWRCB defining the issues to be decided by the SWRCB as Special Master, pursuant to Water Code § 2075.

NOTICE OF INTENT TO CONSOLIDATE CASES

The court intends to consolidate the Central Delta Water Agency case, No. CV-F-96-5738 OWW DLB with this case. Objections to the proposed order of consolidation must be filed within 15 days following date of service of this Notice.

SO ORDERED.

DATED: November 1, 1996.

Oliver W. Wanger
UNITED STATES DISTRICT JUDGE

stockton.est

gl

United States District Court
for the
Eastern District of California
November 4, 1996

* * CERTIFICATE OF SERVICE * *

1:93-cv-05896

Stockton East Water

v.

Bureau Reclamation

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on November 4, 1996, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jeanne M Zolezzi
Neumiller and Beardslee
P O Box 20
509 West Weber Avenue
5th Floor
Stockton, CA 95201-3020

Maria A Iizuka
United States Attorney
650 Capitol Mall
Sacramento, CA 95814

William Thomas Chisum
Kronick Moskovitz Tiedemann and Girard
400 Capitol Mall
27th Floor
Sacramento, CA 95814-4417

Michael Victor Sexton
Minasian Minasian Minasian Spruance Baber Meith and Soares
P O Box 1679
1681 Bird Street
Oroville, CA 95965-1679

Gary W Sawyers
Law Offices of Gary W Sawyers
1180 East Shaws Avenue

Suite 214
Fresno, CA 93710-7812

Diane Rathman
Linneman Burgess Telles Van Atta and Vierra
1820 Marquerite Street
Dos Palos, CA 93620

Daniel Allen McDaniel
Nomellini Grilli and McDaniel
P O Box 1461
235 East Weber Avenue
Stockton, CA 95201-1461

Clifford T Lee
Attorney General's Office of the State of California
50 Fremont Street
Suite 300
San Francisco, CA 94105-2239

Jack L. Wagner, Clerk

BY: ______________________
Deputy Clerk