# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, CITY OF STOCKTON, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| Plaintiffs, | ) | No. 04-541 L<br>Judge Christine Odell Cook Miller |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

'05 JUN -6 P12 :06
DEPT. OF JUSTICE - ENRD
ENVIRONMENT DIVISION

## NOTICE OF DEPOSITION OF THE UNITED STATES OF AMERICA

Pursuant to RCFC 26 AND 30, plaintiffs will take the deposition upon oral examination of Defendant, United States of America, commencing at 9:00 a.m. on June 15, 2005. The deposition will take place at the offices of Herum Crabtree Brown, 2291 West March Lane, Suite B100, Stockton, California, 95207. The testimony shall be recorded by stenographic, videotape and Realtime means. The deposition will be used for discovery and for any other use permitted under the Rules of the United States Court of Federal Claims. The deposition will continue from day to day until completed.

Pursuant to RCFC 30(b)(6), Defendant is required to designated one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and to set forth for each person designated the matter or matters on which the person will testify. The matters on which examination is requested are:

1. The allocation methodology used for allocation of water, including water to be furnished to plaintiffs pursuant to their 1983 contracts, from New Melones reservoir for each year

from 1993 to the present. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic files located on CDs 1, 2 and 3 produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

2. The accounting methodology used for New Melones reservoir for each year from 1993 to the present. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic files located on CDs 1, 2 and 3 produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

3. The CVPIA (b)(2) accounting for water from New Melones reservoir for each year from 1993 to the present. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic files located on CDs 1, 2 and 3 produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

4. The communications between the United States and the plaintiffs regarding forecasted allocations and schedules for releases from New Melones reservoir for each year from 1993 to the present.

5. The electronic documents produced by the United States on CDs 1, 2 and 3. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic files located on CDs 1, 2 and 3 produced by the United States in this case. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

6. The intent of the United States in negotiating and executing the 1983 contracts with Stockton East and Central.

7. The intent of the United States in requesting Central to enter into a Temporary Water Service contract with the United States in 1982.

8. The United States' understanding, prior to December 19, 1983, of how much water would be used from New Melones for fish and water quality purposes when it negotiated and executed the 1983 contracts with Stockton East and Central.

9. The United States' understanding of the meaning of "buildup to full Basin requirements", "needs within the Basin" and "basin use" as used in the 1983 contracts with Stockton East and Central.

10. The manner, including any and all documents or communications, in which the United States determined the "needs within the Basin" and "basin use" as used in the 1983 contracts with Stockton East and Central from 1983 to the present.

11. Any claim of non-performance, breach or any other act or fact related to Stockton East Water District or Central San Joaquin Water Conservation District which might excuse defendant's performance under the 1983 contracts with plaintiffs.

12. The identification and explanation of any and all communications between the United States and any of the plaintiffs regarding any issues of alleged contract non-performance or breach by Stockton East or Central.

13. The modeling work done by the United States in its preparation of the Interim Operations Plan. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

14. Any determinations made regarding desired carry-over storage levels in New Melones reservoir from 1983 to the present. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

15. Any and all documents or studies performed, commissioned, or reviewed by the United States in order to determine a desired carry over storage target for New Melones reservoir, from 1983 to the present. As part of its testimony on this issue, the designated witness shall be prepared to identify and describe the electronic produced by the United States in this case, that relate to this issue. The deposition will be interactive using a computer and these electronic files and the witness is expected to have a working knowledge of the relevant files.

16. Any and all communications between the State Water Resources Control Board and the United States regarding New Melones reservoir between 1970 and the present.

17. The method that the United States has used to determine the quantity of "contractor demands" for the purposes of calculating the formula for fishery releases contained in the 1987 Agreement between the United States and the California Department of Fish and Game.

18. Any and all communications between the United States and the California Department of Fish and Game regarding implementation of the formula for fishery release contained in the 1987 Agreement between the United States and the California Department of Fish and Game.

19. The manner, including any and all documents or communications, in which the United States determined how much water to use for fishery purposes from New Melones from 1993 to the present.

20. The manner, including any and all documents or communications, in which the United States determined how much water to use for water quality purposes from New Melones from 1993 to the present.

21. Any and all communications between the United States and the United States Fish and Wildlife Service regarding the determination of how much water to use for fishery purposes from New Melones from 1993 to the present (not previously produced in this case).

22. The manner, including any and all documents or communications, in which the United States determined that fishery and water quality releases from New Melones should be made and additional releases for Stockton East and Central should not be made, from 1993 to the present.

23. Any efforts, notices, or other acts by the United States to reduce interim water allocated to Stockton East Water District, pursuant to Article 3(a) of the 1983 contract between the United States and Stockton East.

24. Any efforts, notices or other acts by the United States to reduce interim water from Central San Joaquin Water Conservation District, pursuant to Article 3(a)(2)of the 1983 contract between the United States and Central San Joaquin Water Conservation District.

25. Any efforts, notices or other acts by the United States to withdraw firm water from Central San Joaquin Water Conservation District, pursuant to pursuant to Article 3(a)(1)of the 1983 contract between the United States and Central San Joaquin Water Conservation District.

26. The manner, including any and all documents or communications, in which the United States determined how to apply the shortage provision in Section 9 of the 1983 contract with Central and Stockton East in each year from 1993 to the present.

27. The best efforts of the United States to fulfill the covenant of good faith and fair dealing in performance the 1983 contracts with Central and Stockton East from 1993 to the present.

28. Any and all documents, reports or evaluations of any kind done by the United States that served to change the conclusions of the 1980 Special Report regarding New Melones Reservoir, cited in Section 1(d) of the Stockton East Contract and Section 1(d)of the Central Contract.

29. Any and all documents, reports or evaluations of any kind done by the United States that served to alter the contracting policies adopted by the Secretary of the Department of the Interior in the Basis of Negotiations for the New Melones Unit, approved in 1982.

30. The manner, including any and all documents or communications, in which the United States determined to enter into the Principles for Agreement in 1994.

31. The manner, including any and all documents or communications, in which the United States determined to make releases from New Melones Reservoir in each year from 1994 through the present in order to uphold its contractual commitments in the Principles for Agreement.

32. Any and all communications between the United States and other parties in each year from 1994 through the present regarding the manner in which the United States would meet the contractual commitments made in the Principles for Agreement.

33. Any and all documents, reports or evaluations of any kind done by the United States that evaluated the impact on New Melones of fulfilling the contractual commitment made by the United States in the Principles for Agreement.

34. The manner, including any and all documents or communications, in which the United States determined to petition the State Water Resources Control Board to amend its water right permits in order to meet the contractual commitments in made in the Principles for Agreement.

35. The manner, including any and all documents or communications, in which the United States determined to enter into the San Joaquin River Agreement.

36. The manner, including any and all documents or communications, in which the United States determined to make releases from New Melones Reservoir in each year from 1994 through the present in order to uphold its contractual commitments in the San Joaquin River Agreement.

37. Any and all communications between the United States and other parties in each year from 1994 through the present regarding the manner in which the United States would meet the contractual commitments made in the San Joaquin River Agreement.

38. Any and all documents, reports or evaluations of any kind done by the United States that evaluated the impact on New Melones of fulfilling the contractual commitment made by the United States in the San Joaquin River Agreement.

39. The manner, including any and all documents or communications, in which the United States determined that it would operate the Central Valley Project in order to comply with the Endangered Species Act from 1993 to the present.

40. The manner, including any and all documents or communications, in which the United States determined that it would operate the Central Valley Project in order to comply with the Endangered Species Act from 1993 to the present.

41. The manner, including any and all documents or communications, in which the United States determined that it would operate the Central Valley Project in order to comply with the Vernalis Salinity Standard from 1983 to the present.

42. Any and all communications between the United States and other parties in each year from 1994 through the present regarding the manner in which the United States would meet the Vernalis Standard and the alternatives available for doing so.

43. The manner, including any and all documents or communications, in which the United States determined that it would acquire water in order to comply with Section 3406(d) of the Central Valley Project improvement act from 1992 to the present.

44. Any and all communications between the United States and others in each year from 1992 through the present regarding the manner in which the United States would comply with Section 3406(d) of the Central Valley Project Improvement Act.

45. The manner, including any and all documents or communications, in which the United States evaluated the impact on water quality in the San Joaquin River resulting from its action to comply with Section 3406(d) of the Central Valley Project improvement act from 1992 to the present.

46. Any and all communications between the United States and others in each year from 1992 through the present regarding the impact on water quality in the San Joaquin River resulting from its actions to comply with Section 3406(d) of the Central Valley Project Improvement Act.

47. The manner, including any and all documents or communications, in which the United States has complied with the court order in *Sumner Peck Ranch v. Reclamation.*

48. Any and all communications between the United States and other parties in each year regarding the United States' actions to comply with court order in *Sumner Peck Ranch v. Reclamation.*

Pursuant to RCFC 26, the United States is directed to bring with it all documents, files and other tangible things not previously produced for inspection and copying that relate to or concern in any way any of the above subjects.

Dated: June 1, 2005

Nancie Marzulla by JLS

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Avenue, N.W.
Suite 410
Washington, D.C. 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)

Counsel for Plaintiffs