**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| | ) | No. 04-541 L |
| Plaintiffs, | ) | |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATING TO ALLEGED AMENDMENT OF THE CONTRACTS**

Defendant United States hereby submits this Response to Plaintiffs' Motion *in Limine* to Exclude Evidence Relating to Alleged Amendment of the Contracts (Doc. # 114) ("Plaintiffs' Motion"). Plaintiffs' Motion seeks to prohibit Defendant from introducing evidence or argument showing that the parties amended the subject contracts through the adoption of the May 1, 1997 Interim Plan of Operations ("IPO").

The Court previously considered this issue in the context of the parties' cross motions for summary judgment, concluding that it could not resolve the issue due to disputed issues of fact:

> Article 3(h) provides that water delivery could be reduced contractually by mutual agreement of the contracting parties. Amicus raises the possibility that the [IPO] may be such an agreement. The circumstances surrounding [the IPO] must be developed fully at trial.

70 Fed. Cl. 515, 534 (2006) (citing NRDC Amics Br., filed Jan. 3, 2006, at 9).[1/] Plaintiffs disagree with the Court's approach, and now argue that evidence of the IPO is "irrelevant and improper" due to the statute of frauds. Pls.' Mot. at 2. For the reasons discussed below, the Court should deny Plaintiffs' Motion.

**A. The Court Should Hear the Evidence on the Issue**

Despite the Court's conclusion that evidence about the development of the IPO would be addressed at trial, Plaintiffs seek a pre-trial order that would preclude introduction of such evidence based on application of the statute of frauds. As a preliminary matter, several of the cases cited by Plaintiffs do not support their position that this issue should be resolved prior to trial. Instead, in several of the cases cited in Plaintiffs' Motion, the court reached its decision after presentation of the evidence, in a manner consistent with the Court's approach articulated in its April Order. See Backus v. Taplin, 81 F.2d 444 (7th Cir. 1936) (affirming decision reached after presentation of evidence in jury trial); Willman v. Alver, 252 F.2d 895, 898 (9th Cir. 1958) (same); Beverly Enters., Inc. v. Fredonia Haven, Inc., 825 F.2d 374 (11th Cir. 1987) (affirming decision reached after presentation of evidence in bench trial). Defendant respectfully submits that the Court's original approach was correct.

**B. The Interim Plan of Operations**

At trial, current and former Reclamation employees will discuss how the experience of a severe drought in 1987-1992, together with new requirements imposed by the Central Valley Project Improvement Act, Pub. L. No. 102-575 ("CVPIA"), impacted the quantities of water that

---

[1/] The quoted language refers to Article 3(h) of SEWD's contract. An identical provision is located at Article 3(g) of Central's contract.

could be made available to Plaintiffs from New Melones Reservoir. A 1994 preliminary re-evaluation of the yield from New Melones, for example, showed that the water supply from New Melones Reservoir was insufficient to meet the demands imposed by federal law, state permits, and the agreement with senior water rights holders. In the mid-1990s, Reclamation met with interested parties, including Plaintiffs, to discuss New Melones operations, with a goal towards balancing competing demands for the limited water supply.

The IPO is an objective tool for determining allocations for various purposes based on a water supply that Reclamation had determined was insufficient to meet all demands. Calculations under the IPO are based on storage levels and expected inflows. See Pls.' Mot. at Ex. A. Hence, the IPO provided objective criteria for determining annual allocations for all purposes.

At the time the IPO was developed, Plaintiffs were not requesting the maximum amounts under their contracts (155,000 acre-feet ("AF")). For example, in 1996, the year before creation of the IPO, Plaintiffs had scheduled a total of 72,400 AF.[2/] Reclamation made available the entire amount Plaintiffs had scheduled in that year, but Plaintiffs declined most of the water. See Def.'s Ex. 3 (Letter from SEWD, dated Mar. 27, 1996, reducing the scheduled amount "because of the wet '95-'96 winter, and because of the unusually large amount of storage in New Hogan Reservoir, [SEWD's] primary source"). Although Plaintiffs complain that the IPO maximum (90,000 AF) is less than the maximum quantity under the contracts (155,000 AF), Reclamation witnesses will testify that during meetings with Reclamation staff leading up to the adoption of

[2/] In accordance with their contracts, Stockton East Water District ("SEWD") had scheduled 32,400 AF for delivery in 1996 and Plaintiff Central San Joaquin Water Conservation District ("Central") had scheduled 40,000 AF for delivery in 1996. See Def.'s Exs. 1, 2.

the IPO, a representative from SEWD informed Reclamation that the maximum amount of water Plaintiffs could actually use annually was 90,000 AF.

For 1997, the Plaintiffs' allocation under the IPO was 90,000 AF. To eliminate the uncertainty of their 1998 allocation, however, the contractors informed Reclamation that they preferred a guaranteed delivery of 50,000 AF in both years. Reclamation, therefore, agreed to deliver 50,000 AF of water to the Plaintiffs in 1998 regardless of the actual calculation under the IPO. Reclamation had no contractual duty to guarantee a specific quantity of water to Plaintiffs in a future year, but Reclamation agreed to this proposal at Plaintiffs' request, and for Plaintiffs' benefit, to give them a guaranteed quantity of water in 1998.

The IPO was intended to be used for only two years, until a long term operating plan could be developed. Since 1998, however, Reclamation has continued to use the IPO to guide New Melones operations. See Cent. Delta Water Agency v. Bureau of Reclamation, 452 F.3d 1021, 1025 (9th Cir. 2006) (finding that although Reclamation still operates New Melones pursuant to the IPO, it "does not blindly adhere to it" and that Reclamation deviates from the IPO "when necessary in order to meet its various obligations, including compliance with the Vernalis Salinity Standard" set forth in its state permits). Reclamation has departed from the IPO when hydrological circumstances warranted departure. In 2005 and 2006, for example, Reclamation made 155,000 AF of water available to the Plaintiffs because the hydrologic circumstances and inflow forecasts permitted such allocations.

**C. The Contracts Did Not Require Acceptance of the IPO in Writing, and, Even if They Did, Plaintiffs Affirmed Their Agreement with the IPO in Writing**

Plaintiffs now complain that evidence about the IPO should be rejected because the Plaintiffs did not accept the operation plan in writing. This argument should be rejected for at

least two reasons. First, Defendant does not contend that the IPO is a true amendment of the original contracts or a brand-new contract, which somehow eviscerated the subject contracts. Indeed, as the Court has already noted, the subject contracts contemplated the following:

> The United States and the Contractor by mutual agreement may reduce the annual quantity of water which the United States is obligated to make available and the Contractor obligated to pay for during the remainder of the term of this contract.

SEWD Contract at Art. 3(h); Central Contract at Art. 3(g). Application of these contractual provisions do not require a separate written document, because these express contractual provisions are not amendments of the original contracts themselves. Hence, contrary to Plaintiffs' argument, the provision does not require a writing in order to be valid. See Busch v. Globe Indus., 200 Cal. App.2d 315, 320 (Cal. App. 1962) ("When a modification is in accordance with a provision authorizing and setting forth a method for its revision, the rule that a contract in writing may be altered only by another written contract or an executed oral agreement has no application because there is no alteration. The modification is in accordance with the terms of the contract.").

Second, although Plaintiffs did not sign the IPO, they did express their agreement in writing to the plan. See, e.g., Def.'s Ex. 4 (Sept. 9, 1998 letter from Plaintiffs' counsel to Reclamation) ("As an interim stopgap measure, the stakeholders agreed to operate the New Melones Project under the two-year [IPO] in order to allow time to negotiate a more equitable long-term operations agreement. . . . It is clearly [the] intention of the parties to use [the IPO] as a negotiated settlement to provide additional time to negotiate a long-term plan.") (emphasis

added).[3] In addition, in 1997 and 1998, SEWD and Central submitted written schedules for a total of 50,000 AF, as the parties had agreed.[4] See Def.'s Exs. 6, 7. Hence, Plaintiffs expressed their agreement to the IPO in writing, as contemplated by Articles 3(h) and 3(g) of their contracts.

After Reclamation provided 50,000 AF to Plaintiffs in both 1997 and 1998, as agreed, Reclamation continued to use the IPO as a tool to guide New Melones operations. The IPO, of course, did not modify Reclamation's responsibility to operate New Melones in a reasonable and prudent way. Prior to the IPO, Reclamation had the responsibility and right to make decisions about water availability to meet a myriad of purposes in any given year and also to protect Reclamation's ability to meet those demands in future years. After transmittal of the IPO, Reclamation continued to make the same decisions, but with the guidance of the IPO.

Because Reclamation reasonably decided that the water supply from New Melones was not adequate to satisfy all demands and also make available 155,000 AF of water to Plaintiffs in every year, the continued use of the IPO after 1998 as a guide worked to benefit all parties by providing some degree of transparency, certainty and predictability about water allocations. The IPO, then, is simply a tool available to Reclamation, which allows it to assess all demands and make reasonable decisions about water availability as it operates New Melones Reservoir.

---

[3] See also Def.'s Ex. 5 (Dec. 18, 1996 letter from SEWD to Deputy Secretary John Garamendi) (discussing negotiations among parties, and complaining about Reclamation's delay in approving the proposed plan in which "[t]he contractors were willing to give up approximately 50,000 AF in 1997 in exchange for being guaranteed 50,000 AF in 1998, to avoid the possible boom and bust of recent years").

[4] Central did not submit a written schedule for water to be delivered in 1998, but Central did submit a schedule for 27,000 AF for delivery in 1997.

After 1998, Plaintiffs either stopped submitting written schedules under Article 4 of their contracts or submitted written schedules for reduced amounts. For example, in 1999, SEWD submitted a written schedule for 23,000 AF of water and received more than 34,000 AF. SEWD's schedule for water in 2000 was transmitted more than a year after it was due, and SEWD's 2001 schedule was more than six months late. SEWD submitted a schedule for 24,000 AF of water for 2002, a late schedule for 6,000 AF of water in 2003, and no schedule for 2004. Central did not submit a written schedule for 1998, 1999, 2000, or 2001. For 2002, Central submitted a late written schedule for 12,000 AF, and received 18,252 AF. Central submitted written schedules for the amount of water that was available in 2003 and 2004. These schedules, and the parties' actions, were consistent with Article 3(h) (or Article 3(g)) of these contracts. Plaintiffs confirmed their agreement with the suspension of the build-up provisions in writing on several occasions after 1998.[5/]

If the Court finds that the build-up provisions were not suspended in 1997 by agreement of the parties, then, Article 3(c)(3) of both contracts must be enforced. Under that provision, the amount scheduled by the parties in 1999 (Year 11 of the contracts) "shall constitute the new

---

[5/] See Def.'s Ex. 4 (Sept. 9, 1998 Letter from SEWD to Reclamation) ("[W]e would like you to confirm that our allocations of water under, and acceptance of the provisions of the negotiated two-year Interim 1997-98 Operations Plan, will not trigger the build up provisions under Articles 3 and 5 of our New Melones Water Supply Contract."); Def.'s Ex. 8 (Nov. 18, 1998 Letter from Reclamation to SEWD) (confirming that Plaintiffs' "allocations of water under, and acceptance of the provisions of the negotiated two-year Interim 1997-1998 Operations Plan for New Melones, will not trigger the build-up provisions under Article 3 and Article 5 of [SEWD's] contract"); Def.'s Ex. 9 (Jan. 2, 2001 Letter from SEWD to Reclamation) (seeking confirmation from Reclamation that "the build-up provisions for Stockton East Water District will continue to be governed by the November 18, 1998 letter from [Reclamation]"); Def.'s Ex. 10 (Mar. 21, 2001 Letter from Reclamation to SEWD) (confirming that the November 18, 1998 letter "still governs the build-up provisions under Articles three and five" of SEWD's contract).

contract maximum for the remaining contract term." Id. (emphasis added). In the context of this lawsuit, this provision means that the maximum amount Central and SEWD would even be potentially entitled to under these contracts was the actual amount that they scheduled in 1999. Since Central did not submit a schedule for water in 1999, it would not have a right to any water from 1999 to 2004; SEWD submitted a late schedule for 24,000 AF, so the maximum amount SEWD is entitled to after 1999 is either 0 AF or 24,000 AF.

**D. Conclusion**

For the reasons discussed above, the statute of frauds does not preclude Defendant's position with respect to the IPO. In addition to the fact that Reclamation's use of the IPO is consistent with Articles 3(h) and 3(g) of the subject contracts, Plaintiffs affirmed their agreement to use the IPO numerous times in writing, and complied with its operation. Hence, Plaintiffs' statute of frauds argument should be rejected.

Of course, the Court has already heard these facts recited in the parties' cross motions for summary judgment. Finding itself unable to reach a decision on the briefs, the Court concluded that "[t]he circumstances surrounding [the IPO] must be developed fully at trial." See 70 Fed. Cl. at 534. Therefore, the Court should deny Plaintiffs' Motion in limine.[6/]

---

[6/] On October 6, 2006, Plaintiffs filed a document titled "Errata to Plaintiffs' Motion *In Limine* Regarding Amendment of Contracts, Motion for Leave to Add Trial Exhibit," and a 62-page attachment (Doc. #121). This motion, which is not an errata, seeks leave to add a new exhibit, which was not listed on Plaintiffs' Preliminary Exhibit List or Plaintiffs' Final Exhibit List or mentioned in Plaintiffs' Motion. Defendant will file a separate response prior to the Pretrial Conference.

Dated: October 11, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
501 I Street, Room 9-700
Sacramento, CA 95814
(tel) (916) 930-2207

Counsel of Record for Defendant

KRISTINE S. TARDIFF
United States Department of Justice
Environment and Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

LUTHER L. HAJEK
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663

OF COUNSEL:
SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825