GENO GIANNECCHINI
JOSEPH L. DONDERO
JACK H. TONE
JACK LAVEN
JACK E. CLAYTON
ALFRED B. BONNER
STELLA E. ALONZO
EDWARD M. STEFFANI
GENERAL MANAGER
VIRGIL L. WILL
ASSISTANT MANAGER
JEANNE M. ZOLEZZI
GENERAL COUNSEL

# STOCKTON EAST WATER DISTRICT

6767 E. MAIN STREET, P.O. BOX 5157 STOCKTON CA 95205-0157 209/948-0333 FAX 209/948-0423

October 27, 1995

Mr. Roger Patterson
Regional Director
USBR
2800 Cottage Way
Sacramento, CA 95825-1881

Subject: New Melones -- 1996 Releases For Stockton East Water District

Dear Mr. Patterson,

I am writing as required by Section 4 (a) of Contract No. 4-07-20-W0329.

SEWD requests that the following amounts of water be released from New Melones Reservoir for diversion at the District's Goodwin Dam tunnel in accordance with the following schedule.

SCHEDULE FOR RELEASES FROM NEW MELONES
Stockton East Water District 1996

| MONTH | RELEASE, CFS AG | M&I |
|---|---|---|
| JAN | 0 | 0 |
| FEB | 0 | 0 |
| MAR | 0 | 0 |
| APR | 30 | 35 |
| MAY | 30 | 40 |
| JUN | 30 | 40 |
| JUL | 30 | 40 |
| AUG | 30 | 40 |
| SEP | 30 | 35 |
| OCT | 30 | 30 |
| NOV | 0 | 30 |
| DEC | 0 | 30 |
| Totals, Acre, Feet | 12,800 | 19,600 |

Should you have questions, please do not hesitate to contact me.

Very truly yours,

EDWARD M. STEFFANI
General Manager
WP-5-PATT12

3

SE 06002

**THE CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT**

*"67,000 acres of diversified family farms in San Joaquin County, California"*

311 E. Main, Ste. 202, Stockton, California 95202

(209) 466-7952 • FAX 466-7953

DIRECTORS
RECEIVED
RICHARD WAGNER
HENRY VAN VUREN
JOHN CHIAPPE
DEC 21 '95
COUNSEL
USBR MCO (FOLSOM)

| Control No. | | | |
|---|---|---|---|
| Due Dates | | | |
| Code | Act | Surname | Date |
| 100 | | | |
| 900 | | | |
| 418 | | | |
| 418 | | | |
| 417 | | | |
| | | | |
| Project: | | | |
| Classification | | | |
| Folder I.D. | | | |

November 30, 1995

United States Department of Interior
Bureau of Reclamation
Central California Area Office
7794 Folsom Dam Road
Folsom, CA 95630
Attn: Thomas J. Aiken
Area Manager

Re: Water Service Contract Number 4-07-20-W0330/1996 Water Delivery Schedule

Dear Mr. Aiken:

Pursuant to the terms of the above referred contract, the District hereby requests water service delivery for 1996. Preliminary schedules are as follows:

| | |
|---|---|
| April 1996 | 5,000 acre feet |
| May 1996 | 7,500 acre feet |
| June 1996 | 7,500 acre feet |
| July 1996 | 7,500 acre feet |
| August 1996 | 7,500 acre feet |
| September 1996 | 5,000 acre feet |

Please note that the above schedules are preliminary in nature and depend entirely upon the date notification is made to the District of availability of water and the quantity of water made so available. Further, this is made without consideration of any rescheduled water that may be made available pursuant to ongoing negotiations.

Very truly yours,

REID W. ROBERTS

RWR:jh

F

US_000284

March 27, 1996

Thomas J. Aiken
Area Manager
USBR
7794 Folsom Dam Road
Folsom CA 95630

Subject: New Melones -- 1996 Deliveries

Dear Mr. Aiken,

I am writing as directed by SEWD Board action of 3/26/96, and in response to your 3/19/96 letter declaring water available to SEWD during 1996.

Please be advised that the quantities listed in the District's 10/27/95 letter must be revised substantially, because of the wet, '95-'96 winter, and because of the unusually large amount of storage in New Hogan Reservoir, the District's primary source.

The District requests delivery of 2000 acre feet for agricultural purposes according to the following schedule.

| MONTH | ACRE FEET |
|---|---|
| May | 310 |
| June | 300 |
| July | 310 |
| August | 310 |
| September | 300 |
| October | 470 |

The District requests delivery of 2000 acre feet for Municipal and Industrial purposes according to the following schedule.

| MONTH | ACRE FEET |
|---|---|
| November | 1000 |
| December | 1000 |

WP-5-AIKEN3

Mr. Thomas J. Aiken
March 26, 1996
Page 2 Of 2

Enclosed is a check in the amount of $5349.70, for the 610 acre feet of agricultural water to be delivered during May and June, at the rate of $8.77 per acre foot.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

EDWARD M. STEFFANI
General Manager

EMS:ad

WP-5-AIKEN3

# HERUM, CRABTREE, DYER, ZOLEZZI & TERPSTRA, LLP

2291 West March Lane
Suite B100
Stockton, California 95207
(209) 472-7700 (209) 472-7986 Fax
(209) 525-8444 Modesto (209) 525-8484 Modesto Fax

JEANNE M. ZOLEZZI

SEP 10 '98

100 LP
400
Dave

September 9, 1998

Mr. Tom Aiken
United States Bureau of Reclamation
Mid-Pacific Region
7794 Folsom Dam Road
Folsom, California 95630

Re: Stockton East Water District/New Melones Contract
Our File No. 1026-050

Dear Tom:

This letter is written on behalf of the Stockton East Water District and its municipal and agricultural contract water users to request clarification of the applicability of certain provisions of the New Melones contract during the period of time that the New Melones Project is being operated pursuant to the specially negotiated 1997-1998 Operations Plan ("1997-98 Operations Plan").

As you know, the New Melones Stakeholders process was begun in response to the many disputes over water allocation, including litigation, demands from CVPIA, and the Bay-Delta Accord. As an interim stopgap measure, the stakeholders agreed to operate the New Melones Project under the two-year 1997-98 Operations Plan in order to allow time to negotiate a more equitable long-term operations agreement. This two-year Plan was also agreed to because of favorable water conditions: there was enough storage in New Melones Reservoir at the inception of the two-year period that all parties were insured a water supply. It is also important to note that the 1997-98 Operations Plan guaranteed the CVP contractors 50,000-acre feet of their 155,000 acre feet of contracted water each year – regardless of the allocation under the parameters of the more general New Melones Interim Operations Plan. Again, this reflects the availability of water based upon high reservoir levels at the inception of the two-year period, and the desire of the parties to provide water for identified needs when it is available.

This background illustrates the extraordinary nature of the 1997-98 Operations Plan – and the justification for the Bureau to consider changing the way the contract with Stockton East is administered. It is clearly intention of the parties to use this plan as a negotiated settlement to provide additional time to negotiate a long-term plan.

F

As you know, prior to development of the 1997-98 Operations Plan, Stockton East had received almost no water from New Melones, due to the Bureau's decision to allocate water to CVPIA and the Bay-Delta Accord. New Melones water is desperately needed to prevent continued permanent destruction of the critically overdrafted eastern San Joaquin County groundwater basin. Stockton East constructed a 65 million dollar conveyance system as required by its contract with the United States, and when some New Melones water was finally made available by the Bureau, Stockton East, along with Central San Joaquin Water Conservation District, undertook every effort to use that water in order to benefit the groundwater basin.

The United States has indicated its intention to operate the New Melones Reservoir for the next twelve years under the allocation formulas contained in the New Melones Interim Operations Plan, unless a long-term plan is developed before the end of that period. Water availability pursuant to the criteria of the New Melones Interim Operations Plan does not look favorable. Water will only be available to Stockton East on a sporadic basis, at best, and only in the wettest years. While Stockton East is working toward a conjunctive use project that might be able to accommodate such sporadic deliveries, such a project is several years away. In the interim, we have pursued more reliable water supplies, and have entered into a water transfer agreement with Oakdale and South San Joaquin Irrigation District for up to 30,000 acre feet for the next ten years. This, however, presents a problem for administration of the Bureau CVP contract.

Our CVP contract provides for a build-up schedule for both agricultural and M&I water. Build up assumed, as do all CVP contracts, that a reliable supply of water would be provided to the contractors. Obviously, that has not happened in our case.

Because of the foregoing, we would like you to confirm that our allocations of water under, and acceptance of the provisions of the negotiated two-year Interim 1997-98 Operations Plan, will not trigger the build up provisions under Articles 3 and 5 of our New Melones Water Supply Contract. In addition, we would like your determination of whether or not the build up provisions of our contract should begin in water year 2000, the first year of operations outside of the 1997-98 Operations Plan, or only upon completion of the experimental 12 year VAMP program. We want to confirm that the Bureau has the same understanding of the relationship between our contractual provisions and operations under the 1997-98 Operations Plan.

Your confirmation of this understanding would:

- Be consistent with the intention of the parties in negotiating the 1997-98 Operations Plan.
- Be consistent with the Department of the Interior's Policy encouraging water conservation.

- Be consistent with the USBR's release of the San Luis contractors from the Take or Pay provisions of their contract for the past two years.

We look forward to hearing from you.

Very Truly Yours,

Jeanne M. Zolezzi
Attorney-at-Law

JMZ:des

cc: Roger Patterson
Cecil Lesley
Edward M. Steffani
Lowell Ploss
Jim Turner
Donna Tegelmen
Virginia Cahill, Esq.
Morris Allen

L

DIRECTORS
GENO GIANNECCHINI
JOSEPH L. DONDERO
JACK H. TONE
JACK LAVEN
JACK E. CLAYTON
ALFRED B. BONNER
STELLA E. ALONZO
EDWARD M. STEFFANI
GENERAL MANAGER
VIRGIL L. WILL
ASSISTANT MANAGER
JEANNE M. ZOLEZZI
GENERAL COUNSEL

# STOCKTON EAST WATER DISTRICT

6767 E. MAIN STREET P.O. BOX 5157 STOCKTON CA 95205-0157 209/948-0333 FAX 209/948-0423

December 18, 1996

John Garamendi, Deputy Secretary
United States Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Re: Stanislaus River/New Melones Operations

Dear Deputy Secretary Garamendi:

Thank you for agreeing to met with us on Friday, December 20, 1996, at 11:00 a.m. at the office of the United States Bureau of Reclamation (USBR), 2800 Cottage Way, in Sacramento, California. The following are some of the issues which we would like to discuss with you at that meeting.

I. Short-Term New Melones Operations (1997-98)

At your suggestion, the New Melones Stakeholders have been meeting during the past year to arrive at an interim New Melones Operation Plan. Beginning with an initial meeting of stakeholders in Roger Patterson's Office in January 1996, and a technical workshop on a New Melones Water Management Study held by the Bureau of Reclamation on March 15, 1996, the New Melones stakeholders met monthly throughout 1996, with a professional facilitator, to arrive at a two-year operations plan, to be followed by the development of a long-term operations plan.

By October 1996, the parties had developed a proposed two-year plan based on the following principles:

1. Try to meet AFRP flows;
2. Give contractors certainty for two years;
3. Purchase water from willing sellers;
4. Commence necessary modeling for the river.

All parties agreed that the two-year operation plan would not set a precedent for long-term operations, but would give the parties

---

some time to work toward a long-term solution. On November 20, 1996, a meeting was held by all the stakeholders to put the final seal of approval on the proposed two-year interim plan. After more than four hours of discussion and much to everyone's surprise, not only did the United States Fish and Wildlife Service (USFWS) refuse to sign off on the deal, but the USBR suddenly raised concerns which had not been discussed in the previous ten months of discussions.

The proposed plan included the following elements:

1. <u>USBR Purchase of water from Oakdale Irrigation District (OID) and South San Joaquin Irrigation District (SSJID)</u>. OID and SSJID would forego a portion of their allocations from the USBR, and USBR would purchase the water under CVPIA section 3406(b)(3). The amount would be based on a sliding scale depending on the amount of the Districts' allocation. If USFWS did not use all the water in 1997, it could be carried over to 1998.

   The stakeholders agreed that the b(3) water would not be exported.

   The District would address ways of avoiding impacts on South Delta Water Agency (SDWA) in the environmental documentation on the sale (probably avoiding impacts by taking the same deliveries as historically taken in the summer months of concern to SDWA). SDWA will support the interim plan with the understanding that further review and modeling is necessary to ensure the proposed sales do not adversely affect downstream uses. SDWA and SSJID/OID are currently attempting to develop methods by which more in-depth environmental reviews will be completed on both interim and long term sales.

2. <u>Delivery of 50,000 AF to CVP contractors (SEWD and Central) in each year</u>. The exceedence curves resulting from USBR's modeling showed that in 50% and 70% exceedence years, 90-100,000 AF would be available to the contractors in 1997. The contractors were willing to give up approximately 50,000 AF in 1997 in exchange for being guaranteed 50,000 AF in 1998, to avoid the possible boom and bust of recent years. The 50,000 AF not used would either result in a 50,000 AF increase in storage in New Melones in 1998, or it would spill. If it spilled, the reservoir would be relatively full, and the contractors would be entitled to at least 50,000 AF in 1998 based on storage and run-off criteria.

The stakeholders were willing to commit that minimum fish (98,000 AF) and water quality (70,000 AF) requirements would be met in all cases, even in the event of a critically dry year in 1998, so that the 50,000 AF delivered to the contractors in the second year would not reduce the amounts delivered to fish, but would, at most, result in 50,000 AF less in storage at the end of the two year period.

3. <u>AFRP/Instream Flows</u>. The goal of the two-year interim plan is to meet AFRP flows. The proposed plan enhances the flows above the CDFG/USBR instream flow agreement. By purchasing water in the first year, the USFWS would obtain extra water in 1997 and some insurance for 1998. It would have 50,000 to 75,000 AF of additional purchased water available to help meet AFRP flows.

4. <u>Water Quality</u>. The USBR will try to meet water quality standards at Vernalis in 1997 and 1998.

5. <u>Operations pursuant to exceedence curves</u>. All elements of the operations plan were either tied to storage and/or inflow, except the CVP contractors, which were to receive 50,000 AF in both 1997 and 1998. Allocations were to be based on the modeling dated October 31, 1996. The fishery agencies could consider whether they preferred "smooth" curves or "chunking" when passing from one year type to another.

6. <u>Modeling and Testing</u>. USBR is required by its permits to perform modeling and testing on the Stanislaus River. It should seek the appropriations necessary for the required studies. As a condition of the water sale in point 1, OID and SSJID would commit some funding from the sale proceeds for the out-migration study. The parties would define the studies to be done.

Although this proposed plan was first suggested prior to the October meeting, and was developed and distributed to the stakeholders prior to the meeting on November 20th, and although the USBR brought the results of several model runs to the November 20th meeting, the USBR did not model the proposed plan, with the fixed 50,000 AF deliveries to the contractors (only one-third of their contract amounts) in each year. Because there were no runs to show what would happen in the second year under

the proposed plan, the USFWS representatives were unsure what the impacts would be on fish deliveries and therefore would not commit to the interim plan. This is especially frustrating in light of the fact that previous modeling results showed that deliveries to the contractors in the second year would not reduce deliveries to fish if the second year were dry, but would at most reduce the amount in storage at the end of the second year.

OID/SSJID supported the plan; the contractors supported it; the environmental groups supported it for two years on certain conditions (no export of b(3) purchases, guaranteed minimum fish flows in the second year); the Delta interests did not express opposition to the two year plan except for the proposed USBR purchase from OID and SSJID (CDWA believes equivalent purchases form the West Side should be made for the next two years); but near the end of the four-hour meeting, the USBR, which had been doing the model runs for the months with similar inputs, suddenly had "concerns" and was unwilling to approve the plan.

The bottom line: New Melones is spilling water at a rate of 3500 cfs today. The reservoir will begin 1997 with ample water in storage. According to the storage and inflow criteria, 1997 will be at least a normal year. The inputs presented for the last several months indicated that the contractors will be entitled to at least 50,000 AF and more likely 90,000 to 100,000 AF this year. The interim plan proposed by the stakeholders was reasonable, involving more water for fish pursuant to the b(3) purchase, certainly for the contractors, and provision for some of the required modeling and testing. Yet, after months of work, we have no 1997-98 operations plan for New Melones.

II. <u>Long-Term New Melones Operations</u>

The stakeholders have scheduled a further meeting for the end of January. All the stakeholders recognize that after interim operations are determined, there will remain the need to develop a plan for long term operations. We remain ready to participate in that effort, although the experience with the short-term plan has been discouraging.

The modeling we have seen to date and the actual experience with spills from New Melones makes it clear that the USBR has been operating New Melones extremely conservatively, in order to be able to meet many demands in the last year of an extended drought. The results have been frequent spills, and reduced

project yield. The contractors may be denied water, only to watch it spill the following winter. The USBR's own runs show that under the various operational scenarios studied for the interim plan, **average annual spills** range from 66,000 AF to 137,000 AF of New Melones water. This cannot be tolerated in light of the extremely overdrafted groundwater basin in Eastern San Joaquin County. The solution is to reduce the amount of carryover storage required at the end of each year which would increase the yield of New Melones significantly, making more water available for delivery to the contractors.

If USBR remains committed to operating New Melones in a manner that results in frequent spills, funding for Farmington Reservoir must be found, so that the spilled water can be captured and put to beneficial use in those years when it is available. Because Farmington Reservoir is an existing flood control structure, we believe that the environmental impacts of converting it to a storage facility will be considerably less than would be the case of building a new reservoir on the Stanislaus River or other stream or creek in the basin.

III. <u>No Reasonableness component in Stanislaus River AFRP</u>.

The CVPIA requires the Department of the Interior to take all <u>reasonable</u> measures to double anadromous fisheries. **However, the AFRP flows proposed for the Stanislaus River are so great that they would consume the entire available yield of the project in most years.** Specifically, at the October 30, 1996 workshop, the USFWS introduced the AFRP Flow and Habitat Objectives for the Delta (nine priorities) and upstream river, including the Stanislaus River. At the November 13, 1996 meeting, the USFWS indicated that of the nine Delta priorities, it has determined at that time to implement only three (1, 2 and 8). Priorities 3, 4 and 5 would be reviewed and considered if there were enough water available next year. It was determined that Priorities 7 and 9 were not reasonable for 1997. Priority 6 would be considered in November of 1997. When asked about the criteria for determining "reasonableness" of the priorities, no such criteria was available. However, the USFWS stated that the determination to defer implementation of two-thirds of the priorities **was based upon the identified impact to water allocations.**

What is conspicuously absent from implementation of the AFRP goals for the Stanislaus River is the application of any sort of "reasonableness" criteria. Despite serious and continued identified impacts to water allocation on the Stanislaus River,

there has been no analysis made of "reasonableness" for the Stanislaus River AFRP Flow Objectives, nor has there been consideration of partial implementation based upon the impacts to water allocations. It is wholly inequitable that the same approach utilized in the Delta is not applied to upstream tributaries.

IV. Failure of USBR to complete required studies on Stanislaus River.

Stockton-East believes that the AFRP flows, and the fish flows in the 1994 Principles of Agreement and resulting Bay/Delta Water Quality Plan, are based on faulty science. A particular problem for Stanislaus River stakeholders is that the USBR has not conducted the studies required by the CVPIA and the California State Water Resources Control Board as a condition of its permits for New Melones. This is an obligation of the USBR, which has the responsibility for obtaining the necessary appropriations to conduct the studies. While the stakeholders have themselves performed various studies, it is not appropriate for the United States to attempt to shift its own obligations onto other parties interested in the Stanislaus River. In light of the many processes addressing the Bay/Delta, San Joaquin River, and Stanislaus River, those studies are of vital importance, and must proceed immediately.

V. Failure to address salinity problems in the San Joaquin River.

It is undeniable that construction and operation of Friant Dam and delivery of water to poorly-drained lands on the west side of the San Joaquin Valley have been the major factors in excess salinity and reduced water quality in the San Joaquin River. The United States continues to deliver water to lands which were not to be served until adequate drainage was assured. It is unfair for USBR to place the burden on diluting the pollution in the San Joaquin River on New Melones Reservoir, thus depriving the contracting districts in the watershed of origin of water needed for beneficial uses in the Stanislaus River watershed. The United States must implement remedial measures to avoid San Joaquin River salinity problems, whether by construction of a drain, land retirement, or other control of the pollution at its source.

John Garamendi, Deputy Secretary
December 18, 1996
Page 7

We look forward to discussing these matters with you on Friday, December 20, 1996.

Very truly yours,

EDWARD M. STEFFANI
General Manager

cc: Lowell Ploss
Kellye Kennedy
Richard Pombo
Michael Machado
Dario Marenco
George Barber
Alex Hildebrand
Dante Nomellini
Karna Harrigfeld
John Herrick
John Pulver
Rebecca Davis
Cindy Neely
Morris Allen

DIRECTORS
GENO GIANNECCHINI
JOSEPH L. DONDERO
JACK H. TONE
JACK LAVEN
JACK E. CLAYTON
ALFRED B. BONNER
STELLA E. ALONZO
EDWARD M. STEFFANI
GENERAL MANGER
VIRGIL L. WILL
ASSISTANT MANAGER
JEANNE M. ZOLEZZI
GENERAL COUNSEL

# STOCKTON EAST WATER DISTRICT

6767 E. MAIN STREET P.O. BOX 5157 STOCKTON CA 95205-0157 209/948-0333 FAX 209/948-0423

February 24, 1997

Thomas J. Aiken
Area Manager
USBR
7794 Folsom Dam Road
Folsom CA 95630

Subject: New Melones Deliveries -- 1997

Dear Mr. Aiken,

I am writing in response to your 2/19/97 request for a schedule for SEWD use of 23,000 AF, and for payment for water for the first two months.

The following table presents a schedule for use of Ag and M&I water.

| | ACRE FEET/MONTH | |
|---|---|---|
| MONTH | AG | M&I |
| April | 200 | 1,000 |
| May | 300 | 1,500 |
| June | 500 | 2,800 |
| July | 500 | 2,800 |
| Aug. | 500 | 2,800 |
| Sept. | 500 | 2,800 |
| Oct. | 500 | 2,800 |
| Nov. | 0 | 2,000 |
| Dec. | 0 | 1,500 |
| Totals | 3,000 | 20,000 |

Enclosed is payment of $5,115 for Ag water and $86,750 for M&I water, based upon 500 AF at the Ag rate of $10.23 and 2,500 AF at the M&I rate of $34.70.

Very truly yours,

EDWARD M. STEFFANI
General Manager

cc: John Yoshimura
Andres Lozano

W95-(NM-LFC-GT-SHRC)-AIKEN1

**THE CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT**

"67,000 acres of diversified family farms in San Joaquin County, California"
311 E. Main, Ste. 202, Stockton, California 95202
(209) 466-7952 • FAX 466-7953

DIRECTORS
RECEIVED
DEC 23 1996
USBR - NCC (FOLSOM)

| Control No. | | | |
|---|---|---|---|
| Doc Dates | | | |
| Code | Act | Surname | Date |
| | | | 2/21 |
| | | | |
| | | | |
| | | | |
| Project: | | | |
| Classification | | | |
| Folder I.D. | | | |

December 2, 1996

United States Department of Interior
Bureau of Reclamation
Central California Area Office
7794 Folsom Dam Road
Folsom, CA 95630
Attn: Thomas J. Aiken
Area Manager

Re: Water Service Contract Number 4-07-20-W0330/1997 Water Delivery Schedule

Dear Mr. Aiken:

Pursuant to the terms of the above referred contract, the District hereby requests water service delivery for 1997. Preliminary schedules are as follows:

| | |
|---|---|
| April 1997 | 3,000 acre feet |
| May 1997 | 4,000 acre feet |
| June 1997 | 5,000 acre feet |
| July 1997 | 5,000 acre feet |
| August 1997 | 5,000 acre feet |
| September 1997 | 5,000 acre feet |

Please note that the above schedules are preliminary in nature and depend entirely upon the date notification is made to the District of availability of water and the quantity of water made so available. Further, this use and schedule is submitted in consideration of ongoing meetings with the Stanislaus River Basin Water Management Study wherein it has been proposed that water availability for 1997 and 1998 be in the amount of 50,000 acre feet, each year, to be shared between the District and the Stockton East Water District.

Very truly yours,

REID W. ROBERTS

RWR:jc

US_000280

FILE

NOV 20 1998

United States Department of the Interior

BUREAU OF RECLAMATION
Central California Area Office
7794 Folsom Dam Road
Folsom, California 95630-1799

IN REPLY REFER TO:

CC-931
WTR-4.00

NOV 18 1998

Ms. Jeanne Zolezzi, Esq.
Herum, Crabtree, Dyer, Zolezzi & Terpstra, LLP
2291 West March Lane, Suite B 100
Stockton, California 95207

Subject: Request for Relief from Build Up Schedule due to Interim Operation of East Side Division, Central Valley Project, California

Dear Ms. Zolezzi:

This letter is in response to your letter of September 9, 1998, written on behalf of Stockton East Water District (District) and its municipal and agricultural contract water users. Your letter requests clarification of the applicability of certain provisions of the District's New Melones water service contract. More specifically, you request confirmation of Reclamation's understanding regarding the relationship between the build-up provisions of Contract No. 4-07-20-W0329 and operations under the 1997-1998 New Melones Interim Plan of Operation. In your letter you make the following request:

> Because of the foregoing, we would like you to confirm that our allocations of water under, and acceptance of the provisions of the negotiated two-year Interim 1997-98 Operations Plan, will not trigger the build up provisions under Articles 3 and 5 of our New Melones Water Supply Contract. In addition, we would like your determination of whether or not the build up provisions of our contract should begin in water year 2000, the first year of operations outside of the 1997-98 Operations Plan, or only upon completion of the experimental 12 year VAMP program.

It is Reclamation's position that your allocations of water under, and acceptance of the provisions of the negotiated two-year Interim 1997-1998 Operations Plan for New Melones, will not trigger the build-up provisions under Article 3 and Article 5 of Contract No. 4-07-20-W0329.

Even though build-up provisions will not be triggered under the Interim 1997-1998 Operations Plan for New Melones, it is Reclamation's position that the build-up provisions could be triggered any time after a Long-Term Operations Plan for New Melones is put into effect, not necessarily in water year 2000 or upon completion of the experimental 12 year VAMP.

If you have any further questions on this matter please contact Mr. Bob Colella at (916) 978-5256 or Mr. Cecil Lesley, of my staff, at (916) 989-7221 (TDD 989-7285).

Sincerely,

Thomas J. Aiken
Area Manager

HERUM CRABTREE

BROWN DYER

ZOLEZZI TERPSTRA

BUREAU OF RECLAMATION OFFICIAL FILE COPY RECEIVED JAN 03 2001 CODE ACTION 440 115 Copy Recd

P.M. 1-3

Jeanne M. Zolezzi
jzolezzi@herumcrabtree.com

January 2, 2001

Mr. Lowell Ploss
United States Bureau of Reclamation
2800 Cottage Way
Sacramento, California 95825

Re: Stockton East Water District/New Melones Contract

Dear Lowell:

I am writing on behalf of the Stockton East Water District in response to your December 20, 2000 letter to All Central Valley Project Water Service Contractors. While I understand the letter's intent, I want to clarify a continuing exception for Stockton East Water District. Please confirm that the build-up provisions for Stockton East Water District will continue to be governed by the November 18, 1998 letter from Tom Aiken, a copy of which is enclosed for your convenience.

Thank you for your consideration.

Very truly yours,

JEANNE M. ZOLEZZI
Attorney-at-Law

JMZ:rl

Enclosure

cc: Mr. Kevin Kauffman
Mr. Chuck Marshall
Mr. Tom Aiken
Virginia Cahill, Esq.

1000050
2964

F:\documents\1026-050\JMZ\9533.doc

BUREAU OF RECLAMATION
OFFICIAL FILE COPY

| DATE | SURNAME | CODE |
|---|---|---|
| 3/8/01 | [illegible] | 440 |
| 3/8/01 | [illegible] | 440 |
| 3/9/01 | [illegible] | 400 |
| 3/13 | Turner | 1150 |
| 3/21 | Ploss | 115 |
| | | 105 |
| | | 100 |
| | | |
| | | |
| | | |

MP-440
WTR-4.00

MAR 21 2001

Ms. Jeanne M. Zolezzi
Attorney-at-Law
Herum, Crabtree, Dyer, Zolezzi & Terpstra, LLP
2291 West March Lane, Suite B100
Stockton CA 95207

Subject: Stockton East Water District/New Melones Contract

Dear Ms. Zolezzi:

In your letter of January 2, 2001, you request confirmation that Reclamation's letter of November 18, 1998, is still governing the build-up provisions of the Stockton East Water District water service contract. This letter confirms that Reclamation's letter, *Request for Relief from Build-Up Schedule due to Interim Operation of East Side Division, Central Valley Project, California*, dated November 18, 1998, still governs the build-up provisions under Articles three and five of Contract No. 4-07-20-W0329.

Should you have any questions, please contact Chuck Marshall, Repayment Specialist, Water Rights and Contract Branch at (916) 978-5255 (TDD (916) 978-5608).

Sincerely,

//S// LOWELL F. PLOSS

FOR Lester A. Snow
Regional Director

bc: CC-405 (C. Lesley)

WBR:Cmarshall:lab:3/8/2001:(916)978-5255:Control #1000050
I:\SEWDReply.doc
Surnames: 440(2), 400, 1150(jt), 115, 105, 100

RCF-1000050
WTR 4.00
CUP
1003857
2964 -1