**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| | ) | No. 04-541 L |
| Plaintiffs, | ) | |
| v. | ) | Judge Christine Odell Cook Miller |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY REGARDING TEMPERATURE OBJECTIVES**

Defendant United States hereby submits this response to Plaintiffs' Motion *in Limine* to Exclude Testimony Regarding Temperature Objectives ("Plaintiffs' Motion"). For the reasons set forth below, Defendant should be allowed to fully explain, through testimony and the introduction of documentary evidence, all of the factors that affect Reclamation's operational decisions, including Reclamation's efforts to comply with water temperature objectives. Given that Plaintiffs' contract claims are premised on the assertion that Defendant failed to make more water available to them, evidence regarding Defendant's determinations of water availability are highly relevant and such evidence should not be excluded prior to trial.

I. <u>Defendant Has Authority to Operate the New Melones Reservoir to Serve the CVP's Multiple Purposes, Which Include Fish Mitigation, Protection, Restoration and Enhancement</u>

Plaintiffs seek to exclude evidence regarding water temperature objectives on the ground that "there are no temperature requirements on [the Stanislaus River]." Pls.' Mot. at 2. As

discussed below, however, both the Central Valley Project Improvement Act, Title XXXIV, Pub. L. 102-575, 106 Stat. 4706 ("CVPIA"), and the Endangered Species Act, 16 U.S.C. § 1531, et. seq. ("ESA"), provide Reclamation with the authority and responsibility to operate the Central Valley Project ("CVP") to meet fishery mitigation, protection and restoration purposes. Since water temperature objectives are directly related to the health of fish in the Stanislaus River, water temperatures are an important component of Reclamation's operational decisions.

A. The Central Valley Project Improvement Act

As explained in more detail in Defendant's Pretrial Brief (Doc. #122), when Congress enacted the CVPIA, it amended the authorization of the CVP to make operation of the CVP for "fish and wildlife *mitigation, protection and restoration* purposes" equal in priority to operation for irrigation and domestic uses, and to make operation for "fish and wildlife *enhancement*" equal in priority to operation for power purposes. CVPIA, Sec. 3406(a) (emphasis added). By adding fish and wildlife obligations to the authorized purposes of the CVP, Congress sought to achieve a reasonable balance among competing demands for use of CVP water that did not previously exist as a matter of federal law. See id., Sec. 3402. In addition to expressly adding fishery purposes to the CVP's authorization, the CVPIA provides a number of specific directives related to these purposes. For example, Section 3406(b) directs the Secretary to operate the CVP to meet all obligations under federal and state law, including the ESA, and all conditions imposed in the permits issued by the State Water Resources Control Board ("SWRCB"). Section 3406(b)(1) requires the Secretary to develop and implement a program to double the natural production of anadromous fish and then sustain those increased numbers on a long-term basis. Section 3406(b)(2) requires the Secretary to dedicate and manage 800,000 acre-feet ("AF") of

water out of the CVP yield for the primary purpose of fish restoration.

These provisions of the CVPIA provide Reclamation with the necessary authority and responsibility to operate the CVP, including New Melones Reservoir, to meet fish and wildlife mitigation, protection and restoration purposes. To meet these purposes, Congress set forth broad requirements and objectives. The details of compliance are necessarily left to the Secretary's discretion. See Central Delta Water Agency v. Bureau of Reclamation, 452 F.3d 1021, 1026 (9th Cir. 2006) (stating that the CVPIA "leaves to the agency's discretion the decision of how to comply with [water quality] standards") (emphasis in original). For example, Congress set a goal of doubling the natural production of anadromous fish in CVP-controlled streams and rivers – which includes the Stanislaus – and left the details of how to accomplish that goal to the Secretary. Similarly, CVPIA required the Secretary to dedicate and manage 800,000 acre-feet of water for fish purposes on an annual basis, but left the details of where and when to use this water over the course of the year to the Secretary's discretion. CVPIA, Sec. 3406(b)(2).

In addition, Reclamation is required to comply with the terms and conditions contained in its permits from the SWRCB. These state permits require Reclamation to provide between 98,300 AF and 302,100 AF of water annually for fish purposes on the Stanislaus River. See SWRCB D-1616 (available at http://www.swrcb.ca.gov/hearings/Decisions.htm). The timing of these releases is based on instream flow schedules, which are submitted on an annual basis by the California Department of Fish and Game ("DFG"). See Proposed JX-17 (1987 DFG Agreement).

There is no dispute that fishery biologists believe that the release of cold water into the

Stanislaus River is important to the restoration of fish in that river. The testimony of Defendant's witnesses at trial and related documentary evidence will support this.[1] See, e.g., Def.'s Ex. 1 (DX-76 at SE01875) (Sept. 29, 1994 Letter from DFG to Reclamation regarding the importance of water temperature to the restoration of the anadromous fishery in the Stanislaus River).

Simply stated, Reclamation must comply with the CVPIA; the CVPIA requires Reclamation to operate the CVP to restore anadromous fish within the Stanislaus River; water temperature is an important aspect of restoring those fish. Hence, Reclamation has the authority and obligation to operate New Melones so that required releases of water for mandatory instream flow purposes meet water temperature objectives. In effect, Plaintiffs' Motion asks the Court to ignore the reality of Reclamation's operational decisions as well as the biological justification for those decisions simply because Congress did not impose a specific water temperature objective in the CVPIA. Plaintiffs' argument should be rejected.

B. The Endangered Species Act

Plaintiffs admit that the California Central Valley Steelhead was listed as a threatened species under the ESA in 1998, and that the National Marine Fisheries Service (now NOAA Fisheries) issued a series of biological opinions related to CVP operations that included temperature objectives for the listed steelhead in the Stanislaus. See Pls.' Mot. at 3. However, Plaintiffs assert that because the listing of the steelhead was vacated by the United States District Court for the Eastern District of California on May 18, 2006 – well after the last year for which

---

[1] Plaintiffs do not appear to dispute that water temperature is a valid objective for fish restoration purposes. Instead, they appear to be asserting that the operation of the CVP for fishery purposes does not "supersede" their contractual rights. Pls.' Mot. at 3 n.2.

Plaintiffs claim a breach of contract – Reclamation's prior compliance with the ESA "cannot form the basis of a defense in this case." Pls.' Mot. at 3-4.

Plaintiffs' arguments regarding the ESA are misplaced. Although Plaintiffs correctly state that the district court invalidated the listing of the steelhead on May 18, 2006, they neglect to inform this Court of other pertinent facts. Specifically, the district court's order of May 18, 2006, was preceded by a detailed summary judgment decision issued two years earlier, on May 12, 2004. See Modesto Irrig. Dist. v. Evans, No. CIV-F-02-6553 OWW DLB, Mem. Decision (E.D. Cal. May 12, 2004) (attached hereto as Def.'s Ex. 2). In its 2004 decision, the district court found flaws in the 1998 listing of the steelhead, but declined to vacate that listing. Instead, the district court found that the listing should be preserved pending the efforts of NOAA Fisheries to correct those flaws through a new listing because:

> (1) the protected classification is likely curable after the ESU [Evolutionarily Significant Unit] is updated in accordance with the law; (2) although there is substantial scientific controversy on the inclusion of hatchery fish in the DPS [distinct population segment], scientific evidence indicates that vacating the listing may pose a substantial threat of irreparable harm to the Central Valley Steelhead; and (3) Plaintiffs do not face any imminent prospect of injury from preserving the listing.

Id. at 52; see also id. at 62 (finding that this case "is one of the rare cases where equitable discretion should be exercised to not vacate a listing to prevent irreparable harm to the species . . ."). Accordingly, the district court's original order did not disturb the listing of the Central Valley Steelhead pending NOAA Fisheries' efforts to correct any problems and relist the species. Id. at 62-64.

As stated in the district court's final decision, NOAA Fisheries finalized its new listing on December 23, 2005, and that listing took effect on February 6, 2006. See Pls.' Mot., Ex. B at

4. With the new listing in place, the district court then vacated the original listing in accordance with its earlier determination that the original listing had been flawed. Id. Contrary to Plaintiffs' assertion, the district court's decision did not render Reclamation's compliance with the original listing invalid. Instead, it is clear that the district court left the original listing in place so that the species would continue to receive protection under the ESA pending the correction of any flaws in the original listing. Accordingly, Reclamation was required to comply with the ESA, including the water temperature objectives set forth in the biological opinions referenced in Plaintiffs' Motion. Plaintiffs' suggestion here that Reclamation's compliance with the ESA was somehow improper or invalid turns the district court's decision on its head and should be rejected here.

II. The Court Should Reject Plaintiffs' Challenge to Reclamation's Accounting of Water Released Pursuant to CVPIA § 3406(b)(2)

Plaintiffs also contend that Reclamation has wrongly accounted for water releases made pursuant to CVPIA § 3406(b)(2). See Pls.' Mot. at 4 (claiming that any water stored in New Melones Reservoir for temperature protection "would have to be included in its annual accounting calculation of 800,000 [AF] of CVPIA § 3406(b)(2) dedications"). The Court should reject Plaintiffs' challenge to Reclamation's accounting of (b)(2) water for two reasons. First, a challenge to Interior's implementation of the CVPIA must be brought in federal district court under the Administrative Procedure Act ("APA"). See Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005). Plaintiffs have already filed such a lawsuit. Prior to articulating a breach of contract claim in this Court, Plaintiffs filed suit in district court arguing that the implementation of CVPIA was arbitrary, capricious, and an abuse of discretion. Plaintiffs cannot litigate that same claim in this forum.

Second, Plaintiffs' argument should be rejected in any event because it is based on an erroneous assumption that Reclamation maintains water in New Melones solely for the purpose of meeting water temperature objectives. As Defendant's witnesses will explain at trial, Reclamation maintains water storage levels in New Melones to meet all the conditions imposed under the state permits for New Melones and federal law. In making decisions about water availability, Reclamation properly considers a variety of issues, including existing storage levels, predicted inflows, current demands, and the need to operate the reservoir on a long-term sustainable basis so that permit conditions and other demands can be met in future years. It is entirely proper for Reclamation to consider these factors because these conditions must be satisfied before any water can be delivered to Plaintiffs.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to exclude any evidence related to water temperature objectives for fish should be denied.

Dated: October 11, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
501 I Street, Room 9-700
Sacramento, CA 95814
(tel) (916) 930-2207

Counsel of Record for Defendant

KRISTINE S. TARDIFF
United States Department of Justice
Environment and Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

LUTHER L. HAJEK
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663

OF COUNSEL:
SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Branch of Water and Power
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825