**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| | ) | No. 04-541 L |
| Plaintiffs, | ) | |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EXPERT REPORT OF PEGGY MANZA**

Defendant, the United States of America, hereby submits this Response to Plaintiffs' Motion *in Limine* to Exclude Testimony and Expert Report of Peggy Manza ("Plaintiffs' Motion") (Doc. #118). Ms. Manza, a Hydraulic Engineer in the Bureau of Reclamation's Central Valley Operations Office, prepared a rebuttal report in response to a report authored by Avry Dotan, whom Plaintiffs intend to call in support of their case. Plaintiffs' Motion seeks to prohibit Defendant from offering in evidence the expert testimony or expert report of Peggy Manza on the grounds that Ms. Manza's testimony is irrelevant and speculative. For the reasons discussed below, the Court should deny Plaintiffs' Motion.

**A. Ms. Manza's Testimony is Directly Relevant to the Issues Involved in this Case**

Plaintiffs first argue that Ms. Manza's expert testimony "does not relate to any issue in the case [and is therefore] inadmissible." Pls.' Mot. at 2. This is incorrect. Ms. Manza's testimony as an expert will be used to rebut the testimony of Mr. Dotan, whom Plaintiffs intend

to call as an expert witness. Mr. Dotan is expected to testify that based on his post-hoc consideration of hydrologic conditions, it was "physically possible" for Reclamation to deliver 155,000 AF of water to the Plaintiffs each year from 1993 to 2004.

Mr. Dotan's opinion is based on a computer simulation of New Melones, which he prepared for purposes of this case. As Mr. Dotan explained in his deposition, his computer simulation is "not a planning model nor operation – nor operator's model. It's a simulation model of the system given – for a given time period in the history of the project [1992-2004]." Def.'s Ex. 1 at 19:5-20:13 (Mr. Dotan's Sept. 12, 2006 Deposition Transcript). Mr. Dotan's computer simulation considered data not known or knowable at the time operational decisions were made, and considers only whether the storage level at New Melones Reservoir would have dropped to zero if Reclamation had released 155,000 AF of water to Plaintiffs in every year. Mr. Dotan concludes that New Melones Reservoir would not have dried up if those releases had been made.

Mr. Dotan is not qualified to opine on whether releasing 155,000 AF of water to Plaintiffs in every year would have been a reasonable way to operate New Melones. Mr. Dotan has never been in charge of managing a reservoir, and has never worked in a position where his job involved the managing of a reservoir. Id. at 9:11-23. He readily admits that he is not qualified to testify about the best way to manage a reservoir, including New Melones, or even a reasonable way to operate New Melones Reservoir. Id. at 9:24 to 10:25. Mr. Dotan does not know how Reclamation makes operating decisions with respect to New Melones, id. at 143:15-18, and he has no opinion about whether Reclamation's past operation of New Melones is reasonable, id. at 11:12-18. Mr. Dotan, therefore, will not be providing an expert opinion about

how Reclamation manages Central Valley Project reservoirs or how Reclamation should manage those reservoirs. Id. at 9:12-17.

In rebuttal, Ms. Manza will testify that Mr. Dotan failed to consider how operational decisions are actually made. She will address the fact that Mr. Dotan's simulation uses data that did not exist at the time Reclamation had to make its operational decisions. Ms. Manza will also testify how Reclamation's operation of New Melones took into account the severe drought that took place from 1987-1992. In the first year of this lawsuit – 1993 – New Melones storage levels were only beginning to recover from the multi-year drought. See Def.'s Pretrial Br. at 38-39 (Doc. #122). Mr. Dotan readily concedes that he has "no knowledge as to how the operation in 1992 has been implemented or [how] the knowledge gained in that year has been implemented into overall strategy of how [Reclamation] is operating on a year-by-year basis." Def.'s Ex. 1 at 144:1-8. This point is especially important given the undisputed variance in historical inflows into New Melones Reservoir (from as little as 188,000 AF (in 1977) to as much as 2 million AF (in 1983)). See id. at 105:5-9.

Finally, Ms. Manza will explain how Mr. Dotan's opinion ignores the fact that Reclamation's operational decisions are impacted by Reclamation's need to maintain New Melones storage levels to meet present and future needs. By ignoring the realities of operational decision-making, Ms. Manza will testify that, by ignoring the realities of operational decision-making, Mr. Dotan's analysis is ultimately an irrelevant simulation.

### B. Ms. Manza's Expert Testimony, As Well As the Testimony of Defendant's Other Witnesses, Are Highly Relevant

Plaintiffs argue that the Ms. Manza's testimony should be struck because she does not "opine that, by reason of the passage of CVPIA, it was impossible for Reclamation to furnish

water to Plaintiffs in accordance with their contracts" or the meaning of Article 9 of both contracts. Pls.' Mot. at 4, 6. As discussed above, Ms. Manza will testify that Mr. Dotan's analysis and conclusion are fundamentally flawed because they ignore a variety of factors involved in Reclamation's actual reservoir operations. In addition to Ms. Manza, Defendant will also call several present and former Reclamation employees to testify about how Reclamation coordinates its CVP operations and how Reclamation reaches decisions about water availability at New Melones Reservoir. The testimony of these witnesses, including Ms. Manza, will demonstrate that Mr. Dotan's hindsight analysis is irrelevant to, and significantly different from, actual, real-time operation of New Melones. In making its determination of water availability in each year, Reclamation lacks perfect knowledge of what conditions will exist in the years to come. This testimony, then, will factually support Defendant's shortage determinations, as well as application of the sovereign acts and unmistakability doctrines. See Def.'s Pretrial Br. at §§ III and IV.

Plaintiffs' real argument appears to be that Ms. Manza's testimony should be struck because she does not offer a legal conclusion about the meaning of Article 9 or the applicability of the sovereign acts doctrine. Ms. Manza need not offer such an opinion to rebut Mr. Dotan's report, and such a legal conclusion would be objectionable in any event. In addition, Plaintiffs' point seems premised on a misunderstanding of "legal impossibility" in the context of the sovereign acts doctrine. While "physical impossibility" may be one way of meeting the standard of legal impossibility, it is not the only one. See, e.g., Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1294 (Fed. Cir. 2002) (stating that the court has "long recognized that the doctrine of impossibility *does not require a showing of actual or literal impossibility of*

*performance* but only a showing of *commercial impracticability*") (emphasis added); Transatlantic Fin. Corp. v. United States, 363 F.2d 312, 319 n.13 (Fed. Cir. 1966) ("'whether the promise can *reasonably* be performed rather than a subjective inquiry into the promisor's capability of performing as agreed'") (citation omitted) (emphasis added); see also Def.'s Pretrial Br. at 58 (discussing rejection of similar arguments made by plaintiffs in Casitas Municipal Water Dist. v. United States, No. 05-168L, slip op. (Fed. Cl. Oct. 2, 2006) (Weise, J.), and Barcellos & Wolfsen, Inc. v. Westlands Water Dist., 849 F.Supp. 717 (E.D. Cal. 1993)).

Accordingly, Ms. Manza's testimony is directly relevant to the issues involved in this case and directly rebuts Mr. Dotan's opinion. As Ms. Manza's Expert Report states:

> The Dotan Report is fundamentally and fatally flawed owing to the fact that it takes advantage of perfect knowledge of reservoir inflows and releases necessary to meet permit obligations, and it assumes that Reclamation should have been able to operate New Melones Reservoir in accordance with that perfect foreknowledge. This assumption is contrary to all reasonable and prudent standard procedures for reservoir operations.

Manza Report at 2-3 (attached to Pls.' Mot. as Ex. B). Thus, Ms. Manza's report clearly states her expert opinion and the bases for that opinion. The report encompasses the opinions and criticisms of Mr. Dotan's analysis that Ms. Manza will offer at trial in her capacity as an expert. Accordingly, her report complies with Rule 26(a)(2)(B), and the Court should deny Plaintiffs' Motion.

### C. Ms. Manza's Report and Testimony Are Not Speculative

Plaintiffs next argue that Ms. Manza's expert testimony should be struck because her testimony is speculative. See Pls.' Mot. at 6 (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). The cases cited by Plaintiffs do not support the exclusion of Ms. Manza's testimony. In Indiana Michigan Power Co. v. United States, for example, the court excluded the testimony of a consultant who offered only a "subjective belief" about when a certain event might occur. 60 Fed. Cl. 639, 647 (2004). Similarly, in Watkins v. Telsmith, the court excluded the testimony of an engineering expert who offered only unproven concepts, rather than concrete alternatives. 121 F.3d 984, 992 (5th Cir. 1997). Neither of these cases is analogous to the case before the Court. Here, Ms. Manza is not guessing about any particular outcomes, nor is she offering unproven alternatives. Instead, Ms. Manza offers specific and concrete criticisms of Mr. Dotan's model based on the actual real-time operation of New Melones Reservoir. Indeed, Plaintiffs really appear to be complaining that Ms. Manza has not speculated enough because she declined Plaintiffs' invitation to speculate about amounts that might have been available in certain years if Reclamation had decided to operate New Melones Reservoir in a different manner. See Pls.' Mot. at 5 (citing Ms. Manza's testimony that she could not answer how much additional water might have been made available to Plaintiffs if Reclamation had not made releases for CVPIA purposes). Accordingly, Ms. Manza's testimony is not speculative and is admissible under Daubert and its progeny.

**D. Conclusion**

Ms. Manza's testimony rebuts Mr. Dotan's opinion by inserting the reality check of real, operational decision-making. Ms. Manza, like other Reclamation employees, will testify that reservoir operators made the best decisions they could based on the limited knowledge they had. By pointing out the fundamental flaw of Mr. Dotan's report – his use of post hoc data – Ms. Manza's opinion is proper and admissible rebuttal expert testimony.

Dated: October 11, 2006

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division

s/ William J. Shapiro
WILLIAM J. SHAPIRO
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
501 I Street, Room 9-700
Sacramento, CA 95814
(tel) (916) 930-2207

Counsel of Record for Defendant

KRISTINE S. TARDIFF
United States Department of Justice
Environment and Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

LUTHER L. HAJEK
United States Department of Justice
Environment and Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663

OF COUNSEL:
SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Branch of Water and Power
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825