**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOCKTON EAST WATER DISTRICT, et al., Plaintiffs, | No. 04-541 L |
| v. | Judge Christine Odell Cook Miller |
| UNITED STATES, Defendant. | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S**
**MOTION *IN LIMINE* REGARDING PLAINTIFFS' EXHIBIT 282**

In the Court's ruling on the parties' cross-motions for summary judgment, it found that Article 9(a) of the contracts (the shortage provision) was ambiguous, and recognized that extrinsic evidence could be used to aid in interpretation of this provision. *Stockton East Water Dist. v. United States*, No. 04-541, slip opinion at 26 (Fed. Cl. April 10, 2006). Further, this Court noted that whether or not Defendant could have taken its 800,000 acre-feet of CVPIA water from other contractors without breaching its contracts with Plaintiffs is relevant to its analysis of impossibility of performance. *Id*. at 23. The shortage provisions in other CVP contracts are relevant to both of these inquires. The summary of CVP shortage provisions, which Defendant has moved to exclude, is intended to aid the Court in this regard without burdening the Court with boxes of contracts.

**I. The Summary of Shortage Provisions Is Useful to Aid in the Court's Interpretation of the Shortage Provision in the Contracts at Issue**

The summary of shortage provisions, Plaintiffs' Exhibit 282, is intended to enable the Court to readily understand the variety of shortage provisions—each with different liability immunization levels—that the Defendant had at its disposal when it drafted the contracts at issue

in this case and chose to use the specific language that appears in Article 9(a) Plaintiffs' contracts. The summary also illustrates how Defendant has modified the shortage language in contracts it has entered into after the initiation of this litigation. In short, the summary is persuasive extrinsic evidence in interpreting Defendant's intent with respect to Article 9(a) of the contracts at issue in this case, similar to "custom and practice" evidence. *See Tibshraeny Bros. Const., Inc. v. United States*, 6 Cl. Ct. 463, 470 (1984) (well-settled rules of contract interpretation permit the use of trade meaning usage and custom to explain or define contract language) (citing *W.G. Cornell Co. of Washington, D.C., Inc. v. United States*, 179 Ct. Cl. 651, 376 F.2d 299 (1967)).

It is immaterial that some of the contracts included in the summary have been replaced by amended contracts. What is important is that at the time that Defendant entered into the contracts at issue in this case (1983), it had already executed numerous other CVP contracts using sometimes similar and sometimes different shortage provisions. In other words, Defendant knew how to immunize itself from liability for "any cause" or to simply state "in no event shall liability accrue" when it so desired. The fact that it chose not to do so in the instant case is significant and evidences a different intent with respect to Article 9(a) of these contracts.

Further, the language in more recent CVP contracts (entered into after Plaintiffs filed suit against the United States), illustrates a much more specific shortage provision that expressly contemplates the inability to deliver water due to "physical causes" or compliance with "legal obligations." The fact that this language did not appear in the earlier contracts, and was added to the more recent contracts, evidences that Defendant has recognized that its earlier contracts did not provide for liability protection in such a circumstance (for example, CVPIA).

## II. The Summary of Shortage Provisions is Useful to the Impossibility Analysis

As the Court has already noted, it is Defendant that has the burden to prove its performance was impossible. The summary of shortage provisions puts the Court on notice that there are a wide variety of contracts in the CVP, with varying contract terms regarding liability for shortage. To the extent that any of these contracts relieve the United States of liability for failure to deliver for "any cause" or for "compliance with legal obligations" during the time period of this case, Defendant has a much more onerous task of proving it was truly impossible or even impracticable to perform under Plaintiffs' contracts.

The Westlands Water District Contract—a contract representing more than one million acre-feet of export water (about half of the total CVP export contracts)—is the most illustrative on this point. The Ninth Circuit has already held that the Westlands contract excuses the government for liability for shortages for "any cause." *O'Neill v. United States*, 50 F.3d 677, 683 (9th Cir. 1995); *see also Barcellos & Wolfsen, Inc., v. Westlands Water District*, 849 F. Supp. 717, 723 (E.D. Cal. 1993). It is useful for the Court to compare the language in the Westlands contract to that at issue in this case:

| **Westlands Water District Contract, Article 11(a)** | **Stockton East and Central Contracts, Article 9(a)** |
|---|---|
| "There may occur at times during any year a shortage in the quantity of water available for furnishing to the District through and by means of the Project, but in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or any other causes…" | "In its operation of the Project, the United States will use all reasonable means to guard against a condition of shortage in the quantity of water available to the Contractor pursuant to this contract. Nevertheless, if a shortage does occur during any year because of drought, or other causes which, in the opinion of the Contracting Officer, are beyond the control of the United States, no liability shall accure against United States or any of its officers, agents, or employees for any damage, direct or indirect, arising therefrom." |

In *O'Neill*, the Ninth Circuit also held that the broad shortage provision, coupled with another provision, Article 26 entitled "Amendment of Federal Reclamation Laws," which specifically contemplated enactment of subsequent legislation, gave Westlands "a choice between renegotiating their contracts to bring them into conformity with the new law or withdrawing from the reclamation program." *Id.* (citing *Peterson v. United States Dept. of Interior*, 899 F.2d 799, 812 (9th Cir. 1990)). Article 26 of the Westlands' contract states: "In the event that the Congress of the United States . . . amends . . . provisions of the Federal reclamation laws, the United States agrees, at the option of the District, to negotiate amendments of appropriate articles of this contract, all consistently with the provisions of such . . . amendment." *O'Neill*, 50 F.3d 677, 683. There is no such provision in the Stockton East or Central contracts.

Defendant's unsupported assertion that "the intended meaning of [the Stockton East and Central shortage language in Article 9(a)] is the same as in the [Westlands contracts]" is rather remarkable given both the differences in the language of the shortage provisions and the fact that the Article 26 language in the Westlands' contract appears nowhere in the Stockton East and Central contracts. Of course, as Defendant correctly notes, many of the other contract provisions are similar (such as the standard government contract provisions requiring "Equal Opportunity" or "Officials not to Benefit") but this does little to aid this Court in interpretation of the shortage provisions at issue in this case.

Defendant also claims "[t]here is no guarantee that Westland's contract would immunize the government from liability *in every circumstance*." While true, that claim is not relevant here—this case does not present a question of what would happen in every circumstance, rather CVPIA is the only relevant circumstance. Defendant must prove that it was impossible to

allocate more water to Stockton East and Central because of a mandatory duty[1] under CVPIA § 3406(b)(2). Federal courts have already ruled that the United States can take water from Westlands Water District (and therefore other CVP contracts with similar shortage language) for (b)(2) purposes without liability. This conclusion is *res judicata* between Westlands and the United States and defeats Defendant's impossibility defense, as to CVPIA(b)(2), in this particular circumstance.

**III. Any Errors in the Summary can be Corrected and are not Prejudicial**

As all of the contracts included in the summary were drafted by Defendant, are maintained by Defendant, and are within Defendant's control, there is no reason why the parties cannot work together to reach an agreement about the accuracy of the presentation of these shortage provisions in a manner that is useful to the Court. In light of the errors identified by Defendant, Plaintiffs have thoroughly reviewed all of the cited contracts and revised the summary to ensure that each shortage provision is stated verbatim. *See* Exhibit E. Plaintiffs have also removed references to the "interim renewal contracts" to simplify the summary and avoid duplication. Finally, Plaintiffs have removed the references to the different "types" of provisions. *See* Exhibit F (Declaration of Jennifer Spaletta).

In addition, Plaintiffs have provided the Court with representative sample contracts, should this be the Court's preferred method of reviewing this evidence. These contracts include:

---

[1] Notably, the interpretation of the Westlands contract by Judge Wanger in the district court and the Ninth Circuit in *O'Neill* did not include a factual finding regarding the Bureau's compliance with ESA or CVPIA or a factual finding of whether or not CVPIA did in fact mandate a taking of water that would have otherwise gone to Westlands under the contracts. This posture was apparently assumed for the purposes of the contract interpretation issue. *See O'Neill v. United States*, 50 F.3d 677, 687 (9th Cir. 1995); *Barcellos & Wolfsen, Inc., v. Westlands Water District*, 849 F. Supp. 717, 724-34 (E.D. Cal. 1993).

**<u>Exhibit A: Gravely Ford Water District, Contract No. 1-07-20-W0242, dated June 28, 1981</u>** containing the following provision at Article 8(a), page 13:

> "(a) There may occur at times during any year a shortage in the quantity of water available for furnishing to the Contractor by the United States through and by the means of the Project, but in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, therefrom."

**<u>Exhibit B: Westlands Water District, Contract No. 14-06-200-495A, June 5, 1963</u>** containing the following provision at Article 11(a), page 19

> "There may occur at times during any year a shortage in the quantity of water available for furnishing to the District through and by means of the Project , but in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or any other causes."

**<u>Exhibit C: San Juan Suburban Water District, Contract No. 14-06-200152A, June 19, 1962</u>** containing the following provision at Article 6(a), pages 13-14:

> "(a) There may occur at times a shortage during any year in the quantity of water available for furnishing to the District by the United States pursuant to this contract through and by means of the Project and in no event shall any liability accrue against the United States or any of its officers, agents or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or unavoidable causes."

**<u>Exhibit D: Placer County Water Agency, Contract No. 14-06-200-5082A, February 26,</u>** 2002 containing the following provision at Article 12, page 30-31:

> "(a) In its operation of the Project, the Contracting Officer will use all reasonable means to guard against a Condition of Shortage in the quantity of water to be made available to the Contractor pursuant to this Contract. In the event the Contracting Officer determines that a Condition of Shortage appears probable, the Contracting Officer will notify the Contractor of said determination as soon as practicable.
> (b) If there is a Condition of Shortage because of errors in physical operations of the Project, drought, other physical causes beyond the control of the Contracting Officer or actions taken by the Contracting Officer to meet legal obligations then, except as provided in subdivision (a) of Article 18 of this Contract[2], no liability shall accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising therefrom."

---

[2] Article 18(a) on page 35 addresses "opinions and determinations" which shall not be "arbitrary, capricious or unreasonable."

Should the Court prefer to simply reference these representative contracts for "extrinsic evidence" Plaintiffs ask that they be allowed to add these contracts to their exhibit list.

**IV. The Disclosure was Timely and is not Prejudicial**

Defendant's complaint about the timeliness of disclosure of this summary exhibit is unavailing. First, Defendant knew that the shortage provisions in other CVP contracts were relevant to this case based on the parties' and the Court's comments in the arguments on the cross-motions for summary judgment in January 2006. Second, the summary was clearly identified on Plaintiffs' trial exhibit list, exchanged on September 11, 2006, as:

> Summary of force majeure clauses in other CVP Contracts. The Summary has been compiled from a review of CVP contracts provided to Plaintiffs' counsel by contracting entities in response to formal Public Records Act requests. All such contracts are also in Defendant's possession.

On September 11, 2006, during the telephonic meeting of counsel, Defendant's counsel asked Plaintiffs' counsel what this summary would contain. Plaintiffs' counsel again described the exhibit as a summary of the shortage provisions found in the different CVP contracts, all of which Defendant should have in its possession. Defendant's counsel *never* asked Plaintiffs to review the contracts underlying the summary. It did not have to, as it has all of these contracts in its own files. In fact, Defendant has an entire department dedicated to managing these contracts.

Moreover, the case cited by Defendant as authority to exclude this summary exhibit is not on point. In *Jade Trading, LLC v. United States* 67 Fed. Cl. 608 (2005), the Court addressed several summaries prepared by the defendant to use as evidence in a complicated tax shelter case. The summaries purported to summarize the transactions and activities of thirty to fifty sets of unrelated people and entities. *Id*. at 610. The summaries at issue included conclusions about factual transactions, computations, and complex tax analysis. *Id*. at 615. Further, the documents that formed the basis for the summaries were documents produced by third parties. *Id*. In light

of these complexities, the Court excluded the summaries because the plaintiffs did not have sufficient time prior to trial to verify their accuracy.

This is not the case with Plaintiffs' summary of CVP contract provisions. This summary does not involve documents maintained only by third parties—it involves documents prepared and maintained by Defendant. It also does not involve facts or transactions—it includes only verbatim clauses found in particular contracts. Lastly, it is not burdensome for Defendant to review the accuracy of this exhibit, particularly in the paired down form attached to this response. Plaintiffs counsel undertook this review and it took just a few hours. Ex. F (Spaletta Decl. ¶ 3).

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that Defendant's motion be denied.

Respectfully submitted,

/s Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Avenue, N.W.
Suite 410
Washington, D.C. 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: October 11, 2006

Counsel for Plaintiffs

Of counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)