# EXHIBIT A

R.O. Draft 10/12-1978
Rev. R.O. 7/30-1979
Rev. R.O. 4/23-1980

Contract No.
1-07-20-W0242

UNITED STATES
DEPARTMENT OF THE INTERIOR
WATER AND POWER RESOURCES SERVICE
Central Valley Project, California

# CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND GRAVELY FORD WATER DISTRICT PROVIDING FOR WATER SERVICE

## Table of Contents


| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1- 3 |
| 1 | Definitions | 3- 4 |
| 2 | Term of Contract | 4- 5 |
| 3 | Water to Be Furnished to the Contractor | 5- 7 |
| 4 | Time For Delivery of Water—Exchange or Sale of Water | 8- 9 |
| 5 | Rate and Method of Payment for Water | 9-11 |
| 6 | Adjustments | 11 |
| 7 | Points of Delivery--Measurement and Responsibility for Distribution of Water--Temporary Reduction--Return Flow--United States to Be Held Harmless | 11-13 |
| 8 | United States Not Liable for Water Shortage | 13-16 |
| 9 | Drainage Studies and Facilities | 16 |
| 10 | General Obligation—Benefits Conditioned Upon Payment | 17 |
| 11 | Penalty for Delinquent Payments | 17 |
| 12 | Quality of Water | 17 |
| 13 | Water and Air Pollution Control | 17 |
| 14 | Equal Opportunity | 18-19 |
| 15 | Title VI, Civil Rights Act of 1964 | 20 |
| 16 | Excess Lands | 21 |
| 17 | Compliance With Rules and Regulations | 21 |
| 18 | Water Acquired by Contractor Other Than From the United States | 22-23 |
| 19 | Books, Records, and Reports | 24 |
| 20 | Changes in Contractor's Service Area | 24 |
| 21 | Notices | 24 |
| 22 | Assignment Limited—Successors and Assigns Obligated | 24 |
| 23 | Officials Not to Benefit | 24-25 |
| 24 | Contingent on Appropriation or Allotment of Funds | 25 |
| 25 | Water Conservation Program | 25 |
| 26 | Confirmation of Contract | 26 |
| | Signature Page | 26 |

Contract No.
1-07-20-W0242

UNITED STATES
DEPARTMENT OF THE INTERIOR
WATER AND POWER RESOURCES SERVICE
Central Valley Project, California

# CONTRACT BETWEEN THE UNITED STATES OF AMERICA AND GRAVELY FORD WATER DISTRICT PROVIDING FOR WATER SERVICE

THIS CONTRACT, made this 26 day of June, 1981, in pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto; the Act of August 26, 1937 (50 Stat. 844), as amended; and the Act of August 4, 1939 (53 Stat. 1187), as amended, all collectively hereinafter referred to as the Federal reclamation laws, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, and the GRAVELY FORD WATER DISTRICT, hereinafter referred to as the Contractor, a public agency of the State of California, duly organized, existing, and acting pursuant to the laws thereof, with its principal place of business in Madera, California

WITNESSETH, That:

## EXPLANATORY RECITALS

WHEREAS, the United States is constructing and operating the Central Valley Project, California, for the purpose, among others, of furnishing water for irrigation, municipal, domestic, and other beneficial uses; and

WHEREAS, investigations of the Contractor's lands and present water supply indicate that irrigated and irrigable lands within the

Preamble
Explanatory Recitals--

boundaries of the Contractor are at present in need of additional water for irrigation and certain areas have a potential need of water for irrigation, and that an additional water supply to meet these present and potential needs can be made available by and through the works constructed and to be constructed by the United States; and

WHEREAS, the Contractor desires to contract, pursuant to the Federal reclamation laws and the laws of the State of California, for the furnishing by the United States of a supplemental water supply from Millerton Lake of the Central Valley Project for which the Contractor will make payment to the United States upon the basis, at the rates, and pursuant to the conditions hereinafter set forth; and

WHEREAS, the United States has constructed the Madera Canal which will be operated and used, in part, for the furnishing of water to the Contractor from Millerton Lake pursuant to the terms of this contract under an agreement between the Contractor and Madera Irrigation District; and

WHEREAS, water furnished to the Contractor from the Madera Canal will be conveyed to the service area of the Contractor by facilities constructed for Madera Irrigation District pursuant to Contracts No. I75r-2891, as amended, and No. 14-06-200-7567, and in accordance with an agreement between Madera Irrigation District and the Contractor; and

WHEREAS, investigations of the streamflow in the Sacramento River, the Trinity River, the American River, and the San Joaquin River

and their tributaries indicate that there may be available for furnishing to the Contractor from Millerton Lake, via the Madera Canal, an additional water supply for surface diversion and direct application for irrigation;

NOW, THEREFORE, in consideration of the covenants herein contained, it is agreed as follows:

DEFINITIONS

1. When used herein, unless otherwise distinctly expressed, or manifestly incompatible with the intent hereof, the term:

(a) "Secretary" or "Contracting Officer" shall mean the Secretary of the Interior or his duly authorized representative;

(b) "Project" shall mean the Central Valley Project, California, of the Water and Power Resources Service;

(c) "year" shall mean the period from and including March 1 of each calendar year through the last day of February of the following calendar year;

(d) "Class 1 water" shall mean that supply of water at Millerton Lake which, subject to the contingencies described in Article 8 hereof, will be available for delivery through the Friant-Kern and Madera Canals and the San Joaquin River as a dependable water supply during each irrigation season;

(e) "Class 2 water" shall mean that supply of water which becomes available in addition to the supply of Class 1 water and which because of uncertainty as to its availability and time of occurrence will be undependable in character and will be furnished only if, as, and when said water is available as determined by the United States; and

(f) "eligible land" shall mean nonexcess land together with excess land for which valid recordable contracts have been executed.

TERM OF CONTRACT

2. (a) This contract shall be effective on the date first hereinabove written and shall remain in effect through February 28, 1995: Provided, That this contract shall terminate in the event the agreement between Madera Irrigation District and the Contractor for transporting Class 2 water is cancelled and the Contractor has not, within 3 years from the date of such cancellation, constructed other facilities for delivery of such water made available under this contract: Provided further, That under terms and conditions mutually agreeable to the parties hereto, renewals of this contract may be made for successive periods not to exceed 40 years each. The terms and conditions of each renewal shall be agreed upon not later than 1 year prior to the expiration of the then existing contract: And provided further, That upon written request by the Contractor to the Secretary not later than 1 year prior to the expiration of this contract, whenever, account being taken of the amount then credited to the costs of construction of irrigation water supply

works, the remaining amount of such construction costs of Project water supply works which is properly assignable for ultimate return by the Contractor as established by the Secretary of the Interior pursuant to (3) of Section 1 of Public Law 643 (70 Stat. 483), probably can be repaid to the United States within the term of a contract under subsection (d), Section 9 of the Reclamation Project Act of 1939 (53 Stat. 1187), this contract for irrigation service may be converted to a contract under said subsection (d) upon terms and conditions mutually agreeable to the United States and the Contractor.

(b) The right to the beneficial use of water furnished to the Contractor pursuant to this contract and any renewal thereof shall not be disturbed so long as the Contractor fulfills all of its obligations under this contract and any such renewal.

WATER TO BE FURNISHED TO THE CONTRACTOR

3. (a) Each year, commencing with the year next following that in which this contract is executed, and each year thereafter during the term of this contract, the United States shall furnish and the Contractor shall pay for up to 14,000 acre-feet of Class 2 water from Millerton Lake for agricultural use.



—Article 3—

(b) The parties hereto may by mutual agreement at any time or times after the commencement of the period described in subdivision (a) of this article decrease the amount of Class 2 water required thereafter to be furnished to the Contractor by the United States and paid for by the Contractor during the remainder of the term of this contract.

(c) The Contractor shall not be obligated to accept more than 3,000 acre-feet of Class 2 water during any period of 30 consecutive calendar days unless scheduled for delivery by the Contractor pursuant to Article 4.

(d) It is the intention of the United States in accordance with Article 8 hereof to furnish to the Contractor a share of the available Class 2 water. However, the Contractor recognizes the difficulties of accurately predicting the runoff of the San Joaquin River, that forecasts during the spring must of necessity include estimates of future precipitation; that precipitation and runoff may not occur as anticipated; that the delivery of its share of Class 2 water based on a forecast may result in the delivery of water in excess of the Contractor's entitlement in accordance with the actual runoff of the San Joaquin River and Article 8

hereof; and that the delivery of water in excess of the Contractor's entitlement will be detrimental to other long-term contractors for water from Millerton Lake. To minimize the delivery of water in excess of the Contractor's entitlement, no Class 2 water will be delivered to the Contractor under the terms of this contract during March, April, or May of any year in which the Contracting Officer's forecasts of the runoff of the San Joquin River watershed indicate that as of the first day of March, April, or May there will be less than 400,000 acre-feet, 300,000 acre-feet, or 200,000 acre-feet, respectively, of Class 2 water available at Millerton Lake for the period March 1 through July 31: Provided, That in the event water in excess of the Contractor's entitlement for any year is delivered to the Contractor then, at the option of the Contracting Officer, such quantity of excess water may be deducted from the Contractor's entitlement for the next year and any remainder of said quantity may be deducted from the Contractor's entitlement for the immediately succeeding year or years as necessary to completely offset said quantity of excess delivery.

TIME FOR DELIVERY OF WATER--EXCHANGE OR SALE OF WATER

4. (a) On or before February 15 of each calendar year the Contracting Officer shall by a written notice to the Contractor announce the quantity of Class 2 water estimated to be available for delivery to the Contractor during the year immediately to follow. The Contracting Officer may revise the aforesaid estimate but, upon doing so, he shall so notify the Contractor in writing and the Contractor, during the period described in and to the extent it is required to accept and pay for Class 2 water pursuant to subdivision (a) of Article 3 hereof, shall be obligated to accept and pay for the additional quantities so announced by the Contracting Officer to be available for the Contractor.

(b) The Contractor shall submit in writing to the Contracting Officer before March 1 of each year a schedule, subject to the provisions of Article 3 hereof and satisfactory in form and from an operational standpoint to the Contracting Officer, indicating the desired times and quantities for the delivery of all Class 2 water pursuant to this contract during such year. The United States shall, within the provisions hereof, attempt to deliver said water in accordance with said schedule or any revision thereof satisfactory to the Contracting Officer submitted by the Contractor within a reasonable time before the desired change of the time for delivery: Provided,

That no water will be furnished by the United States to the Contractor during the months of December and January of any year unless notice to the contrary is furnished to the Contractor on or before November 1 of the respective year.

(c) The Contractor may, with the written consent of the Contracting Officer, in any year exchange water with any other contractor which has contracted with the United States for water from the Project. No sale or other disposal by the Contractor for use outside the Contractor's boundaries, of any water, or the right to the use thereof, furnished to it pursuant to this contract shall be valid without the Contracting Officer's written consent.

RATE AND METHOD OF PAYMENT FOR WATER

5. (a) The rate for water to be delivered hereunder shall be $5.40 per acre-foot: Provided, That this rate shall be redetermined effective in 1986, and every 5th year thereafter by the Contracting Officer in accordance with the then current agricultural policies of the Project.

(b) The Contracting Officer will make available to the Contractor the computations, appropriate rate policy, and cost allocation upon which any proposed rate adjustment is based and will afford the Contractor not less than 3 months to study, to comment, and the opportunity to consult on the proposed adjustment of rates, the rate policies, or the cost allocation procedures before announcing an adjustment of the rate. Final determination of an adjustment will be announced by the Contracting Officer after consideration of the Contractor's comments but not less than 6 months prior to the effective date thereof.

(c) The Contractor shall make payments to the United States each year at the rate fixed as provided in subdivision (a) of this article for the quantity of Class 2 water which the Contractor is required to accept and pay for during such year pursuant to the provisions of Article 3 hereof. The Contractor shall pay one-half of the amount payable for said water for the year before March 1 and shall pay the remainder at the time the quantity of water furnished to the Contractor equals the quantity for which payment has been made but, in any event, not later than July 1 or such other later date or dates of the respective year as may be specified by the Contracting Officer in a written notice to the Contractor.

(d) In the event the Contractor is unable, fails, or refuses to accept delivery of the quantities of water available for delivery to and required to be accepted by it pursuant to this contract, or in the event the Contractor in any year fails to submit a schedule for delivery as provided in subdivision (b) of Article 4 hereof, said inability, failure, or refusal shall not relieve the Contractor of its obligation to pay for said water, and the Contractor agrees to make payment therefor in the same manner as if said water had been delivered to and accepted by it in accordance with this contract. Water available for furnishing to the Contractor in accordance with the approved schedule and not accepted by the Contractor shall be deemed to have been accepted by the Contractor in accordance with the aforesaid schedule. If the Contractor during any

month is furnished a quantity of water in addition to that which it has requested for such month in its said schedule and accepts such additional water, the Contractor shall be deemed to have revised its schedule to call for such additional water during such month, and the United States shall be deemed to have accepted such revision as satisfactory. As soon thereafter as possible, the Contractor shall submit a revised schedule to the United States.

ADJUSTMENTS

6. The amount of any overpayment by the Contractor, by reason of the quantity of water actually available for the Contractor during any year, as conclusively determined by the Contracting Officer, having been less than the quantity of such water which the Contractor otherwise under the provisions of this contract would have been required to receive and pay for, shall be applied first to any accrued indebtedness arising out of this contract then due and owing to the United States by the Contractor and any amount of such overpayment then remaining shall, at the option of the Contractor, be refunded to the Contractor or credited upon amounts to become due to the United States from the Contractor under the provisions hereof in the ensuing year.

POINTS OF DELIVERY—MEASUREMENT AND RESPONSIBILITY FOR DISTRIBUTION OF WATER—TEMPORARY REDUCTION—RETURN FLOW—UNITED STATES TO BE HELD HARMLESS

7. (a) The water to be furnished to the Contractor pursuant to this contract will be delivered at such existing points on the Madera Canal, or at such other points, as may be agreed upon in writing by the Contracting Officer and the Contractor.

(b) All water delivered from the Canal shall be measured by the Contracting Officer with equipment furnished, operated, and maintained by the United States. Upon the request of the Contractor, the accuracy of such measurements will be investigated by the Contracting Officer and any errors appearing therein adjusted.

(c) The United States may temporarily discontinue or reduce the quantity of water to be furnished to the Contractor as herein provided for the purposes of such investigation, inspection, maintenance, repair, or replacement of any of the Project facilities or any part thereof necessary for the furnishing of water to the Contractor, but so far as feasible the United States will give the Contractor due notice in advance of such temporary discontinuance or reduction, except in case of emergency, in which case no notice need be given. Upon resumption of service after such reduction and if requested by the Contractor, the United States will attempt to deliver the quantity of water which would have been furnished hereunder in the absence of such contingency.

(d) The United States reserves the right to all waste, seepage, and return-flow water derived from water furnished to the Contractor which escapes or is discharged beyond boundaries of the Contractor's service area. Nothing herein shall be construed as claiming for the United States any right, as waste, seepage, or return flow, to water being used pursuant to this contract for surface irrigation or underground storage within the Contractor's service area by the Contractor, or those claiming by or through the Contractor.

(e) The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water beyond the delivery points and the Contractor shall hold the United States harmless on account of damage or claim of damage of any nature whatsoever for which there is legal responsibility, including property damage, personal injury or death arising out of or connected with the control, carriage, handling, use, disposal, or distribution of such water.

UNITED STATES NOT LIABLE FOR WATER SHORTAGE

8. (a) There may occur at times during any year a shortage in the quantity of water available for furnishing to the Contractor by the United States through and by means of the Project, but in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect therefrom. In no event shall the United States (1) deliver from Millerton Lake in any year any Class 2 water pursuant to this or any other contract heretofore or hereafter entered into involving the same Project water supply until the Contracting Officer shall have determined that the quantity of Class 1 water required to be delivered from Millerton Lake will be available for delivery in said year; nor (2) execute contracts which together with this contract shall in the aggregate provide for furnishing from Millerton Lake during the life of this contract Class 1 water in excess of 800,000 acre-feet per year and Class 2 water in excess

of 1,402,800 acre-feet per year. In any year in which there may occur such a shortage, the United States will apportion the available Class 2 water supply among the Contractor and others entitled under existing contracts to receive Class 2 water from Millerton Lake in accordance with conclusive determination of the Contracting Officer as follows:

(1) A determination shall be made of the total quantity of Class 2 water agreed to be accepted during the respective year under all contracts then in force for the delivery of Class 2 water from Millerton Lake, the quantity so determined being herein referred to as the contractual commitments;

(2) A determination shall be made of the total quantity of Class 2 water at Millerton Lake which is available for meeting the determined Class 2 contractual commitments, the quantity so determined being herein referred to as the available supply;

(3) The total quantity of Class 2 water agreed to be accepted by the Contractor during the respective year under Article 3 hereof shall be divided by the Class 2 contractual commitments, the quotient thus obtained being herein referred to as the Contractor's contractual entitlement; and

(4) The available supply shall be multiplied by the Contractor's contractual entitlement and the result shall be the quantity of water required to be delivered by the United States to the Contractor for the respective year, but in no event shall such quantity exceed the total quantity of Class 2 water agreed to be accepted by the Contractor pursuant to Article 3 hereof.

Insofar as determined by the Contracting Officer to be practicable, in the event a shortage appears probable, the United States will notify the Contractor of such determinations in advance of the irrigation season.

(b) In the event that in any year there is delivered to the Contractor, by reason of any shortage or apportionment as provided in subdivision (a) of this article or any discontinuance or reduction of service as set forth in subdivision (c) of Article 7 hereof, less than the quantity of water which the Contractor otherwise would be entitled to receive hereunder, there shall be an adjustment on account of the amounts paid to the United States by the Contractor for water for said year in a manner similar to that provided for in Article 6 hereof. To the extent of such deficiency, such adjustment shall constitute the sole remedy of the Contractor or anyone having or claiming to have by, through, or under the Contractor the right to the use of any of the water supply provided for herein.

(c) The rights of the Contractor under this contract are subject to the terms of the Second Amended Contract for Exchange of Waters executed February 14, 1968, between the United States and Central California Irrigation District, a successor in interest to the San Joaquin Canal Company, formerly known as the San Joaquin & Kings River Canal & Irrigation Company, Incorporated, Columbia Canal Company, San Luis Canal Company, and Firebaugh Canal Company; and the United States agrees that

it will not deliver to the Contracting Entities thereunder waters of the San Joaquin River unless and until required by the terms of said contract so to do, and the United States further agrees that it will not voluntarily and knowingly render itself unable to deliver to the parties entitled thereto from water that is available or that may become available to it from the Sacramento River and its tributaries or the Sacramento-San Joaquin Delta those quantities required to satisfy the obligations of the United States under said Exchange Contract and under Schedule 2 of the Contract for Purchase of Miller & Lux Water Rights (Contract No. Ilr-1145, dated July 27, 1939).

DRAINAGE STUDIES AND FACILITIES

9. At the request of the Contracting Officer and after the initial delivery of water pursuant to this contract, to aid in determining the source and solution of future potential drainage problems, the Contractor shall install and maintain observation wells in a manner satisfactory to the Contracting Officer and furnish annually to the Contracting Officer during the term of this contract, records and analyses of well readings as they relate to potential drainage problems. If and when needed, the Contractor shall construct drainage works for the lands within the Contractor's service area to protect the productivity of such lands.

GENERAL OBLIGATION--BENEFITS CONDITIONED UPON PAYMENT

10. (a) The obligation of the Contractor to pay the United States as provided in this contract is a general obligation of the Contractor notwithstanding the manner in which the obligation may be distributed among the Contractor's water users and notwithstanding the default of individual water users in their obligations to the Contractor.

(b) The payment of charges becoming due hereunder is a condition precedent to receiving benefits under this contract. No water will be made available to the Contractor through Project facilities during any period in which the Contractor may be in arrears in the advance payment of any charges due the United States. The Contractor shall not furnish water made available pursuant to this contract for lands or parties which are in arrears in the advance payment of charges or in arrears more than 12 months in the payment of water rates as levied or established by the Contractor.

CHARGE FOR LATE PAYMENTS

11. The Contractor shall pay a late payment charge on installments or charges which are received after the due date. The late payment charge percentage rate calculated by the Department of the Treasury and published quarterly in the Federal Register shall be used: Provided, That the late payment charge percentage rate will not be less than 0.5 percent per month. The late payment charge percentage rate applied on an overdue payment will remain in effect until payment is received or a different rate is published. The late payment rate for a 30-day period will be determined on the day immediately following the due date and will be applied to the overdue payment for any portion of the 30-day period of delinquency. In the case of partial late payments, the amount received will first be applied to the late charge on the principal and then to payment of the principal.

QUALITY OF WATER

12. The operation and maintenance of Project facilities shall be performed in such manner as is practicable to maintain the quality of raw water made available through such facilities at the highest level reasonably attainable as determined by the Contracting Officer. The United States does not warrant the quality of water and is under no obligation to construct or furnish water treatment facilities to maintain or better the quality of water.

WATER AND AIR POLLUTION CONTROL

13. The Contractor, in carrying out this contract, shall comply with all applicable water and air pollution laws and regulations of the United States and the State of California and shall obtain all required permits or licenses from the appropriate Federal, State, or local authorities.

## EQUAL OPPORTUNITY

14. During the performance of this contract, the Contractor agrees as follows:

(1) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The Contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this nondiscrimination clause.

(2) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without discrimination because of race, color, religion, sex, or national origin.

(3) The Contractor will send to each labor union or representative of workers, with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Contracting Officer, advising the said labor union or workers' representative of the Contractor's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The Contractor will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

(5) The Contractor will furnish all information and reports required by said amended Executive Order and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts by the Contracting Officer and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the Contractor's noncompliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be canceled, terminated, or suspended, in whole or in part, and the Contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in said amended Executive Order, and such other sanctions may be imposed and remedies invoked as provided in said Executive Order, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

(7) The Contractor will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by the rules, regulations, or orders of the Secretary of Labor issued pursuant to Section 204 of said amended Executive Order, so that such provisions will be binding upon each subcontractor or vendor. The Contractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, That in the event a Contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction, the Contractor may request the United States to enter into such litigation to protect the interests of the United States.

TITLE VI, CIVIL RIGHTS ACT OF 1964

15. (a) The Contractor agrees that it will comply with Title VI of the Civil Rights Act of July 2, 1964 (78 Stat. 241) and all requirements imposed by or pursuant to the Department of the Interior Regulation (43 CFR 17) issued pursuant to that title, to the end that, in accordance with Title VI of that Act and the Regulation, no person in the United States shall, on the grounds of race, color, sex, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which the Contractor receives financial assistance from the United States and hereby gives assurance that it will immediately take any measures to effectuate this agreement.

(b) If any real property or structure thereon is provided or improved with the aid of Federal financial assistance extended to the Contractor by the United States, this assurance obligates the Contractor, or, in the case of any transfer of such property, any transferee for the period during which the real property or structure is used for a purpose involving the provision of similar services or benefits. If any personal property is so provided, this assurance obligates the Contractor for the period during which it retains ownership or possession of the property. In all other cases, this assurance obligates the Contractor for the period during which the Federal financial assistance is extended to it by the United States.

(c) This assurance is given in consideration of and for the purpose of obtaining any and all Federal grants, loans, contracts, property, discounts, or other Federal financial assistance extended after the date hereof to the Contractor by the United States, including installment payments after such date on account of arrangements for Federal financial assistance which were approved before such date. The Contractor recognizes and agrees that such Federal financial assistance will be extended in reliance on the representations and agreements made in this assurance, and that the United States shall reserve the right to seek judicial enforcement of this assurance. This assurance is binding on the Contractor, its successors, transferees, and assignees.

## EXCESS LANDS

16. (a) All irrigable land held in private ownership by any one owner in excess of 160 irrigable acres shall be appraised in a manner to be prescribed by the Secretary of the Interior and the sale prices thereof fixed by the Secretary on the basis of its actual bona fide value at the date of appraisal without reference to the construction or proposed construction of the Project. No such excess lands shall receive water from any project or division if the owners thereof refuse to execute valid recordable contracts for the sale of such lands under terms and conditions satisfactory to the Secretary of the Interior and at prices not to exceed those fixed by the Secretary of the Interior. Until one-half of the construction charges against the lands in the Contractor's service area shall have been paid, no sale of any excess or formerly excess lands shall carry the right to receive water unless and until the purchase price involved in such sale is approved by the Secretary of the Interior.

(b) These provisions shall remain in effect throughout the term of this contract, unless Congress expressly provides otherwise in legislation modifying or repealing the excess land or other provisions of reclamation law.

## COMPLIANCE WITH RULES AND REGULATIONS

17. The Secretary may from time to time promulgate rules and regulations to implement the reclamation laws. The Contractor agrees to abide by such final rules and regulations lawfully adopted. This contract is subject to all such lawful rules and regulations now or hereafter in force when not inconsistent with any express and specific provisions herein. Such rules and regulations are made a part of this contract. This requirement shall be incorporated in all recordable contracts executed pursuant to this contract.

WATER ACQUIRED BY CONTRACTOR OTHER THAN FROM THE UNITED STATES

18. (a) Water or water rights now owned or hereafter acquired by the Contractor other than from the United States and Project water furnished pursuant to the terms of this contract may be transported through distribution facilities of the Contractor if the Contracting Officer determines that such mingling is necessary to avoid a duplication of facilities. Notwithstanding such mingling, the provisions of this contract shall apply only to the quantity of water furnished to the Contractor pursuant to the terms hereof and the quantity of water acquired by or available to the Contractor other than from the United States shall not in any manner be subject to the provisions of this contract.

(b) With respect to the distribution works or portions thereof in which mingling is permitted as provided in subdivision (a) hereof, the Contractor:

(1) Will be responsible for the operation and maintenance of separate outlets from the distribution system for eligible and ineligible lands. At the request of the Contracting Officer, the Contractor will be responsible for the installation, operation, and maintenance of water measuring equipment at delivery points for the furnishing of water to ineligible lands and, further, will be responsible for the installation, operation, and maintenance of similar equipment for measuring the water available to

the Contractor other than pursuant to this contract, and the Contracting Officer may check and inspect said equipment at any time; and

(2) Agrees that the quantity of water furnished to the Contractor pursuant to this contract during each 24-hour period will be delivered through the aforesaid outlets to eligible lands only. The Contractor shall be deemed to be in breach of this article if at any time there is furnished to any ineligible lands served by the distribution works or portions thereof in which mingling is permitted a quantity of water which is greater than that which the Contractor has introduced into said system from the supply available other than pursuant to this contract.

BOOKS, RECORDS, AND REPORTS

19. The Contractor shall establish and maintain accounts and other books and records pertaining to its financial transactions, land use and crop census, water use, and to other matters as the Contracting Officer may require. Reports thereon shall be furnished to the Contracting Officer in such form and on such date or dates as he may require. Subject to applicable Federal laws and regulations, each party shall have the right during office hours to examine and make copies of each other's books and official records relating to matters covered by this contract.

CHANGES IN CONTRACTOR'S SERVICE AREA

20. While this contract is in effect, no change shall be made in the Contractor's service area by inclusion or exclusion of lands, by dissolution, consolidation, merger or otherwise, except upon the Contracting Officer's written consent.

NOTICES

21. Any notice, demand, or request authorized or required by this contract shall be deemed to have been given, on behalf of the Contractor, when mailed, postage prepaid, or delivered to the Regional Director, Mid-Pacific Region, Water and Power Resources Service, 2800 Cottage Way, Sacramento, California 95825, and on behalf of the United States, when mailed, postage prepaid, or delivered to the Board of Directors of the Gravely Ford Water District, 18819 Avenue 7, Madera, California 93637. The designation of the addressee or the address may be changed by notice given in the same manner as provided in this article for other notices.

ASSIGNMENT LIMITED—SUCCESSORS AND ASSIGNS OBLIGATED

22. The provisions of this contract shall apply to and bind the successors and assigns of the parties hereto, but no assignment or transfer of this contract or any part or interest therein shall be valid until approved by the Contracting Officer.

OFFICIALS NOT TO BENEFIT

23. (a) No member of or delegate to Congress or resident commissioner shall be admitted to any share or part of this contract or to any benefit that may arise therefrom. This restriction shall not be construed to extend to this contract if made with a corporation for its general benefit.

(b) No official of the Contractor shall receive any benefit that may arise by reason of this contract other than as a water user within the Project and in the same manner as other landowners within the Contractor's service area.

CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS

24. The expenditure or advance of any money or the performance of any work by the United States hereunder which may require appropriation of money by the Congress or the allotment of funds shall be contingent upon such appropriation or allotment being made. The failure of the Congress to appropriate funds or the absence of any allotment of funds shall not relieve the Contractor from any obligations under this contract. No liability shall accrue to the United States in case such funds are not appropriated or allotted.

WATER CONSERVATION PROGRAM

25. (a) While the contents and standards of a given water conservation program are primarily matters of State and local determination, there is a strong Federal interest in developing an effective water conservation program because of this contract. The Contractor shall develop and implement an effective water conservation program for all uses of water which is provided from, or conveyed through, Federally constructed or Federally financed facilities. That water conservation program shall contain definite goals, appropriate water conservation measures, and time schedules for meeting the water conservation objectives.

(b) A water conservation program, acceptable to the Contracting Officer, shall be in existence prior to one or all of the following: (1) service of Federally stored/conveyed water; (2) transfer of operation and maintenance of the Project facilities to the Contractor; or (3) transfer of the Project to an operation and maintenance status. The distribution and use of Federally stored/conveyed water and/or the operation of Project facilities transferred to the Contractor shall be consistent with the adopted water conservation program. Following execution of this contract, and at subsequent 5-year intervals, the Contractor shall resubmit the water conservation plan to the Contracting Officer for review and approval. After review of the results of the previous 5 years and after consultation with the Contractor, the Contracting Officer may require modifications in the water conservation program to better achieve program goals.

CONFIRMATION OF CONTRACT

26. The Contractor, upon the execution of this contract, shall promptly secure a final decree of the proper court of the State of California, approving and confirming the contract and decreeing and adjudging it and the apportionment of the benefits made thereunder to be lawful, valid, and binding on the Contractor. The Contractor shall furnish to the United States a certified copy of such decree and of all pertinent supporting records.

IN WITNESS WHEREOF, the parties hereto have executed this contract the day and year hereinabove written.

THE UNITED STATES OF AMERICA

By M. A. Catino
Acting Regional Director, Mid-Pacific Region
Water and Power Resources Service

GRAVELY FORD WATER DISTRICT

(SEAL)

By George Andrew
President

Attest:

[signature]
Secretary

RESOLUTION #80-10-1
(Revised)
OF
GRAVELY FORD WATER DISTRICT

WHEREAS, Gravely Ford Water District has been negotiating with the United States Water and Power Resources Service a contract under which water service would be provided to this district from the Madera Canal by the United States; and

WHEREAS, a form of contract revised as of April 23, 1980, has been reviewed and approved by the Directors of this district and it will be in the best interest of the district for the agreement to be consummated;

NOW, THEREFORE, the Board of this district hereby approves the terms and conditions of the proposed contract between the United States of America and Gravely Ford Water District providing for water service revised as of April 23, 1980, and instructs the secretary or assistant secretary of the district and the district's attorneys to submit the form of contract, together with such other documents as may be required, to the State Treasurer for approval, pursuant to Water Code Section 35885, and 10 California Administrative Code Section 1877; and upon such approval, the President and Secretary are authorized and directed to execute such contract in the name of the District.

I hereby certify that the foregoing Resolution was duly adopted, upon motion duly made and seconded, at a regularly called meeting, at which a quorum was present, of the Board of Directors of the GRAVELY FORD WATER DISTRICT held at the office of said District, on October 30, 1980.

X [signature]
Secretary

Approved:

X George Andrew
President