# EXHIBIT B

Contract
14-06-200-4
June 5, 196

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

**CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR WATER SERVICE**

## Table of Contents


| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1- 3 |
| 1 | Definitions | 3- 4 |
| 2 | Term of Contract | 5- 6 |
| 3 | Water to be Furnished to District--Use of Interceptor Drain | 6- 9 |
| 4 | Time for Delivery of Water | 10-12 |
| 5 | Use of Water Outside the District | 12 |
| 6 | Rate and Method of Payment for Water--Drainage Service | 12-14 |
| 7 | Adjustments | 14 |
| 8 | Need of District for More Water Than Agreed Quantity | 15 |
| 9 | Points of Delivery--Maintenance of Flows and Levels--Measurement and Responsibility for Distribution of Water | 16-18 |
| 10 | Limitations on Delivery of Water | 18 |
| 11 | United States Not Liable for Water Shortage | 19-21 |
| 12 | Municipal, Industrial, and Domestic Use of Water Furnished to District | 22 |
| 13 | Drainage Studies and Facilities | 22 |
| 14 | Agreed Charges a General Obligation of the District--Taxable Land | 22-23 |
| 15 | All Benefits Conditioned Upon Payment | 23-24 |
| 16 | Levy of Taxes and Assessments--Fixing of Rates and Tolls | 24 |
| 17 | Refusal of Water in Case of Default | 24-25 |
| 18 | Penalty Upon Delinquency in Payment | 25 |
| 19 | District to Keep Books and Records and Report Crop and Other Data | 25-26 |
| 20 | Inspection of Books and Records | 26 |
| 21 | Changes in Organization of District | 27 |
| 22 | Transfer of Care, Operation, and Maintenance of San Luis Unit | 27 |


**EXHIBIT A**

Table of Contents, continued


| Article No. | Title | Page No. |
|---|---|---|
| 23 | Land Not to Receive Water Furnished to District by United States until Owners Thereof Execute Certain Contracts | 27-29 |
| 24 | Valuation and Sale of Excess Lands | 29-31 |
| 25 | Excess Lands | 31-33 |
| 26 | Amendment of Federal Reclamation Laws | 34 |
| 27 | Water Acquired by District Other than from the United States | 34-36 |
| 28 | Contingent upon Appropriations or Allotment of Funds | 36 |
| 29 | Officials Not to Benefit | 36-37 |
| 30 | Notices | 37 |
| 31 | Assignment--Waivers--Remedies Not Exclusive--Opinions and Determinations | 38 |
| 32 | Assurance Relating to Validity of Contract | 39 |

R.O. Draft 12/7-1962
Rev. W.O. 1-4-63
Rev. W.O. 1-21-63

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

Contract No.
14-06-200-495-A

CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR WATER SERVICE

THIS CONTRACT, made this 5th day of June, 1963, in pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, all collectively hereinafter referred to as the Federal reclamation laws, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, and the WESTLANDS WATER DISTRICT, hereinafter referred to as the District, a political subdivision of the State of California, duly organized, existing, and acting pursuant to the laws thereof, with its principal place of business in Fresno, California,

WITNESSETH, That:

EXPLANATORY RECITALS

WHEREAS, the United States is constructing and operating the Federal Central Valley Project for the purpose, among others, of furnishing water for irrigation, municipal, domestic, and other beneficial uses; and

WHEREAS, the United States is constructing the San Luis Unit of the Federal Central Valley Project which will be operated and used, in part, for the furnishing of water to the District pursuant to the terms of this contract; and

WHEREAS, the United States is providing an interceptor drain designed to meet the drainage requirements of the San Luis Unit of the Federal Central Valley Project; and

WHEREAS, investigations of the District lands and present water supply indicate that irrigated and irrigable lands within the boundaries of the District are at present in need of additional water for irrigation and certain areas have a potential need of water for irrigation, that ground water underlying the District is seriously depleted and in need of replenishment, and that an additional water supply to meet these present and potential needs can be made available by and through the works constructed and to be constructed by the United States; and

WHEREAS, the District desires to contract, pursuant to the Federal reclamation laws and the laws of the State of California, for the furnishing by the United States of a supplemental water supply from the Project and for drainage service by means of the interceptor drain for which the District will make payment to the United States upon the basis, at the rate, and pursuant to the conditions hereinafter set forth; and

WHEREAS, investigations of the streamflow in the Sacramento River, the Trinity River, the American River, the San Joaquin River, and their tributaries indicate that there will be available for furnishing to the District from the San Luis Unit an additional water supply for surface diversion and direct application for irrigation and directly or indirectly to replenish depleted ground waters underlying the District;

NOW, THEREFORE, in consideration of the mutual and dependent covenants herein contained, it is hereby mutually agreed by the parties hereto as follows:

DEFINITIONS

1. When used herein, unless otherwise distinctly expressed, or manifestly incompatible with the intent hereof, the term:

(a) "Secretary" or "Contracting Officer", shall mean the Secretary of the United States Department of the Interior or his duly authorized representative;

(b) "Project" shall mean the Federal Central Valley Project, California, of the Bureau of Reclamation;

(c) "San Luis Unit" shall mean the facilities constructed pursuant to the Act of June 3, 1960 (74 Stat. 156);

(d) "interceptor drain" shall mean the physical works constructed by the United States pursuant generally to the

Act of June 3, 1960 (74 Stat. 156), in order to meet the drainage requirements of the area served by the San Luis Unit which have been calculated to be one hundred and fifty thousand (150,000) acre-feet per year at a maximum rate of flow of two hundred and fifty (250) cubic feet per second. Such physical works shall not include those facilities necessary for the collection, conveyance, and discharge of drain water for disposal by the interceptor drain;

(e) "initial delivery date" shall mean the date announced by the Contracting Officer when water from the San Luis Unit first will be available for furnishing by the United States pursuant to this contract;

(f) "year" shall mean the period January 1 through December 31;

(g) "newly irrigated land" shall mean land that has not produced an irrigated crop during the five (5) years immediately previous to the initial delivery date;

(h) "agricultural use" shall mean use of water primarily in the commercial production of agricultural crops or livestock including domestic use incidental thereto on tracts of land operated in units of two (2) acres or more.

TERM OF CONTRACT

2. This contract shall be effective on the date first hereinabove written and shall remain in effect for a period of forty (40) years commencing with the year in which the earliest initial delivery date of the long-term contracts for water service from the San Luis Unit shall occur: Provided, That if within five (5) years commencing with the year in which the initial delivery date of this contract occurs the District has not constructed distribution facilities of adequate capacity to serve all of the irrigable lands of the District, this contract shall at the option of the Contracting Officer terminate on the last day of December in said 5th year, except that if such facilities are under construction at the end of said peric the Contracting Officer may, at his option, extend said period from yea to year to permit completion of said facilities: Provided further, Tha under terms and conditions mutually agreeable to the parties hereto, renewals of this contract for furnishing water for agricultural use may be made for successive periods not to exceed forty (40) years each. Th terms and conditions of each renewal shall be agreed upon not later than one (1) year prior to the expiration of the then existing contract: And provided further, That upon written request by the District of the Secretary not later than one (1) year prior to the expiration of this contract, whenever, account being taken of the

amount then credited to the costs of construction of water supply works allocated to irrigation, the remaining amount of costs so allocated which is properly assignable for ultimate return by the District as established by the Secretary of the Interior pursuant to (3) of Section 1 of Public Law 643 (70 Stat. 483) probably can be repaid to the United States within the term of a contract under subsection (d), Section 9 of the 1939 Reclamation Project Act (53 Stat. 1187), this contract for the furnishing of water for agricultural use may be converted to a contract under said subsection (d) upon terms and conditions mutually agreeable to the United States and the District.

<u>WATER TO BE FURNISHED TO DISTRICT--USE OF INTERCEPTOR DRAIN</u>

3. (a) Each year for a period of five (5) years, commencing with the year in which the initial delivery date occurs, the United States shall furnish to the District and the District each such year shall accept and pay, as provided in Article 6 hereof, for water from the San Luis Unit in the quantities specified in the schedule or any revision thereof submitted by the District in accordance with subdivision (a) of Article 4 hereof for each such year: <u>Provided</u>, That the United States shall not be obligated to furnish more than one million eight thousand (1,008,000) acre-feet of water during any such year.

(b) Commencing with the 6th year and continuing through the 15th year the United States shall furnish to the District and the District shall accept and pay for, as provided in Article 6 hereof, four hundred thousand (400,000) acre-feet of water annually: Provided, That the District may at any time or times during the period described by this subdivision, by written notice furnished to the United States in advance, increase the quantity of water the United States shall furnish to the District and the District shall accept and pay for annually during said period, but in no event shall said annual quantity for the 6th year through the year 1979 exceed one million eight thousand (1,008,000) acre-feet and for the period commencing with the year 1980 and extending through the 15th year exceed seven hundred and eighty-three thousand (783,000) acre-feet plus such additional quantity as may be determined pursuant to subdivision (c) hereof. At any time during said period, the submission and approval of a schedule or any revision thereof pursuant to subdivision (a) of Article 4 hereof for water in excess of the quantity the District is required to accept and pay for during that year shall constitute such a written notice.

(c) The maximum of seven hundred and eighty-three thousand (783,000) acre-feet of water to be furnished to the District pursuant to subdivisions (b) and (d) hereof has been computed on the premise

that by eliminating overdraft a safe yield of two hundred and twenty-five thousand (225,000) acre-feet of water of usable quality will be available each year for pumping within the District from the deep underground beneath what is generally referred to as the Corcoran clay at an estimated average depth of three hundred (300) feet. Prior to January 1, 1980, the United States and the District by joint studies shall review the validity of this estimate based on conditions existing after the initial delivery date. In the event, as a result of such joint studies, the parties determine upon a safe yield in a quantity less than two hundred and twenty-five thousand (225,000) acre-feet, the quantity of water to be furnished annually to the District pursuant to subdivisions (b) and (d) hereof shall then be increased by the difference between said yield of two hundred and twenty-five thousand (225,000) acre-feet and the safe yield as determined by the joint studies; Provided, however, That such increase shall not exceed one hundred and seventeen thousand (117,000) acre-feet.

(d) Commencing the 16th year and each year thereafter during the remainder of the term of this contract, the United States shall furnish to the District for use on its eligible lands and the District shall accept and pay for, as provided in Article 6 hereof, seven hundred and eighty-three thousand (783,000) acre-feet of water plus such additional quantity as may be determined pursuant to subdivision (c) hereof. If in any year during such period the District

is unable to so use any part of such total quantity of water, the United States and the District by mutual agreement may reduce, by a quantity equal to that which the District was unable to so use, the quantity of water which the United States is obligated to furnish and the District is obligated to accept and pay for during the remainder of the term of this contract.

(e) If in any year after the Contracting Officer has approved a schedule or any revision thereof submitted by the District the United States is unable to furnish any portion of the water in the quantities and at the times requested in the schedule and the District does not elect to receive and does not receive such water at other times during such year, the District shall be entitled to an adjustment as provided in Article 7.

(f) The right to the beneficial use of water furnished to the District pursuant to the terms of this contract and any renewal hereof shall not be disturbed so long as the District shall fulfill all of its obligations under this contract and any such renewal.

(g) Drainage facilities of the District constructed in accordance with Article 13 hereof may be connected to the interceptor drain in such capacity and at such locations as may be mutually agreed upon between the District and the United States.

TIME FOR DELIVERY OF WATER

4. (a) Before January 1 of each year the District shall submit in writing to the Contracting Officer a schedule, subject to the provisions of Article 3 hereof and satisfactory in form and from an operational standpoint to the Contracting Officer, indicating the desired times and quantities for the delivery of all water pursuant to this contract during such year. The United States shall within the provisions hereof attempt to deliver said water in accordance with said schedule or any revision thereof satisfactory to the Contracting Officer in form and from an operational standpoint submitted by the District within a reasonable time before the desired change of time or quantity, or both, for delivery as nearly as may be feasible as conclusively determined by the Contracting Officer.

(b) If the District during any month is furnished a qua-tity of water in addition to that which it has requested for such month in its schedule and accepts such additional water, the District shall be deemed to have revised its schedule to call for such additional water during such month, and the United States shall be deemed to have accepted such revision as satisfactory. As soon thereafter as possible, the District shall submit a revised schedule to the United States for the remaining quantity to be delivered during that year.

(c) The District may at any time or times after the last day of September of any year request water to be furnished in excess of the quantity it is entitled to receive during any such year pursuant to Articles 3 and 8 hereof. Payment for the water so requested at the rate announced by the Contracting Officer pursuant to Article 6 hereof shall be made in advance of delivery of such water. The United States shall furnish such water in accordance with the schedule or any revision thereof submitted by the District and approved by the Contracting Officer to the extent such water is available and to the extent such furnishing will not interfere with maintenance of or result in detriment to the Project. The quantity of water furnished pursuant to this subdivision shall be deducted from the quantity of water the United States would otherwise be obligated to furnish and the District obligated to accept and pay for during the next succeeding year. The

amount paid by the District pursuant to this subdivision shall be deducted from the amount of the payment the District would otherwise be obligated to make during the next succeeding year.

USE OF WATER OUTSIDE THE DISTRICT

5. Water furnished to the District pursuant to this contract shall not be sold or otherwise disposed of for use outside the District without the written consent of the Contracting Officer.

RATE AND METHOD OF PAYMENT FOR WATER--DRAINAGE SERVICE

6. (a) Before December 15 of each year the Contracting Officer shall notify the District in writing of the rate of payment to be made by the District for water which the District is required to accept and pay for during the ensuing year pursuant to the provisions of Article 3 hereof. The rate so announced may not be in excess of Eight Dollars ($8) per acre-foot and shall include a drainage service component of not to exceed Fifty Cents ($0.50) for the interceptor drain and a water service component of not to exceed Seven Dollars and Fifty Cents ($7.50). The United States shall notify the District in writing when the interceptor drain becomes available for service. The drainage service component shall be included in the rate of payment beginning with the year following the date the District is notified that such service is available.

(b) The District shall make payments to the United States each year at the rate fixed as provided in subdivision (a) of this article for the quantity of water which the District is required to accept and pay for during such year pursuant to the provisions of Article 3 hereof. The District shall pay one-half (1/2) of the amount payable for said water to be furnished for the year before January 1 and shall pay the remainder of the amount payable for said water at the time the quantity of water furnished to the District equals the quantity for which payment has been made but in no event later than July 1 or such other later date or dates of the respective year as may be specified by the Contracting Officer in a written notice to the District. Water requested by the District in excess of the quantity it is required to accept and pay for that year shall be paid for in full at the time or times such requests are made.

(c) In the event the District is unable, fails, or refuses to accept delivery of the quantities of water available for delivery to and required to be accepted by it pursuant to this contract, or in the event the District in any year during the periods described in subdivisions (b) and (d) of Article 3 hereof fails to submit a schedule for delivery as provided in subdivision (a) of

Article 4 hereof, said inability, failure, or refusal shall not relieve the District of its obligation to pay for such water and the District agrees to make payment therefor in the same manner as if said water had been delivered to and accepted by it in accordance with this contract.

ADJUSTMENTS

7. The amount of any overpayment by the District by reason of the quantity of water actually available for the District during any year, as conclusively determined by the Contracting Officer, having been less than the quantity of such water which the District otherwise under the provisions of this contract would have been required to receive and pay for shall be applied first to any accrued indebtedness arising out of this contract then due and owing to the United States by the District and any amount of such overpayment then remaining shall, at the option of the District, be refunded to the District or credited upon amounts to become due to the United States from the District under the provisions hereof in the ensuing year.

NEED OF DISTRICT FOR MORE WATER THAN AGREED QUANTITY

8. In the event the District in any year requires a quantity of water in addition to the maximum total quantity required to be furnished by the United States and accepted and paid for by the District during such year pursuant to Article 3 hereof, the United States, upon receipt from the District of (1) a written notice requesting such additional water together with a schedule indicating the desired times and quantities for the delivery thereof and (2) payment as provided in Article 6 hereof, shall attempt to deliver such additional water to the District in accordance with said schedule to the extent that additional water is available for the District, as determined by the Contracting Officer. The amount of any overpayment by the District, by reason of the additional quantity of water furnished to the District pursuant to this article having been less than the additional quantity requested and paid for by the District, shall be applied as provided in Article 7 hereof: Provided, That the inability, failure, or refusal of the District to accept delivery of such additional quantities of water when it is available shall not entitle the District to any adjustment of payment for said water. The furnishing by the United States and acceptance by the District of such additional quantities of water shall neither entitle nor obligate the District to receive such quantities in subsequent years.

POINTS OF DELIVERY--MAINTENANCE OF FLOWS AND LEVELS--MEASUREMENT AND RESPONSIBILITY FOR DISTRIBUTION OF WATER

9. (a) The water to be furnished to the District pursuant to this contract will be delivered at such points on the San Luis Canal as may be mutually agreed upon in writing by the Contracting Officer and the District Provided however, That in the event the United States shall have reached the construction of the portion of the San Luis Unit which probably will embrace such points and the locations have not been so agreed upon, such points shall be established between mile 33 and mile 101 of the San Luis Canal at locations that in the conclusive determination of the Contracting Officer will best serve the needs of the District.

(b) All water delivered pursuant to this contract shall be measured by the United States at the points of delivery with equipment installed, operated, and maintained by the United States. Upon the request of the District, the accuracy of such measurements will be investigated by the Contracting Officer and any errors appearing therein adjusted.

(c) The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water which may be furnished at the delivery points established pursuant to subdivision (a) of this article, nor for claim of damage of any nature whatsoever, including but not limited to property damage, personal injury or death, arising out of or connected with the control, carriage, handling, use, disposal, or distribution of such water beyond such delivery points: Provided, That the United States reserves the right to the use of all waste, seepage, and return-flow water derived from water furnished to the District hereunder and which escapes or is discharged beyond the District's boundaries and nothing herein shall be construed as an abandonment or a relinquishment by the United States of the right to use any such water, but this shall not be construed as claiming for the United States any right, as waste, seepage, or return flow, to water being used pursuant to this contract for surface irrigation or underground storage within the District's boundaries by the District or those claiming by, through, or under the District.

(d) The United States may temporarily discontinue or reduce the quantity of water to be furnished to the District or the service of the interceptor drain as herein provided for the purpose of such investigation, inspection, maintenance, repair, or replacement as may be reasonably necessary of any of the Project facilities used in the

furnishing of water to the District or any part thereof or to the interceptor drain, but so far as feasible the United States will give the District due notice in advance of such temporary discontinuance or reduction, except in case of emergency, in which case no notice need be given. In the event of any such discontinuance or reduction, the United States will upon the resumption of service approximate delivery of the quantity of water which would have been furnished to the District in the absence of such contingency.

LIMITATIONS ON DELIVERY OF WATER

10. Pursuant to the provisions of the Act of June 3, 1960 (74 Stat. 156), no water provided pursuant to this contract shall be delivered to any water user in the District for the production on newly irrigated lands of any basic agricultural commodity, as defined in the Agricultural Act of 1949, or any amendment thereof, if the total supply of such commodity, as estimated by the Secretary of Agriculture for the marketing year in which the bulk of the crop would normally be marketed will be in excess of the normal supply as defined in Section 301(b)(10) of the Agricultural Adjustment Act of 1938, as amended, unless the Secretary of Agriculture calls for an increase in production of such commodity in the interest of national security.

UNITED STATES NOT LIABLE FOR WATER SHORTAGE

11. (a) There may occur at times during any year a shortage in the quantity of water available for furnishing to the District through and by means of the Project, but in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or any other causes. In any year in which there may occur a shortage from any cause, the United States reserves the right to apportion the available water supply among the District and others entitled under the then existing contracts to receive water from the San Luis Unit in accordance with conclusive determinations of the Contracting Officer as follows:

(i) A determination shall be made of the total quantity of water agreed to be accepted during the respective year under all contracts then in force for the delivery of Central Valley Project water by the United States from the San Luis Unit, the quantity so determined being hereinafter referred to as the contractual commitments;

(ii) A determination shall be made of the total quantity of water from the Central Valley Project which is available for meeting the contractual commitments, the quantity so determined being hereinafter referred to as the available supply;

(iii) The total quantity of water agreed to be accepted by the District during the respective year, under Article 3 hereof, shall be divided by the contractual commitments, the quotient thus obtained being hereinafter referred to as the District's contractual entitlement; and

(iv) The available supply shall be multiplied by the District's contractual entitlement and the result shall be the quantity of water required to be delivered by the United States to the District for the respective year, but in no event shall such amount exceed the total quantity of water agreed to be accepted by the District pursuant to Article 3 hereof.

Insofar as determined by the Contracting Officer to be practicable, the United States will, in the event a shortage appears probable, notify the District of such determinations in advance of the irrigation season.

(b) In the event that in any year there is delivered to the District by reason of any shortage or apportionment as provided in subdivision (a) of this article or any discontinuance or reduction of service as set forth in subdivision (d) of Article 9 hereof, less than the quantity of water which the District otherwise would be entitled to receive, there shall be made an adjustment on account of the amounts paid to the United States by the District for water for said year in

a manner similar to that provided for in Article 7. To the extent of such deficiency, such adjustment shall constitute the sole remedy of the District or anyone having or claiming to have by, through, or under the District the right to the use of any of the water supply provided for herein.

(c) The United States assumes no responsibility with respect to and does not warrant the quality of the water to be furnished pursuant to this contract: Provided, That the District shall not be obligated to accept and pay for any water which contains in excess of three hundred (300) parts by weight of chloride per one million (1,000,000) parts of water. To the extent that any adjustment is necessary because of the existence of chloride in the water available for furnishing to the District in excess of the quantity herein specified and because of previous payments by the District, such adjustment shall be made in a manner similar to that provided in Article 7 hereof. No adjustment shall be made hereunder in relation to any water actually furnished to and used by, through, or under the District for any purpose.

MUNICIPAL, INDUSTRIAL, AND DOMESTIC USE OF WATER FURNISHED TO DISTRICT

12. Water furnished in accordance with Article 3 of this contract is for agricultural use. Before water furnished under this contract may be delivered by the District for municipal, industrial, and domestic uses, the parties hereto shall agree upon the measurement of such water, the water service rates payable to the United States on account of the delivery for such purposes, and the time for payment therefor.

DRAINAGE STUDIES AND FACILITIES

13. To aid in determining the source and solution of future potential drainage problems the District shall, in a manner satisfactory to the Contracting Officer, initiate and maintain a program of ground-water observation in order to delineate shallow water table areas and shall furnish annually to the Contracting Officer, during the term of this contract and any renewal thereof, records and analyses of such observations as they relate to potential drainage problems. The District shall construct such drainage works as are necessary to protect the irrigability of lands within the District.

AGREED CHARGES A GENERAL OBLIGATION OF THE DISTRICT--TAXABLE LAND

14. The District as a whole is obligated to pay to the United States the charges becoming due as provided in this contract notwithstanding the default in the payment to the District by individual water users of assessments, tolls, or other charges levied by the District.

The lands which may be charged with any taxes or assessments under this contract are hereby designated and described as all the lands in the District.

ALL BENEFITS CONDITIONED UPON PAYMENT

15. Should any assessment or assessments required by the terms of this contract and levied by the District against any tract of land or water user in the District and necessary to meet the obligations of the District hereunder be judicially determined to be irregular or void, or should the District or its officers be enjoined or restrained from making or collecting any assessments upon such land or from such water user as provided for herein, then such tract shall have no right to any water furnished to the District pursuant to this contract, and no water made available by the United States pursuant hereto shall be furnished for the benefit of any such lands or water users, except upon the payment by the landowner of his assessment or a toll charge for such water, notwithstanding the existence of any contract between the District and the owner or owners of such tract. Contracts, if any, between the District and the water users involving water furnished pursuant to this contract shall provide that such use shall be subject to the terms of this contract. It is further agreed that the payment of charges at the rate and upon the terms and conditions provided for herein is a prerequisite to the

right to the use of water furnished to the District pursuant to this contract, and no irregularity in levying taxes or assessments by the District nor lack of authority in the District, whether affecting the validity of District taxes or assessments or not, shall be held to authorize or permit any water user of the District to demand water made available pursuant to this contract unless charges at the rate and upon the terms and conditions provided for herein have been paid by such water user.

LEVY OF TAXES AND ASSESSMENTS--FIXING OF RATES AND TOLLS

16. The District shall cause to be levied and collected all necessary taxes and assessments and shall use all of the authority and resources of the District to make in full all payments to be made pursuant to this contract on or before the date such payments become due and to meet its other obligations under this contract. The District may, either or both, require the payment of toll charges or levy assessments for such water supplied hereunder.

REFUSAL OF WATER IN CASE OF DEFAULT

17. No water shall be furnished to the District or by the District to or for the use of any lands or parties therein during any period in which the District may be in arrears in the advance

payment of charges accruing under this contract. No water shall be furnished to or by the District pursuant to this contract for lands or parties which are in arrears in the payment to the District of any assessments, rates, tolls, or rental charges of the District levied or established by the District and necessary for the purpose of raising revenues to meet the payment by the District to the United States of the District's obligation under this contract.

PENALTY UPON DELINQUENCY IN PAYMENT

18. Upon every charge or installment of money required to be paid by the District to the United States pursuant to this contract which shall remain unpaid after the same shall have become due and payable, there shall be imposed a penalty of one-half (1/2) of one (1) percent per month of the amount of such delinquent charge or installment from and after the date when the same becomes due until paid, and the District hereby agrees to pay said penalty: Provided, That no penalty shall be charged to or be paid by the District unless such delinquency continues for more than thirty (30) days.

DISTRICT TO KEEP BOOKS AND RECORDS AND REPORT CROP AND OTHER DATA

19. The District shall establish and maintain account and other books and records sufficient to enable it to furnish, insofar as the District is permitted to do so by the laws of the State of California, to the Bureau of Reclamation reports and statements to such an extent

and in such manner and form as may be prescribed by the United States as to information pertaining to (1) accounts and financial transactions of the District, insofar as such information pertains to this contract and operations thereunder, and (2) crops raised and agricultural and livestock products produced on the lands within the District, a report thereon to be furnished to the Contracting Officer annually before December 31.

INSPECTION OF BOOKS AND RECORDS

20. Subject to applicable Federal laws and regulations, the proper officers or agents of the District shall have full and free access at all reasonable times to the Project account books and official records of the Bureau of Reclamation, insofar as the same pertain to the matters and things provided for in this contract, with the right at any time during office hours to make copies thereof, and the proper representatives of the United States shall have similar rights with respect to the account books and records of the District.

or to excess lands with respect to which a recordable contract has been executed.

VALUATION AND SALE OF EXCESS LANDS

24. (a) The value of the excess irrigable lands within the District held in private ownership of large landowners as defined in the next succeeding article hereof, for the purposes of this contract, shall be appraised in a manner to be prescribed by the Secretary. At the option of a large landowner, however, the value of such land may be appraised, subject to the approval thereof by the Secretary, by three appraisers. One of said appraisers shall be designated by the Secretary and one shall be designated by the District and the two appraisers so appointed shall name the third. If the appraisers so designated by the Secretary and the District are unable to agree upon the appointment of the third, the Presiding Justice of the Fifth District Court of Appeal of the State of California shall be requested to designate the third appraiser.

(b) The following principles shall govern the appraisal:

(i) No value shall be given such lands on account of the existing or prospective possibility of securing water from the Project;

(ii) The value of improvements on the land at the time of said appraisal shall be included therein, but shall also be set forth separately in such appraisal.

CHANGES IN ORGANIZATION OF DISTRICT

21. While this contract is in effect no changes shall be made in the District either by inclusions which in the aggregate will total more than twelve thousand five hundred (12,500) acres of land or exclusions which in the aggregate will total more than twelve thousand five hundred (12,500) acres of land, by partial or total consolidation or merger with another district, by proceedings to dissolve, or otherwise, except upon the Contracting Officer's written assent thereto.

TRANSFER OF CARE, OPERATION, AND MAINTENANCE OF SAN LUIS UNIT

22. The United States may transfer the San Luis Unit or a portion thereof to the State of California for care, operation, and maintenance and such transfer shall not affect the rights or obligations of either party to this contract.

LAND NOT TO RECEIVE WATER FURNISHED TO DISTRICT BY UNITED STATES UNTIL OWNERS THEREOF EXECUTE CERTAIN CONTRACTS

23. (a) No water made available pursuant to this contract shall be furnished to any excess lands as defined in Article 25 hereof unless the owners thereof shall have executed valid recordable contracts in form prescribed by the United States, agreeing to the provisions of this article and Articles 24 and 25 of this contract, agreeing to the appraisal provided for in Article 24 hereof and that such appraisal shall be made on the basis of the actual bona fide

value of such lands at the date of the appraisal without reference to the construction of the Project, all as hereinafter provided, and agreeing to the sale of such excess lands under terms and conditions satisfactory to the Secretary and at prices not to exceed those fixed as hereinafter provided. No sale of any excess lands shall carry the right to receive water made available pursuant to this contract unless and until the purchase price involved in such sale is approved by the Contracting Officer and upon proof of fraudulent representation as to the true consideration involved in such sales the United States may instruct the District by written notice to refuse to furnish any water subject to this contract to the land involved in such fraudulent sales, and the District thereafter shall not furnish said water to such lands until such written notice is withdrawn.

(b) If Project water furnished to the District pursuant to this contract reaches the underground strata of excess land owned by a large landowner, as defined in subdivision (a) of Article 25 hereof, who has not executed a recordable contract and the large landowner pumps such Project water from the underground, the District will not be deemed to have furnished such water to said lands within the meaning of this contract if such water reached the underground strata of the aforesaid excess land as an <u>unavoidable</u> result of the furnishing of Project water by the District to nonexcess lands

(c) The excess land of any large landowner shall be reappraised at the instance of the United States or at the request of said landowner. The cost of the first two appraisals of each tract of excess land shall be paid by the United States. The cost of each appraisal thereafter shall be paid by the party requesting such appraisal.

(d) Any improvements made or placed on the appraised land after the appraisal hereinabove provided for prior to sale of the land by a large landowner shall be appraised in like manner.

(e) Excess irrigable lands sold by large landowners within the District shall not carry the right to receive water made available pursuant to this contract for such lands and the District agrees to refuse to furnish such water to lands so sold until, in addition to compliance with the other provisions hereof, a verified statement showing the sale price upon any such sale shall have been filed with the District and said sale price is not in excess of the appraised value fixed as provided herein.

(f) The District agrees to take all reasonable steps requested by the Contracting Officer to ascertain the occurrence and conditions of all sales of irrigable land of large landowners in the District made subsequent to the execution of this contract and to inform the United States concerning the same.

(g) A true copy of this contract, of each recordable contract executed pursuant to this article and Articles 23 and 25 hereof, and of each appraisal made pursuant thereto shall be furnished to the District by the United States and shall be maintained on file in the office of the District and like copies in such offices of the Bureau of Reclamation as may be designated by the Contracting Officer and shall be made available for examination during the usual office hours by all persons who may be interested therein.

EXCESS LANDS

25. (a) As used herein the term "excess land" means that part of the irrigable land within the District in excess of one hundred and sixty (160) acres held in the beneficial ownership of any single person; or in excess of three hundred and twenty (320) acres held in the beneficial ownership of husband and wife jointly, as tenants in common or by the entirety, or as community property; the term "large landowner" means an owner of excess lands and the term "nonexcess land" means all irrigable land within the District which is not excess land as defined herein.

(b) Each large landowner as a further condition precedent to the right to receive water made available pursuant to this contract for any of his excess land shall:

(i) Before any water is furnished by the District to his excess land, execute a valid recordable contract in form prescribed by the United States, agreeing to the provisions contained in this article and Articles 23 and 24 hereof and agreeing to dispose of his excess land in accordance therewith to persons who can take title thereto as nonexcess land as herein provided and at a price not to exceed the approved, appraised value of such excess land and within a period of ten (10) years after the date of the execution of said recordable contract and agreeing further that if said land is not so disposed of within said period of ten (10) years, the Secretary shall have the power to dispose of said land at the appraised value thereof fixed as provided herein or such lower price as may be approved by the owner of such land, subject to the same conditions on behalf of such large landowner; and the District agrees that it will refuse to furnish said water to any large landowner other than for his nonexcess land until such owner meets the conditions precedent herein stated;

(ii) Within thirty (30) days after the date of notice from the United States requesting such large landowner to designate his irrigable lands within the District which he desires to designate as nonexcess lands, file in the office of the District, in

duplicate, one copy thereof to be furnished by the District to the Bureau of Reclamation, his written designation and description of lands so selected to be nonexcess land and upon failure to do so the District shall make such designation and mail a notice thereof to such large landowner, and in the event the District fails to act within such period of time as the Contracting Officer considers reasonable, such designation will be made by the Contracting Officor, who will mail a notice thereof to the District and the large landowner. The large landowner shall become bound by any such action on the part of the District or the Contracting Officer and the District will furnish said water only to the land so designated to be nonexcess land. A large landowner may with the consent of the Contracting Officer designate land other than that previously designated as nonexcess land: Provided, That an equal acreage of the land previously designated as nonexcess shall, upon such new designation, become excess land thereafter subject to the provisions of this article and Articles 23 and 24 of this contract and shall be described in an amendment of such recordable contract as may have been executed by the large landowner in the same manner as if such land had been excess land at the time of the original designation.

AMENDMENT OF FEDERAL RECLAMATION LAWS

26. In the event that the Congress of the United States repeals the so-called excess-land provisions of the Federal reclamation laws, Articles 23, 24, and 25 of this contract will no longer be of any force or effect, and, in the event that the Congress amends the excess-land provisions or other provisions of the Federal reclamation laws, the United States agrees, at the option of the District, to negotiate amendments of appropriate articles of this contract, all consistently with the provisions of such repeal or amendment.

WATER ACQUIRED BY DISTRICT OTHER THAN FROM THE UNITED STATES

27. (a) The provisions of this contract shall not be applicable to or affect water or water rights now owned or hereafter acquired by the District or landowners within the District other than from the United States. Water furnished pursuant to the terms of this contract may be transported by means of the same distribution facilities as water now available or which may become available to the District or landowners within the District other than pursuant to the terms of this contract if the Contracting Officer determines that such mingling is necessary to avoid a duplication of facilities; and notwithstanding such mingling of

water, the provisions of this contract shall be applicable to the quantity of water furnished to the District pursuant to the terms hereof, and such mingling of water shall not in any manner subject to the provisions of this contract the quantity of water acquired by or available to the District or landowners within the District other than from the United States.

(b) With respect to the distribution works or portions thereof in which mingling is permitted as provided in subdivision (a) hereof, the District:

(i) Will be responsible for the operation and maintenance of separate outlets from the distribution system for nonexcess and excess lands as defined in Article 25 hereof. At the request of the Contracting Officer the District will be responsible for the installation, operation, and maintenance of water-measuring equipment at delivery points to excess lands and, further, will be responsible for the installation, operation, and maintenance of similar equipment for measuring the water available to the District or landowners within the District other than from the Project, and the Contracting Officer may check and inspect said equipment at any time;

(ii) Agrees that the quantity of water furnished to it by the United States during each 24-hour period will be delivered by the District only to eligible land through

the aforesaid outlets to eligible lands. The District shall be deemed to be in breach of this article and Articles 23, 24, and 25 of this contract if at any time there is furnished to all excess lands not covered by recordable contracts and served by the distribution works or portions thereof in which mingling is permitted, a quantity of water which is greater than that which the District or landowners within the District have introduced into said system from the supply available other than pursuant to this contract.

CONTINGENT UPON APPROPRIATIONS OR ALLOTMENT OF FUNDS

28. The expenditure of any money or the performance of any work by the United States hereunder which may require appropriations of money by the Congress or the allotment of funds shall be contingent upon such appropriations or allotment being made. The failure of the Congress so to appropriate funds or the absence of an allotment of funds shall not relieve the District from any obligations then accrued under this contract, and no liability shall accrue to the United States in case such funds are not appropriated or allotted.

OFFICIALS NOT TO BENEFIT

29. (a) No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract

or to any benefit that may arise herefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

(b) No official of the District shall receive any benefit that may arise by reason of this contract other than as a landowner within the District and in the same manner as other landowners within the District.

NOTICES

30. Any notice or announcement which the provisions hereof contemplate shall be given to one of the parties hereto by the other shall be deemed to have been given if deposited in the United States Post Office on the part of the United States in a franked or postage-prepaid envelope addressed to the District at its office in Fresno, California, and on the part of the District in a postage-prepaid envelope addressed to the Bureau of Reclamation, United States Department of the Interior, Sacramento, California, or such other address as from time to time may be designated by the Contracting Officer in a written notice to the District: Provided however, That this article shall not preclude the effective service of any such notice or announcement by other means.

**ASSIGNMENT--WAIVER--REMEDIES NOT EXCLUSIVE--**
**OPINIONS AND DETERMINATIONS**

31. (a) The provisions of this contract shall apply to and bind the successors and assigns of the respective parties, but no assignment or transfer of this contract or any part thereof or interest therein shall be valid until and unless approved by the United States.

(b) Any waiver at any time by either party to this contract of its rights with respect to a default, or any other matter arising in connection with this contract, shall not be deemed to be a waiver with respect to any subsequent default or matter.

(c) Nothing contained in this contract shall be construed as in any manner abridging, limiting, or depriving the United States of any means of enforcing any remedy, either at law or in equity, for the breach of any provisions hereof which it would otherwise have.

(d) Where the terms of this contract provide for matters being done to the satisfaction of a representative of either party hereto, or for action to be based upon the opinion or conclusive determination of such a representative of either party hereto, such terms are not intended to be and shall never be construed as permitting such satisfaction, opinion, or determination of such a representative of either party to this contract to be arbitrary, capricious, or unreasonable; and the District, notwithstanding any other provisions of the contract, expressly reserves the right to relief from and appropriate adjustment for any such arbitrary, capricious, or unreasonable satisfaction, opinion, or determination.

## ASSURANCE RELATING TO VALIDITY OF CONTRACT

32. (a) Promptly after the execution and delivery of this contract the District shall file and prosecute to a final decree, including any appeal therefrom to the highest court of the State of California, in a court of competent jurisdiction a special proceeding for the judicial examination, approval, and confirmation of the proceedings had for the organization of the District and the proceedings of the District Board of Directors and of the District leading up to and including the making of this contract and the validity of the provisions thereof; and this contract shall not be binding on the United States until said District organization, proceedings, and contract shall have been so confirmed by a court of competent jurisdiction or pending appellate action in any court if ground for appeal be laid: Provided, That nothing herein contained shall require the District to assume the responsibility of prosecuting judicial review beyond the highest court of the State of California.

(b) This contract shall be indivisible for purposes of validation and shall not be binding on the United States or the District unless validated in each and all of its terms and conditions as executed by the parties.

IN WITNESS WHEREOF, the parties hereto have executed this contract the day and year first above written.

THE UNITED STATES OF AMERICA

By ______________________
Regional Director, Region 2
Bureau of Reclamation

WESTLANDS WATER DISTRICT

By ______________________
President

(SEAL)--Affixed

Attest:

______________________
Secretary

RESOLUTION NUMBER 121-62

WHEREAS, Westlands Water District and the Bureau of Reclamation, United States Department of the Interior, have been negotiating for the execution of a contract under the terms of which the United States would provide water service to this District from the San Luis Unit of the Central Valley Project; and

WHEREAS, the Bureau of Reclamation has submitted to Westlands Water District a draft of contract marked "R.O. Draft 12/7-1963" under the terms of which such service would be provided; and

WHEREAS, This District is in serious need of a supplemental water supply; and

WHEREAS, this District was formed in contemplation of the acquisition of a supplemental water supply from the San Luis Unit of the Central Valley Project; and

WHEREAS, said draft of contract marked "R.O. Draft 12/7-1962" is considered by this Board to be satisfactory and that it would be in the best interests of this District to execute said contract.

NOW, THEREFORE, BE IT RESOLVED, that the draft of proposed contract marked "R.O. Draft 12/7-1962" between the United States and Westlands Water District be, and it is, hereby approved.

BE IT FURTHER RESOLVED, that the Manager-Chief Counsel of this District be, and he is, hereby authorized and instructed to take the necessary steps to complete the statutory and other procedures required to be met prior to the execution of said contract; and

BE IT FURTHER RESOLVED, that, upon the approval by the Secretary of the Interior of said form of contract and after approval

by the California Districts Securities Commission and the voters of this District, the President and the Secretary of this District be, and they are, hereby authorized to execute said contract for and on behalf of Westlands Water District.

AYES: GIFFEN, DIENER, BAKER, BENSON, van LOBEN SELS

NOES: NONE

ABSENT: ROBINSON, THOMAS

STATE OF CALIFORNIA )
) ss
COUNTY OF FRESNO )

STEWART P. SMITH does hereby certify that he is the duly appointed, qualified and acting Secretary of WESTLANDS WATER DISTRICT, a public district organized under the laws of the State of California with its offices at Fresno California; that the foregoing Resolution Number 121-62 was duly and regularly adopted by the Board of Directors of WESTLANDS WATER DISTRICT at a meeting of Board of Directors duly called and held on the 10th day of December, 1962 at the offices of said WESTLANDS WATER DISTRICT at which a quorum of said Directors was present and acting; and that said Resolution is still in full force and effect.

DATED: January 10, 1963.

STEWART P. SMITH
Secretary, Westlands Water District

(SEAL)

RESOLUTION No. 125-63

WHEREAS Westlands Water District has heretofore approved a proposed draft of contract marked R.O. Draft 12/7-1962, for water service to this District from the San Luis Unit of the Central Valley Project; and

WHEREAS, said form of contract was submitted to the Secretary of the Interior for approval on behalf of the United States; and

WHEREAS the President of the United States and the Secretary of the Interior have approved said draft of contract subject to certain amendments, which amendments are incorporated in a draft of said contract marked R.O.Draft 12/7-1962, Rev. W.O. 1-4-63, Rev. W.O. 1-21-63, and

WHEREAS, said draft of contract, as amended, is satisfactory to Westlands Water District; and

WHEREAS, said draft of contract, under the provisions of Section 35035 of the Water Code of California requires the approval of the California Districts Securities Commission prior to execution.

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors of Westlands Water District do, and it does, hereby approve, for execution, the proposed contract between the United States of America and the Westlands Water District, which contract is marked R.O. Draft 12/7-1962, Rev. W.O. 1-4-63, Rev. W.O. 1-21-63

BE IT FURTHER RESOLVED, that the California Districts Securities Commission be, and it is, hereby requested to approve said form of contract marked R.O. Draft 12/7-1962, Rev. W.O. 1-4-63, Rev. W.O. 1-21-63.

BE IT FURTHER RESOLVED, that Ralph M. Brody, Manager-Chief Counsel for this District be, and he is, hereby authorized and directed to petition said California Districts Securities Commission for such approval and to execute all necessary documents for and on behalf of Westlands Water District required for obtaining such approval of the California Districts Securities Commission.

AYES: GIFFEN, DIENER, BAKER, BENSON, ROBINSON, THOMAS, van LOBEN SELS

NOES: NONE

ABSENT: NONE

STATE OF CALIFORNIA )
) ss
COUNTY OF FRESNO )

STEWART P. SMITH does hereby certify that he is the duly appointed, qualified and acting Secretary of WESTLANDS WATER DISTRICT, a public district organized under the laws of the State of California with its offices at Fresno, California; that the foregoing Resolution Number 125-63 was duly and regularly adopted by the Board of Directors of WESTLANDS WATER DISTRICT at a meeting of said Board of Directors duly called and held on the 11th day of February, 1963 at the offices of said WESTLANDS WATER DISTRICT at which a quorum of said Directors was present and acting; and that said Resolution is still in full force and effect.

DATED: June 5, 1963

STEWART P. SMITH
Secretary, Westlands Water District

United States Department of the Interior

BUREAU OF RECLAMATION

MID-PACIFIC REGIONAL OFFICE
2800 COTTAGE WAY
SACRAMENTO, CALIFORNIA 95825

IN REPLY REFER TO: MP-230

FEB 15 1979

To: Regional Director

From: Regional Engineer

Subject: Available Ground-Water Supplies below Corcoran Clay within Westlands Water District

The 1963 USBR Geology and Ground-Water Resources Appendix of the Definite Plan Report estimated that the then 391,000-acre WWD would eventually develop a 225,000 acre-foot safe yield from below the Corcoran Clay.

The June 5, 1963 water service contract No. 14-06-200-495A, between the United States and Westlands, states in Article 3 (c):

> The maximum of seven hundred and eighty-three thousand (783,000) acre-feet of water to be furnished to the District pursuant to subdivisions (b) and (d) hereof has been computed on the premise that by eliminating overdraft a safe yield of two hundred and twenty-five thousand (225,000) acre-feet of water of usable quality will be available each year for pumping within the District from the deep underground beneath what is generally referred to as the Corcoran Clay at an estimated average depth of three hundred (300) feet. Prior to January 1, 1980, the United States and the District by joint studies shall review the validity of this estimate based on conditions existing after the initial delivery date. In the event, as a result of such joint studies, the parties determine upon a safe yield in a quantity less than two hundred and twenty-five thousand (225,000) acre-feet, the quantity of water to be furnished annually to the District pursuant to subdivisions (b) and (d) hereof shall then be increased by the difference between said yield of two hundred and twenty-five thousand (225,000) acre-feet and the safe

yield as determined by the joint studies; Provided, however, that such increase shall not exceed one hundred and seventeen thousand (117,000) acre-feet. (Emphasis added)

The following discussion was given to the USGS for review and concurrence. Their letter of concurrence is attached.

## Ground-Water Conditions

The ground-water reservoir underlying Westlands Water District is comprised of two water-bearing zones. The lower water-bearing zone, beneath the Corcoran Clay, is the primary source of the District's ground water because the majority of the water above the clay contains excessive dissolved solids and/or boron which make it unsuitable for irrigation of many crops.

The historical ground-water pumpage and average elevation of the sub-Corcoran piezometric ground-water surface in Westlands Water District are shown on the attached figure. The annual decline of the piezometric ground-water surface averaged approximately nine feet per year from the early 1940's through 1967, when the piezometric ground-water surface started to recover due to the reduced rate of ground-water pumping because of the increased deliveries of Project water.

From 1967 to 1976, the average piezometric ground-water surface within the District raised approximately 150 feet because of the delivery of Project water. During 1974, 1975, and 1976, approximately 100,000 acre-feet or less of ground water were pumped annually, while the amount of Project water used exceeded 1,000,000 acre-feet for each of those years. It is estimated that about 20,000 to 25,000 acre-feet of this ground-water extraction came from above the Corcoran Clay. During the 1977 drought, ground-water pumping increased to approximately 470,000 acre-feet which resulted in a decline in the average piezometric ground-water surface of approximately 97 feet in that one year, about ten times the average annual rate of decline experienced prior to 1967, when "water of compaction" was available. "Water of compaction" is the water squeezed from the pore spaces of fine-grained deposits within the aquifer system during the initial drawdown of the piezometric ground-water surface.

The attached figure also shows the projected average elevation of the piezometric ground-water surface between 1980-2000 for the following annual ground-water pumping rates: 1) 100,000 acre-feet, 2) 372,000 acre-feet, and 3) 622,000 acre-feet.

If the annual ground-water pumping rate is continued at 100,000 acre-feet, as experienced during the 1974-76 period, the average piezometric ground-water surface is estimated to stabilize within the boundaries of the existing 600,000-acre WWD at, or slightly above, 1976 levels, as shown by Point "A" on the figure, which would result in a District-wide average pumping lift of about 400 feet.

## Criteria and Assumptions

The Bureau and the District have agreed on the following criteria and assumptions to be used to ascertain the annual ground-water supply beneath the Corcoran Clay:

1. Study Areas: The study areas shown on the attached map (Drawing No. 805-208-2815) were used in estimating productive acreages and water requirements of various areas of the District. These areas are as follows:

A. The area of the current WWD portion of the San Luis Area as defined in the 1955 Feasibility Report is approximately 396,000 acres.

B. The area of the formerly Class 5 lands based on the USBR Land Use Map, Drawing No. 484-204-2294 is approximately 100,300 acres.

C. The area of the Westplains Water Storage District annexed to the original WWD and above the 485-foot contour is approximately 48,300 acres.

2. Water Requirements: The water requirements of the areas are based on current WWD crops and water use. It is assumed that future water requirements will remain essentially the same. The jointly derived water requirements for the different study areas are:

| | Agricultural (acre-feet) | M&I (acre-feet) | Rounded Total (acre-feet) |
|---|---|---|---|
| A. WWD--1955 Feasibility Report | 1,099,400 | 4,400 | 1,103,800 |
| B. Formerly Class 5 land | 278,500 | 5,100 | 283,600 |
| C. Area above 485-foot contour in current WWD | 134,100 | 500 | 134,600 |
| TOTAL: | 1,512,000 | 10,000 | 1,522,000 |

3. Eastside Sub-Corcoran Clay Inflow: It is assumed:

a) That lands listed in items 1-B and 1-C above will receive no firm project supply and thus will depend on ground-water supply.

b) That there will be no new importation to the east side such as Mid-Valley Canal or East Side projects.

c) That east side overdraft will continue at least at its present rate.

4. Delta Water-Quality Standards: Assume that CVP water will be used to meet current Delta water quality standards.

5. Intermittent Water: The availability of intermittent water for any one year can only be determined after a forecast of each year's September reservoir carryover is made. However, since it is assumed that current Delta water quality standards are to be met, no intermittent water will be available.

6. Seepage from Conveyance Systems: Seepage from the San Luis Canal and the WWD distribution system was not re-evaluated for this study. However, there will not be sufficient differences between the 1963 projected and the actual losses to make any significant difference in this study.

7. Project Water Deliveries to WWD: It is assumed that 900,000 acre-feet per year will be delivered to the land in Study area A, the San Luis Service Area of the current WWD as defined in the 1955 feasibility report, and that the formerly Class 5 lands (Area B) and the lands above the 485-foot contour (Area C) would utilize ground water. This utilization would result in ground-water overdraft and land subsidence.

Summary

If a project water supply of 1,150,000 acre-feet is provided, it will be necessary to pump at least 372,000 acre-feet of ground water to satisfy the District's anticipated annual water requirement of 1,522,000 acre-feet. Therefore, since:

1) The annual water requirement of the formerly Class 5 land and the area above the 485-foot contour is approximately 418,200 acre-feet; and

2) No intermittent water will be available; and

3) Only 900,000 acre-feet will be available within the 1955 Feasibility Report service area;

Then:

1) The annual ground-water supply for pumping within Area A from beneath the Corcoran Clay will be less than 100,000 acre-feet; and

2) The average District-wide pumping depth with 100,000 acre-feet of ground-water pumping would be greater than 300 feet (approximately 400 feet). Additional pumping will result in a further increased pumping depth.

Conclusions

It is concluded that under the provisions of Article 3 (c) of the 1963 water service contract, between the U. S. and WWD, that the 783,000 acre-feet required to be furnished annually to the District must be increased by 117,000 acre-feet annually to a total of 900,000 acre-feet.

Based on the assumptions and criteria listed in this memorandum, we concur with the conclusion drawn.

BY Robert E [signature]
Acting Regional Engineer

CONCURRENCE BY [signature]
Westlands Water District

I approve : Billy E. Martin
Billy E. Martin, Regional Director

Attachments

FIGURE 1

HISTORICAL GROUND WATER PUMPAGE AND AVERAGE ELEVATION OF HISTORICAL AND PROJECTED SUB-CORCORAN PIEZOMETRIC GROUND WATER SURFACE IN WESTLANDS WATER DISTRICT




RIVER
SAN
JOAQUIN
SAN
REACH 2
REACH 3
SAN
FRESNO
BENITO
CO
CO
SAN LUIS SERVICE BOUNDARY, 1955 FEASIBILITY REPORT
AREA "A" CURRENT WESTLANDS WATER DISTRICT WITHI
AREA "B" AREA OF FORMERLY CLASS 5 LANDS IN THE C
AREA "C" AREA OF THE FORMER WESTPLAINS WATER S
485' CONTOUR IN THE CURRENT WESTLANDS
DECEMBER 20, 1978


DRAIN
A "B"
LUIS
SAN
KINGS
RIVER
D I S T R I C T
E R
"A"
REACH 4
REACH 5
CANAL
REACH 3
REACH 4
LUIS
CO
CO
FRESNO
KINGS
PLEASANT VALLEY
PUMPING PLANT
A "C"
CANAL
SCALE OF MILES
SERVICE AREA
TER DISTRICT
E THE
UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
CENTRAL VALLEY PROJECT
WEST SAN JOAQUIN DIV - SAN LUIS UNIT - CALIF
WESTLANDS WATER DISTRICT
805-208-2815

UNITED STATES
DEPARTMENT OF THE INTERIOR

GEOLOGICAL SURVEY
District Office
Water Resources Division
855 Oak Grove Avenue
Menlo Park, California 94025

February 8, 1979

| Code | Action | Surname & Date |
|---|---|---|
| 230 | | [illegible] |

Mr. H. E. Horton
Acting Regional Director
Bureau of Reclamation
Mid-Pacific Regional Office
2800 Cottage Way
Sacramento, California 95825

Dear Mr. Horton:

Appropriate technical personnel in our office have reviewed the attached letter concerning available ground-water supplies below the Corcoran Clay within the Westlands Water District. We find the letter to be technically correct based upon our knowledge of the area. Therefore, in accordance with the criteria and assumptions presented in this letter, we find no basis on which to make judgements contrary to those stated in the letter.

Very truly yours,

Richard M. Bloyd
District Chief

Attachment