# EXHIBIT C

Contract No.
14-06-200-152-A

June 19, 1962

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

# CONTRACT BETWEEN THE UNITED STATES AND THE SAN JUAN SUBURBAN WATER DISTRICT PROVIDING FOR WATER SERVICE

## Table of Contents


| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 2- 3 |
| 1 | Definitions | 3 |
| 2 | Term of Contract | 4 |
| 3 | Water to be Furnished to the District | 5- 9 |
| 4 | Rate and Method of Payment for Water | 10-11 |
| 5 | Point of Delivery--Measurement and Responsibility for Distribution of Water | 11-13 |
| 6 | United States not Liable for Water Shortage | 13-15 |
| 7 | Adjustments | 15-16 |
| 8 | Agreed Charges a General Obligation of the District | 16 |
| 9 | All Benefits Conditioned Upon Payment | 16-17 |
| 10 | Levy of Taxes and Assessments--Fixing of Rates and Tolls | 17-18 |
| 11 | Refusal of Water in Case of Default | 18 |
| 12 | Penalty Upon Delinquency in Payment | 18-19 |
| 13 | District to Keep Books and Records and Report Crop and Other Data | 19 |
| 14 | Inspection of Books and Records | 19-20 |
| 15 | Changes in Organization of District | 20 |
| 16 | Land not to Receive Water Furnished to District by United States Until Owners Thereof Execute Certain Contracts | 21-22 |
| 17 | Valuation and Sale of Excess Lands | 22-24 |
| 18 | Excess Lands | 24-27 |
| 19 | Amendment of Federal Reclamation Laws | 27 |
| 20 | Contingent Upon Appropriations or Allotments of Funds | 28 |
| 21 | Officials not to Benefit | 28 |
| 22 | Notices | 28-29 |
| 23 | Existing Water Rights | 29 |
| 24 | Assignment Prohibited: Successors and Assigns Obligated: Waivers: Opinions and Determinations | 29-30 |
| 25 | Assurance Relating to Validity of Contract | 30-31 |
| 26 | Nondiscrimination | 31-34 |

R. O. Draft 4/5-1961
Rev. W. O. 4/26/62

Contract No.
14-06-200-152-A

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

**CONTRACT BETWEEN THE UNITED STATES AND THE SAN JUAN SUBURBAN WATER DISTRICT PROVIDING FOR WATER SERVICE**

THIS CONTRACT, made this 19th day of June, 1962, in pursuance generally of the Act of Congress of June 17, 1902 (32 Stat. 388), and acts amendatory thereof or supplementary thereto, all collectively hereinafter referred to as the Federal reclamation laws, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, represented by the officer executing this contract, his duly appointed successor, or his duly authorized representative, hereinafter referred to as the Contracting Officer, and the SAN JUAN SUBURBAN WATER DISTRICT, a community services district, hereinafter referred to as the District, a political subdivision of the State of California, duly organized, existing, and acting pursuant to the laws thereof, with its principal place of business in the city of Orangevale, State of California,

WITNESSETH, That:

## EXPLANATORY RECITALS

WHEREAS, the United States is constructing the Central Valley Project for flood control, navigation, diversion, storage, carriage and distribution, for irrigation, municipal, domestic and industrial uses of the waters of the Sacramento River, the Trinity River, the American River, the San Joaquin River, and their tributaries, for the generation and distribution of electric energy, and other beneficial purposes; and

WHEREAS, the District succeeded to the rights of the North Fork Ditch Company set forth in a contract between the District and the United States dated April 12, 1954 (No. DA-04-167-eng-610), which provided, among other things, for the delivery of water thereunder; and

WHEREAS, the District desires to obtain an additional water supply for municipal, domestic, industrial, and irrigation uses from Folsom Reservoir of the Central Valley Project; and

WHEREAS, the United States is willing to make water available to the District from said Folsom Reservoir upon the basis at the rates and pursuant to the conditions hereinafter set forth; and

WHEREAS, investigations of the streamflow in the American River and its tributaries indicate that there will be available for furnishing to the District by surface diversion a supplemental water supply for municipal and industrial uses and direct application for irrigation;

NOW, THEREFORE, in consideration of the mutual and dependent covenants herein contained, it is hereby mutually agreed by the parties hereto as follows:

## DEFINITIONS

1. When used herein, unless otherwise distinctly expressed, or manifestly incompatible with the intent hereof, the term:

(a) "Secretary" or "Contracting Officer" shall mean the Secretary of the United States Department of the Interior or his duly authorized representative;

(b) "Project" shall mean the Central Valley Project, California, of the Bureau of Reclamation;

(c) "year" shall mean the period from and including March 1 of each calendar year through the last day of February of the following calendar year;

(d) "irrigated land" shall mean parcels of land of two (2) or more acres on which water is applied for the purpose of growing crops or livestock.

TERM OF CONTRACT

2. This contract shall be effective on the date first hereinabove written and shall remain in effect until and including February 28, 1995: Provided, That under terms and conditions mutually agreeable to the parties hereto, renewals of the provisions of this contract pertaining to the furnishing of agricultural water may be made for successive periods not to exceed forty (40) years each. The terms and conditions of each renewal shall be agreed upon not later than one (1) year prior to the expiration of the then existing contract: Provided further, That upon written request by the District of the Secretary not later than one (1) year prior to the expiration of this contract, whenever, account being taken of the amount then credited to the costs of construction of water supply works the remaining amount of construction costs of water supply works which is properly assignable for ultimate return by the District as established by the Secretary of the Interior pursuant to (3) of Section 1 of Public Law 643 (70 Stat. 483) probably can be repaid to the United States within the term of a contract under subsection (d), Section 9, of the 1939 Reclamation Project Act (53 Stat. 1187), the portions of this contract pertaining to the furnishing of agricultural water may be converted to a contract under said subsection (d) upon terms and conditions mutually agreeable to the United States and the District.

WATER TO BE FURNISHED TO THE DISTRICT

3. (a) During the period commencing with March 1, 1962, and ending on February 28, 1967, the United States shall furnish to the District and the District each such year shall accept and pay, as provided in Article 4 hereof, for water from the Central Valley Project in the quantities specified in the schedule or any revision thereof submitted by the District in accordance with subdivision (b) of this article.

(b) The District shall submit in writing to the Contracting Officer on or before March 1 of each year a schedule, subject to the provisions of subdivisions (c) and (d) of this article and satisfactory in form and from an operational standpoint to the Contracting Officer, indicating the desired times and quantities for the delivery of all water pursuant to this contract during such year, and the United States shall within the provisions hereof, to the extent that water and facilities are available, furnish water in accordance with said schedule, or any revision thereof satisfactory to the Contracting Officer in form and from an operational standpoint submitted by the District within a reasonable time before the desired change of time or quantities for delivery as nearly as may be feasible, as conclusively determined by the Contracting Officer.

(c) Beginning on March 1, 1967, the minimum quantity of water which the District shall be obligated to accept and pay for each year shall not be less than the average annual quantity of water furnished to the District pursuant to this contract during the five (5) years immediately preceding. For the purpose of determining said average annual quantity the use for the month of February of the last year of the preceding five (5) years will be considered the same as the use during the month of February of the fourth year of the preceding five (5) years.

(d) The maximum quantity of water that the United States shall be obligated to furnish to the District in any one (1) year shall be forty thousand (40,000) acre-feet. This maximum quantity of water is based on studies which indicate that the District's use of water will be as follows:

| Period | Projected Average Annual Use |
|---|---|
| March 1, 1962, through February 28, 1967 | 3,500 acre-feet |
| March 1, 1967, through February 29, 1972 | 8,500 acre-feet |
| March 1, 1972, through February 28, 1977 | 14,500 acre-feet |
| March 1, 1977, through February 28, 1982 | 20,000 acre-feet |
| March 1, 1982, through February 28, 1987 | 26,000 acre-feet |
| March 1, 1987, through February 29, 1992 | 32,000 acre-feet. |

If the average annual quantity of water furnished to the District pursuant to this contract during any of the above periods is less than the respective projected average annual use as shown in this

subdivision, then the forty thousand (40,000) acre-feet and the projected average annual use for each of the remaining periods shall be reduced to the respective products obtained by multiplying such quantities by the percentage that the average annual quantity furnished during said period is of the projected average annual use indicated for said period. If during any subsequent periods the average annual quantity furnished to the District is less than the respective revised projected average annual use then further revisions shall be made in the manner set forth in this subdivision.

(e) Any water furnished to the District pursuant to this contract shall be paid for at the rates provided for under subdivision (a) of Article 4. The quantity of such water to be paid for as agricultural water in any year shall be equal to the ratio as determined, respectively, either pursuant to subdivision (f) or (g) of this article multiplied by the total quantity of water to be furnished in such year to the District pursuant to this contract. The quantity of water to be paid for by the District as municipal and industrial water shall be equal to the total quantity of water to be furnished the District pursuant to this contract less the quantity of water to be paid for as agricultural water.

(f) For each year of the period described in subdivision (a) of this article the ratio for determination of the quantity of water deemed to be used as agricultural water shall be obtained by dividing the product of four (4) acre-feet per acre and the number of acres of irrigated land in the District at the beginning of the period by the total quantity of water furnished to the District during the preceding year pursuant to this contract, contract No. DA-04-167-eng-610, and any other contract or contracts for water service between the District and the United States. Prior to the initial delivery date the District shall report to the Contracting Officer the number of acres of irrigated land in the District. Such reports and reports pursuant to subdivision (g) of this article may be checked for accuracy by the United States and any error adjusted. In determining, for the purpose of this subdivision and subdivision (g) of this article, the quantity of water furnished to the District in any year, the quantity of water used in the month of February of the particular year shall be deemed to have been the same as the quantity used during the month of February of the preceding year.

(g) For each year of each 5-year period or fraction thereof, beginning March 1, 1967, during the remainder of the term of this contract, the ratio for determination of the quantity of water deemed to be used as agricultural water shall be obtained by dividing the product of four (4) acre-feet per acre and the number of acres of irrigated land in the District during the last year of the preceding 5-year period by the total quantity

of water furnished to the District during the preceding year pursuant to this contract and contract No. DA-04-167-eng-610. The amount of irrigated land for each such year shall be reported by the District to the Contracting Officer not less than sixty (60) days prior to the end of each 5-year period.

(h) If, at any time or times, on the basis of studies conducted by the Contracting Officer and the District, jointly, it is determined that the water needs of the District for the remaining portion of the term of this contract are for amounts substantially different from those which the District is required to accept and pay for pursuant to this article, the parties may, by mutual agreement, amend this contract so as to decrease or to the extent that water is available, increase the amounts of water required thereafter to be furnished by the United States to the District and accepted and paid for by the District for the remainder of the term of this contract, or any portion of said contract.

(i) No sale or other disposal by the District for use outside the District of any water, or the right to the use thereof, pursuant to this contract, shall be made without the Contracting Officer's written consent thereto.

RATE AND METHOD OF PAYMENT FOR WATER

4. (a) The Contracting Officer will, on or before December 15 of each calendar year, by written notice, notify the District of the rates of payment to be made by the District for all water to be furnished to it pursuant to this contract during the ensuing year, but in no event shall the rates announced by the Contracting Officer be in excess of Two Dollars and Twenty-five Cents ($2.25) per acre-foot for agricultural water and Nine Dollars ($9) per acre-foot for domestic, municipal, and industrial water.

(b) The District shall make payments to the United States each year as hereinafter provided at rates fixed as provided in subdivision (a) of this article, for the amount of water which the District is required to accept and pay for during such year pursuant to the provisions of Article 3 hereof. Said payments shall be made for water requested for such year in the schedule submitted pursuant to subdivisions (a) and (b) of Article 3. The District shall pay one-half (½) of the amount payable for said water for the year on or before March 1 and shall pay the remainder of the amount payable for said water for the year on or before July 10, or such other later date of the respective year as may be specified by the Contracting Officer in a written notice to the District: Provided, That at any time during the year that the amount of water furnished to the District hereunder equals the amount for which

payment has been made, as herein provided, the District will pay in advance of any further delivery of water for the total amount of water to be furnished to it until the next payment is due.

(c) In the event the District fails or refuses to accept delivery of the quantities of water available for delivery and required to be accepted by it pursuant to this contract, or in the event the District in any year during the periods described in subdivision (c) of Article 3 hereof fails to submit a schedule for delivery as provided in subdivision (b) of Article 3, said failure or refusal shall not relieve the District of its obligation to pay for said water, and the District agrees to make payment therefor in the same manner as if said water had been delivered to and accepted by it.

POINT OF DELIVERY--MEASUREMENT AND RESPONSIBILITY FOR DISTRIBUTION OF WATER

5. (a) The water to be furnished to the District pursuant to this contract will be delivered to Hinkle Reservoir or such points as may be mutually agreed upon in writing by the Contracting Officer and the District.

(b) All water furnished pursuant to this contract shall be measured by the United States at each point of delivery established pursuant to subdivision (a) of this article with equipment installed, operated, and maintained by the United States:

Provided, That in the event delivery points are established pursuant to subdivision (a) of this article in addition to those turnouts now existing, all structures and equipment necessary for diverting water to be delivered at such additional delivery point or points and all equipment necessary for measuring water to be so delivered at such additional delivery point or points shall be installed by the United States at the expense of the District. The District will reimburse the United States for all such expenditures within ninety (90) days after the submission by the United States of a statement of said costs to the District. All determinations relative to the measurements of water shall be made by the Contracting Officer, and upon request of the District, the accuracy of such measurements will be investigated by the Contracting Officer and any errors appearing therein adjusted.

(c) The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water which may be furnished to the District hereunder outside the facilities then being operated and maintained by the United States, and the District shall hold the United States harmless on account of damage or claim of damage of any nature whatsoever for which there is legal responsibility, including property damage, personal injury, or death, arising out of or connected with the control, carriage, handling, use, disposal, or distribution of such water beyond the said points: Provided, however, That the United States reserves the right to all waste, seepage, and return-flow

water derived from water furnished to the District hereunder and which escapes or is discharged beyond the District's boundaries, and nothing herein shall be construed as an abandonment or a relinquishment by the United States of the right to use any such water, but this shall not be construed as claiming for the United States any right, as waste, seepage, or return flow, to water being used pursuant to this contract for surface irrigation or underground storage within the District's boundaries by the District or those claiming by, through, or under the District.

(d) The right to the beneficial use of water furnished to the District pursuant to the terms of Article 3 and other applicable provisions of this contract and any renewal thereof shall not be disturbed so long as the District shall fulfill all of its obligations under this contract and any renewal thereof.

UNITED STATES NOT LIABLE FOR WATER SHORTAGE

6. (a) There may occur at times a shortage during any year in the quantity of water available for furnishing to the District by the United States pursuant to this contract through and by means of the Project and in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or other

unavoidable causes. In any year in which there may occur a shortage, from any cause, the United States reserves the right to apportion the available water supply among the District and others, under existing and future contracts, entitled to receive water from the same Project water supply. In the event that in any year there is delivered to the District, by reason of any such shortage or apportionment, or any discontinuance or reduction of service as set forth in subdivision (b) of this article, less than the quantity of water which the District otherwise would be entitled to receive hereunder, there shall be made an adjustment on account of the amounts paid by the District in the manner provided in Article 7. To the extent of any such deficiency arising from errors in operation, drought, or other unavoidable causes or any discontinuance or reduction of service as set forth in subdivision (b) of this article, such adjustment shall constitute the sole remedy of the District or anyone having or claiming to have by, through, or under the District, the right to the use of any of the water supply provided for herein.

(b) The United States may temporarily discontinue or reduce the amount of water to be furnished to the District as herein provided for the purposes of such investigation, inspection, maintenance, repair, or replacement as may be necessary of any of the Project facilities necessary for the

furnishing of water to the District or any part thereof, but so far as feasible the United States will give the District due notice in advance of such temporary discontinuance or reduction, except in cases of emergency, in which case no notice need be given. In the event of any such discontinuance or reduction, the United States will, upon the resumption of service, attempt to approximate delivery of the quantity of water which would have been furnished to the District in the absence of such contingency.

(c) The United States assumes no responsibility with respect to the quality of the water to be furnished pursuant to this contract and does not warrant the quality of any such water.

ADJUSTMENTS

7. The amount of any overpayment by the District by reason of the quantity of water actually available for the District during any year, as conclusively determined by the Contracting Officer, having been less than the quantity of such water which the District otherwise under the provisions of this contract would have been required to receive and pay for shall be applied first to any accrued indebtedness arising out of this contract then due and owing to the United States by the District and any amount of such overpayment then remaining shall, at the option of the

District, be refunded to the District or credited upon amounts to become due to the United States from the District under the provisions of this contract in the ensuing year.

AGREED CHARGES A GENERAL OBLIGATION OF THE DISTRICT

8. The District as a whole is obligated to pay to the United States the charges becoming due as provided in this contract notwithstanding the individual default in the payment to the District by individual water users of assessments, tolls, or other charges levied by the District.

ALL BENEFITS CONDITIONED UPON PAYMENT

9. Should any assessment or assessments required by the terms of this contract and levied by the District against any tract of land or water user in the District and necessary to meet the obligations of the District under this contract be judicially determined to be irregular or void, or should the District or its officers be enjoined or restrained from making or collecting any assessments upon such land or from such water user as provided for herein, then such tract shall have no right to any water furnished to the District pursuant to this contract, and no water made available by the United States pursuant hereto shall be furnished for the benefit of any such lands or water users, except upon the payment by the landowner of his assessment or a toll charge for such water, notwithstanding the existence of any contract

between the District and the owner or owners of such tract. Contracts, if any, between the District and the water users involving water furnished pursuant to this contract shall provide that such use shall be subject to the terms of this contract. It is further agreed that the payment of charges, at the rates and upon the terms and conditions provided for herein is a prerequisite to the right to water furnished to the District pursuant to this contract; and no irregularity in levying taxes or assessments by the District nor lack of authority in the District, whether affecting the validity of District taxes or assessments or not, shall be held to authorize or permit any water user of the District to demand water made available pursuant to this contract, unless charges at the rates and upon the terms and conditions provided for herein have been paid by such water user.

LEVY OF TAXES AND ASSESSMENTS--FIXING OF RATES AND TOLLS

10. The District will cause to be levied and collected all necessary taxes and assessments and will use all of the authority and resources of the District to meet its obligations hereunder, to make in full all payments to be made pursuant to this contract on or before the date such payments become due and to meet its other obligations under this contract. The District may, either or both, require the payment of toll charges or levy assessments for such water. All assessments levied by the District to meet the

obligations accruing under this contract shall, unless otherwise determined by the Board of Directors of the District, be upon an *ad valorem* basis.

REFUSAL OF WATER IN CASE OF DEFAULT

11. No water shall be furnished to the District or by the District to or for the use of any lands or parties therein during any period in which the District may be in arrears in the advance payment of charges accruing under this contract. No water shall be furnished to or by the District pursuant to this contract for lands or parties which are in arrears in the payment to the District of any assessments, rates, tolls, or rental charges of the District levied or established by the District and necessary for the purpose of raising revenues to meet the payment by the District to the United States of the District's obligation under this contract. The provisions of this article are not exclusive and action taken pursuant hereto shall not prejudice or preclude the United States from exercising any other remedy to enforce collection of any amounts due hereunder.

PENALTY UPON DELINQUENCY IN PAYMENT

12. Upon every installment of money required to be paid by the District to the United States pursuant to this contract which shall remain unpaid after the same shall have become due and payable, there shall be imposed a penalty of one-half ($\frac{1}{2}$) of one (1) percent

per month of the amount of such delinquent charge from and after the date when the same becomes due until paid, and the District hereby agrees to pay said penalty: Provided, That no penalty shall be charged to or paid by the District unless such delinquency continues for more than thirty (30) days.

DISTRICT TO KEEP BOOKS AND RECORDS AND REPORT CROP AND OTHER DATA

13. The District shall establish and maintain account and other books and records sufficient to enable it to furnish, insofar as the District is permitted to do so by the laws of the State of California, to the Bureau of Reclamation reports and statements to such extent and in such manner and form as reasonably may be prescribed by the United States, as to information pertaining to (1) accounts and financial transactions of the District, insofar as such information pertains to this contract and operations thereunder, and (2) crops raised and acreage of each, and agricultural and livestock products produced on the lands within the District, a report thereon to be furnished to the Contracting Officer annually on or before December 31.

INSPECTION OF BOOKS AND RECORDS

14. Subject to applicable Federal laws and regulations, the proper officers or agents of the District shall have full and free access at all reasonable times to the Project account books and official

records of the Bureau of Reclamation, insofar as the same pertain to the matters and things provided for in this contract, with the right at any time during office hours to make copies thereof, and the proper representatives of the United States shall have similar rights with respect to the account books and records of the District.

CHANGES IN ORGANIZATION OF DISTRICT

15. (a) While this contract is in effect no change will be made in the District either by inclusion of more than five hundred (500) acres or exclusion of more than five hundred (500) acres of lands, by partial or total consolidation or merger with another district, by proceedings to dissolve, or otherwise, except upon the Contracting Officer's written assent thereto: Provided, That in the event of inclusion or exclusion of lands of five hundred (500) acres or less as provided for herein, the District shall promptly notify the United States of such changes in the organization of the District.

(b) In the event lands are annexed to or excluded from the District as provided herein, the parties hereto may by supplemental agreement increase or decrease the quantity of water which is to be furnished by the United States to the District and which the District is required to receive and pay for pursuant to this contract.

LAND NOT TO RECEIVE WATER FURNISHED TO DISTRICT BY UNITED STATES UNTIL OWNERS THEREOF EXECUTE CERTAIN CONTRACTS

16. (a) No water made available pursuant to this contract shall be furnished to any excess lands as defined in Article 18 hereof unless the owners thereof shall have executed valid recordable contracts in form prescribed by the United States, agreeing to the provisions of this article and Articles 17 and 18 of this contract; agreeing to the appraisal provided for in Article 17 hereof and that such appraisal shall be made on the basis of the actual bona fide value of such lands at the date of the appraisal without reference to the construction of the Project, all as hereinafter provided; and agreeing to the sale of their excess lands under terms and conditions satisfactory to the Secretary and at prices not to exceed those fixed as hereinafter provided. No sale of any excess lands shall carry the right to receive water made available pursuant to this contract unless and until the purchase price involved in such sale is approved by the Contracting Officer, and upon proof of fraudulent representation as to the true consideration involved in such sale the United States may instruct the District by written notice to refuse to furnish any water subject to this contract to the land involved in such fraudulent sales and the District thereafter shall not furnish said water to such lands.

(b) If Project water furnished to the District pursuant to this contract reaches the underground strata of excess land owned by a large landowner, as defined in subdivision (a) of Article 18 hereof, who has not executed a recordable contract and the large landowner pumps such Project water from the underground, the District will not be deemed to have furnished such water to said lands within the meaning of this contract if such water reached the underground strata of the aforesaid excess land as an unavoidable result of the furnishing of Project water by the District to nonexcess lands or to excess lands with respect to which a recordable contract has been executed.

VALUATION AND SALE OF EXCESS LANDS

17. (a) The value of the excess irrigable lands within the District, held in private ownership of large landowners as defined in the next succeeding article hereof, for the purposes of this contract, shall be appraised in a manner to be prescribed by the Secretary. At the option of a large landowner, however, the value of such land may be appraised, subject to the approval thereof by the Secretary, by three appraisers. One of said appraisers shall be designated by the Secretary and one shall be designated by the District and the two appraisers so appointed shall name the third. If the appraisers so designated by the Secretary and the District are unable to agree upon the appointment of the third, the presiding

justice of the Third District Court of Appeal of the State of California shall be requested to designate the third appraiser.

(b) The following principles shall govern the appraisal:

(i) No value shall be given such lands on account of the existing or prospective possibility of securing water from the Project;

(ii) The value of improvements on the land at the time of said appraisal shall be included therein, but shall also be set forth separately in such appraisal.

(c) The excess land of any large landowner shall be reappraised at the instance of the United States or at the request of said landowner. The cost of the first two appraisals of each tract of excess land shall be paid by the United States. The cost of each appraisal thereafter shall be paid by the party requesting such appraisal.

(d) Any improvements made or placed on the appraised land after the appraisal hereinabove provided for prior to sale of the land by a large landowner may be appraised in like manner.

(e) Excess irrigable land sold by large landowners within the District shall not carry the right to receive water made available pursuant to this contract for such lands and the District agrees to refuse to furnish such water to lands so sold

until in addition to compliance with the other provisions hereof, a verified statement showing the sale price upon any such sale shall have been filed with the District and said sale price is not in excess of the appraised value fixed as provided herein.

(f) The District agrees to take all reasonable steps requested by the Contracting Officer to ascertain the occurrence and conditions of all sales of irrigable land of large landowners in the District and to inform the United States concerning the same.

(g) A true copy of this contract and of each recordable contract executed pursuant to this article and Articles 16 and 18 hereof, and of each appraisal made pursuant thereto shall be furnished to the District by the United States and shall be maintained on file in the office of the District and like copies in such office of the Bureau of Reclamation as may be designated by the Contracting Officer and shall be made available for examination during the usual office hours by all persons who may be interested therein.

EXCESS LANDS

18. (a) As used herein the term "excess land" means that part of the irrigable land within the District in excess of one hundred and sixty (160) acres held in the beneficial ownership of any single person, or in excess of three hundred and twenty (320) acres held in the beneficial ownership of husband and wife jointly,

as tenants in common or by the entirety, or as community property; [~~the term "excess land" shall not include land owned by the District~~] the term "large landowner" means an owner of excess lands and the term "nonexcess land" means all irrigable land within the District which is not excess land as defined herein. The provisions of this contract governing the beneficial ownership of land and the dispostion of excess land may be further defined and clarified consistently with this contract in any recordable contract executed pursuant hereto.

(b) Each large landowner as a further condition precedent to the right to receive water made available pursuant to this contract for any of his excess land shall:

(i) Before any water is furnished by the District to his excess land, execute a valid recordable contract in form prescribed by the United States agreeing to the provisions herein contained in this article and Articles 16 and 17 and agreeing to dispose of his excess land in accordance therewith to persons who can take title thereto as nonexcess land as herein provided and at a price not to exceed the approved, appraised value of such excess land and within a period of ten (10) years after the date of the execution of said recordable contract and agreeing further that if said land is not so disposed of within said period of ten (10) years the Secretary shall have the power to dispose of said land at the

appraised value thereof fixed as provided herein, or such lower price as may be approved by the owner of such land, subject to the same conditions on behalf of such large landowner; and the District agrees that it will refuse to furnish said water to any large landowner other than for his nonexcess land until such owner meets the conditions precedent herein stated; and

(ii) Within thirty (30) days after the date of notice from the United States requesting such large landowner to designate his irrigable lands under the Project which he desires to designate as nonexcess land, file in the office of the District, in duplicate, one copy thereof to be furnished by the District to the Bureau of Reclamation, his written designation and description of lands so selected to be nonexcess land and upon failure to do so the District shall make such designation and mail a notice thereof to such large landowner, and in the event the District fails to act within such period of time as the Contracting Officer considers reasonable, such designation will be made by the Contracting Officer, who will mail a notice thereof to the District and the large landowner. The large landowner shall become bound by any such action on the part of the District or the Contracting Officer

and the District will furnish said water only to the land so designated to be nonexcess land. A large landowner may, with the consent of the Contracting Officer, designate land other than that previously designated as nonexcess land: Provided, That an equal acreage of the land previously designated as nonexcess shall, upon such new designation, become excess land thereafter subject to the provisions of this article and Articles 16 and 17 of this contract, and shall be described in an amendment of such recordable contract as may have been executed by the large landowner, in the same manner as if such land had been excess land at the time of the original designation.

AMENDMENT OF FEDERAL RECLAMATION LAWS

19. In the event that the Congress of the United States repeals the so-called excess-land provisions of the Federal reclamation laws, Articles 16, 17, and 18 of this contract will no longer be of any force or effect, and in the event that the Congress amends the excess-land provisions or other provisions of the Federal reclamation laws, the United States agrees, at the option of the District, to negotiate amendments of appropriate articles of this contract, all consistently with the provisions of such repeal or amendment.

CONTINGENT UPON APPROPRIATIONS OR ALLOTMENTS OF FUNDS

20. The expenditure of any money or the performance of any work by the United States herein provided for which may require appropriations of money by the Congress or the allotment of funds shall be contingent upon such appropriations or allotment being made. The failure of the Congress so to appropriate funds or the absence of an allotment of funds shall not relieve the District from any obligations then accrued under this contract and no liability shall accrue to the United States in case such funds are not appropriated or allotted.

OFFICIALS NOT TO BENEFIT

21. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this contract or to any benefit that may arise herefrom, but this restriction shall not be construed to extend to this contract if made with a corporation or company for its general benefit.

NOTICES

22. Any notice or announcement which the provisions hereof contemplate shall be given to one of the parties hereto by the other shall be deemed to have been given if deposited in the United States Post Office, on the part of the United States, in a franked or postage-prepaid envelope addressed to the District at its office in the city of Orangevale, California,

or such other address as from time to time may be designated by the District, and on the part of the District in a postage-prepaid envelope addressed to the Bureau of Reclamation, United States Department of the Interior, Sacramento, California, or such other address as from time to time may be designated by the Contracting Officer in a written notice to the District: Provided, however, That this article shall not preclude the effective service of any such notice or announcement by other means.

EXISTING WATER RIGHTS

23. The provisions of this contract shall not be applicable to or affect water or water rights now owned or hereafter acquired, other than from the United States, by the District or by any landowner therein, nor shall this contract be construed as limiting or curtailing any rights which the District or any landowner therein acquires or has available to it or him under the Federal reclamation laws.

ASSIGNMENT PROHIBITED: SUCCESSORS AND ASSIGNS OBLIGATED: WAIVERS: OPINIONS AND DETERMINATIONS

24. (a) The provisions of this contract shall apply to and bind the successors and assigns of the respective parties, but no assignment or transfer of this contract or any part thereof or interest therein shall be valid until and unless approved by the United States. Any waiver at any time by either party to this contract of its rights with respect to

a default, or any other matter arising in connection with this contract, shall not be deemed to be a waiver with respect to any subsequent default or matter. All rights of action for breach of this contract are reserved to the United States, as provided in Section 3737 of the Revised Statutes of the United States, as amended (41 U.S.C. 15).

(b) Where the terms of this contract provide for matters being done to the satisfaction of a representative of either party hereto, or for action to be based upon the opinion or conclusive determination of such a representative of either party hereto, such terms are not intended to be and shall never be construed as permitting such satisfaction, opinion, or determination of such a representative of either party to this contract to be arbitrary, capricious, or unreasonable; and the District, notwithstanding any other provisions of this contract, expressly reserves the right to relief from and appropriate adjustment for any such arbitrary, capricious, or unreasonable satisfaction, opinion, or determination.

<u>ASSURANCE RELATING TO VALIDITY OF CONTRACT</u>

25. (a) Promptly after the execution and delivery of this contract the District shall file and prosecute to a final decree, including any appeal therefrom to the highest court of the State of California, in a court of competent jurisdiction a special

proceeding for the judicial examination, approval, and confirmation of the proceedings had for the organization of the District and the proceedings of the District Board of Directors and of the District leading up to and including the making of this contract and the validity of the provisions thereof; and this contract shall not be binding on the United States until said District organization, proceedings, and contract shall have been so confirmed by a court of competent jurisdiction or pending appellate action in any court if ground for appeal be laid: Provided, That nothing herein contained shall require the District to assume the responsibility of prosecuting judicial review beyond the highest court of the State of California.

(b) This contract shall be indivisible for purposes of validation and shall not be binding on the United States or the District unless validated in each and all of its terms and conditions as executed by the parties.

NONDISCRIMINATION

26. In connection with the performance of work under this contract, the District agrees as follows:

(a) The District will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The District will take affirmative action

to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The District agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this nondiscrimination clause.

(b) The District will, in all solicitations or advertisements for employees placed by or on behalf of the District, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(c) The District will send to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Contracting Officer, advising the said labor union or workers' representative of the District's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(d) The District will comply with all provisions of Executive Order No. 10925 of March 6, 1961, and of the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(e) The District will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, and by the rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to its books, records, and accounts by the Contracting Officer and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(f) In the event of the District's noncompliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled in whole or in part and the District may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, and such other sanctions may be imposed and remedies invoked as provided in the said Executive Order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(g) The District will include the provisions of the foregoing subdivisions (a) through (f) of this article in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, so that such provisions will be binding upon each subcontractor or vendor. The District will take such action with respect to any subcontract or purchase order as the Contracting Officer may direct as a means of enforcing such provisions, including sanctions for noncompliance: Provided, however, That in the event the District becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the Contracting Officer, the District may request the United States to enter into such litigation to protect the interests of the United States.

IN WITNESS WHEREOF, the parties hereto have hereunto affixed their names the day and year hereinabove written.

Approved as to Legal
~~Form and~~ Sufficiency
Frank B. Horne
Attorney
Department of Interior

THE UNITED STATES OF AMERICA

By [signature]
Regional Director, Region 2
Bureau of Reclamation

SAN JUAN SUBURBAN WATER DISTRICT

By [signature]
President

(SEAL)

ATTEST:

Verne Schrader
Secretary

# RESOLUTION NO. 121

BE IT RESOLVED BY THE BOARD OF DIRECTORS OF SAN JUAN SUBURBAN WATER DISTRICT, a Community Services District organized and existing under the Community Services District Law of the State of California, AS FOLLOWS;

THAT the contract No. 14-06-200-152-A dated June 19, 1962, between San Juan Suburban Water District and the United States of America, a copy of which is attached hereto, be and the same is hereby approved and ratified by the Directors of the San Juan Suburban Water District.

THAT the President and Secretary be and they are hereby authorized to officially and formally execute said contract on behalf of San Juan Suburban Water District.

PASSED AND ADOPTED this 27th day of June, 1962, by the following vote:

| | | |
|---|---|---|
| AYES: | Directors | Greenhalgh, Jardine, Peterson, Pettite, Tomich |
| NOES: | Directors | None |
| ABSENT: | Directors | None |

[signature]
President of the Board of Directors of
San Juan Suburban Water District.

ATTEST:

[signature: Arne Schrader]
Secretary of the Board of Directors of
San Juan Suburban Water District

# SECRETARY'S CERTIFICATE

I, FERNE SCHRADER, Secretary of the Board of Directors of San Juan Suburban Water District, do hereby certify that the foregoing is a full, true and correct copy of a resolution duly adopted at a regular meeting of the Board of Director of said District duly and regularly held at the regular meeting place thereof on the 27th day of June, 1962, of which meeting all of the members of said Board had due notice and at which a majority thereof was present; that at said meeting said resolution was introduced by Director Peterson and was thereupon, upon motion of Director Peterson, seconded by Director Tomich, adopted by the following vote:

| | | |
|---|---|---|
| AYES: | Directors | Greenhalgh, Jardine, Peterson, Pettite, Tomich |
| NOES: | Directors | None |
| ABSENT: | Directors | None |

That I have carefully compared the same with the original minutes of said meeting on file and of record in my office and that said resolution is a full, true and correct copy of the original resolution adopted at said meeting and entered in said minutes. That said resolution has not been amended, modified or rescinded since that date of the adoption and the same is now in full force and effect.

WITNESS my hand and the Seal of the San Juan Suburban Water District this 28day of June, 1962.

Ferne Schrader

Secretary of the Board of Directors
of San Juan Suburban Water District