# EXHIBIT D
(Part 1)

Rev. R.O. Draft 03/13-2001
R.O. Draft 04/16-2001
CCAO Draft 07/25-2001
CCAO Draft 07/27-2001
Contract No.
14-06-200-5082A

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

# AMENDATORY CONTRACT BETWEEN THE UNITED STATES AND PLACER COUNTY WATER AGENCY PROVIDING FOR PROJECT WATER SERVICE FROM THE AMERICAN RIVER DIVISION

## Table of Contents


| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1-5 |
| 1 | Definitions | 5-9 |
| 2 | Term of Contract | 9-12 |
| 3 | Water to be Made Available and Delivered to the Contractor | 12-16 |
| 4 | Time for Delivery of Water | 16-17 |
| 5 | Point of Diversion and Responsibility for Distribution of Water | 17-19 |
| 6 | Measurement of Water Within the Service Area | 19-21 |
| 7 | Rates and Method of Payment for Water | 21-26 |
| 8 | Non-Interest Bearing Operation and Maintenance Deficits | 26 |
| 9 | Sales, Transfers, or Exchanges of Water | 27-28 |
| 10 | Application of Payments and Adjustments | 28-29 |
| 11 | Temporary Reductions--Return Flows | 29-30 |
| 12 | Constraints on the Availability of Water | 30-31 |
| 13 | Unavoidable Groundwater Percolation | 31 |
| 14 | Rules and Regulations | 31 |
| 15 | Water and Air Pollution Control | 31 |
| 16 | Quality of Water | 31-32 |
| 17 | Water Acquired by the Contractor Other Than From the United States | 32-35 |
| 18 | Opinions and Determinations | 35 |
| 19 | Coordination and Cooperation | 36-37 |

| Article No. | Title | Page No. |
|---|---|---|
| 20 | Charges for Delinquent Payments | 37-38 |
| 21 | Equal Opportunity | 38-39 |
| 22 | General Obligation--Benefits Conditioned Upon Payment | 39 |
| 23 | Compliance With Civil Rights Laws and Regulations | 39-40 |
| 24 | Privacy Act Compliance | 40-41 |
| 25 | Contractor to Pay Certain Miscellaneous Costs | 41 |
| 26 | Water Conservation | 41-42 |
| 27 | Existing or Acquired Water or Water Rights | 43 |
| 28 | Operation and Maintenance by Non-Federal Entity | 43 |
| 29 | Contingent on Appropriation or Allotment of Funds | 43 |
| 30 | Books, Records, and Reports | 43-44 |
| 31 | Assignment Limited--Successors and Assigns Obligated | 44 |
| 32 | Severability | 44-45 |
| 33 | Resolution of Disputes | 45 |
| 34 | Officials Not to Benefit | 45 |
| 35 | Changes in Contractor's Service Area | 46 |
| 36 | Federal Laws | 46 |
| 37 | Notices | 46-47 |
| 38 | Confirmation of Contract | 47 |
| | Signature Page | 47 |
| | Exhibit A | |
| | Exhibit B | |

Rev. R.O. Draft 03/13-2001
R.O. Draft 04/16-2001
CCAO Draft 07/25-2001
CCAO Draft 07/27-2001
Contract No.
14-06-200-5082A

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

# AMENDATORY CONTRACT BETWEEN THE UNITED STATES AND PLACER COUNTY WATER AGENCY PROVIDING FOR PROJECT WATER SERVICE FROM THE AMERICAN RIVER DIVISION

THIS CONTRACT, made this 26th day of February, 2002, in pursuance generally of the Act of June 17, 1902 (32 Stat. 388), and acts amendatory or supplementary thereto, including, but not limited to, the Acts of August 26, 1937 (50 Stat. 844), as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented, July 2, 1956 (70 Stat. 483), June 21, 1963 (77 Stat. 68), October 12, 1982 (96 Stat. 1262), October 27, 1986 (100 Stat. 3050), as amended, and Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706), all collectively hereinafter referred to as Federal Reclamation law, between THE UNITED STATES OF AMERICA, hereinafter referred to as the United States, and PLACER COUNTY WATER AGENCY, hereinafter referred to as the Contractor, a public agency of the State of California, duly organized, existing, and acting pursuant to the laws thereof, with its principal place of business in California;

WITNESSETH, That:

## EXPLANATORY RECITALS

[1st] WHEREAS, the United States has constructed and is operating the Central Valley Project, California, for diversion, storage, carriage, distribution and beneficial use, for flood control,

irrigation, municipal, domestic, industrial, fish and wildlife mitigation, protection and restoration, generation and distribution of electric energy, salinity control, navigation and other beneficial uses, of waters of the Sacramento River, the American River, the Trinity River, and the San Joaquin River and their tributaries; and

[2nd] WHEREAS, the United States constructed Folsom Dam and Reservoir, hereinafter collectively referred to as the American River Division facilities, which will be used in part for the furnishing of water to the Contractor pursuant to the terms of this Contract; and

[3rd] WHEREAS, the rights to Project Water were acquired by the United States pursuant to California law for operation of the Project; and

[3.1] WHEREAS, the Auburn Dam and Reservoir proposed to be constructed by the United States as a Unit of the Central Valley Project has to date, not been constructed; and

[4th] WHEREAS, the Contractor and the United States entered into Contract No. 14-06-200-5082A dated September 18, 1970, as amended, hereinafter referred to as the Existing Contract, which established terms for the delivery to the Contractor of Central Valley Project Water from the American River Division from September 18, 1970, through December 31, 2011; and

[4.1] WHEREAS, Contract No. 14-06-200-5082A, as amended, provides the Contractor an entitlement of up to 117,000 acre-feet annually of Central Valley Project Water delivered at Auburn Reservoir or at some other mutually agreeable location; and

[4.2] WHEREAS, Contract No. 14-06-200-5082A, as amended, also recognizes that the Contractor acquired the right to divert, store, and distribute water from the American River pursuant to permits issued by the California State Water Rights Board which is now called the State Water Resources Control Board (SWRCB); and

[5th] Omitted; and

[6th] Omitted; and

[6.1] Omitted; and

[7th] WHEREAS, the United States has completed the Programmatic Environmental Impact Statement (PEIS) required under the CVPIA, and all other appropriate environmental review necessary to provide for amendment of the Existing Contract; and

[8th] WHEREAS, the Contractor has requested the amendment of the Existing Contract, pursuant to the terms of the Existing Contract, Federal Reclamation law, and the laws of the State of California, for water service from the Central Valley Project; and

[9th] WHEREAS, the United States has determined that the Contractor has fulfilled all of its obligations under the Existing Contract; and

[10th] WHEREAS, the Contracting Officer has determined that the Contractor has the capability to fully utilize for reasonable and beneficial use, or shown projected future reasonable and beneficial use for, the quantity of Project Water to be made available to it pursuant to this Contract; and

[11th] WHEREAS, water obtained from the Central Valley Project has been relied upon by urban areas within California for more than fifty (50) years, and is considered by the Contractor as an essential portion of its water supply; and

[12th] WHEREAS, the economies of regions within the Central Valley Project, including the Contractor's, depend upon the continued availability of water, including water service from the Central Valley Project; and

[13th] WHEREAS, the Secretary intends through coordination, cooperation, and partnerships to pursue measures to improve water supply, water quality, and reliability of the Project for all Project purposes; and

[14th] WHEREAS, the mutual goals of the United States and the Contractor include: to provide for reliable Central Valley Project Water supplies; to control costs of those supplies; to achieve repayment of the Central Valley Project as required by law; to guard reasonably against Central Valley Project Water shortages; to achieve a reasonable balance among competing demands for use of Central Valley Project Water; and to comply with all applicable environmental statutes, all consistent with the legal obligations of the United States relative to the Central Valley Project; and

[15th] WHEREAS, the parties intend by this Contract to develop a more cooperative relationship in order to achieve their mutual goals; and

[15.1] WHEREAS, the Contractor is a signatory to the Water Forum Agreement, which has the co-equal objectives to (1) provide a reliable and safe water supply for the Sacramento region's economic health and planned development through the year 2030, and (2) preserve the fishery, wildlife, recreational, and aesthetic values of the lower American River; and

[15.2] WHEREAS, the Contracting Officer is in support of the co-equal objectives of the Water Forum Agreement and intends to work cooperatively with the Contractor to investigate actions that they could take to implement the objectives of the Water Forum Agreement, which, if agreed to, would be the subject of a separate agreement between them; and

[16th] WHEREAS, the United States and the Contractor are willing to enter into this Amendatory Contract pursuant to Federal Reclamation law on the terms and conditions set forth below;

[17th] WHEREAS, the contract between the United States and the Contractor dated February 20, 1963, relating to the operation of the Contractor's Middle Fork American River Project Reservoirs is still in full force and effect and is not affected by the terms and conditions of this Contract.

NOW, THEREFORE, in consideration of the mutual and dependent covenants herein contained, it is hereby mutually agreed by the parties hereto as follows:

## DEFINITIONS

1. When used herein unless otherwise distinctly expressed, or manifestly incompatible with the intent of the parties as expressed in this Contract, the term:

(a) "Calendar Year" shall mean the period January 1 through December 31, both dates inclusive;

(b) "Charges" shall mean the payments required by Federal Reclamation law in addition to the Rates and Tiered Pricing Components specified in this Contract as determined annually by the Contracting Officer pursuant to this Contract;

(c) "Condition of Shortage" shall mean a condition respecting the Project during any Year such that the Contracting Officer is unable to deliver sufficient water to meet the Contract Total;

(d) "Contracting Officer" shall mean the Secretary of the Interior's duly authorized representative acting pursuant to this Contract or applicable Reclamation law or regulation;

(e) "Contract Total" shall mean the maximum amount of water to which the Contractor is entitled under subdivision (a) of Article 3 of this Contract;

(f) "Contractor's Service Area" shall mean the area to which the Contractor is permitted to provide Project Water under this Contract as described in Exhibit "A" attached hereto, which may be modified from time to time in accordance with Article 35 of this Contract without amendment of this Contract;

(g) "CVPIA" shall mean the Central Valley Project Improvement Act, Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706);

(g.1) "Diversion Water" shall mean American River water to which the Contractor has acquired rights thereto under Permit Nos. 13855, 13856, 13857, and 13858 issued by the California State Water Rights Board, now referred to as the State Water Resources Control Board;

(h) "Eligible Lands" shall mean all lands to which Irrigation Water may be delivered in accordance with Section 204 of the Reclamation Reform Act of October 12, 1982 (96 Stat. 1263), as amended, hereinafter referred to as RRA;

(i) "Excess Lands" shall mean all lands in excess of the limitations contained in Section 204 of the RRA, other than those lands exempt from acreage limitation under Federal Reclamation law;

(j) "Full Cost Rate" shall mean that water rate described in Sections 205(a)(3) or 202(3) of the RRA, whichever is applicable;

(k) "Ineligible Lands" shall mean all lands to which Irrigation Water may not be delivered in accordance with Section 204 of the RRA;

(l) "Irrigation Full Cost Water Rate" shall have the same meaning as "full cost" as that term is used in paragraph (3) of Section 202 of the RRA;

(m) "Irrigation Water" shall mean water made available from the Project that is used primarily in the production of agricultural crops or livestock, including domestic use incidental thereto, and watering of livestock;

(n) "Landholder" shall mean a party that directly or indirectly owns or leases nonexempt land, as provided in 43 CFR 426.2;

(o) "Municipal and Industrial (M&I) Water" shall mean Project Water, other than Irrigation Water, made available to the Contractor. M&I Water shall include water used for human use and purposes such as the watering of landscaping or pasture for animals (e.g., horses) which are kept for personal enjoyment or water delivered to land holdings operated in units of less than five (5) acres unless the Contractor establishes to the satisfaction of the Contracting Officer that the use of water delivered to any such landholding is a use described in subdivision (m) of this Article;

(p) "M&I Full Cost Water Rate" shall mean the annual rate, which, as determined by the Contracting Officer, shall amortize the expenditures for construction allocable to Project M&I facilities in service, including, O&M deficits funded, less payments, over such periods as may be required under Federal Reclamation law with interest accruing from the dates such costs were first incurred plus the applicable rate for the O&M of such Project facilities. Interest rates used in the calculation of the M&I Full Cost Rate shall comply with the Interest Rate methodology contained in Section 202 (3) (B) and (C) of the RRA, as amended. O&M charges required under Federal Reclamation law shall be collected in addition to the M&I Full Cost Water Rate;

(q) "Operation and Maintenance" or "O&M" shall mean normal and reasonable care, control, operation, repair, replacement (other than Capital replacement), and maintenance of Project facilities;

(r) Omitted;

(s) "Project" shall mean the Central Valley Project owned by the United States and managed by the Department of the Interior, Bureau of Reclamation;

(t) "Project Contractors" shall mean all parties who have water service contracts for Project Water from the Project with the United States pursuant to Federal Reclamation law;

(u) "Project Water" shall mean all water that is developed, diverted, stored, or delivered by the Secretary in accordance with the statutes authorizing the Project and in accordance with the terms and conditions of water rights acquired pursuant to California law;

(v) "Rates" shall mean the payments determined annually by the Contracting Officer in accordance with the then current applicable water ratesetting policies for the Project, as described in subdivision (a) of Article 7 of this Contract;

(w) "Recent Historic Average" shall mean the most recent five (5)-year average of the final forecast of Water Made Available to the Contractor pursuant to this Contract or its preceding contract(s);

(x) "Secretary" shall mean the Secretary of the Interior, a duly appointed successor, or an authorized representative acting pursuant to any authority of the Secretary and through any agency of the Department of the Interior;

(y) "Tiered Pricing Component" shall be the incremental amount to be paid for each acre-foot of Water Delivered as described in subdivision (j) of Article 7 of this Contract;

(z) "Water Delivered" or "Delivered Water" shall mean Project Water diverted for use by the Contractor at the point(s) of delivery approved by the Contracting Officer;

(aa) "Water Made Available" shall mean the estimated amount of Project Water that can be delivered to the Contractor for the upcoming Year as declared by the Contracting Officer, pursuant to subdivision (a) of Article 4 of this Contract;

(bb) "Water Scheduled" shall mean Project Water made available to the Contractor for which times and quantities for delivery have been established by the Contractor and Contracting Officer, pursuant to subdivision (b) of Article 4 of this Contract; and

(cc) "Year" shall mean the period from and including March 1 of each Calendar Year through the last day of February of the following Calendar Year.

TERM OF CONTRACT

2. (a) This Contract shall be effective March 1, 2002, through December 31, 2011. In the event the Contractor wishes to renew the Contract beyond December 31, 2011, the Contractor shall submit a request for renewal in writing to the Contracting Officer no later than two (2) years prior to the date this Contract expires. The renewal of this Contract insofar as it pertains to the furnishing of Irrigation Water to the Contractor shall be governed by subdivision (b) of this Article, and the renewal of this Contract insofar as it pertains to the furnishing of M&I Water to the Contractor shall be governed by subdivision (c) of this Article.

(b) (1) Under terms and conditions of a renewal contract that are mutually agreeable to the parties hereto, and upon a determination by the Contracting Officer that at the time of contract renewal the conditions set forth in subdivision (b)(2) of this Article are met, and subject to Federal and State law, this Contract, insofar as it pertains to the furnishing of Irrigation Water to the Contractor, shall be renewed for a period of twenty-five (25) years.

(2) The conditions which must be met for this Contract to be renewed are: (i) the Contractor has prepared a water conservation plan that has been determined by the Contracting Officer in accordance with Article 26 of this Contract to meet the conservation and efficiency criteria for evaluating such plans established under Federal law; (ii) the Contractor is implementing an

effective water conservation and efficiency program based on the Contractor's water conservation plan as required by Article 26 of this Contract; (iii) the Contractor is operating and maintaining all water measuring devices and implementing all water measurement methods as approved by the Contracting Officer pursuant to Article 6 of this Contract; (iv) the Contractor has reasonably and beneficially used the Project Water supplies made available to it and, based on projected demands, is reasonably anticipated and expects fully to utilize for reasonable and beneficial use the quantity of Project Water to be made available to it pursuant to such renewal; (v) the Contractor is complying with all terms and conditions of this Contract; and (vi) the Contractor has the physical and legal ability to deliver Project Water.

(3) The terms and conditions of the renewal contract described in subdivision (b)(1) of this Article and any subsequent renewal contracts shall be developed consistent with the parties' respective legal rights and obligations, and in consideration of all relevant facts and circumstances, as those circumstances exist at the time of renewal, including, without limitation, the Contractor's need for continued delivery of Project Water; environmental conditions affected by implementation of the Contract to be renewed, and specifically changes in those conditions that occurred during the life of the Contract to be renewed; the Secretary's progress toward achieving the purposes of the CVPIA as set out in Section 3402 and in implementing the specific provisions of the CVPIA; and current and anticipated economic circumstances of the region served by the Contractor.

(c) This Contract, insofar as it pertains to the furnishing of M&I Water to the Contractor, shall be renewed for a period of twenty-five (25) years and thereafter shall be renewed for successive periods of up to forty years (40) each, which periods shall be consistent with the then-existing Reclamation-wide policy, under terms and conditions mutually agreeable to the parties and

consistent with Federal and State law. The present Reclamation-wide policy, dated March 20, 2000, provides that the term of such contracts shall be no more than twenty-five (25) years each, subject to a variance to allow a longer term in appropriate circumstances. The Contractor shall be afforded the opportunity to comment to the Contracting Officer on the proposed adoption and application of any revised Reclamation-wide policy applicable to the delivery of Project M&I Water that would limit the term of any subsequent renewal contract with the Contractor for the furnishing of M&I Water to less than twenty-five (25) years.

(d) The Contracting Officer anticipates that by December 31, 2024, all authorized Project construction expected to occur will have occurred, and on that basis the Contracting Officer agrees by that date to allocate all costs that are properly assignable to the Contractor, and agrees further that, at any time after such allocation is made, and subject to satisfaction of the conditions set out in this subdivision of this Article, this Contract shall, at the request of the Contractor, be converted to a contract under subsection (c)(1) of Section 9, of the Reclamation Project Act of 1939, subject to applicable Federal law and under stated terms and conditions mutually agreeable to the Contractor and the Contracting Officer. A condition for such conversion to occur shall be a determination by the Contracting Officer that, account being taken of the amount credited to return by the Contractor as provided for under Reclamation law, the remaining amount of construction costs assignable for ultimate return by the Contractor can probably be repaid to the United States within the term of a contract under said subsection 9(c)(1). If the remaining amount of costs that are properly assignable to the Contractor cannot be determined by December 31, 2024, the Contracting Officer shall notify the Contractor, and provide the reason(s) why such a determination could not be made. Further, the Contracting Officer shall make such a determination as soon thereafter as possible so as

to permit, upon request of the Contractor and satisfaction of the conditions set out above, conversion to a contract under said subsection 9(c)(1). In the event such determination of costs has not been made at a time which allows conversion of this Contract during the term of this Contract or the Contractor has not requested conversion of this Contract within such term, the parties shall incorporate in any subsequent renewal contract as described in subdivision (c) of this Article a provision that carries forth in substantially identical terms the provisions of this subdivision (d). In the event the Contracting Officer is able to make a determination of the remaining amount of costs that are properly assignable to the Contractor before December 31, 2024, the Contracting Officer shall do so at the earliest time the Contracting Officer has such ability.

WATER TO BE MADE AVAILABLE AND DELIVERED TO THE CONTRACTOR

3. (a) During each Year, consistent with all applicable State water rights, permits, and licenses, Federal law, and subject to the provisions set forth in Articles 11 and 12 of this Contract, the Contracting Officer shall make available for delivery to the Contractor 35,000 acre-feet of Irrigation Water and/or M&I Water. The quantity of Water Delivered to the Contractor in accordance with this subdivision shall be scheduled and paid for pursuant to the provisions of Articles 4 and 7 of this Contract.

(1) The Contracting Officer recognizes that the Contractor has a right to Diversion Water from the American River in the amount of 120,000 acre-feet in any Year said water is available. Said Diversion Water is in addition to the Project Water made available pursuant to this Contract. The quantities of Diversion Water to which the Contractor is entitled and which are not taken or otherwise disposed of by the Contractor during that Year shall become the property of the United States.

(2) The quantity of Diversion Water specified in subdivision (a)(1) of this Article is contingent upon the right of the Contractor to continue to take said quantity of water annually pursuant to California law. In the event that under such law the Contractor's right to take Diversion Water is less than the amount specified in subdivision (a)(1) above, the amount of Diversion Water which the Contracting Officer will recognize under this Amendatory Contract shall be reduced accordingly.

(b) Because the capacity of the Central Valley Project to deliver Project Water has been constrained in recent years and may be constrained in the future due to many factors including hydrologic conditions and implementation of Federal and State laws, the likelihood of the Contractor actually receiving the amount of Water set out in subdivision (a) of this Article in any given Year is uncertain. The Contracting Officer's most recent modeling referenced in the PEIS projected that the Contract Total set forth in this Contract will not be available to the Contractor in many years. During the most recent five (5) years, the Recent Historic Average of Water Made Available to the Contractor was 31,000 acre-feet. Nothing in subdivision (b) of this Article shall affect the rights and obligations of the parties under any provision of this Contract.

(c) The Contractor shall utilize the Project Water in accordance with all applicable legal requirements.

(d) The Contractor shall make reasonable and beneficial use of all Project Water or other water furnished pursuant to this Contract. Groundwater recharge programs, groundwater banking programs, surface water storage programs, and other similar programs utilizing Project Water or other water furnished pursuant to this Contract conducted within the Contractor's Service Area which are consistent with applicable State law and result in use consistent with Reclamation law

will be allowed; Provided, That any direct recharge program(s) is (are) described in the Contractor's Water Conservation Plan submitted pursuant to Article 26 of this Contract; groundwater, Provided, further, That such Water Conservation Plan demonstrates sufficient lawful uses exist in the Contractor's Service Area so that using a long-term average, the quantity of Delivered Water is demonstrated to be reasonable for such uses and in compliance with Reclamation Law. Groundwater recharge programs, groundwater banking programs, surface water storage programs, and other similar programs utilizing Project Water or other water furnished pursuant to this Contract conducted outside the Contractor's Service Area may be permitted upon written approval of the Contracting Officer, which approval will be based upon environmental documentation, Project Water rights, and Project operational concerns. The Contracting Officer will address such concerns in regulations, policies, or guidelines.

(e) The Contractor shall comply with requirements applicable to the Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution of this Contract undertaken pursuant to Section 7 of the Endangered Species Act of 1973, as amended, that are within the Contractor's legal authority to implement. The Contractor shall comply with the limitations or requirements imposed by environmental documentation applicable to the Contractor and within its legal authority to implement. Nothing herein shall be construed to prevent the Contractor from challenging or seeking judicial relief in a court of competent jurisdiction with respect to any biological opinion or other environmental documentation referred to in this Article.

(f) Following the declaration of Water Made Available under Article 4 of this Contract, the Contracting Officer will make a determination whether Project Water, or other water available to the Project, can be made available to the Contractor in addition to the Contract Total

under Article 3 of this Contract during the Year without adversely impacting other Project Contractors. At the request of the Contractor, the Contracting Officer will consult with the Contractor prior to making such a determination. If the Contracting Officer determines that Project Water, or other water available to the Project, can be made available to the Contractor, the Contracting Officer will announce the availability of such water and shall so notify the Contractor as soon as practical. The Contracting Officer will thereafter meet with the Contractor and other Project Contractors capable of taking such water to determine the most equitable and efficient allocation of such water. If the Contractor requests the delivery of any quantity of such water, the Contracting Officer shall make such water available to the Contractor in accordance with applicable statutes, regulations, guidelines, and policies.

(g) The Contractor may request permission to reschedule for use during the subsequent Year some or all of the Water Made Available to the Contractor during the current Year referred to as "carryover." The Contractor may request permission to use during the current Year a quantity of Project Water which may be made available by the United States to the Contractor during the subsequent Year referred to as "preuse." The Contracting Officer's written approval may permit such uses in accordance with applicable statutes, regulations, guidelines, and policies.

(h) The Contractor's right pursuant to Federal Reclamation law and applicable State law to the reasonable and beneficial use of Water Delivered pursuant to this Contract during the term thereof and any subsequent renewal contracts, as described in Article 2 of this Contract, during the terms thereof shall not be disturbed so long as the Contractor shall fulfill all of its obligations under this Contract and any renewals thereof. Nothing in the preceding sentence shall affect the

Contracting Officer's ability to impose shortages under Article 11 or subdivision (b) of Article 12 of this Contract or applicable provisions of any subsequent renewal contracts.

(i) Project Water furnished to the Contractor pursuant to this Contract may be delivered for purposes other than those described in subdivision (o) of Article 1 of this Contract upon written approval by the Contracting Officer in accordance with the terms and conditions of such approval.

(j) Omitted.

(k) The Contracting Officer shall make reasonable efforts to protect the water rights necessary for the Project and to provide the water available under this Contract. The Contracting Officer shall not object to participation by the Contractor, in the capacity and to the extent permitted by law, in administrative proceedings related to the Project Water rights; Provided, however, That the Contracting Officer retains the right to object to the substance of the Contractor's position in such a proceeding.

TIME FOR DELIVERY OF WATER

(4) (a) On or about February 20 of each Calendar Year, the Contracting Officer shall announce the Contracting Officer's expected declaration of the Water Made Available. The declaration will be updated monthly, and more frequently if necessary, based on then-current operational and hydrologic conditions and a new declaration with changes, if any, to the Water Made Available will be made. The Contracting Officer shall provide forecasts of Project operations and the basis of the estimate, with relevant supporting information, upon the written request of the Contractor. Concurrently with the declaration of the Water Made Available, the Contracting Officer

shall provide the Contractor with the updated Recent Historic Average. The declaration of Project operations will be expressed in terms of both Water Made Available and the Recent Historic Average.

(b) On or before each March 1 and at such other times as necessary, the Contractor shall submit to the Contracting Officer a written schedule, satisfactory to the Contracting Officer, showing the monthly quantities of Project Water to be delivered by the United States to the Contractor pursuant to this Contract for the Year commencing on such March 1. The Contracting Officer shall use all reasonable means to deliver Project Water according to the approved schedule for the Year commencing on such March 1.

(c) The Contractor shall not schedule Project Water in excess of the quantity of Project Water the Contractor intends to put to reasonable and beneficial use within the Contractor's Service Area or to sell, transfer, or exchange pursuant to Article 9 of this Contract during any Year.

(d) Subject to the conditions set forth in subdivision (a) of Article 3 of this Contract, the United States shall deliver Project Water to the Contractor in accordance with the initial schedule submitted by the Contractor pursuant to subdivision (b) of this Article, or any written revision(s), satisfactory to the Contracting Officer, thereto submitted within a reasonable time prior to the date(s) on which the requested change(s) is/are to be implemented.

POINT OF DIVERSION AND RESPONSIBILITY FOR DISTRIBUTION OF WATER

5. (a) Project Water scheduled pursuant to subdivision (b) of Article 4 of this Contract shall be delivered to the Contractor at Folsom Dam and any additional point or points of delivery either on Project facilities or another location or locations mutually agreed to in writing by the Contracting Officer and the Contractor.

(b) The parties hereby acknowledge execution of the Stipulated Agreement dated September 8, 1998, recognizing the agreement by the United States, Bureau of Reclamation, subject

to certain conditions, to dismiss protests to the Contractor's petition to expand the place of use under the Contractor's water right permits.

(c) The Contractor shall deliver Irrigation Water in accordance with any applicable land classification provisions of Federal Reclamation law and the associated regulations. The Contractor shall not deliver Project Water to land outside the Contractor's Service Area unless approved in advance by the Contracting Officer.

(d) All Water Delivered to the Contractor pursuant to this Contract shall be measured and recorded with equipment furnished, installed, operated, and maintained by the United States, or other appropriate entity as designated by the Contracting Officer (hereafter "other appropriate entity") at the point or points of delivery established pursuant to subdivision (a) of this Article. Upon the request of either party to this Contract, the Contracting Officer shall investigate, or cause to be investigated, the accuracy of such measurements and shall take any necessary steps to adjust any errors appearing therein. For any period of time when accurate measurements have not been made, the Contracting Officer shall consult with the Contractor prior to making a final determination of the quantity delivered for that period of time.

(e) The Contracting Officer shall not be responsible for the control, carriage, handling, use, disposal, or distribution of Project Water Delivered to the Contractor pursuant to this Contract beyond the delivery points specified in subdivision (a) of this Article. The Contractor shall indemnify the United States, its officers, employees, agents, and assigns on account of damage or claim of damage of any nature whatsoever for which there is legal responsibility, including property damage, personal injury, or death arising out of or connected with the control, carriage, handling, use, disposal, or distribution of such Project Water beyond such delivery points, except for any damage or

claim arising out of: (i) acts or omissions of the Contracting Officer or any of its officers, employees, agents, or assigns with the intent of creating the situation resulting in any damage or claim; (ii) willful misconduct of the Contracting Officer or any of its officers, employees, agents, or assigns; (iii) negligence of the Contracting Officer or any of its officers, employees, agents, or assigns; or (iv) damage or claims resulting from a malfunction of facilities owned and/or operated by the United States.

## MEASUREMENT OF WATER WITHIN THE SERVICE AREA

6. (a) By (6 months after execution), the Contractor shall ensure that, unless the Contractor establishes an alternative measurement program satisfactory to the Contracting Officer, all surface water delivered by the Contractor for irrigation purposes within the Contractor's Service Area is measured at each agricultural turnout and such water delivered by the Contractor for municipal and industrial purposes is measured at each municipal and industrial service connection. The water measuring devices or water measuring methods of comparable effectiveness must be acceptable to the Contracting Officer. The Contractor shall be responsible for installing, operating, and maintaining and repairing all such measuring devices and implementing all such water measuring methods at no cost to the United States. The Contractor shall use the information obtained from such water measuring devices or water measuring methods to ensure its proper management of the water, to bill water users for water delivered by the Contractor; and, if applicable, to record water delivered for municipal and industrial purposes by customer class as defined in the Contractor's water conservation plan provided for in Article 26 of this Contract. Nothing herein contained, however, shall preclude the Contractor from establishing and collecting any charges, assessments, or other revenues

authorized by California law. The Contractor shall include a summary of all its annual surface water deliveries in the annual report described in subdivision (c) of Article 26.

(b) To the extent the information has not otherwise been provided, upon execution of this Contract, the Contractor shall provide to the Contracting Officer a written report describing the measurement devices or water measuring methods being used or to be used to implement subdivision (a) of this Article and identifying the agricultural turnouts and municipal and industrial service connections or alternative measurement programs approved by the Contracting Officer, at which such measurement devices or water measuring methods are being used, and, if applicable, identifying the locations at which such devices and/or methods are not yet being used including a time schedule for implementation at such locations. The Contracting Officer shall advise the Contractor in writing within sixty (60) days as to the adequacy of, and necessary modifications, if any, of the measuring devices or water measuring methods identified in the Contractor's report and if the Contracting Officer does not respond in such time, they shall be deemed adequate. If the Contracting Officer notifies the Contractor that the measuring devices or methods are inadequate, the parties shall within sixty (60) days following the Contracting Officer's response, commence to negotiate in good faith how, and the earliest practicable date by which, the Contractor shall modify said measuring devices and/or measuring methods as required by the Contracting Officer to ensure compliance with subdivision (a) of this Article.

(c) All new surface water delivery systems installed for the delivery of Water Made Available under this Contract within the Contractor's Service Area after the effective date of this Contract shall also comply with the measurement provisions described in subdivision (a) of this Article.

(d) The Contractor shall inform the Contracting Officer and the State of California in writing by April 30 of each Year of the monthly volume of surface water delivered within the Contractor's Service Area during the previous Year.

(e) The Contractor shall inform the Contracting Officer on or before the twentieth (20th) calendar day of each month of the quantity of Irrigation and M&I Water taken during the preceding month.

## RATES AND METHOD OF PAYMENT FOR WATER

7. (a) The Contractor shall pay the United States as provided in this Article for all Delivered Water at Rates, Charges, and the Tiered Pricing Component established in accordance with: (i) the Secretary's ratesetting policy for Irrigation Water adopted in 1988 and the Secretary's then-existing ratesetting policy for M&I Water. Such ratesetting policies shall be amended, modified, or superseded only through a public notice and comment procedure; (ii) applicable Reclamation law and associated rules and regulations, or policies; and (iii) other applicable provisions of this Contract. Payments shall be made by cash transaction, wire, or any other mechanism as may be agreed to in writing by the Contractor and the Contracting Officer. The Rates, Charges, and Tiered Pricing Components applicable to the Contractor upon execution of this Contract are set forth in Exhibit "B," as may be revised annually.

(b) The Contracting Officer shall notify the Contractor of the Rates, Charges, and Tiered Pricing Components as follows:

(1) Prior to July 1 of each Calendar Year, the Contracting Officer shall provide the Contractor an estimate of the Charges for Project Water that will be applied to the period October 1, of the current Calendar Year, through September 30, of the following Calendar Year, and

the basis for such estimate. The Contractor shall be allowed not less than two (2) months to review and comment on such estimates. On or before September 15 of each Calendar Year, the Contracting Officer shall notify the Contractor in writing of the Charges to be in effect during the period October 1 of the current Calendar Year, through September 30, of the following Calendar Year, and such notification shall revise Exhibit "B."

(2) Prior to October 1 of each Calendar Year, the Contracting Officer shall make available to the Contractor an estimate of the Rates and Tiered Pricing Components for Project Water for the following Year and the computations and cost allocations upon which those Rates are based. The Contractor shall be allowed not less than two (2) months to review and comment on such computations and cost allocations. By December 31 of each Calendar Year, the Contracting Officer shall provide the Contractor with the final Rates and Tiered Pricing Components to be in effect for the upcoming Year, and such notification shall revise Exhibit "B."

(c) At the time the Contractor submits the initial schedule for the delivery of Project Water for each Year pursuant to subdivision (b) of Article 4 of this Contract, the Contractor shall make an advance payment to the United States equal to the total amount payable pursuant to the applicable Rate(s) set under subdivision (a) of this Article, for the Project Water scheduled to be delivered pursuant to this Contract during the first two (2) calendar months of the Year. Before the end of the first month and before the end of each calendar month thereafter, the Contractor shall make an advance payment to the United States, at the Rate(s) set under subdivision (a) of this Article, for the Water Scheduled to be delivered pursuant to this Contract during the second month immediately following. Adjustments between advance payments for Water Scheduled and payments at Rates due for Water Delivered shall be made before the end of the following month; Provided, That any revised

schedule submitted by the Contractor pursuant to Article 4 of this Contract which increases the amount of Water Delivered pursuant to this Contract during any month shall be accompanied with appropriate advance payment, at the Rates then in effect, to assure that Project Water is not delivered to the Contractor in advance of such payment. In any month in which the quantity of Water Delivered to the Contractor pursuant to this Contract equals the quantity of Water Scheduled and paid for by the Contractor, no additional Project Water shall be delivered to the Contractor unless and until an advance payment at the Rates then in effect for such additional Project Water is made. Final adjustment between the advance payments for the Water Scheduled and payments for the quantities of Water Delivered during each Year pursuant to this Contract shall be made as soon as practicable but no later than April 30th of the following Year, or sixty (60) days after the delivery of Project Water carried over under subdivision (g) of Article 3 of this Contract if such water is not delivered by the last day of February.

(d) The Contractor shall also make a payment in addition to the Rate(s) in subdivision (c) of this Article to the United States for Water Delivered, at the Charges and the appropriate Tiered Pricing Component then in effect, before the end of the month following the month of delivery; Provided, That the Contractor may be granted an exception from the Tiered Pricing Component pursuant to subdivision (j)(2) of this Article. The payments shall be consistent with the quantities of M&I Water Delivered as shown in the water delivery report for the subject month prepared by the Contracting Officer. The water delivery report shall be deemed a bill for the payment of Charges and the applicable Tiered Pricing Component for Water Delivered. Adjustment for overpayment or underpayment of Charges shall be made through the adjustment of payments due

to the United States for Charges for the next month. Any amount to be paid for past due payment of Charges and the Tiered Pricing Component shall be computed pursuant to Article 20 of this Contract.

(e) The Contractor shall pay for any Water Delivered under subdivision (d), (f), or (g) of Article 3 of this Contract as determined by the Contracting Officer pursuant to applicable statutes, associated regulations, any applicable provisions of guidelines or ratesetting policies; Provided, That the Rate for Water Delivered under subdivision (d) of Article 3 of this Contract shall be no more than the otherwise applicable Rate for M&I Water under subdivision (a) of this Article.

(f) Payments to be made by the Contractor to the United States under this Contract may be paid from any revenues available to the Contractor.

(g) All revenues received by the United States from the Contractor relating to the delivery of Project Water or the delivery of non-project water through Project facilities shall be allocated and applied in accordance with Federal Reclamation law and the associated rules or regulations, and the then current Project ratesetting policy for M&I Water.

(h) The Contracting Officer shall keep its accounts pertaining to the administration of the financial terms and conditions of its long-term contracts, in accordance with applicable Federal standards, so as to reflect the application of Project costs and revenues. The Contracting Officer shall, each Year upon request of the Contractor, provide to the Contractor a detailed accounting of all Project and Contractor expense allocations, the disposition of all Project and Contractor revenues, and a summary of all water delivery information. The Contracting Officer and the Contractor shall enter into good faith negotiations to resolve any discrepancies or disputes relating to accountings, reports, or information.

(i) The parties acknowledge and agree that the efficient administration of this Contract is their mutual goal. Recognizing that experience has demonstrated that mechanisms, policies, and procedures used for establishing Rates, Charges, and Tiered Pricing Components, and/or for making and allocating payments, other than those set forth in this Article may be in the mutual best interest of the parties, it is expressly agreed that the parties may enter into agreements to modify the mechanisms, policies, and procedures for any of those purposes while this Contract is in effect without amending this Contract.

(j) (1) Beginning at such time as deliveries of Project Water in a Year exceed eighty (80%) percent of the Contract Total, then before the end of the month following the month of delivery the Contractor shall make an additional payment to the United States equal to the applicable Tiered Pricing Component. The Tiered Pricing Component for the amount of Water Delivered in excess of eighty (80%) percent of the Contract Total, but less than or equal to ninety (90%) percent of the Contract Total, shall equal one-half of the difference between the Rate established under subdivision (a) of this Article and the M&I Full Cost Water Rate. The Tiered Pricing Component for the amount of Water Delivered which exceeds ninety (90%) percent of the Contract Total shall equal the difference between (i) the Rate established under subdivision (a) of this Article and (ii) the M&I Full Cost Water Rate.

(2) Subject to the Contracting Officer's written approval, the Contractor may request and receive an exemption from such Tiered Pricing Components for Project Water delivered to produce a crop which the Contracting Officer determines will provide significant and quantifiable habitat values for waterfowl in fields where the water is used and the crops are produced; <u>Provided</u>, That the exemption from the Tiered Pricing Components for Irrigation Water shall apply only if such habitat values can be assured consistent with the purpose of CVPIA through binding agreements executed with or approved by the Contracting Officer prior to use of such water.

(3) For purposes of determining the applicability of the Tiered Pricing Components pursuant to this Article, Water Delivered shall include Project Water that the Contractor transfers to others but shall not include Project Water transferred and delivered to the Contractor.

(k) For the term of this Contract, Rates under the respective ratesetting policies will be established to recover only reimbursable "operation and maintenance" (including any deficits) and capital costs of the Project, as those terms are used in the then-current Project ratesetting policies, and interest, where appropriate, except in instances where a minimum Rate is applicable in accordance with the relevant Project ratesetting policy. Changes of significance in practices which implement the Contracting Officer's ratesetting policies will not be implemented until the Contracting Officer has provided the Contractor an opportunity to discuss the nature, need, and impact of the proposed change.

(l) Except as provided in subsections 3405(a)(1)(B) and 3405(f) of the CVPIA, the Rates for Project Water transferred by the Contractor shall be the Contractor's Rates adjusted upward or downward in accordance with the then-applicable CVP Ratesetting Policy to reflect the changed costs, if any, incurred by the Contracting Officer in the delivery of the transferred Project Water to the transferee's point of delivery.

(m) Pursuant to the Act of October 27, 1986 (100 Stat 3050), the Contracting Officer is authorized to adjust determinations of ability to pay every five (5) years.

NON-INTEREST BEARING OPERATION AND MAINTENANCE DEFICITS

8. The Contractor and the Contracting Officer concur that, as of the effective date of this Contract, the Contractor has no non-interest bearing operation and maintenance deficits and shall have no further liability therefor.