10/23/92 15:22 COMM. ON E&N RES. 002

219-1792

J. BENNETT JOHNSTON, LOUISIANA, CHAIRMAN

DALE BUMPERS, ARKANSAS
WENDELL H. FORD, KENTUCKY
BILL BRADLEY, NEW JERSEY
JEFF BINGAMAN, NEW MEXICO
TIMOTHY E. WIRTH, COLORADO
KENT CONRAD, NORTH DAKOTA
DANIEL K. AKAKA, HAWAII
WYCHE FOWLER, JR., GEORGIA
RICHARD C. SHELBY, ALABAMA
PAUL WELLSTONE, MINNESOTA

MALCOLM WALLOP, WYOMING
MARK O. HATFIELD, OREGON
PETE V. DOMENICI, NEW MEXICO
FRANK H. MURKOWSKI, ALASKA
DON NICKLES, OKLAHOMA
CONRAD BURNS, MONTANA
LARRY E. CRAIG, IDAHO
JOHN SEYMOUR, CALIFORNIA
JAKE GARN, UTAH

BENJAMIN S. COOPER, STAFF DIRECTOR
D. MICHAEL HARVEY, CHIEF COUNSEL
G. ROBERT WALLACE, STAFF DIRECTOR FOR THE MINORITY
GARY G. ELLSWORTH, CHIEF COUNSEL FOR THE MINORITY

**United States Senate**

COMMITTEE ON
ENERGY AND NATURAL RESOURCES
WASHINGTON, DC 20510-6150

October 20, 1992

The President
The White House
Washington, D.C. 20500

Dear Mr. President:

I am writing to you concerning reports that you are considering not signing H.R. 429, the omnibus water measure, because you believe that it still contains the so-called Miller-Bradley bill on the Central Valley Project. I was directly involved in the final negotiations on this measure, and can assure you that the final Conference compromise resembles the legislation which you opposed in May of this year only in format, not in substance.

While generally following the outline of Miller-Bradley, the Conference made numerous amendments which brought the legislation more in line with the measure introduced by Senator Seymour. The reaction against the measure is not a product of careful review but rather is based on an assumption that any CVP measure must be a version of Miller-Bradley. That assumption is wrong. I also had made a commitment to oppose Miller-Bradley together with other Western Senators. The price of our support for this measure was the agreement by both Congressman Miller and Senator Bradley to remove or radically revise the provisions which you, Senator Seymour, and Governor Wilson found objectionable, and to bring the substance of the legislation into line with the legislation introduced by Senator Seymour. I don't believe I have gone back on my word in now supporting this measure, nor should you in deciding to sign the bill.

A list of the more significant changes which we forced the Conference to agree to follow. This list is not exhaustive, but I think it does make perfectly clear that the Conference compromise could not ever be characterized as "Miller-Bradley" for any reason other than that they voted for it. I appreciate that there are water users who simply do not want any legislation enacted ever. That is simply not a realistic or tenable position. There will be legislation, either now or early next year. I think if you review the changes which we managed to force through this year, you will agree that there is absolutely no likelihood that California will ever see a better measure.

1) FEDERAL AUCTION OF STATE WATER Miller-Bradley proposed that the Secretary auction off 100,000 acre-feet (af) of the State's water supply to the highest bidder. The provision was eliminated.

2) CITIZEN SUIT Miller-Bradley included a wide-open citizen suit provision. The entire section was deleted.

3) CAPITAL GAINS TAX ON FARMERS Miller-Bradley included a 15% capital gains tax on the net proceeds of any water sale by a farmer. The tax was in addition to that imposed under the IRC and could be increased by the Secretary of the Interior. The provision was eliminated.

4) ENHANCEMENT Miller-Bradley included fish and wildlife enhancement as a primary project purpose. The Conference eliminated that provision and authorized enhancement only as a secondary purpose after all other obligations, including irrigation contracts, are met.

5) WATER Miller-Bradley required 1.5 million af of water as a permanent commitment for fish and wildlife. The Conference agreed to 800,000 af, but provided that all requirements of the Endangered Species Act (330,000 af last year) and any Delta requirements would be charged against that 800,000 af. In addition, the 800,000 af is subject to reductions in dry years as irrigation contracts are cut back, unlike Miller-Bradley.

6) TRINITY FLOWS Miller-Bradley wanted the Secretary's present decision of 340,000 af plus 10% of the annual inflow to Shasta (which could take another 300,000 out of the system). The Conference rejected Miller-Bradley in favor of the Secretary's present decision.

7) FRIANT RELEASES Miller-Bradley required an open end study of restoration of anadromous fish runs on the San Joaquin. Friant contractors estimated that such a restoration would require 600,000 of the 800,000 af delivered by Friant. The Conference permanently prohibited the Secretary from making any releases from Friant ever, and given that limitation, required that the study be limited to what was "prudent, reasonable and feasible". I want to emphasize this provision. If this legislation is enacted, there can never be any release from Friant for the purposes of the study on fish and wildlife restoration without a specific Act of Congress.

8) WESTLANDS ENTITLEMENT There has been considerable concern that the effect of some of the language in Miller-Bradley would overturn the Barcellos case as well as other decisions favorable to water users. In addition to tightening up the language throughout the bill, the Conference specifically included language protecting all court decrees.

9) <u>MITIGATION OBLIGATION OF CVP</u> Miller-Bradley had an open end commitment on the CVP to restore the entire Valley. The Conference limited the obligation of the CVP water users to the specific provisions of the legislation and also tightened up the "fixes" to track Senator Seymour's legislation rather than the amorphous language of Miller-Bradley.

10) <u>FRIANT CHARGES</u> Miller-Bradley would have required additional charges of $4 - $8 - $12 af on Friant water users. the Conference reduced that to $4 - $5 - $7. In addition, the Conference specifically exempted Friant Class 2 water from the limitation on new contracts.

11) <u>GENERAL WATER CHARGES</u> Miller-Bradley set annual charges per af for an unstructured restoration fund with a mandatory set aside to the National Fish and Wildlife Foundation. The Conference eliminated the set aside and provided that the extent of the charges, subject to a maximum limit and ability to pay, would be reviewed and set annually in Appropriation Acts. In effect, the Administration will have full control over the extent to which federal expenditures will be made and the consequent charges to the water users.

12) <u>INSTREAM FLOW REQUIREMENTS</u> Miller-Bradley had California Fish and Game and the U.S. Fish and Wildlife Service set instream flow requirements and required the Secretary to implement whatever they jointly recommended. The Conference made the recommendations only advisory on the Secretary and also required input from the Bureau of Reclamation and the California Department of Water Resources.

13) <u>PENALTIES FOR NON-RENEWAL OF CONTRACTS</u> Miller-Bradley required a penalty set at 150% of the annual O&M charge in addition to any other charges on any contractor who did not submit his contract for renewal prior to 1997, despite the fact that the Secretary was barred from entering into a new long-term contract until after completion of a programmatic EIS for the entire project. The Conference eliminated the penalty for anyone who agreed to have their contract renewed <u>when the EIS is completed</u>. Since the EIS has not even been scoped, it is unlikely that any existing contract will be required to be submitted for renewal until its full term expires.

14) <u>CONSERVATION REQUIREMENTS</u> The Conference eliminated the requirement that water measuring devices be volumetric and also reduced the tiered pricing to 90-10-10 from the Miller-Bradley formula of 60-20-20.

In sum, I think that a review of the final Conference agreement demonstrates that the title dealing with the CVP is simply a version of Senator Seymour's legislation cast in the format of "Miller-Bradley" and should be enacted. In addition, the final product contains various protections for the water users

which were not included in the legislation which Senator Seymour introduced, such as a permanent statutory prohibition on any releases from Friant dam, which we are unlikely to be able to obtain in any future legislation.

I will not argue that the CVP title is something that either you or I would have supported at the beginning of the legislative process. However, the final compromise is not the Miller-Bradley provision by any stretch of the imagination; and as part of the larger package which is supported by a majority of our Western constituent base, I believe it is worthy of your signature. I urge you to sign H.R. 429.

Sincerely,

Malcolm Wallop

Malcolm Wallop
Ranking Republican Member

MW:jb