**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | No. 04-541 L |
| Plaintiffs, | |
| v. | Judge Christine Odell Cook Miller |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR RECONSIDERATION**


MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

WILLIAM J. SHAPIRO
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
501 I Street
Suite 9-700
Sacramento, CA 95814
TEL: (916) 930-2207
FAX: (916) 930-2210

KRISTINE S. TARDIFF
United States Department of Justice
Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

LUTHER L. HAJEK
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663
Attorneys for Defendant United States

<u>Of Counsel</u>:

SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Branch of Water and Power
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825

Dated March 27, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. The Rule 59 Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Plaintiffs' Motion for Reconsideration Should be Denied . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiffs' Repetition of Arguments Regarding the Meaning of the Contacts Does Not Justify Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. The Court Properly Considered and Rejected Plaintiffs' Argument that Defendant is Required to Disprove Plaintiffs' Breach of Contract Claims . . . . . . 7

1. Plaintiffs Have the Burden of Proving a Breach of the Contracts . . . . . . . 7

2. The Cases Upon Which Plaintiffs Rely Are Inapposite . . . . . . . . . . . . . 11

C. The Court Properly Considered and Rejected Plaintiffs' Argument that the Court Should Have Made a Negative Inference from Non-Testifying Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1. Defendant Was Not Required to Call Witnesses to Rebut Issues on Which Plaintiffs Introduced No Evidence and Failed to Meet Their Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

2. Mr. Dotan's Testimony Does Not Justify an Adverse Inference . . . . . . . 18

D. Plaintiffs' "Year-by-Year Review of Operational Evidence" Merely Repeats Their Earlier Arguments and Does Not Support Their Motion for Reconsideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### FEDERAL CASES

Bishop v. United States,
26 Cl. Ct. 281 (1992) . . . . . . . . . . 1

Coconut Grove Entertainment, Inc. v. United States,
46 Fed. Cl. 249 (2000) . . . . . . . . . . 1, 2

Fru-Con Const. Corp. v. United States,
44 Fed. Cl. 298 (1999) . . . . . . . . . . 1

G&H Machinery Co. v. United States,
16 Cl. Ct. 568 (1989) . . . . . . . . . . 8

Glasgow Assoc. v. United States,
203 Ct. Cl. 532, 495 F.2d 765 (1974) . . . . . . . . . . 8

Graves v. United States,
150 U.S. 118 (1893) . . . . . . . . . . 15

Herbert v. Wal-Mart Stores, Inc.,
911 F.2d 1044 (5th Cir. 1990) . . . . . . . . . . 17

Jennie-O Foods, Inc. v. United States,
217 Ct. Cl. 314 (1978) . . . . . . . . . . 11, 12

Klamath Irrigation District v. United States,
No. 01-591, 2007 WL 853018 (Fed. Cl. March 16, 2007) . . . . . . . . . . 11

Long v. United States,
102 F.Supp. 134 (D. Mont. 1951) . . . . . . . . . . 11

McCalden v. California Library Ass'n,
955 F.2d 1214 (9th Cir. 1990) . . . . . . . . . . 13, 14

Perry v. Department of the Army,
992 F.2d 1575 (Fed. Cir. 1993) . . . . . . . . . . 8

Technical Assistance Int'l, Inc. v. United States,
150 F.3d 1369 (Fed. Cir. 1998) . . . . . . . . . . 8

United States v. Brooks-Callaway Co.,
318 U.S. 120 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Gleason,
175 U.S. 588 (1900) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

United States v. Mason & Hanger Co.,
260 U.S. 323 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL RULES**

Fed. R. Evid. 611(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

Pursuant to the Court's Orders dated March 12, 2007 and March 15, 2007, Defendant submits this Opposition to Plaintiffs' Motion for Reconsideration ("Plaintiffs' Motion") of the Court's decision of February 20, 2007 ("Decision"). As set forth below, the Court's Decision is in accord with applicable law and is fully supported by the record. Plaintiffs' attempts to recapitulate the same arguments they previously made do not provide a proper basis for reconsideration and Plaintiffs' Motion, therefore, should be denied.

I. The Rule 59 Standard

The Court has discretion to grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59. This Court has held that a motion for reconsideration under Rule 59 must be supported "by a showing of extraordinary circumstances which justify relief." Fru-Con Const. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000). To meet this burden, the motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Id. (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) (citation omitted)). In addition, "[t]he movant does not persuade the court to grant such motion by merely reasserting arguments which were previously made and were carefully considered by the court." Coconut Grove Entertainment, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000) (citing Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993), aff'd, 50 F.3d 1021 (Fed. Cir. 1995)). As

explained below, Plaintiffs' Motion fails to meet these requirements and therefore this Motion must be denied.

## II. Plaintiffs' Motion for Reconsideration Should be Denied

### A. Plaintiffs' Repetition of Arguments Regarding the Meaning of the Contacts Does Not Justify Reconsideration

Plaintiffs first argue that the Court misconstrued the meaning of certain provisions in the Stockton East Water District and Central San Joaquin Water Conservation District contracts ("Contracts"), especially Article 9. See Pls.' Mot. at 3-8. Article 9 states:

> In its operation of the Project, the United States will use all reasonable means to guard against a condition of shortage of water available to the Contractor pursuant to this contract. Nevertheless, if a shortage does occur during any year because of drought, or other causes which, in the opinion of the Contracting Officer, are beyond the control of the United States, no liability shall acc[ru]e against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising therefrom.

PX-36 art. 9(a); PX-37 art. 9(a). Focusing only on a portion of the first sentence of Article 9, Plaintiffs argue that the Court erred in not requiring Defendant to prove that it used "all reasonable means to guard against a condition of shortage." See Pls.' Mot. at 6.[1/]

Plaintiffs' argument merely repeats the argument they raised prior to trial in their summary judgment pleadings and in their Pre-Trial Memorandum. See, e.g., Pls.' Mem. in Supp. of Summ. J. at 25-29; Pls.' Pre-Trial Mem. at 17-25. Repetition of these same arguments, which the Court considered and rejected, is not proper grounds for a Rule 59 motion. See Coconut Grove Entertainment, Inc., 46 Fed. Cl. at 255.

---

[1/] Plaintiffs conflate their first argument regarding the meaning of the contracts with their second argument regarding burden of proof. The burden of proof issue is discussed more fully below at § II(B).

In addition to repeating earlier arguments, Plaintiffs' suggested interpretation of the Contracts is flawed because it requires an isolated and strained reading of the first sentence of Article 9(a). The Court correctly read the first sentence of Article 9 in conjunction with the second sentence of the same article, and in the proper context of the contracts as a whole. Significantly, Plaintiffs' Motion ignores Article 12, a section of the Contracts that Plaintiffs recognized as important, see Pls.' Pre-Trial Mem. at 8, and which the Court correctly deemed significant:

> Where the terms of this contract provide for action to be based upon the opinion or determination of either party to this contract, whether or not stated to be conclusive, such terms shall not be construed as permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or determinations. In the event that the Contractor questions any factual determination made by the Contracting Officer, the findings as to the facts shall be made by the Secretary only after consultation with the Contractor and shall be conclusive upon the parties.

PX-36 art. 12(d); PX-37 art. 12(d). After considering all of the evidence, the Court concluded that the Contracts required the contracting officer to decide how to operate New Melones Reservoir, determine when shortages exist, and decide how to allocate the available water supply among numerous water uses and water users to achieve the multiple purposes for which both New Melones Dam and the CVP, as a whole, were authorized and constructed.

The Court's conclusion is certainly correct, for the Contracts give the contracting officer the unambiguous right to determine when a shortage exists and when a shortage is beyond the control of the United States. See PX-36 art. 9; PX-37 art. 9. The Contracts further provide that the contracting officer's decision may not be overturned unless it is arbitrary, unreasonable, or capricious. See PX-36 art. 12; PX-37 art. 12. This is precisely the conclusion the Court reached in its Opinion on Summary Judgment prior to trial. See 70 Fed. Cl. at 535 ("Therefore, the

contracting officer's determinations under Article 9(a) can be binding on the parties under the terms of Article 9(a), provided they are not arbitrary, capricious, or unreasonable under the terms of Article 12(d).").

Plaintiffs' interpretation requires the Court to ignore the explicit language in the Contracts giving the contracting officer the right to make shortage determinations. Indeed, Plaintiffs' Motion often omits the "in the opinion of the contracting officer" language in its discussion of Article 9. E.g., Pls.' Mot. at 3 (truncating Article 9 as "cause . . . beyond the control of the United States"). The Court correctly declined to ignore the plain language of the Contracts. In reaching its conclusion, the Court discussed trial testimony regarding the meaning of Article 9 at length, e.g., Decision, slip. op. at 55-56, and analyzed the parties' respective positions about relevant case law, e.g., Decision, slip. op. at 56-57. The Court concluded that the parties intended that the contracting officer would make allocation and shortage decisions, and that such decisions would be measured under the explicit language of Article 12:

> [w]here an action, such as a reduction in water supply, is based upon a determination or opinion of the contracting officer, the decision may not be made in a manner that is arbitrary, capricious, or unreasonable. Thus, reductions in water supply pursuant to any decision or opinion of the contracting officer are subject to examination for arbitrariness, capriciousness, or unreasonableness.

Decision, slip. op. at 59.

Seeking to downplay the importance of the contracting officer's decisions, Plaintiffs repeat earlier arguments – that the contracting officer either never reached any shortage decisions, or that the Contracts required a formal written declaration of shortage. See Pls.' Mot. at 7. These arguments are not supported by the record. The annual water allocation decisions are part of the trial record, and clearly show the contracting officer's decisions in every year in

dispute.[2] Defendant presented undisputed evidence about what factors the contracting officer considers in making these decisions, especially given the difficult circumstances presented by the water supply available at New Melones. For example, Roger K. Patterson, former Regional Director of the Mid-Pacific Region for Reclamation, discussed how Reclamation makes allocation decisions and how those decisions are communicated to water service contractors. See Decision, slip. op. at 60 (noting this testimony). Mr. Patterson described the "forecasting element of CVP operations," including an explanation of the factors Reclamation had to consider in making allocation decisions and an explanation of the timing of Reclamation's decisions. E.g., Tr. at 1571-72; Tr. at 1578-79. Mr. Patterson described that the allocation decisions were "signed off on at my level and formal notification of the contractors [was] made." Tr. at 1571.

Mr. Lowell Ploss, former Operations Manager of New Melones Reservoir, also testified about how operational decisions are made, including a discussion of the 1.4 million acre-foot carryover storage target, which was intended to "meet [all of] these project demands, other than the demands of Stockton East and Central, through the five-year period of the worst drought in history." Tr. at 963. Therefore, Plaintiffs' argument that the contracting officer never reached allocation or shortage decisions cannot be supported.

Similarly, Plaintiffs' argument that they were never informed about the bases for the

---

[2] See DX-276 (Feb. 15, 1994); PX-115 (Feb. 15, 1995); PX-120 (Apr. 10, 1995); PX-141 (Aug. 10, 1995); PX-171 (Feb. 22, 1996); PX-176 (Mar. 19, 1996); DX-342 (Feb. 19, 1997); DX-162 (Mar. 30, 1998); DX-356 (Jan. 22, 1999); DX-357 (Feb. 16, 1999); PX-232 (Mar. 16, 1999); PX-240 (Jan. 21, 2000); PX-241 (Feb. 17, 2000); PX-245 (Mar. 20, 2000); DX-370 (Feb. 15, 2001); DX-371 (Mar. 15, 2001); DX-373 (Apr. 16, 2001); PX-254 (May 16, 2001); PX-258 (Jan. 25, 2002); DX-378 (Feb. 15, 2002); DX-380 (Mar. 15, 2002); DX-381 (Apr. 15, 2002); DX-385 (May 16, 2002); PX-289 (Feb. 14, 2003); DX-394 (Mar. 18, 2003); PX-298 (Apr. 23, 2003); PX-303 (May 22, 2003); DX-406 (Jan. 23, 2004); PX-312 (Feb. 13, 2004); DX-412 (June 21, 2004).

contracting officer's decisions is not supported by the record. In addition to admitting the written record of all allocation decisions, the Court also heard extensive testimony from Plaintiffs' own witnesses about the numerous stakeholder meetings convened by Reclamation and attended by Plaintiffs. Mr. Roberts testified that Plaintiffs participated in Stanislaus stakeholder meetings as early as 1993, see Tr. at 314-15, during which "Reclamation officials discussed issues relating to water supplies from New Melones," and "a number of meetings were made up of, or consisted of a presentation of what I believe was a computer run that looked at and projected water availability." Tr. at 315 (testimony of Mr. Roberts); Tr. at 475 (Mr. Steffani stating that allocations were "something that you discussed at the Stanislaus stakeholders' meeting"); Tr. at 1152-53 (Ms. Zolezzi testifying that during the stakeholder meetings, discussions were held "about Reclamation's operation at New Melones," including "discussions about demands for water for various purposes," such as water quality issues and fishery issues). In short, the uncontroverted record fully supports the Court's conclusions that Reclamation informed Plaintiffs about the process for making allocation decisions as well as the decisions made as a result of that process. See Decision, slip. op. at 60-62.

Plaintiffs' secondary argument – that the Contracts required a formal, written declaration of shortage – is the same argument Plaintiffs pressed at summary judgment. See 70 Fed. Cl. at 535 ("Plaintiffs believe a formal declaration, such as they received in 1994, was necessary."). The Court properly rejected this argument in its Decision, holding: "Article 12(d) cannot be interpreted to require a formal, written opinion to invoke the protection of Article 9(a)." Decision, slip. op. at 66. The Court's conclusion is based on the language of the Contracts and the actions of the parties, and is fully supported by the trial record. Plaintiffs' repeated

disagreement with the Court's analysis of the requirements of Article 12(d) is not grounds for reconsideration.

A final point must be made in regard to Plaintiffs' statement that the Court's Decision "makes Article 9(a) devoid of all meaning and restriction." Pls.' Mot. at 8. Plaintiffs' critique is grossly overstated because it ignores the Court's conclusions about the limitations imposed by Article 12 – that the contracting officer is tasked with making allocation and shortage decisions, but those decisions must not be unreasonable, arbitrary or capricious. As discussed below, however, Plaintiffs never presented any evidence to challenge the contracting officer's decisions. Plaintiffs' failure to present evidence to support their own claim is hardly grounds to justify a motion for reconsideration.

In summary, the Court's conclusions about the meaning of the Contracts are clearly supported by the terms of the Contracts and the evidence presented at trial. In each year at issue in this case, the contracting officer made a decision about what amount of water was available, as he was required to do under the Contracts. The Court correctly upheld those decisions because Plaintiffs failed to satisfy their burden of proof to show that those decisions were arbitrary, capricious, or unreasonable. See Art. 12.

B. The Court Properly Considered and Rejected Plaintiffs' Argument that Defendant is Required to Disprove Plaintiffs' Breach of Contract Claims

1. Plaintiffs Have the Burden of Proving a Breach of the Contracts

"The party alleging a breach of contract bears the burden of proving the breach." Technical Assistance Int'l, Inc. v. United States, 150 F.3d 1369, 1373 (Fed. Cir. 1998); Perry v. Department of the Army, 992 F.2d 1575, 1577 (Fed. Cir. 1993); Glasgow Assoc. v. United States, 203 Ct. Cl. 532, 495 F.2d 765, 768 (1974). The burden of proving a breach of contract

"stands as a threshold question. If the claimant fails to carry the burden of proof then, even in the absence of opposing evidence, he cannot recover on the breach of contract claim." G&H Machinery Co. v. United States, 16 Cl. Ct. 568, 571 (1989).

In this case, as in any breach of contract case, the Plaintiffs bear the burden of proving that Defendant breached the Contracts in question. The Court correctly understood and articulated Plaintiffs' burden of proof during the pre-trial conference: "[T]he Plaintiffs have a unique burden in this case, which to the extent of proving breach, they are proving that the contracting officer's decision was unreasonable, and that is their burden." Pre-Trial Tr. at 6 (emphasis added); Pre-Trial Tr. at 23 ("Now the burden to discharge is not the government's. The government doesn't have to show its decision is not arbitrary, not unreasonable, and not capricious. It is the Plaintiffs' burden in their case-in-chief, whether they are using Defendant's witnesses or not, to show that the allocations were unreasonable.") (emphasis added). The Court's instruction at the Pre-Trial Conference was explicit: "The case is properly in this Court, and the Defendant has admitted that the Plaintiffs can plead and prove a proper breach of contract if they show that the releases were unreasonable. . . . I would just ask the parties to try to focus on this key issue, because there really is no other issue." Pre-Trial Tr. at 80-81.[3]

[3] Plaintiffs' charge that the Court's conclusion on the burden of proof issue contradicts the Court's statements at trial is unfounded. See Pls.' Mot. at 10 (quoting Tr. at 1122, and charging that the Court's Decision 'contradicts the Court's position at trial that the Court would be 'focusing on Defendant . . . how Defendant made its release decisions''") (emphasis added). The Court's trial comment was made during an exchange with counsel about whether certain arguments might be foreclosed by Plaintiffs' other lawsuits, not about whether Plaintiffs had the burden of proving their own case. Indeed, on the very next page of the trial transcript, government counsel stated – consistent with the Court's pre-trial statements and Decision – that "Plaintiffs would have the burden of showing that our operational decisions were unreasonable, given the various requirements – the permit requirements and the CVPIA requirements." Tr. at 1123.

Prior to trial, Plaintiffs argued that they would show that Reclamation "could have lessened the impact on New Melones by taking more CVPIA (b)(2) water from other CVP units in a manner that would not have breached these other CVP contracts." Pls.' Pre-Trial Mem. at 11. In Plaintiffs' opening argument, Plaintiffs' counsel stated that Plaintiffs would show "it was entirely possible <u>and reasonable</u> to furnish the water that should have been and was not made available to the Plaintiffs under these contracts . . . [and further] prove that the actions of the Bureau of Reclamation, in withholding that water, were unreasonable." Tr. at 19 (emphasis added). Plaintiffs failed to deliver any of this promised testimony. Plaintiffs presented no evidence about the reasonableness or unreasonableness of any decision by the contracting officer. Consequently, after a careful analysis of the evidence presented, the Court correctly concluded that "plaintiffs have not proven that a reduction from the Build-Up Schedule between 1993 and 2004 was made in violation of Article 12(d)." Decision, slip. op. at 69. In their Motion, Plaintiffs now incorrectly argue that it was the government's responsibility to prove a negative – that it was the government's burden to show that the decisions of the contracting officer did not violate the Contracts because those decisions did not violate Article 12. The Court was correct to reject such a reading.

Case law is clear that when a contract provides a contracting officer the right to make a decision, that decision should be upheld unless shown to be improper. For example, in <u>United States v. Gleason</u>, 175 U.S. 588, 590 (1900), the Supreme Court interpreted a contractual provision related to the timing of performance. In that case, the contracts charged the government's contracting officer with the authority and responsibility to reach certain decisions about the reason for delay and the consequence of delay. <u>See</u> <u>id.</u> at 591. The Supreme Court

held the following:

> [A]s between the United States and the contractors, the latter were to be relieved from their contract obligation to complete the work within the time limited, only if, in the judgment of the engineer in charge, their failure so to do was occasioned by [the happening of enumerated events]; and that, if and when, in his judgment, the failure to complete was, in point of fact, due to the extraneous causes, he was also to decide what additional time should be just and reasonable. In other words, the parties agreed that if the contractors should fail to complete their contract within the time stipulated, they should have the benefit of the judgment of the engineer as to whether such failure was the result of their own fault or of forces beyond their control, and, in the latter event, of his judgment as to what extension of time would be just and reasonable.

Id. at 604. The Court applied the well-known presumption that government employees "acted with due regard to [their] duty as between the government and the contractors," id. at 607, and concluded that the lower court's error was

> in assuming that it was competent to go back of [sic] the judgment of the engineer, and to revise his action by the views of the court. This, we have seen, could only be done upon allegation and proof of bad faith, or of mistake or negligence so great, so gross, as to justify an inference of bad faith. But in this case we find neither allegation nor proof.

175 U.S. at 607. Simply stated, "an allegation [that the engineer's decision was unreasonable] was wholly insufficient on which to base an attempt to upset the judgment of the engineer." 175 U.S. at 608.

Numerous other decisions hold similarly. See, e.g., United States v. Mason & Hanger Co., 260 U.S. 323, 326 (1922) (holding that parties to contract can contract that "the decision of the officer is conclusive upon the parties"); Long v. United States, 102 F.Supp. 134, 136 (D. Mont. 1951) (holding that "[t]he determining decision on the issue raised over this contract seems to have been left to the contracting officer in charge of the work; that the parties to the contract can so provide, and that the decision of the contracting officer shall be conclusive upon

the parties, is so held" in a number of Supreme Court cases). In short, the Court's conclusion that it was Plaintiffs' burden to prove their own breach of contract claim is well-supported by applicable law.

2. The Cases Upon Which Plaintiffs Rely Are Inapposite

Plaintiffs' argument that Defendant had the burden of disproving a breach fails because Plaintiffs ignore the fact that the Contracts contemplate that allocation decisions must be made by the contracting officer, and the fact that those decisions must be upheld unless they violate the standards set forth in Article 12. The cases upon which Plaintiffs now rely in their Motion are the same cases Plaintiffs relied upon in their Pre-Trial Memorandum to support their theory about a common-law impossibility defense.[4/] For example, Jennie-O Foods, Inc. v. United States, 217 Ct. Cl. 314 (1978), a case involving the United States Department of Agriculture's

---

[4/] Plaintiffs' Motion is premised on the erroneous assumption that the outcome of this case turns on whether Defendant is excused from an unproven breach of contract under a common-law impossibility of performance defense. This theme – which is repeated throughout Plaintiffs' Motion – is repetitive of the same arguments presented in Plaintiffs' Pre-Trial Memorandum. In addition to confusing the burden of proof, Plaintiffs incorrectly subsume their discussion of common-law impossibility of performance within their discussion of the sovereign acts doctrine. Defendant recognizes that the Court's discussion of the sovereign acts doctrine in its Decision is expressly *dicta*. See Decision, slip. op. at 78 ("As Reclamation is not liable for breach of contract, the court need not address defendant's invocation of the sovereign acts defense."). Nonetheless, Defendant respectfully notes that the Court's discussion appears to have erroneously conflated the sovereign acts doctrine with the common-law defense of impossibility of performance. In so doing, the Court's discussion applies the wrong legal standard in assessing the applicability of the sovereign acts doctrine in this case. Id. at 79-80. Defendant notes that the relationship between the sovereign acts doctrine and the common-law impossibility defense was recently dissected in Klamath Irrigation District v. United States, No. 01-591, 2007 WL 853018 (Fed. Cl. March 16, 2007) (Allegra, J.), a decision that post-dates this Court's Decision. In Klamath, Judge Allegra determined that the sovereign acts doctrine should not be viewed as a precondition to a common-law impossibility defense, nor should it be viewed as simply an element of a common law impossibility defense. Defendant submits that the analysis set forth in Klamath is correct and, if applied here, establishes that the sovereign acts doctrine provides an alternative grounds for entering judgment in Defendant's favor.

(USDA's) purchase of turkeys from plaintiff, which Plaintiffs discuss at pages 9-10 of their Motion, is the same case Plaintiffs relied upon to support their argument about common law impossibility in their Pre-Trial Memorandum. See Pls.' Pre-Trial Mem. at 9. Plaintiffs' Motion, then, simply repackages Plaintiffs' arguments about common law impossibility in order to now argue that it is the Defendant's burden to prove that the Contracts were not breached. Plaintiffs' Motion, therefore, merely repeats Plaintiffs' earlier arguments and thus cannot support reconsideration.

Even if Plaintiffs offered a new argument, the cases upon which Plaintiffs rely are either distinguishable or support the government's position. For example, Jennie-O Foods, Inc. supports the government's position in recognizing that the contracting officer's decision must be given great deference. According to the contract in that case, late deliveries would subject plaintiff Jennie-O to assessment of liquidated damages. See 217 Ct. Cl. at 407. The plaintiff alleged that it experienced delivery problems, which it asserted were beyond its control. See id. at 405. The USDA's contracting officer determined that Jennie-O was responsible for the delay, and assessed liquidated damages. The Court of Claims gave great deference to the contracting officer's decision, refusing to overturn the decision without evidence from Jennie-O showing that the decision was incorrect. The case here is no different – the contracting officer made shortage decisions and those decisions should not be overturned unless Plaintiffs can demonstrate that they violated the standard established by Article 12.

Plaintiffs also cite United States v. Brooks-Callaway Co., 318 U.S. 120, 121 (1943), which, like Jennie-O Foods, Inc., considered whether the government's assessment of liquidated damages arising from the contractor's delays should be sustained. The contract in Brooks-

Callaway Co. permitted assessment of liquidated damages for delays except when such delays were "due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including . . . floods. . . ." Id. at 121 n.1. Following a flood that delayed completion of the contract, the government assessed liquidated damages against the contractor. See id. at 121. The contractor administratively protested the assessment and then sued to recover the amount of the liquidated damages it had paid. See id. The Supreme Court reversed the finding of liability issued by the Court of Claims and remanded with instructions to determine whether "respondent is concluded by the findings of the contracting officer, and, if not, for a finding by the court whether the 183 days of high water or any part of that time were in fact foreseeable." Id. at 124-25. The case is silent as to the burden of proof and offers no support for Plaintiffs' position.

Plaintiffs' reliance on McCalden v. California Library Ass'n, 955 F.2d 1214 (9th Cir. 1990), also does not support their position in the instant case. Pls.' Mot. at 9. The question in McCalden was whether the defendant had breached plaintiff's rental agreement. See McCalden, 955 F.2d at 1219. The district court had dismissed plaintiff's breach of contract claim on the ground that plaintiff had "pled an impossibility defense to his own claim by his allegations in other sections of the complaint." Id. The Ninth Circuit disagreed, finding that the district court's decision was based on an "impermissibly strict reading of [the] complaint" and that the allegations in the complaint "do not plead a complete impossibility defense to [the breach of contract] claim." Id. at 1219. In the instant case, the Court correctly rejected Plaintiffs' efforts to read into the Contracts some sort of an "impossibility" standard, and Plaintiffs' repetition of these same arguments in their Motion should be rejected.

In summary, the cases Plaintiffs now rely upon do not support their position. The Court's conclusion that Plaintiffs bear the burden of showing a breach of these Contracts is supported by the relevant facts and applicable law. Plaintiffs' Motion offers no new argument in this regard and, therefore, should be denied.

C. The Court Properly Considered and Rejected Plaintiffs' Argument that the Court Should Have Made a Negative Inference from Non-Testifying Witnesses

Plaintiffs' breach of contract claim fails because they declined to introduce sufficient evidence to show that the contracting officer's decisions were improper. Plaintiffs now seek to overcome that failure of proof by repeating their argument that the Court improperly inferred that testimony of Reclamation employees, who both sides decided to not call as trial witnesses, would have testified favorably to Defendant and unfavorably to Plaintiffs. See Pls.' Mot. at 13. This mirrors the same argument Plaintiffs' counsel made in closing argument and therefore is not proper grounds for reconsideration. As the Court correctly held, Plaintiffs' argument fails because it continues to confuse the burden of proof involved in this case. In addition, Plaintiffs' contention misconstrues the Court's ruling and is based on an improper analysis of the "uncalled witness rule."

1. Defendant Was Not Required to Call Witnesses to Rebut Issues on Which Plaintiffs Introduced No Evidence and Failed to Meet Their Burden of Proof

Plaintiffs contend that the Court erred in its analysis of the parties' mutual decision not to call certain witnesses, whom both parties had listed on their witness lists, by applying "an adverse inference against Plaintiffs, and a positive inference in Defendant's favor." Pls.' Mot. at 18. First, although the Court properly declined to draw an inference adverse against Defendant, the Court's ruling on this issue goes no further. Contrary to Plaintiffs' assertion, the Court did not explicitly or implicitly draw an inference in Defendant's favor or draw an inference adverse to Plaintiffs. See Decision, slip. op. at 72-73.

Second, the Court's decision not to draw an inference adverse to Defendant was based on a correct interpretation of the "uncalled-witness rule" and was well within the Court's discretion. The "uncalled-witness rule" provides that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Graves v. United States, 150 U.S. 118, 121 (1893). However, a court should not draw an inference adverse to a defendant unless the plaintiff has made out a *prima facie* case on the element or issue that would be elucidated by the testimony of the uncalled witnesses. Thus, in Chicago College of Osteopathic Medicine v. George A. Fuller Co., the court declined to draw an inference adverse to the defendant for its decision to not call certain witnesses where the plaintiff had failed to establish a *prima facie* case. 719 F.2d 1335, 1352-53 (7th Cir. 1983).

Here, as the Court correctly held, Plaintiffs failed to present any evidence about the reasonableness of Reclamation's New Melones operations or the reasonableness of

Reclamation's allocation decisions: "Although plaintiffs called and examined several Reclamation employees, and posed questions regarding operational decisions to them, they did not elicit testimony regarding the operational parameters within which decisions were made." Decision, slip. op. at 73 (emphasis added). Since Plaintiffs offered no evidence about the reasonableness of Reclamation's decisions in their case-in-chief, Defendant had no cause to respond to or rebut the issue in its defense. Had Plaintiffs challenged the allocation decisions, certainly Defendant could have and would have responded to such an argument. Under these circumstances, the Court was correct in concluding that there were no grounds to apply a negative inference about the non-testifying witness' testimony.

Third, the application of the uncalled-witness rule advanced by Plaintiffs is premised on an overly narrow interpretation of the question of whether a witness is only "available" to one party. The Court's more pragmatic application of the rule in this case is fully supported by case law and the rules of civil procedure and evidence which govern this case. For example, in the Chicago College case that Plaintiffs rely on, the court declined to find that a witness was unavailable to the plaintiff where the plaintiff had listed the witness as someone it intended to call at trial and then decided not to call the witness. 719 F.2d at 1354. Under these circumstances – which are identical to the circumstances present here – the trial court "considered it unfair for a plaintiff to list a witness he plans to call, then decide not to call the witness, electing instead to argue to the jurors that the defendant's failure to call the witness indicates that the witness would have given testimony detrimental to the defendant's position." Id. at 1354 n.30.

The Court's pragmatic application of the uncalled-witness rule is also consistent with

modern trial practice under which "[a] litigant may use modern discovery procedures to ascertain the identity and proposed testimony of witnesses identified with her opponent." Herbert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1048 (5th Cir. 1990). Current rules also provide ample tools to assist litigants who wish to call hostile or adverse witnesses as part of their case-in-chief, including the ability to use leading questions under Fed. R. Evid. 611(c), a tool that Plaintiffs used in this case when they called former Reclamation employee Lowell Ploss as a witness. See Tr. 945-83.[5] The question of whether a witness is "unavailable" to a litigant at trial or "controlled" by one party is necessarily informed by these rules.[6] Here, the Court correctly noted that both parties had listed the same witnesses on their witness lists and that Plaintiffs had the opportunity to call these witnesses as part of their case-in-chief.[7] Under these circumstances,

---

[5] Rather than questioning Mr. Ploss about any allocation decisions, however, Plaintiffs instead focused on tangential issues that failed to satisfy their burden of proof. See, e.g., Tr. at 945 (discussing Plaintiffs' unproven argument that Reclamation should have pumped water from San Luis Reservoir back into the San Joaquin River to address salinity issues at Vernalis); Tr. at 958 (discussing Plaintiffs' unsupportable theory that Reclamation was somehow obligated to provide an identical percentage of full allotment to all CVP contractors); Tr. at 975 (discussing various legal interpretations of certain aspects of CVPIA); Tr. at 979 (discussing Plaintiffs' unproven argument that Reclamation should have used water from Friant Dam to address salinity issues at Vernalis); Tr. at 1013 (discussing whether Reclamation had purchased water for environmental purposes on the Stanislaus River). In cross examination, government counsel addressed the issues that Plaintiffs' counsel had made on direct. E.g., Tr. at 987-1015.

[6] The nature of modern trial practice and the rules governing that practice led the Fifth Circuit to "conclude that the uncalled-witness rule has no place in federal trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure." Herbert, 911 F.2d at 1047. Although the Court in this case did not reject the rule as archaic, its application of the rule was properly done in the context of the modern rules that governed discovery in this case and the presentation of evidence at trial.

[7] Plaintiffs' curious argument that the uncalled witnesses were listed as "potential rebuttal witness[es]," Pls.' Mot. at 16, is not supported by Plaintiffs' own Witness List. See Docket No. 111.

the Court's determination that no adverse inference was warranted from the parties' mutual decision not to call certain witnesses was proper.

2. Mr. Dotan's Testimony Does Not Justify an Adverse Inference

Plaintiffs further argue that Mr. Dotan's testimony somehow shifted the burden of proof to the United States, or otherwise required the Court to apply an adverse inference against Defendant. See Pls.' Mot. at 17; see also Tr. at 2020 (Plaintiffs' closing argument, stating "[a]nd, therefore, we think that the Court can simply decide this case strictly on the basis of Mr. Dotan's determination."). The Court correctly understood that Mr. Dotan's analysis was mere post hoc mathematical manipulation of historic data. The Court's characterization of Mr. Dotan's testimony is clearly correct, and Plaintiffs' argument misconstrues the limited nature of that testimony. As the Decision notes, Mr. Dotan conceded: "I said, in my expert report, I did not express any opinion about how the reservoir should have been operated." Decision, slip. op. at 70 (quoting Tr. at 939). Given the limited purpose for which Mr. Dotan's testimony was offered and accepted, the Court correctly concluded the following: "While Mr. Dotan's report enables a greater understanding of the potential for delivery of full contract amounts of water to the Contracting Parties in hindsight, the lack of real-time consideration of operational factors renders his opinion speculative." Decision, slip. op. at 71; see also Decision, slip. op. at 72 ("The inability of Mr. Dotan's model to take into account operational decision-making precludes the court from finding liability for unreasonable operational decisions based on the expert testimony and model alone."). The Court, therefore, correctly concluded that Mr. Dotan's testimony was of no import to the question of whether Reclamation made reasonable operational decisions or whether the United States is liable in this matter.

Although Plaintiffs' counsel offered no explanation for their decision not to call certain witnesses on their own witness list, Plaintiffs now seek to convince the Court that the government's decision to not call those same witnesses to respond to an argument Plaintiffs did not raise somehow proves Plaintiffs' breach of contract case. This is the same argument Plaintiffs' counsel made during Plaintiffs' closing argument at trial. See Tr. at 2018-19. In its closing argument, Defendant offered a reasonable response, clearly explaining that its decision was based only on a desire to respond to Plaintiffs' case-in-chief, and for no other reason. See Tr. at 2079-80 ("Because Plaintiffs did not present the testimony of these operational decisions . . . there was no reason for the Defendant to call these witnesses during defense because there was nothing to rebut."). The Court understood the parties' respective arguments on this issue and considered whether an adverse inference was warranted. Ultimately, the Court's Decision was based on the evidence actually presented by the parties rather than inferences that could have been drawn from the fact that both sides only called some of the witnesses identified on their respective witness lists. There is nothing erroneous about the Court's approach. The Court's Decision is based on a correct interpretation of the law, is fully supported by the factual record, and should not be reconsidered.

D. Plaintiffs' "Year-by-Year Review of Operational Evidence" Merely Repeats Their Earlier Arguments and Does Not Support Their Motion for Reconsideration

Plaintiffs' "Year-by-Year Review of Operational Evidence," Pls.' Mot. at 18-28, does not reveal any clearly erroneous factual or legal findings by the Court. The Court's findings are supported by testimony and documents presented at trial and the applicable law and Plaintiffs' arguments do not support their Motion. As discussed below, Plaintiffs' argument in this section of their Motion should be rejected because it is premised on a flawed interpretation of the

Contracts and a flawed understanding of the appropriate burden of proof.

**<u>1994</u>**

Regarding 1994, Plaintiffs claim that "[n]o reasonable fact finder could find that Reclamation's" allocation decision for water year 1994 was reasonable. Pls.' Mot. at 21. As elsewhere in their Motion, Plaintiffs' discussion at page 21 of their Motion truncates the actual language of Article 9 to "beyond the control," omitting the language "in the opinion of the contracting officer," which clearly is an important part of the Court's analysis.

The trial record amply supports the Court's conclusion that Reclamation validly invoked the contracts' Article 9(b) shortage provision in 1994. <u>See</u> Decision, slip. op. at 66. As Reclamation noted in its announcement, 1994 was "California's fourth driest year in 85 years." DX-276; <u>see</u> <u>also</u> JX-28 (stipulation showing that 1994 was a critically dry year and that New Melones Reservoir ended the calendar year at 425,000 acre-feet); Decision, slip. op. at 65-66 (noting that Central's counsel, Reid Roberts, agreed that Reclamation was entitled to invoke the shortage provision in drought years). Plaintiffs offered no evidence to support an argument that the contracting officer's decision was unreasonable, and the Court was correct to reject Plaintiffs' claim. Plaintiffs, therefore, have failed to show that the Court's Decision regarding 1994 is clearly erroneous.

**<u>1995</u>**

Regarding 1995, Plaintiffs challenge the Court's factual finding that:

> In 1995 Reclamation anticipated, upon review of the prevailing conditions at the time, that the lesser recovery of snowpack for the New Melones Reservoir would result in a reduced allocation to ensure sufficient water for environmental and other in-basin purposes. This determination was supported by observation of snowpack amounts built up over the winter, indicating a dry year for the New Melones Reservoir.

Pls.' Mot. at 23 (quoting Decision, slip. op. at 66). The challenged statement is directly supported by Reclamation's 1995 allocation decisions, which were communicated to Plaintiffs in February, April, and August 1995. See PX-115, PX-120, PX-141. As the February and April decisions state, although water supply conditions for the CVP generally are greatly improved over the preceding year, "[s]torage in New Melones Reservoir on the Stanislaus River has not recovered to the same extent as at other CVP reservoirs." PX-115 at SE05896; PX-121 at SE05904. On December 31, 1994, for example, there was only 425,000 acre-feet of water in New Melones Reservoir, approximately 17% of capacity. See JX-28. The Court's statement, therefore, is plainly correct.

Plaintiffs offered no evidence to challenge the contracting officer's determination. Plaintiffs therefore have failed to show that the Court's Decision regarding 1995 is clearly erroneous.

**1997 and 1998**

Plaintiffs concede that the years 1997 and 1998 are covered by the Court's finding that Plaintiffs agreed to the amounts in the Interim Plan of Operations for these years and that this finding is not clearly erroneous. Plaintiffs argue in a separate motion that the Court's finding should not have been made pursuant to Article 3(h) of the Contracts. Defendant will respond to that argument in its Response to Plaintiffs' Motion to Amend or Modify Decision, which Defendant will file separately.

**1999 - 2004**

Plaintiffs' arguments are essentially identical for each year between 1999 and 2004. See Pls.' Mot. at 24-28. In regard to these years, Plaintiffs first challenge the Court's legal conclusion:

> Based on the records of communication between the parties, the annual announcement of snowpack and forecast conditions reported by Reclamation as discussed above, and the analyses of hydrologic conditions that accompanied the eventual allocations, this court finds that plaintiffs have not proven that a reduction from the Build-Up Schedule between 1993 and 2004 was made in violation of Article 12(d).

Decision, slip. op. at 69. Plaintiffs argue that the Court's statement is erroneous because it is based solely on Mr. Patterson's testimony. See Pls.' Mot. at 26, 28. The Court's Decision belies Plaintiffs' assertion. As discussed elsewhere in this Response, the Court's finding that Article 12(d) was not violated is based upon many factors, including communications between the parties, annual forecasts, and the analyses of hydrologic conditions that supported the final allocation decisions. Plaintiffs' characterization of the basis of the Court's conclusions cannot be sustained.

For each of these years, Plaintiffs argue that the Court should have held that the contracting officer's decisions were per se unreasonable. As with all of the challenged years, Plaintiffs offered no trial evidence to challenge any decision made by the contracting officer. Since Plaintiffs failed to offer sufficient evidence to prove their breach of contract claim, their Motion should be denied.

In summary, the Court appropriately considered the trial record and the parties' arguments. Plaintiffs' characterization of the record is based on flawed assumptions about the burden of proof and cannot support reconsideration of the Court's Decision.

III. Conclusion

For the reasons set forth above, the Court's Decision is fully supported by the law and the facts. Plaintiffs offer no grounds to support a motion for reconsideration and their motion should therefore be denied.[8/]

Respectfully submitted this 27th day of March, 2007,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment & Natural Resources Division

_/s/ William J. Shapiro_______________
WILLIAM J. SHAPIRO
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
501 I Street
Suite 9-700
Sacramento, CA 95814
TEL: (916) 930-2207
FAX: (916) 930-2210

KRISTINE S. TARDIFF
United States Department of Justice Environment & Natural Resources Division
53 Pleasant Street, 4th Floor
Concord, NH 03301

---

[8/] In a motion made March 20, 2007, Plaintiffs sought leave to file a Reply Memorandum to this Response. Plaintiffs' position is set forth fully in their Motion. Plaintiffs' continued disagreement with the Court's Decision and repetition of these same arguments should be addressed, if at all, on appeal, not in a reply memorandum. Defendant therefore opposes Plaintiffs' request.

LUTHER L. HAJEK
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 663
Washington, DC 20044-0663
Attorneys for Defendant United States

Of Counsel:

SHELLY RANDEL
United States Department of the Interior
Office of the Solicitor
Branch of Water and Power
Division of Land and Water Resources
1849 C St., N.W.
Washington, DC

JAMES E. TURNER
Assistant Regional Solicitor
United States Department of the Interior
Office of the Regional Solicitor
Pacific Southwest Region
2800 Cottage Way, Room E-1712
Sacramento, CA 95825