**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, et al., Plaintiffs, | ) | No. 04-541 L |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES, Defendant. | ) | |

**PLAINTIFFS' REPLY BRIEF ON MOTION FOR RECONSIDERATION**

Respectfully submitted,

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: April 6, 2007

Counsel for Plaintiffs

Of Counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)

**<u>PLAINTIFFS' REPLY BRIEF ON MOTION FOR RECONSIDERATION</u>**

On February 21, 2007, this Court entered final judgment in favor of Defendant, and on March 7, 2007, Plaintiffs filed a Motion for Reconsideration. Defendant opposed Plaintiffs' Motion, and in a footnote, asked the Court to reconsider its holding that in order to assert the sovereign acts doctrine, Defendant must demonstrate that performance was impossible because of the sovereign act. *See* Def.'s Br. at 11 n.4. The Court ordered Plaintiffs to file a limited reply brief addressing Defendant's request that the Court reconsider its analysis regarding the sovereign acts doctrine and instead apply the rule allegedly applied in *Klamath Irrigation Dist. v. United States*, No. 01-591, slip op. (Fed. Cl. March 16, 2007) ("*Klamath*"). The Court should deny Defendant's request for at least four reasons:

- The "causation in fact" component of the sovereign acts doctrine requires a different result here than in *Klamath*. The *Klamath* Court found that the United States was compelled by statute and court orders to allocate water in the reservoir for fish, which left none available for the plaintiffs. In this case there is no similar statute and no court orders.

- The *Klamath* Court expressly stated that in a case where the law imbues an agency with substantial discretion, such as the CVPIA, the focus may have to include not only what the law demands, but how it is applied.

- The *Klamath* Court's discussion of common law impossibility is consistent with this Court's holding, as it relates to whether certain contract provisions unmistakably relinquished the government's right to legislate—a point neither argued nor decided in this case.

- The request is untimely, not having been filed within the ten days following final judgment allowed by Rule 59(b).

**ARGUMENT**

*Klamath* reaffirms that the sovereign acts doctrine requires "causation in fact"—that "there be a causal connection between the sovereign act and the interference that brought about the nonperformance of the contract." *Klamath*, slip op. at 15, 16. As a result, the *Klamath* Court

focused on the mandatory requirements of the ESA and court orders compelling the Bureau of Reclamation to curtail water deliveries ("[T]he critical focus here must be on the extent to which the ESA compelled the agency to act." *Klamath*, slip op. at 17), concluding that the United States was *compelled* by court order and the ESA not just to dedicate water to fish, but also *to reduce water deliveries to the plaintiffs* in 2001. *Id.* at 12 ("Accordingly, in 2000 and 2001, the Bureau was caught in a crossfire of lawsuits, sued [by] both parties seeking to preclude and to compel the release of irrigation water. The former won out, as the courts concluded that the ESA compelled the Bureau to reduce irrigation deliveries in 2001."). Simply put, the ESA compelled the United States to provide what little water was available to fish and none to irrigators.

This case involved a different statute and different circumstances. Certainly, unlike *Klamath*, no one here asserted that CVPIA compelled Reclamation to withhold the only available New Melones water from Plaintiffs, and give it to fish. Rather, the parties disputed whether CVPIA compelled the release of any water from New Melones at all. Plaintiffs argued that, consistent with the holding of the Ninth Circuit Court of Appeals, "[n]othing in the [CVPIA] requires the Bureau to take water from the New Melones Reservoir, as opposed to the many other Central Valley Project reservoirs." *Central Delta Water Agency v. Bureau of Reclamation* 452 F.3d 1021, 1023 (9th Cir. 2006). This Court has not overturned that holding, nor should it.

Further, even if this Court were to find that CVPIA *compelled some release* of water from New Melones, it did not and cannot find that these releases used all of the available water, and hence *compelled the non-delivery* to Plaintiffs in *each year* from 1993 through 2004—the two concepts are not synonymous. Even after Reclamation's use of New Melones water for CVPIA and other purposes, additional water remained in storage. In fact, there was so much water in storage that the reservoir remained near the flood control curve for five years (end of 1995 through 2000). *See* PX 321 at page 25, Figure 10; JX 28. The fact that the available water

was not delivered resulted directly from Reclamation's discretionary *choice* to hold it in storage, a discretionary choice not compelled by the CVPIA. *See* February 20, 2007 Decision at 72–73 (noting carry-over storage target as an operational decision).

This Court cannot hold that CVPIA compelled Reclamation's choice to operate at high carry-over storage levels without directly contradicting Judge Wanger and the Ninth Circuit's holding in the "B2 Accounting" litigation. Judge Wanger specifically held that CVPIA allows the U.S. Fish and Wildlife Service to dedicate only 800,000 acre-feet of CVP yield to fish annually—no "more or less." *San Luis & Delta-Mendota Water Auth. v. United States,* No. 97-6140, slip op. at 42–43 (E.D. Cal. Oct. 19, 2001). The Ninth Circuit affirmed. *Bay Institute of San Francisco v. United States,* 87 F. App'x 637, 639 (9th Cir. 2004). The parties here stipulated to the amounts of water dedicated to CVPIA from New Melones each year in Joint Exhibit 28. This chart illustrates that Fish and Wildlife Service did not count any of the water left in storage as CVPIA(b)(2) water—nor could they as this would have caused the 800,000 acre-foot CVP annual limit in Section 3406(b)(2) to be exceeded. Thus, for the years at issue in this case, Reclamation's decision to hold water in storage, instead of delivering it, was not only *not compelled* by CVPIA, it was *not even an authorized use* of water under the statute.

Second, the *Klamath* Court recognized that its analysis may not apply to laws, such as the CVPIA, granting an agency substantial discretion. *Klamath,* slip op. at 18. The *Klamath* Court found it made little sense to focus on the individual application of the law if a statute such as the ESA left an agency with little alternative but to deny water. *Id.* at 17. Here, however, because the CVPIA left compliance with section 3406(b)(2) entirely to the agency, the Court's analysis must not only include what the law demands, but also how the law is applied. *Id.* at 18.

Third, *Klamath* does not shield the United States from liability when the statute at issue *does not* prevent it from performing its contractual duties. The *Klamath* Court expressly held

that the ESA prevented Reclamation from delivering water to the plaintiffs (*Klamath*, slip op. at 12) and its discussion of common law impossibility is limited to the interaction of that rule with the "unmistakability" doctrine:

> [U]nless the contract, in unmistakable terms, precludes the government from escaping liability for its sovereign acts, then the parties are presumed to have reserved to the United States the right to perform such acts without incurring liability. Viewed in this fashion, the sovereign act and unmistakability doctrines intertwine to create a "double helix" of contract interpretation applicable only to sovereign entities . . . .
>
> * * *
>
> Such an approach, moreover, raises serious interaction questions involving the common law impossibility defense and the unmistakability doctrine. Both concepts concern whether the parties anticipated that certain actions would render performance impracticable, but approach that issue with diametrically different presumptions: the unmistakability doctrine proceeds from the notion that, absent clear indication otherwise, the government reserves its sovereign powers, while at least the common-law version of the impossibility defense proceeds from the reverse assumption, that is, that unless the government can show otherwise, its sovereign powers were relinquished. These two approaches cannot peacefully coexist where a contract anticipates that there will be some situations of government nonperformance, but does not absolve the government entirely of liability for every sovereign act. Under the traditional sovereign acts defense, the fact, for example, that the parties here undoubtedly did not consider the possibility of the passage of the ESA or a like statute is irrelevant. Under the common law impossibility test, however, the fact that the parties allocated some risks in the water shortage clauses seemingly would preclude invocation of the broader sovereign acts doctrine.

*Id.* at 23–24. Because unmistakability was not an issue in this case, as it was in *Klamath*, the *Klamath* decision sheds no light on how this case should be decided, and provides no ground for this Court to reverse its decision on sovereign acts.

Finally, Defendant's request that this Court reconsider its decision with regard to the sovereign acts doctrine is untimely. The Court entered judgment on February 21, 2007; Defendant filed its Response to Plaintiffs' Motion for Reconsideration 34 days after entry of judgment, on March 27, 2007. Because Defendant's Response (arguing that "the Court's discussion applies the wrong legal standard") regarding Defendant's sovereign act defense was

filed after the time period in which Defendant could file a motion for reconsideration, Defendant may not argue for reconsideration of the Court's judgment. Rule 59(b) of the Rules of the Court of Federal Claims (RCFC) provides a ten-day limit for filing a motion for reconsideration. Under RCFC 6(b), the Court does not have discretion to extend the ten-day limit. Accordingly, if Defendant wished to have the Court reconsider its sovereign acts doctrine analysis, it had to so move by March 7, 2007. As it did not, it cannot now seek to defeat Plaintiffs' motion by requesting that the Court reconsider a portion of the Court's opinion.

**CONCLUSION**

For the foregoing reasons, Defendant's request for modification of this Court's decision should be denied.

Respectfully submitted,

s/ Roger J. Marzulla
Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: April 6, 2007

Of Counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)