IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, et al., | ) | |
| Plaintiffs, | ) | No. 04-541 L |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO MODIFY OR AMEND DECISION**

Plaintiffs brought their motion to amend or modify this Court's decision to permit the Court to correct factual errors and confusing dicta, *without* changing the Court's decision. Defendant's response agrees with many of the factual corrections. Yet, for those items that Defendant realizes are wrong, but which it likes, it argues that they should remain in the decision uncorrected. Plaintiffs are confident that regardless of a disagreement about the law, this Court shares Plaintiffs desire to ensure that its published opinions are factually accurate and avoid unintended dicta.

Plaintiffs also stress the importance of an amendment to the decision regarding the Court's comments about Plaintiffs' takings claim, which was not tried and which the parties and the Court previously agreed would not be decided at this stage.

**A. The Court Should Clarify Its Holding Regarding Article 3(h)**

Defendant agrees that the Court can avoid an incorrect legal analysis of Section 3(h) of the contracts by simply using traditional accord and satisfaction principles to support its holding with respect to years 1997 and 1998. Plaintiffs respectfully request that the Court do so to

eliminate this issue on appeal and save substantial time and resources for the parties and the judicial system.

**B. Factual Errors**

Defendant agrees with Items No. 1, 2, 3, 9, 13, and 20. Plaintiffs respectfully request that the Court make the suggested corrections.

Defendant quibbles with the remaining items, saying they are immaterial, that Defendant "reads" them differently than Plaintiffs. Many of these items will cause this Court to issue an opinion that is both factually wrong and in conflict with existing precedent from the Ninth Circuit Court of Appeals. These important factors are sufficient for the Court to at least clarify its language to avoid confusion. Plaintiffs address each disputed item below.

**4. "The over commitment of New Melones Reservoir in spite of low inflow rates required Reclamation to make operational decisions regarding the allotment of scarce surface water resources." Decision at 25.**

Plaintiffs explained that this was an overstatement because the only years in the relevant time period when inflows were "low" were 1993, 1994, 2003 and 2004. The only years in which water was "scarce" were 1993 and 1994, when low inflows coincided with low storage conditions. JX 28. Defendant, in turn, argues that one general statement about New Melones being "over-committed"—outside of the context of any particular year or any particular set of hydrologic conditions—supports the Court's overstatement for all of the 12 years in dispute. PX 131. Respectfully, one such statement, made in June of 1995, *before the next nine years* of disputed performance in which conditions were wetter and the reservoir was very full, cannot, as a matter of law, support a characterization of the "low inflow rates" and "scarce" resources for the bulk of the time period at issue in this case. Plaintiffs request that the Court conform its opinion to the evidence.

**5. "The CVPIA made substantial changes to the operation of the New Melones Reservoir by imposing requirements upon Reclamation regarding allocation of water, particularly for environmental purpose." Decision at 25.**

Plaintiffs offered that the Court could state "CVPIA required substantial changes to operation of the CVP," or "as a result of CVPIA, Reclamation chose to made additional releases from New Melones for fishery purposes" instead of stating that CVPIA changed New Melones. Plaintiffs did so to avoid a conflict between this Court's opinion and the Ninth Circuit precedent in *Central Delta Water Agency v. Bureau of Reclamation* 452 F.3d 1021, 1023 (9th Cir. 2006) ("While nothing in the Act requires that the Bureau use New Melones water for its § 3406(b)(2) releases, the Bureau exercised its discretion to use that water."). Defendant apparently wants this Court's decision to conflict with the Ninth Circuit. This is unnecessary and should be avoided. The Secretary of the Interior governs the Fish and Wildlife Service, as well as the Bureau of Reclamation. Thus, any argument that Fish and Wildlife Service compelled the Secretary's actions is unavailing.

**6. "Consequently, enactment of the CVPIA in 1993 modified the priorities for which the water use at the New Melones Reservoir was to be allocated to make 'fish and wildlife mitigation, protection and restoration" equivalent to irrigation and domestic uses. This change required Reclamation to alter the manner in which it made operational decisions regarding the allocation of water to the Contracting Parties pursuant to the 1983 Contracts." Decision at 26.**

Plaintiffs asked the Court to clarify only that the change of CVP priorities imposed by CVPIA did not *require* Reclamation to alter the manner in which it made allocations of water from New Melones. *See* JX 25 (CVPIA, § 3406(b)(2)). Defendant has not pointed to any law or evidence to the contrary. Therefore, the Court should clarify the statement as Plaintiffs requested.

**7. "The CVPIA made additional alterations to the fishery flow requirements at the New Melones Reservoir." Decision at 27.**

Plaintiffs asked only that the Court clarify that the CVPIA did not impose any changes to fishery flow requirements at New Melones Reservoir. Tr. at 970:16–18 (Testimony of Lowell Ploss). Pursuant to CVPIA, Reclamation exercised its discretion to prescribe additional flows from New Melones for fish. *See* JX 25 (CVPIA, § 3406(b)(2)); *Central Delta Water Agency v. Bureau of Reclamation* 452 F.3d 1021, 1023 (9th Cir. 2006) ("While nothing in the Act requires that the Bureau use New Melones water for its § 3406(b)(2) releases, the Bureau exercised its discretion to use that water."). Defendant asks this Court to contradict the Ninth Circuit and hold otherwise. Plaintiffs respectfully request that this Court avoid this unnecessary conflict.

**8. "The Bay-Delta Accord imposed a number of constraints upon the operation of the CVP, which included various provisions that directly impacted the operation of the New Melones Reservoir." Decision at 28.**

Plaintiffs asked the Court to clarify that it was not the Bay-Delta Accord that constrained New Melones, but rather Reclamation's voluntary choice to use New Melones water to meet general commitments it made in the Accord. Tr. at 981–983; PX 112. Defendant argues that the fact that the Bay-Delta Accord indirectly impacted New Melones supports the Court's use of the term "imposed a number of constraints." Respectfully, language is an art and precision is a goal. The Court should avoid overstatements whenever possible.

**10. "In 1988 the State Water Control Board modified the salinity standard imposed upon Reclamation in Decision 1422 . . . ." Decision at 31.**

Defendant agrees that Decision 1616 in 1988 did not modify or change the salinity standard imposed in Decision 1422, but argues that new language indicating that consumptive use releases could not be made unless the standard was met support the Court's incorrect language. Defendant is wrong. Consumptive uses are a permitted use, like storage. After

Decision 1422, neither storage nor consumptive use was allowed unless the salinity standard was met—Decision 1616 did not "modify" this at all.

**11. "During the period between 1988 and 1992, no water was delivered to the Contracting Parties from the New Melones Reservoir due to drought conditions, and the Contracting Parties submitted no schedules." Decision at 33.**

Plaintiffs noted that this was an incorrect statement unsupported by any evidence at trial. No water was delivered to the Contracting Parties from New Melones Reservoir from 1988 to 1992 because Plaintiffs requested no water and were still building the conveyance facilities required to take water, as provided by the contract. These facilities were not completed until 1993. Tr. at 415-419. Defendant cites numerous places in the record that confirm a drought. This is undisputed, but the fact remains that the Court's statement that "water was not delivered . . . due to drought" is incorrect. This causal link is wrong and should be removed from the opinion.

**12. "Central and Stockton East submitted their water conservation plans in December 1993 to Reclamation." Decision at 36.**

Plaintiffs asked the Court to correct its opinion to reflect that Stockton East submitted its required water conservation plan to Reclamation in 1986, and again in 1993. Central submitted its first plan in 1993. Tr. at 458; PX 44; PX 85. Defendant agrees that these are the facts, but implies that the submitted plans differed. There is nothing in the record to indicate that difference is material. Regardless, the Court can and should state the true facts.

**14. "According to Roger K. Patterson, who was Regional Director of the Mid-Pacific Region for Reclamation, the Central Valley Operations Office, which he headed, was in charge of actual day-to-day operations of the CVP." Decision at 60.**

Plaintiffs asked the Court to correct this statement to reflect that Mr. Patterson, as Regional Director, had jurisdiction over the Central Valley Office, but that the Central Valley Office was actually headed by Donald Paff in 1991, Lowell Ploss until 2000 and Chester

Bowling from 2000 through 2004. These gentlemen, and their staff at the Central Valley Operations Office, dealt with the day-to-day operations of New Melones, which Mr. Patterson was not involved with. Tr. at 947, 1636-37. Defendant agrees that these are the facts, but desires that the Court maintain the incorrect statement in its opinion. The Court should correct the statement.

**15. "In 1995 Reclamation anticipated, upon review of prevailing conditions at the time, that the lesser recovery of snowpack for the New Melones Reservoir would result in a reduced allocation to ensure sufficient water for environmental and other in-basin purposes. This determination was supported by observation of snowpack amounts built up over the winter, indicating a dry year for the New Melones Reservoir." Dec. at 66.**

This item is the most glaring factual error in the Court's opinion and should be seriously reviewed by the Court.

There is absolutely NO EVIDENCE of "lesser recovery of snowpack" or "dry" conditions at New Melones in 1995—in fact the opposite is true. Reclamation's 1995 allocation press release stated: "extremely high snowpack to produce runoff to CVP reservoirs" and 1995 was projected to be a "wet" year type. PX 115. The Court should review each item of evidence cited by Defendant and will see that NONE support the Court's statement. The most that can be said for 1995 is that at the start of the year, New Melones storage had not recovered to the same extent as other reservoirs. However, by mid-1995, the reservoir had fully recovered and was at the flood control curve. PX 115; PX 121; JX 28; PX 321 at 25, Figure 10.

**16. "Mr. Patterson testified that the forecast process involved 'an analytical process of really looking at what is available and what is anticipated to be available as far as water supply each year,' and confirmed the details. Tr. at 1571." Decision at 60.**

Plaintiffs asked the Court to remove the statement, "confirmed the details," because he did not. Tr. at 1570–72. Defendant does not point to any detailed testimony from Mr. Patterson and is content with the Court's misstatement. Instead, it points to the allocation press releases,

which do not discuss the forecasting process in detail at all, but merely announce the forecasted year type and the allocation. The Court should make the requested correction.

**17. "Even when no formal announcement of shortage is issued, a record of Reclamation's decision-making process was made available to the Contracting Parties in years during which they received water allocation reductions." Decision at 60-61.**

See below, No. 18.

**18. "Such information, if made available to the Secretary, is sufficient to base a review of the water reduction decisions made by Reclamation." Decision at 61.**

Plaintiffs remain at a complete loss as to where this "record of decision making process" is located in the evidence in this case. Plaintiffs know the ultimate allocation decision, but have no idea how it was derived—there is no record of the process each year. Defendant points only to the summary press releases—but again, these only tell the ultimate decision reached—they do not explain the process. The Court should clarify its opinion and explain the evidence that supports its purported factual finding, if it exists.

**19. The Build-Up Schedule set forth on pages 67–68 of the Decision contains a typographical error and requires some clarification.**

Plaintiffs respectfully urge the Court to address this important error. The Court sets forth the build-up amounts from the two contracts on pages 67–68 of its Decision and characterizes them as "annual minimum purchase and supply" amounts. The chart contains an error in the Central column for years 1999-2004. These amounts should be 80,000 acre-feet rather than 56,000 pursuant to Article (3)(c)(3). The Court has not provided any explanation for limiting Central to 56,000 acre-feet and we assume this is a typographical error.

Also, the Court specifically found the IPO did not trigger the Build-Up Schedule provisions of Articles 3 and 5 of the contracts. Decision at 54. Because the parties need to continue to function under this contract, Plaintiffs desire some clarification in the Court's

holding with respect to the Build-Up Schedule. Plaintiffs understood that any affirmative requirements on Plaintiffs to pay for and use the amounts set forth in the Build-up Schedule have been waived by Reclamation, or at least held in abeyance, since Reclamation decided to use the IPO and limit Plaintiffs ability to request and receive water under their contracts. *See* DX 369; DX 372. It appears that the Court agreed with Plaintiffs. Plaintiffs request that the Court amend the Decision to state this finding expressly.

Defendant unbelievably argues that the Court should actually revise its decision to apply the same error to the Stockton East side of the build-up chart to reflect that neither district scheduled the maximum quantity in 1999 and, therefore, permanently restricted its contractual entitlement. The Court appears to have rejected this argument, but Plaintiffs need clarification one way or the other so that Plaintiffs can either avoid it or pursue it on appeal.

**21. "Following the IPO's two-year modification of the 1983 Contracts, Reclamation discharged its obligation to meet the schedules provided by the Contracting Parties in all years." Decision at 65.**

The evidence at trial indicated that the Plaintiffs did not use schedules after 1998 to request water under their contract, but rather only to indicate how they would take the limited supplies made available by Reclamation. The Court's statement that "Reclamation discharged its obligation to meet the schedules provided by the Contracting Parties in all years" is unclear in that it presumes there were schedules, which there were not. Defendant offers nothing to clarify the language. Plaintiffs request for clarification stands.

**22. "For example, Mr. Ploss explained that Reclamation chose not to release water from other sources to fulfill fishery needs because releases from other CVP contractors would have required their cooperation." Decision at 75.**

Plaintiffs' motion pointed out that the Court's statement used its own words, not Mr. Ploss' words, and apparently ignored Mr. Ploss' explanation on cross examination. Tr. at 1004–

1011. Defendant argues that the fact that another contractor would have potentially sued Reclamation was cause enough to fail to deliver to these Plaintiffs, even if Mr. Ploss' testimony is not actually what the Court said it was in its opinion. Respectfully, the threat of litigation from another contractor, when Reclamation admits that nothing in the other contract prohibits its action, is an unreasonable operational decision making tool under any standard. Further, it does not change the fact that the Court has a factual error in its opinion that should be corrected. The opinion should state the facts, not untruths that Defendant deems are functionally equivalent.

> **23. "Pumping at the delta for use by south-of-the-delta users, which includes residential use for the Los Angeles area, is not only the primary cause of salinity deposits that require releases from the New Melones Reservoir." Decision at 82.**

Plaintiffs explained that the Courts' reference to residential use in Los Angeles as connected to salinity is unsupported by the record. *See* JX 23 at 81–82 (Decision 1641). Defendant agrees, but still insists the Court should keep its incorrect statement in the opinion. The statement should be edited and corrected.

> **24. "Surface water has been leached from every damable river, which is made evident upon reviewing a map of the CVP. *See e.g.*, DX 219. As a consequence of the modification of the natural flow of every river that historically supported spawning of salmon in the CVP, the fish are being killed in the process of redirecting them to the river whence they came." Decision at 82.**

Plaintiffs asked the Court to correct this statement because the map referenced did not represent only the CVP and there is no evidence that fish are being killed in the process of redirecting them to rivers from whence they came. Defendant admits that Plaintiffs are correct, but again thinks the incorrect statement in the opinion should stand. It should not. The Court should correct its statement. A correct statement, supported by the record, is:

> "Surface water has been taken from most damable rivers in California, as shown on the map of CVP, SWP and private dam projects in the state. DX 219. As a consequence, the natural flow of many of the rivers that historically supported spawning of salmon has been modified and salmon numbers have declined."

**25. "As a consequence of the modification of the natural flow of every river that historically supported spawning of salmon in the CVP, the fish are being killed in the process of redirecting them to the river whence they came. For example, fishery releases from the New Melones reservoir have resulted in a net decrease in the number of fall-run Chinook salmon produced annually on the Stanislaus River. See DX 210 (computing average production of fall-run Chinook salmon between 1967-1991 as 10,868 and average between 1992-2005 since implementation of the CVPIA, as 7,540)." Decision at 82.**

Defendant admits that the Court's dictum has "little bearing on the contract issues in this case." Def.'s Br. at 19. It should be removed. But if it stays, it should be accurate. Defendant agrees that rather than stating the decline in fish numbers is a "result" of fishery releases, the decision should simply state that fish numbers have continued to decline despite fishery releases. Def.'s Br. at 19. The Court should make the correction.

### C. Confusing Dicta and the Takings Claim

In 1948, Justice Frankfurter explained: "Deliberate dicta, I had supposed, should be deliberately avoided. Especially should we avoid passing gratuitously on an important issue of public law where due consideration of it has been crowded out by complicated and elaborate issues that have to be decided." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 411 (1948). Respectfully, this Court should heed this advice and remove those sections of its opinion that are not related to the issues tried and decided, particularly its sparse discussion of numerous tangential cases and regulatory processes at the beginning of the opinion, and the Court's discussion of Plaintiffs' takings claim.

The Court's comments on Plaintiffs' takings claim are most troubling. This claim was not briefed or tried and this Court should not attempt to decide it in one paragraph, outside of the context of any discussion regarding its merits. Defendant now claims that the Court "resolved Plaintiffs' takings claim as a matter of law." Def.'s Br. at 20. This contradicts both Plaintiffs

and Defendant's pre-trial briefs, and the specific pre-trial direction from this Court to limit the trial to breach of contract issues.

In Plaintiffs' Memorandum of Contentions of Fact and Law, dated September 25, 2006 (less than one month prior to the trial), Plaintiffs stated in footnote 1: "The parties understand that Plaintiffs' takings claim is not a part of the upcoming October 23, 2006 trial, and that this Court has reserved consideration of the taking claim until after it rules on the breach of contract claim in this trial." Docket No. 109. Similarly, Defendant's Pretrial Memorandum of Contentions of Fact and Law, dated October 9, 2006, echoed this same understanding. In footnote 1, Defendant stated: "Plaintiffs also allege Fifth Amendment takings claims based on the same operative facts and for the same period of time. The takings claims are stayed pending resolution of the contract claims and are not at issue in the trial scheduled to begin on October 23, 2006." Docket No. 122. Further, this Court's opinion denying summary judgment specifically framed the breach of contract issues that were to be tried. *Stockton East Water Dist. v. United States*, 70 Fed. Cl. 515, 534–535 (2006).

For this Court, or Defendant, to now take the position that Plaintiffs' taking claims was decided in a trial that did not address it at all, and which was specifically framed as limited to the contract claims, is a shock and a violation of due process in and of itself.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in Plaintiffs' motion, the Court's opinion should be modified or amended.

Respectfully submitted,

s/ Roger J. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W.
Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Counsel for Plaintiffs

Dated: April 6, 2007

Of Counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)