**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, SAN JOAQUIN COUNTY, STOCKTON CITY, CALIFORNIA WATER SERVICE COMPANY, | ) | |
| Plaintiffs, | ) | No. 04-541 L |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING**
***CARABETTA ENTERPRISES, INC. v. UNITED STATES***

Pursuant to the Court's Order of April 16, 2007 (Doc. No. 174), Defendant submits this supplemental brief regarding the relevancy of Carabetta Enters., Inc. v. United States, 2007 WL 983837 (Fed. Cir. Apr. 4, 2007), to the application of the sovereign acts doctrine in this case.

The Court concluded that Defendant is not liable for a breach of contract and thus found it unnecessary to address the application of the sovereign acts doctrine. 75 Fed. Cl. 321, 372 (2007). Plaintiffs subsequently moved for reconsideration and Defendant responded. In its response, Defendant noted that the portion of this Court's decision addressing the sovereign acts defense, albeit dicta, appears to conflict with the recent decision in Klamath Irrigation Dist. v. United States, 2007 WL 853018 (Fed. Cl. Mar. 16, 2007), and that in the event of an appeal by Plaintiffs, the sovereign acts doctrine provides an alternative ground for affirming this Court's judgment. See Def.'s Opp'n to Pls.' Mot. for Recons. at 11 n.4 (Doc. No. 167). Plaintiffs thereafter filed a reply brief addressing Klamath and a notice of additional authority regarding

Carabetta. As discussed below, the application of the sovereign acts doctrine in Carabetta does not conflict with the Klamath court's detailed analysis of the proper scope of that doctrine. In addition, Carabetta is distinguishable from this case on the facts.

The Carabetta plaintiffs entered into a Repayment Agreement with the Department of Housing and Urban Development ("HUD") in 1994, pursuant to which HUD agreed to insure privately-funded equity loans under section 241(f) of the National Housing Act on certain properties. Carabetta, 2007 WL 983837, *2. Before HUD completed its processing of plaintiffs' loan paperwork, however, Congress repealed the section 241(f) HUD-insured loan provision and instead authorized HUD to make direct loans to three groups of properties, one of which included plaintiffs' properties. Id. Of the $75 million appropriated by Congress for this new direct loan program, HUD chose to use only $25 million to make direct loans to Carabetta even though it "admit[ted] that it had no obligation to provide loans to any non-Carabetta property and that it had discretion to divide the $75 million in capital loans in any way it saw fit." Id. at *4; see also id. at *2 (HUD "acknowledges that it had no contractual duty to fund any of the non-Carabetta properties in the other two categories.").

The Federal Circuit held that HUD's failure to use the remaining $50 million to fund direct loans on Carabetta's properties constituted a breach of the 1994 Repayment Agreement. In so holding, the Federal Circuit emphasized that although Congress had prevented HUD from insuring section 241(f) loans, Congress had concomitantly provided HUD with both the authority and capacity to render substitute performance by making direct loans to Carabetta and others.[1/]

---

[1/] When the original means of contract performance is no longer available, a claim may still be "discharged by accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" England v. Sherman R. Smoot Corp., 388 F.3d 844, 849 (Fed. Cir. 2004) (quoting O'Connor v. United States, 308 F.3d 1233, 1240 (Fed. Cir. 2002)).

Because Carabetta had "made clear that it would consider such loans to be substantial performance" of the subject contract, it was, therefore, possible for HUD to satisfy its contractual obligations by substitute performance. Since HUD did not establish that providing direct loans would have been unreasonable under the circumstances of that case, the Federal Circuit held that HUD's failure to provide the direct loans was a failure of performance that constituted a breach of the 1994 Repayment Agreement. Id. at *3.

The finding of liability in Carabetta, therefore, rested on the Federal Circuit's conclusion that HUD could have fulfilled its contractual obligations by substituting direct loans for the section 241(f) insured loans, but failed to do so. Thus, the sovereign acts doctrine did not provide a defense to the government because the "sovereign act" in question had provided HUD "with the authority and capacity to render reasonable substitute performance" of the contracts at issue. 2007 WL 983837, *4. This resolution of the government's sovereign acts defense did not require the Carabetta court to reach or address the issues that were thoroughly analyzed in Klamath – namely, the relationship between the sovereign acts defense and the common law doctrine of impossibility and whether the government is required to meet the common law test for impossibility of performance in order to assert a sovereign acts defense. There being no conflict between Carabetta and Klamath, the Klamath court's analysis remains relevant here and warrants consideration.

In addition, Carabetta is factually distinguishable from this case. The contracts at issue here are water service contracts under which the Bureau of Reclamation ("Reclamation") has committed to deliver available water to Plaintiffs under the conditions specified in the contracts. The Court found that the Defendant did not breach the contracts here because Plaintiffs failed to

satisfy their burden of showing that the contracting officer's decisions were unreasonable. The contractual obligation to provide loans in Carabetta did not rest on a similar provision. Instead, HUD had made a contractual promise to provide loans and it had authorization and funding to provide those loans, yet HUD had made a discretionary decision to use a portion of its funding elsewhere even though it was not required to do so.

The sovereign act at issue here – the Central Valley Project Improvement Act of 1992, Pub. L. No. 102-575, 106 Stat. 4600 (1992) ("CVPIA") – is manifestly different from the sovereign act at issue in Carabetta. Among other things, the CVPIA required Reclamation to "dedicate and manage annually 800,000 acre-feet [("AF")] of Central Valley Project [("CVP")] yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures" authorized by the CVPIA, including the goal of doubling the natural production of anadromous fish in Central Valley rivers and streams on a sustainable, long-term basis, in ten years. CVPIA § 3406(b). Pursuant to the prescriptions issued by the Fish and Wildlife Service ("FWS"), the amount of water used from New Melones Reservoir to meet the requirements of § 3406(b)(2) during the time period at issue in this case ranged from a low of 33,463 AF in 1994, to a high of 136,653 AF in 1995. JX-28. Reclamation's compliance with the CVPIA was not discretionary. Since water released from New Melones Reservoir in order to comply with § 3406(b)(2) was no longer available for delivery to the Plaintiffs, there is no question that Reclamation's compliance with the CVPIA reduced the quantity of water available for delivery to Plaintiffs under the subject contracts.[2/] Accordingly, the causal link between the sovereign act

[2/] See, e.g., PX-79 (Central stating that the denial of water in 1993 is a result of implementation of CVPIA); PX-87 (SEWD noting that water requests were denied because of CVPIA); PX-232 (1999 water allocation announcement stating that the forecast reflects operation of the CVP to implement the measures set forth in § 3406(b)(2)).

(CVPIA) and performance of the subject contracts has been met in this case. Defendant is not required to also prove that it meets the common law test for impossibility of performance in order for the sovereign acts doctrine to apply.

Moreover, when Congress enacted the CVPIA and required Reclamation to dedicate 800,000 AF of water annually to fish, wildlife and habitat restoration purposes, Congress did not provide Reclamation with the authority and capacity to render reasonable substitute performance for any of its CVP water service contracts that might be affected by the requirements of §3406(b)(2). In contrast to Carabetta, then, this is not a case in which Congress took away one means of satisfying the government's contractual obligations but at the same time provided a reasonable means of substitute performance that was acceptable to the plaintiffs.

In summary, the proper legal standard for assessing the application of the sovereign acts doctrine is set forth in Klamath and that standard was not altered or affected by Carabetta. Applying this standard, the sovereign acts doctrine provides an alternative ground in this case for the Court's holding that Defendant is not liable for a breach of the subject contracts.

Dated: April 20, 2007

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

_/s/ William J. Shapiro____
WILLIAM J. SHAPIRO, Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
501 I Street, Room 9-700
Sacramento, CA 95814
TEL (916) 930-2207