**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STOCKTON EAST WATER DISTRICT, et al., | ) | |
| Plaintiffs, | ) | No. 04-541 L |
| v. | ) | Judge Christine Odell Cook Miller |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING**
***CARABETTA ENTERPRISES, INC. v. UNITED STATES***

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W. Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)

Dated: April 27, 2007

Counsel for Plaintiffs

Of Counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING**
***CARABETTA ENTERPRISES, INC. v. UNITED STATES***

Pursuant to the Court's Order of April 16, 2007 (Docket No. 174), Plaintiffs submit this supplemental brief regarding *Carabetta Enterprises, Inc. v. United States*, __ F.3d __, 2007 WL 983837 (Fed. Cir. 2007). *Carabetta* confirms that the law of the Federal Circuit is that the government must prove common law impossibility before the sovereign acts defense becomes relevant. Nevertheless, Defendant argues that conflicting *dicta* from the trial court's decision in *Klamath Irrigation District v. United States*, __ Fed. Cl. __, 2007 WL 853018 (2007), is more persuasive. Defendant's arguments are unavailing for at least five reasons.

First, *Carabetta* is a Federal Circuit decision, while *Klamath* is a trial court decision. Only *Carabetta* is binding on this Court; its consistency with *Klamath* is irrelevant.

Second, *Carabetta* (like other Federal Circuit decisions) cites the *Winstar v. United States*, 518 U.S. 839 (1996), plurality approvingly. In *Carabetta*, the Federal Circuit thus discredits the non-binding suggestion in *Klamath* that the *Winstar* plurality should be ignored in this circuit. *See Klamath*, 2007 WL 983837 at *14.

Third, *Carabetta* endorses the Restatement (Second) of Contracts impossibility requirement, rejected by the *Klamath* Court but relied upon by the *Winstar* plurality, as a precursor to applicability of the sovereign acts doctrine. According to the Restatement, "a party is expected to use reasonable efforts to surmount obstacles to performance." *Restatement (Second) of Contracts* § 261, cmt. d. The government "has the burden to prove that it explored and exhausted alternatives before concluding that the contract was legally impossible or commercially impracticable to perform." *Mass. Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1373 (Fed. Cir. 2001) (quoting *Blount Bros. Corp. v. United States*, 872 F.2d 1003, 1007 (Fed. Cir. 1989)); *see also Precision Pine & Timber, Inc. v. United States*, 50 Fed. Cl. 35, 72–73

(2001) (government must prove common-law doctrine of impossibility of performance before sovereign acts defense becomes relevant).

This precedent has long protected the integrity of government contracts. In every breach of contract case the plaintiff must prove the existence of the contract, that the defendant had a duty to perform, that the defendant did not perform, and that the plaintiff was damaged as a result. *San Carlos Irrig. and Drain. Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The defendant can avoid liability by *proving* its duty was discharged by impossibility due to circumstances beyond its control, and without its fault or negligence. *Massachusetts Bay Transp. Auth.*, 254 F.3d at 1373–74. However, because the government wears two hats—one as contractor and one as lawgiver—there are times when the government as contractor can not perform as a result of an act of the government as lawgiver that makes performance illegal or otherwise impossible. In such situations, rather than deprive the government of the impossibility defense, courts have created a special rule, the sovereign acts doctrine. This doctrine treats the government as two separate entities—the one which made the contract and the one which passed the law—and thus preserves the impossibility defense for the government as contractor. *Horowitz v. United States*, 267 U.S. 458 (1925). This doctrine is limited to ensuring that the government's acts as lawgiver are not imputed to the government as contractor *for the purpose of applying the impossibility defense* in a breach of contract action. *Winstar*, 518 U.S. at 904 ("As *Horowitz* makes clear, that defense simply relieves the Government as contractor from the traditional blanket rule that a contracting party may not obtain discharge if its own act rendered performance impossible.").

Ignoring this logical framework in which the sovereign acts doctrine is an exception to the normal rule that the party which makes performance impossible may not assert the impossibility defense, Defendant here advocates creation of an entirely new and separate defense

that the government could utilize whenever its performance is tangentially impacted by a new federal law. Such a rule is not only contrary to *Carabetta* and other decisions of the Federal Circuit, but would provide the government as contractor a sweeping defense which is wholly unavailable to private contracting parties. The United States Supreme Court has cautioned against this, requiring that government contracts be administered in the same manner as private contracts, using the sovereign acts defense only to place the government back "on par" with private contracting parties—not in a superior position. *Horowitz v. United States*, 267 U.S. 458, 461 (1925); *Winstar*, 518 U.S. at 894 ("[T]he sovereign acts doctrine was meant to serve [the principle that government contracts be governed by the same principles as private contracts], not undermine it."). *Carabetta* correctly applies this logic, as did this Court. *Stockton East Water Dist. v. United* States, 75 Fed. Cl. 321, 373 (2007).

Fourth, the government fails to distinguish *Carabetta* on its facts. In both *Carabetta* and the present case the government had a limited pool of resources to distribute among competing parties: in *Carabetta*, $75 million in loan funds, and in this case the amount of water storage and inflow for New Melones reservoir each year. The *Carabetta* Court found liability because the government could have supplied a larger portion of the $75 million to Carabetta (HUD supplied Carabetta $25 million), but chose not to do so—just as Reclamation in this case could have provided Plaintiffs with additional water from New Melones, but chose not to do so. The *Carabetta* Court clarifies that the issue is not (as Defendant asserts) whether Reclamation acted "reasonably," but whether Reclamation's performance was rendered impossible by the statute.

Fifth, Defendant's brief does not (and can not) cite to any evidence in the record to illustrate that the alleged sovereign act in this case (the CVPIA) actually did render its performance impossible or was the "cause" of its inability to deliver. Defendant states: "Since water released from New Melones reservoir in order to comply with §3406(b)(2) was no longer

available for delivery to the Plaintiffs, there is no questions that Reclamation's compliance with the CVPIA reduced the quantity of water available for deliver to Plaintiffs . . . the causal link between the sovereign act (CVPIA) and performance of the subject contracts has been met in this case." Def. Supp. Br. (Doc. 175) at 4–5. As this Court has already noted (75 Fed. Cl. at 373), this statement is not supported by the evidence, particularly when viewed in the context of the *twelve years* of non-performance in this case. Nor is this supplemental brief the place to re-argue the Court's factual finding that Defendant failed to prove impossibility. *Stockton East*, 75 Fed. Cl. at 373 ("Defendant, however, did not meet its burden of proof regarding impossibility of performance due to CVPIA § 3406(b)(2).").

At trial, Defendant presented no evidence to support an argument that CVPIA made performance impossible for any year, let alone the *twelve* separate years in dispute. Such a finding would be laughable in the face of stipulated evidence that the reservoir was so full that it spilled hundreds of thousands of acre-feet of water for six of those twelve years. JX 28.

The evidence cited by Defendant certainly does not support its claim that, contrary to this Court's finding, CVPIA made performance impossible. Defendant cites to PX 79 and PX 87, two letters addressing *only* 1993 operations. In 1993, New Melones storage conditions were low, but inflow was high due to a wet year. JX 28, PX 323-2a. Defendant delivered no water to Plaintiffs but allocated more than 135,000 acre-feet to CVPIA uses. JX 28. Although Plaintiffs had requested only 10,000 acre-feet in 1993 (an amount that would have only a *de minimis* impact on the ultimate year-end storage of 747,500 acre-feet (JX 28)), Defendant failed to put on any evidence at trial to prove that delivery of 10,000 acre-feet of water to Plaintiffs in 1993 was impossible. Rather, the only evidence at trial showed that after making CVPIA releases and releases for all other regulatory obligations, Defendant made a discretionary choice to hold Plaintiffs' water in storage. JX 28. Further, CVPIA expressly gave the Secretary of the Interior

the ability to use 25% less water for CVPIA purposes in 1993 (and every other dry year), but the Secretary elected not to employ this option to fulfill Plaintiffs' contracts. CVPIA §3406(b)(2)(C).

The only other evidence cited by Defendant to support its "impossibility" argument for the remaining *eleven years* in dispute is PX 232, a 1999 general "News Release" stating allocations for all CVP units and explaining that "the forecast reflects operation of the CVP to implement [the CVPIA]." This general statement does not explain the magnitude of the effect of CVPIA implementation on the New Melones unit or whether there was any effect at all. Rather, the only evidence in the record that reflects actual operational decisions for New Melones in 1999 shows that it was an "above-normal" water year, following four prior "wet" years. JX 28. New Melones storage was at the flood control curve and has been subject to flood control releases five straight years (including 321,701 acre-feet of flood control release in 1999 alone). JX 28. There was ample water in storage to deliver to Plaintiffs, and in fact, if Defendant had allocated a full 155,000 to Plaintiffs, even after making CVPIA releases, it would have had *no ultimate impact* on storage, but instead would have simply reduced the amount of flood control spills that were otherwise made in the year 2000 (another above-normal year) to something less than 142,459 acre-feet. JX 28; *compare* PX 321 at 25, Fig. 10 *with* PX 321 at 29, Fig. 16.

## CONCLUSION

This Court's finding that Defendant failed to meet its burden to prove that CVPIA made its performance under the contracts impossible, and thus was not entitled to a sovereign acts defense, was correct legally and factually. *Carabetta* simply serves as additional supporting authority for that finding.

Respectfully submitted,

s/ Roger J. Marzulla

Roger J. Marzulla
Nancie G. Marzulla
MARZULLA & MARZULLA
1350 Connecticut Ave., N.W. Suite 410
Washington, DC 20036
(202) 822-6760
(202) 822-6774 (facsimile)
Counsel for Plaintiffs

Dated: April 27, 2007

Of Counsel:

Jeanne M. Zolezzi
Jennifer L. Spaletta
Herum Crabtree Brown
2291 West March Lane
Suite B100
Stockton, CA 95207
(209) 472-7700
(209) 472-7986 (facsimile)