# In the United States Court of Federal Claims

No. 04-541L
(Filed May 24, 2007)

| | |
|---|---|
| **STOCKTON EAST WATER DISTRICT, CENTRAL SAN JOAQUIN WATER DISTRICT, COUNTY OF SAN JOAQUIN, CITY OF STOCKTON, and CALIFORNIA WATER SERVICE COMPANY,** | Pleading and practice; motion for reconsideration; RCFC 59(a); contracts; breach of contract; summary judgment; takings; Reclamation Projects Authorization and Adjustment Act of 1992, Pub. L. No. 102-575, 106 Stat. 4600 (1992); RCFC 52(c) judgment on partial findings; third-party beneficiary status; sovereign acts doctrine and unmistakability doctrine; contract interpretation – plain meaning and ambiguity; substantial performance of contract; adverse inferences to be drawn from non-testifying witnesses; viability of takings claim after full prosecution of contract claims. |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

Roger J. Marzulla, Washington, DC, for plaintiffs. Nancie G. Marzulla, Marzulla & Marzulla, Washington, DC, of counsel. Reid W. Roberts, Stockton, CA, for plaintiff Central San Joaquin Water District; Jeanne M. Zolezzi and Jennifer L. Spaletta, Herum Crabtree Brown, Stockton, CA, for plaintiff Stockton East Water District.

William J. Shapiro, Sacramento, CA, with whom was Acting Assistant Attorney General Matthew J. McKeown, Kristine S. Tardiff, and Luther Hajek, Washington, DC, for defendant. Shelly Randel, Office of the Solicitor, Branch of Water and Power, Department of the Interior, Washington, DC, and James E. Turner, Assistant Regional Solicitor, Department of the Interior, Pacific Southwest Region, Department of the Interior, Sacramento, CA, of counsel.

John D. Echeverria, Georgetown Environmental Law & Policy Institute, Washington, DC, and Hamilton Candee, for amicus curiae Natural Resources Defense Council, San Francisco, CA. Clifford T. Lee and Tara L. Mueller, for amicus curiae California State Water Resources Control Board.

# ERRATA

**MILLER**, Judge.

Please substitute the attached pages 3, 8, and 21 for the originals in the Order on Motion for Reconsideration issued May 18, 2007. The original pages contained typographical errors.

S/ Christine O.C. Miller

_________________________________

**Christine Odell Cook Miller**
Judge

1. Standard of review

Plaintiffs offered no standard of review regarding their motion for reconsideration, citing to RCFC 59 only in their reply brief, and for the sole purpose of deflating defendant's objection that the request for reconsideration was untimely. See Pls.' Br. filed Apr. 6, 2007, at 5.

RCFC 59(a)(1) provides:

> A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Id. "When addressing such a motion, the court is directed 'to consider motions for rehearing [or reconsideration] with exceptional care.'" Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996) (quoting Carter v. United States, 207 Ct. Cl. 316, 318 (1975)), aff'd, 144 F.3d 769 (Fed. Cir. 1998). "[M]otions for reconsideration should not be entertained upon 'the sole ground that one side or the other is dissatisfied with the conclusions reached by the court, otherwise the losing party would generally, if not always, try his case a second time, and litigation would be unnecessarily prolonged.'" Id. at 594 (quoting Roche v. District of Columbia, 18 Ct. Cl. 289, 290 (1883)).

A motion for reconsideration is addressed in the court's discretion. See Seldovia Native, 36 Fed. Cl. at 594; see also Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 262 (Fed. Cir. 2000) (table)). This showing, under RCFC 59, must be based "upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) (internal quotation omitted).

To sustain its burden, the movant must show: (1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice. See id. at 286; see also Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376, aff'd, 39 F.3d 1198 (1994)

warranted," and reversed and remanded "with instructions to determine whether respondent is concluded by the findings of the contracting officer, and, if not, for a finding by the court whether the 183 days of high water or any part of that time were in fact foreseeable." Id. at 124, 125. In contrast, Article 9(a) of the 1983 Contracts includes no requirement of foreseeability -- only a requirement that the cause of shortage be beyond the control of the United States in the opinion of the Contracting Officer, a factor which proved to be instrumental to the Supreme Court's holding.

Plaintiffs place principal reliance upon the United States Court of Claims' decision in Jennie-O Foods, Inc. v. United States, 580 F.2d 400 (Ct. Cl. 1978). In Jennie-O Foods a series of supply contracts was executed between Jennie-O Foods, Inc. ("Jennie-O") and the United States Department of Agriculture ("USDA") regarding delivery of turkeys, "designed in part to remove surplus turkeys from the market and in part to supply food to schools, hospitals and similar public institutions." 580 F.2d at 403. Jennie-O was unable to make timely deliveries; liquidated damages were assessed pursuant to a provision for late delivery, which provided, in relevant part, "'Contractor shall not be liable to USDA for damages sustained by reason of delay . . . if the failure to perform arises out of causes beyond the control and without the fault or negligence of Contractor.'" Id. at 404 (quoting Article 38(c) of the Consumer and Marketing Service Purchase Document No. 1, Revision No. 1 of August 1969 (the "Jennie-O Contract")). The contract's express terms defined the term "causes," and included the requirements that "'in every case the failure to perform must be beyond the control and without the fault or negligence of the party to the contract seeking excuse from liability'" and that "'[d]eterminations as to whether causes for delay are beyond the control . . . shall be made by the contracting officer.'" Id. at 404, 407 (quoting Articles 3(c), 37(a)).

The Jennie-O Contract's express terms, while similar to those at issue in the 1983 Contracts, display significant differences. Most relevant, the terms of the Jennie-O Contract require that "in every case the failure to perform must be beyond the control . . . of the party to the contract seeking excuse from liability," Jennie-O Foods, 580 F.2d at 404, while the 1983 Contracts only require that delays, "in the opinion of the Contracting Officer, are beyond the control of the United States," PX 36, art. 9(a); PX 37, art. 9(a). No provision that parallels Article 12(d) of the 1983 Contracts was involved in Jennie-O Foods. See 2007 Opinion at 57-61 (discussing interpretation of Article 9(a) when read in context of Article 12(d) of the 1983 Contracts). Plaintiffs pressed the point of interpretation of the contract as a whole in their pre-trial memorandum:

> A contract must be "interpreted so as to harmonize and give meaning to all of its provisions, and [thus] an interpretation which gives a reasonable meaning to all parts will be preferred to one which leaves a portion of its [sic]

> contract action, must show that . . . the language or circumstances do not indicate that the Government should be liable in any case.

Winstar, 518 U.S. at 904.

The discussion of the doctrine of common law impossibility in Seaboard Lumber excuses "[p]erformance . . . under this doctrine when it is objectively impossible." 308 F.3d at 1294 (citing Jennie-O Foods, 580 F.2d at 409); see also id. (quoting Winstar, 518 U.S. at 904, regarding "reformulat[ion of] the common law doctrine of impossibility"). The application of the common law doctrine of impossibility is not conditioned by the Supreme Court's plurality in Winstar upon a formulation unique to the sovereign acts doctrine, but, rather, application of the doctrine as it exists. See, e.g., Carabetta Enters., 482 F.3d at 1365 ("Yet even if the sovereign acts doctrine applies, 'it does not follow that discharge will always be available, for the common-law doctrine of impossibility imposes additional requirements before a party may avoid liability for breach.'" (quoting Winstar, 518 U.S. at 904)). Reliance on the interpretation of the common law doctrine of impossibility by the Federal Circuit as set forth in Seaboard Lumber, seconded Winstar's plurality, which, despite the Klamath court's relegating the plurality to advisory status, see 75 Fed. Cl. at 691 n.21, is regarded by the Court of Federal Claims' appellate court as decisive. See Carabetta Enters., 482 F.3d at 1365 (citing Winstar, 518 U.S. at 904). 3/

Judge Allegra's dissertation on the foundations of the sovereign acts doctrine in this circuit and his conclusion that the common law version of the impossibility doctrine is incompatible are interesting. See Klamath, 75 Fed. Cl. at 691-95. The issuance of Carabetta Enterprises subsequent to both Klamath and the 2007 Opinion, with the appellate court's

---

3/ Interestingly enough, the Klamath court made this observation later in the opinion. See Klamath, 75 Fed. Cl. at 693 ("Third, the only Federal Circuit decision to apply the sovereign acts doctrine since Winstar - Yankee Atomic - indisputably did so without conducting any impossibility analysis whatsoever, reversing a judgment against the United States in the process."). It is important, however, to note that the Federal Circuit in Yankee Atomic "conclude[d] that the contracts between Yankee Atomic and the Government did not include an unmistakable promise that precluded the Government from later imposing an assessment." 112 F.3d at 1580. Analysis of impossibility was unnecessary to the disposition. Since Winstar, the Federal Circuit has addressed the sovereign acts doctrine in applying the unmistakability doctrine. See, e.g., First Nationwide Bank v. United States, 431 F.3d 1342, 1351 (Fed. Cir. 2005) ("The 'doctrine of unmistakability' is explained in Winstar, where the Court makes clear that when the government enters into a contract with a private person, the government is not precluded from acting in its sovereign capacity notwithstanding the contract unless there is an unmistakable promise not to act . . . ."); Centex Corp. v. United States, 395 F.3d 1283, 1307-08 (Fed. Cir. 2005) ("A prerequisite for invoking the unmistakability doctrine is that a sovereign act must be implicated.").