# In the United States Court of Federal Claims

No. 04-541L
(Filed October 31, 2011)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * *  * | |
| | * |
| **STOCKTON EAST WATER** | * Takings; breach of contract; partial |
| **DISTRICT and CENTRAL SAN** | * breach of contract; 28 U.S.C. § 1500 |
| **JOAQUIN WATER DISTRICT,** | * (2006); <u>United States v. Tohono</u> |
| | * <u>O'Odham Nation</u>, 131 S. Ct. 1723 |
| Plaintiffs, | * (2011); RCFC 15(d), supplemental |
| | * complaint; substantial overlap in |
| v. | * operative facts; RCFC 41(a)(2), |
| | * voluntary dismissal. |
| **THE UNITED STATES,** | * |
| | * |
| Defendant. | * |
| | * |
| * * * * * * * * * * * * * * * * * * * | * |

Roger J. Marzulla, Washington, DC, for plaintiff Central San Joaquin Water Conservation District. Nancie G. Marzulla, Marzulla & Marzulla, Washington, DC, of counsel. Jennifer L. Spaletta, Stockton, CA, for plaintiff Stockton East Water District. Jeanne M. Zolezzi, Herum Crabtree, Stockton, CA, of counsel.

Terry M. Petrie, Denver, CO, with whom was Assistant Attorney General Ignacia S. Morenoi, for defendant. E. Barrett Atwood, U.S. Environment & Natural Resources Division, San Francisco, CA; Amy Aufdemberge, Assistant Regional Solicitor, U.S. Department of the Interior, Sacramento, CA; and Shelly Randel, Office of the Solicitor, Washington, DC, of counsel.

## MEMORANDUM OPINION AND ORDER

<u>MILLER</u>, Judge.

### BACKGROUND

Plaintiffs Stockton East Water District ("SEWD") and Central San Joaquin Water Conservation District ("Central") were involved with the provision of municipal, industrial, and agricultural water, as well as the operation and maintenance of water facilities, within

California's San Joaquin Valley—just south of Sacramento County.  This case involves a dispute over two agreements involving SEWD, Central, and the United States Bureau of Reclamation ("Reclamation") for the appropriation of water after completion of California's second largest earthfill dam, the New Melones Dam.

In 1983 the parties finalized their contract negotiations, and Reclamation entered into separate contracts with SEWD and Central for the provision of a certain quantity of water on an annual basis for irrigation and domestic purposes.  Complaint for Injunctive Relief and for Damages and Demand for Jury Trial, Stockton E. Water Dist. v. United States, No. CIV-S-93-1577 DFL GGH, ¶¶ 14-15 (E.D. Cal. Oct. 1, 1993) (the "1993 Complaint").  The contracts required the water districts to construct and install at their own expense water delivery systems to carry the water from the Reservoir to the water district facilities.  Id. ¶ 23.

According to plaintiffs, Reclamation has failed to provide water in accordance with the contracts.  This defalcation is the basis for plaintiffs' claims for a taking without just compensation as required by the Fifth Amendment and for breach of contract.  The 1993 Complaint further alleged that the Central Valley Project Improvement Act, Pub. L. No. 102-575, title XXXIV, 106 Stat. 4600, 4706-31 (1992) (the "CVPIA"), precipitated Reclamation's alleged wrongful conduct.  See 1993 Compl. ¶¶ 28-39.  Among other things, the CVPIA imported the requirements of the Endangered Species Act, 16 U.S.C. §§ 1531-1544 (1988).  CVPIA § 3406(b), 106 Stat. at 4714.  The CVPIA also required the Secretary of the Interior (the "Secretary"), who was responsible for operation of the Central Valley Project (the "CVP"), to "dedicate and manage annually eight hundred thousand acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by this [Act.]"  Id. § 3406(b)(2), 106 Stat. at 4715.  In addition, the CVPIA required the Secretary to "obtain a modification in [preexisting permits and licenses] in a manner consistent with . . . State law" before reallocating water to accomplish the goals of the CVPIA.  Id. § 3411(a), 106 Stat. at 4731.

The 1993 Complaint charged that the Secretary, in conjunction with the Department of Fish and Wildlife Service ("F&W") and its state counterpart, reallocated—"without any consultation with [plaintiffs] or other holders of contracts or water rights on the Stanislaus River"—200,000 acre-feet from the New Melones Unit for the 800,000 acre-feet provided under the CVPIA.  1993 Compl. ¶ 32.  Plaintiffs alleged, however, that Reclamation and the F&W "ignored and failed and refused to consider allocating water in a fair, equitable manner consistent with law from each and every other CVP project[.]"  Id. ¶ 34.

2

These determinations appeared in the F&W's release of the "prescription for implementation of the management of the 800,000 acre feet of CVP yield for 1993" (the "1993 Prescription"). Id. ¶ 35. Accordingly, in June 1993 Reclamation "orally advised SEWD and [Central] that it would not deliver any water to either [of them] under [their contracts] in 1993." Id. ¶ 37. Plaintiffs maintain that Reclamation thereafter continuously failed to meet its contractual obligations.

## PROCEDURAL HISTORY

I. Proceedings in the United States District Court for the Eastern District of California

### 1. The 1993 Complaint

Plaintiffs' first complaint—the 1993 Complaint—was filed on October 1, 1993, in the United States District Court for the Eastern District of California and enumerated five untitled claims for relief. As characterized by the district court, these claims were (1) impairment of "vested rights under . . . water contracts[] in violation of the Fifth Amendment due process clause"; (2) violation of the National Environmental Policy Act for failure to prepare an environmental impact statement; (3) violation of the CVPIA, § 3410; (4) arbitrary and capricious action by the Government; and (5) violation of the Fifth Amendment's takings clause. See "Memorandum Opinion and Order Re: Defendants and Defendants-in-Intervention Motions to Dismiss," Westlands Water Dist. v. United States, No. CV-F-93-5327 OWW SSH (E.D. Cal. Feb. 11, 1994) (consolidated cases) (the "1994 Dismissal Order"). Plaintiffs named as defendants Reclamation, F&W, and Bruce Babbitt, the Secretary of the Interior (the "federal defendants").

### 2. The 1995 Amended Complaint

After the federal district court's 1994 Dismissal Order, plaintiffs did not file their claim for a governmental taking without just compensation in the United States Court of Federal Claims. Instead, they filed an amended complaint before the district court. See First Amended Complaint for Injunctive Relief and for Damages and Demand for Jury Trial, Stockton E. Water Dist. v. United States, No. CIV-S-93-5896-OWW (E.D. Cal. Sept. 22, 1995) (the "1995 Amended Complaint"). The 1995 Amended Complaint, like the original 1993 Complaint, explicitly alleged that the contracts provided plaintiffs with vested property rights. Id. ¶¶ 14-15. Plaintiffs, however, added several new allegations addressing events subsequent to the issuance of the 1993 Prescription, identified above, including further notifications that water would not be provided to plaintiffs pursuant to the contracts. Id. ¶¶ 37-60.

Plaintiffs alleged that, each year after the filing of the 1993 Complaint, the F&W failed to properly allocate water rights allegedly conferred to plaintiffs and failed, procedurally, to properly consult with plaintiffs concerning subsequent allocations when issuing the annual prescriptions. Id. Further, Reclamation allegedly continued to refuse to provide SEWD and Central with the entire amount of water—in some cases providing no water—as the contracts required. Id. ¶¶ 44, 52, 57. Plaintiffs also alleged that the federal defendants contracted with the State of California to provide water flows to a specific region and treated this contract as superseding the agreements with plaintiffs. Id. ¶¶ 49-51.

The 1995 Amended Complaint sought relief on ten named claims—none of which included a takings claim—based on violations of due process; the Administrative Procedure Act, 5 U.S.C. §§ 500-596; the Reclamation Act; and state water law. Id. ¶¶ 61-133; see also "Memorandum Opinion and Order re: Federal Defendants' Motion Requiring Plaintiffs To Exhaust Administrative Remedies; Plaintiffs' and Federal Defendants' Cross-Motions for Partial Summary Judgment and Notice of Intent To Consolidate Cases," Stockton E. Water Dist. v. United States, No. CV-F-93-5896 OWW, at 4-6 (E.D. Cal. Nov. 8, 1996) (the "1996 Summary Judgment Order").

### 3. 2004 Motion and Stipulation To Confirm Transfer; 2004 Transfer Order

Plaintiffs on January 12, 2004, filed a "Motion and Stipulation To Confirm Transfer of 5th Cause of Action From Complaint of October 1, 1993" in Stockton E. Water Dist. v. United States, Nos. CV-F-93-5896 OWW; CV-F-96-5738 OWW DLB (E.D. Cal. Jan. 12, 2004) (consolidated cases) (the "2004 Transfer Motion and Stipulation"). Attached to plaintiffs' motion was a stipulation signed by the federal defendants. Exactly what the parties believed they were asking the district court to transfer, and what the court ultimately transferred, will be addressed by this court. As to this point,  relevant in the 2004 Transfer Motion and Stipulation is language describing the fifth cause of action of the 1993 Complaint as both "a violation of vested property rights under the Fifth Amendment and breach of contract[.]" Id. at 2. 1/

On January 29, 2004, the district court granted plaintiffs' motion and issued an "Order Confirming Transfer of 5th Cause of Action from Complaint of October 1, 1993" in Stockton E. Water Dist. v. United States, Nos. CV-F-93-5896 OWW, CV-F-96-5738 OWW DLB

---

1/ The district court had similarly characterized the fifth cause of action in its 1996 Summary Judgment Order. See 1996 Summary Judgment Order at 3. To avoid elevating the significance of this mistake, this court acknowledges that neither the 1993 Complaint nor the 1994 Dismissal Order mentioned a claim for breach of contract.

(E.D. Cal. Jan. 30, 2004) (consolidated cases) (the "2004 Transfer Order"), transferring the fifth cause of action to the Court of Federal Claims. The order does not recite the nature of the fifth cause of action, i.e., whether it stated a claim for a takings and/or breach of contract; however, this court previously ruled that Judge Oliver W. Wanger transferred the takings claim pleaded in the 1993 Complaint and subject to the 1994 Dismissal Order. Stockton E. Water Dist. v. United States, 62 Fed. Cl. 379, 387 (2004) (ruling that breach of contract claims added in amended complaint following transfer of takings claim from district court relate back to the date of filing of the original complaint in district court).

## II. Proceedings in the Court of Federal Claims

This court received the transferred action on April 1, 2004, and plaintiffs filed their Amended Complaint on April 20, 2004, seeking relief for a taking and breach of contract. Amended Complaint for Just Compensation and Breach of Contract, Stockton E. Water Dist. v. United States, No. 04-541L (Fed. Cl. Apr. 20, 2004) (the "2004 Amended Complaint"). Trial was held October 23, 2006, through November 2, 2006. The court awarded judgment for defendant on the breach of contract claims for 1993 through 2004 and dismissed the takings claim, Stockton E. Water Dist. v. United States, 75 Fed. Cl. 321, 376 (2007) (determining liability and entering judgment on the merits), granted in part and denied in part plaintiffs' motion to alter or amend the judgment 2/, Stockton E. Water Dist. v. United States, 76 Fed. Cl. 470, 482 (2007), and denied the plaintiffs' motion for reconsideration, Stockton E. Water Dist. v. United States, 76 Fed. Cl. 497, 512 (2007). Plaintiffs appealed to the United States Court of Appeals for the Federal Circuit, which affirmed this court's judgment of non-liability as to plaintiffs' breach of contract claims for 1994 and 1995, reversed this court's judgment of non-liability as to plaintiffs' breach of contract claims for 1999 through 2004, and vacated this court's dismissal of plaintiffs' takings claim. Stockton E. Water Dist. v. United States, 583 F.3d 1344 (Fed. Cir. 2009), reh'g en banc granted in part, aff'd, 638 F.3d 781 (Fed. Cir. 2011). 3/

Since April 11, 2011, this matter has been before the court on remand from the Federal Circuit. The court was tasked with deciding plaintiffs' takings claim and determining damages for the breaches that occurred from 1999 through 2004. On July 19, 2011, defendant moved to dismiss the complaint for lack of jurisdiction, invoking the United

---

2/ Although the court granted plaintiffs' motion in part and corrected various factual errors in its opinion on the merits, this did not alter its earlier ruling entering judgment in favor of defendant. Stockton, 75 Fed. Cl. at 376.

3/ Plaintiffs did not appeal the Court of Federal Claims' judgment of non-liability as to the breaches in 1993, 1996, and 1997. See Stockton, 583 F.3d at 1354.

States Supreme Court's recent decision in <u>United States v. Tohono O'Odham Nation</u>, 131 S. Ct. 1723 (2011). <u>Tohono</u> construed 28 U.S.C. § 1500 (2006), to foreclose the Court of Federal Claims from hearing any claim based on the same operative facts underlying a claim encompassed in a pending, prior-filed action in federal district court. <u>See id.</u> at 1731. Plaintiffs separately responded on August 12, 2011, and defendant filed its reply on August 26, 2011. Oral argument on defendant's motion was scheduled for August 31, 2011. Two days before argument, plaintiffs filed a Motion for Voluntary Dismissal of Their Claim for Taking Without Just Compensation. Defendant responded to plaintiffs' motion on September 15, 2011, arguing that jurisdiction—a threshold issue—must be resolved before the court can entertain plaintiffs' motion for voluntary dismissal. Plaintiffs replied on September 26, 2011.

On September 19, 2011, following oral argument, defendant filed a notice of supplemental authority contending that <u>Central Pines Land Co. v. United States</u>, 99 Fed. Cl. 394 (2011), bolsters its argument for dismissal because it ruled that an amended or supplemental complaint cannot create jurisdiction where jurisdiction before the Court of Federal Claims did not already exist. This court solicited responses from plaintiffs, which were filed on October 6, 2011, to address the new authority cited by defendant. Defendant replied on October 13, 2011. Thereafter, on October 25, 2011, Central also filed a notice of supplemental authority asking the court to reference the Federal Circuit's recent decision in <u>Trusted Integration, Inc. v. United States</u>, No. 2010-5142, 2011 WL 4888787, at *4 (Fed. Cir. Oct. 14, 2011), which distinguished two seemingly similar claims because they were distinct claims based on distinct proofs.

Plaintiffs' briefs indicate that plaintiffs harbor the mistaken notion that this court already denied defendant's motion to dismiss during oral argument. Although the court indicated its probable disposition so that the parties could file a schedule for further proceedings pending a ruling, this court has not ruled on defendant's motion, but undertakes to do so now. The court necessarily will address plaintiffs' motion for voluntary dismissal of their takings claim.

## DISCUSSION

### I. Subject matter jurisdiction

Jurisdiction must be established before the court may proceed to the merits of a case. <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 88-89 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception."(citation omitted) (internal quotation marks omitted)). Courts are presumed to lack subject matter jurisdiction

unless it is affirmatively indicated by the record; therefore, it is a plaintiff's responsibility to allege facts sufficient to establish the court's subject matter jurisdiction. <u>Renne v. Geary</u>, 501 U.S. 312, 316 (1991); <u>DaimlerChrysler Corp. v. United States</u>, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("[I]t is settled that a party invoking federal court jurisdiction must, in the initial pleading, allege sufficient facts to establish the court's jurisdiction."). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. . . . [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988); <u>accord</u> <u>M. Maropakis Carpentry, Inc. v. United States</u>, 609 F.3d 1323, 1327 (Fed. Cir. 2010).

As defendant has argued, RCFC 41(a)(2) does not provide for voluntary dismissal as a matter of right. <u>See</u> RCFC 41(a)(2) (providing that once a party has filed an answer or a motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper"). Rather, in deciding whether to grant dismissal pursuant to RCFC 41(a)(2), the court exercises its discretion in evaluating the merits of plaintiffs' arguments in favor of dismissal. <u>See</u> <u>Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.</u>, 479 F.3d 1330, 1342 (Fed. Cir. 2007). The initial determination, of course, is whether the court has subject matter jurisdiction over the matter. <u>See</u> <u>id.</u> at 1342-43; <u>see also</u> <u>Dow Jones & Co., Inc. v. Ablaise Ltd.</u>, 606 F.3d 1338, 1348 (Fed. Cir. 2010) ("Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case . . . .").

II.  <u>Limitation on jurisdiction—28 U.S.C. § 1500</u>

The Court of Federal Claims derives jurisdiction over this matter from the Tucker Act, 28 U.S.C. § 1491 (2006). Specifically,

> [t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

<u>Id.</u> § 1491(a)(1). However, the court's jurisdiction is constrained by 28 U.S.C. § 1500, which provides that "the United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States . . . ." 28 U.S.C. § 1500.

The jurisdictional bar now codified in § 1500 originated to prevent duplicate lawsuits by post-Civil War "cotton claimants" who brought suit against the United States in the then-Court of Claims pursuant to a statute providing a cause of action and also against federal officials in federal district court pursuant to tort theory for the same actions.  Tohono, 131 S. Ct. at 1728; see also Trusted Integration, 2011 WL 4888787, at *4 ("[T]he statute was enacted to prevent a claimant from seeking recovery in district court and the Court of Claims for the same conduct pleaded under different legal theories.").  Congress has since reenacted the statute, which

> reflects a robust response to the problem first presented by the cotton claimants. . . . [in that] [i]t bars jurisdiction in the C[ourt] [of] F[ederal] C[laims] not only if the plaintiff sues on an identical claim elsewhere—a suit "for" the same claim—but also if the plaintiff's other action is related although not identical—a suit "in respect to" to the same claim.

Tohono, 131 S. Ct. at 1728.  Section 1500 operates to preclude jurisdiction in the Court of Federal Claims if the claims asserted in the two suits are "based on substantially the same operative facts," or if there is "substantial overlap in [the] operative facts" between the two suits.  Id. at 1731; cf. Omaha Tribe of Nebraska v. United States, No. 06-911L, 2011 WL 4793244, at *5 (Fed. Cl. Oct. 7, 2011) (recognizing that, because § 1500 does not provide a narrow concept of identity of claims, two claims sharing certain facts may be the same for purposes of § 1500 even though they are based on different legal theories).  Consequently, this court compares the claims asserted in the complaints filed in the district court and the complaint filed in the Court of Federal Claims.  See Keene Corp. v. United States, 508 F.3d 200, 210 (1993).

Until the Supreme Court's decision in Tohono, the Court had not spoken precisely to the issue whether two suits were "for or in respect to" each other if they did not seek overlapping relief.  Tohono, 131 S. Ct. at 1727-28.  The Supreme Court in Tohono answered that question in the affirmative, concluding that two suits are "for or in respect to" each other "if they are based on substantially the same operative facts, *regardless of the relief sought in each suit*."  Id. at 1731 (emphasis added).  In reaching this result, the Supreme Court reversed the Federal Circuit, which had dismissed the plaintiff's suit based on circuit precedent that held that "[f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts*, and must seek *the same relief*,"  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1551 (Fed. Cir. 1994).  The Supreme Court dissected the language of § 1500 and noted that "[a]n interpretation of § 1500 focused on the facts rather than the relief a party seeks preserves the provision as it was meant to function, and . . . keeps [it] from becoming a mere

8

pleading rule, to be circumvented by carving up a single transaction into overlapping pieces seeking different relief." Tohono, 131 S. Ct. at 1730.

The Court further explained that this construction of § 1500 was consistent with the doctrine of res judicata. Id. (explaining that "[t]he jurisdictional bar in § 1500 was enacted in part to address the problem that judgments in suits against officers were not preclusive in suits against the United States" (citation omitted)). Further bolstering support for its conclusion that § 1500 is concerned with facts, not requested relief, the Court instructed that, at the time this jurisdictional bar originated, "it was not uncommon to identify a claim for preclusion purposes based on facts rather than relief." Id. (citation omitted). Accordingly, with this interpretation of § 1500 in mind, the court addresses whether plaintiffs' claims in their 2004 Amended Complaint are "for or in respect to" their claims in their district court complaints.

III.  Whether plaintiffs' claims in their 2004 Amended Complaint are "for or in respect to" their claims in their federal district court complaints

1.  Takings claim

Plaintiffs' takings claim initially was filed in federal district court and was transferred to the Court of Federal Claims on April 1, 2004. Paragraphs 40 through 48 of plaintiffs' 1993 Complaint allege that plaintiffs each had a vested property right in their contracted-for supply of water and that Reclamation's failure to deliver water pursuant to the contracts in order to satisfy the requirements of the CVPIA violated plaintiffs' Fifth Amendment rights. 1993 Comp. ¶¶ 40-48. Although plaintiffs' 1995 Amended Complaint alleged similar allegations of vested property rights and violations of Fifth Amendment rights, it did not include a takings claim; rather, paragraphs 61 through 69—which contain the allegations comprising plaintiffs' takings claim in the 1993 Complaint—assert a claim for violation of due process. 1995 Am. Compl. ¶¶ 61-69. The 2004 Amended Complaint, which contains the transferred takings claim from the 1993 Complaint, alleges that plaintiffs' Fifth Amendment rights were violated because Reclamation failed to supply the contracted-for water, thus taking their property for public use and without compensation. 2004 Am. Compl. ¶¶ 28-29. 4/

_____

4/ An error in exists in plaintiffs' 2004 Amended Complaint, which purports to number its paragraphs 28, 25, 29. The court's citation to paragraphs 28-29 includes the misnumbered paragraph 25.

Plaintiffs have moved to voluntarily dismiss their takings claim pursuant to Rule 41(a).  Pls.' Br. filed Aug. 29, 2011.  Noting that dismissal under Rule 41(a) is not granted as of right, defendant argues that the threshold issue of jurisdiction must be settled before the court can entertain plaintiffs' motion.  Def.'s Br. filed Sept. 15, 2011, at 3.  Defendant properly insists that the jurisdictional inquiry must precede consideration of plaintiffs' motion.  According to defendant, the jurisdictional inquiry will dispense with the need to consider plaintiffs' motion because its resolution is that § 1500 divests this court of jurisdiction over plaintiffs' takings claim.  Id. at 3-4.

Defendant observes that, in asserting the takings claim in their 1993 Complaint and 2004 Amended Complaint, plaintiffs allege the existence of vested property rights and Reclamation's failure to supply specified quantities of water as providing the basis for their Fifth Amendment claims.  Def.'s Br. filed July 19, 2011, at 13.  Defendant submits that this semantic comparison demonstrates that the operative facts comprising these claims are identical.  Id.  Because § 1500 bars jurisdiction in the Court of Federal Claims when the operative facts share a lesser degree of similarity—i.e., they are "substantially the same" or have "substantial overlap," Tohono, 131 S. Ct. at 1731—defendant contends that § 1500 requires dismissal where plaintiffs have alleged identical facts in support of their takings claim in both federal district court and the Court of Federal Claims.

The court finds that plaintiffs' takings claim in the Court of Federal Claims is based on "substantially the same operative facts" as those alleged in the federal district court suit, which was pending at the time the Court of Federal Claims suit was filed.  Tohono establishes that § 1500 will bar a suit filed in the Court of Federal Claims if the operative facts in that suit "substantial[ly] overlap" those in the earlier filed suit.  The takings claim relies on the same conduct that is pleaded in support of plaintiffs' other claims brought in federal district court, i.e., Reclamation's failure to make certain quantities of water—to which plaintiffs claimed they were entitled—available to plaintiffs.  This failure allegedly deprived plaintiffs of a property right, which essentially mirrors plaintiffs' due process claim in their district court complaint.  Section 1500 thus forecloses the Court of Federal Claims from exercising jurisdiction over plaintiffs' takings claim.  Accordingly, defendant's motion to dismiss is granted as to the takings claim, and plaintiffs' motion for voluntary dismissal is denied.

2.  Breach of contract claims for claim years 1999 through 2004

Remaining are plaintiffs' breach of contract claims for breaches that occurred from 1999 through 2004.  In comparing plaintiffs' due process claim in their district court complaints and the takings and breach of contract claims in the Court of Federal Claims 2004 Amended Complaint, defendant notes that the operative facts alleged as the basis for the

claims are the same: the formation of water-supply contracts and the failure of the United States to deliver the contracted-for water "starting in 1993 and continuing forward in time." Def.'s Br. filed Aug. 26, 2011, at 5.  Defendant explains that in Tohono the Court framed the issue as "whether a *common factual basis* . . . suffices to bar jurisdiction under § 1500." Tohono, 131 S. Ct. at 1727 (emphasis added); see also Def.'s Br. filed Aug. 26, 2011, at 6. In defendant's view, a "common factual basis" is another iteration of "substantially the same operative facts" or "substantial overlap in operative facts."  Def.'s Br. filed Aug. 26, 2011, at 6 (quoting Tohono, 131 S. Ct. at 1731).  The operative facts—formation of contracts and failure to perform on the contracts—may give rise to various causes of action, but, because those causes of action arise from the same operative facts, they share a "common factual basis" and are "substantially the same operative facts."  Id. at 6-7.

Plaintiffs first note that none of the operative facts pleaded in their breach of contract claims for 1999 through 2004 were implicated in either the 1993 Complaint or 1995 Amended Complaint because those complaints, by their nature, only included facts that existed up until the filing of the 1995 Amended Complaint.  SEWD's Br. filed Aug. 12, 2011, at 12.  Each year Reclamation's breach by nonperformance was dependent on "different hydrologic conditions, different allocations of water to Plaintiffs, different prescriptions for fish and wildlife pursuant to CVPIA, and even different people making decisions for the Government about how the contract would be performed."  Id. at 9.  Until these conditions manifested in a given year, thereby leading to Reclamation's failure to supply water, plaintiffs' breach of contract claim for that year did not accrue.  Consequently, plaintiffs urge that the operative facts on which the breaches in claim years 1999 through 2004 are based could not have been pleaded in the 1993 and 1995 district court complaints. The facts alleged in the 2004 Amended Complaint therefore are not "substantially the same" as the operative facts underlying the claims in the district court complaints.

Defendant rejoins that, even if this court deems plaintiffs' 2004 Amended Complaint to be a supplemental complaint, which may cure jurisdictional defects, applicable case law instructs that this development will not create jurisdiction if jurisdiction in the Court of Federal Claims was lacking at the outset.  Def.'s Br. filed Sept. 19, 2011, at 2.  Although a supplemental complaint may cure a jurisdictional defect by "reciting post-filing events that have remedied the defect,"  Black v. Sec'y of Health & Human Servs., 93 F.3d 781, 790 (Fed. Cir. 1996), defendant proffers that it will not operate to remedy a lack of jurisdiction where there is "an express prohibition" on the jurisdiction sought to be invoked.  Id.; see also Cent. Pines, 99 Fed. Cl. at 403-05 (finding that, although plaintiffs' "First Amended and Restated Complaint" was a supplemental complaint, it did not cure the jurisdictional bar imposed by § 1500 because "binding Federal Circuit case law provides that a supplemental complaint cannot rescue a case that was barred by section 1500").

Plaintiffs respond that Black and Central Pines are inapposite because the 2004 Amended Complaint is not a supplemental complaint setting forth related events that occurred since the date of filing; rather, theirs is an amended complaint that added entirely new and independent claims that could have been brought in a separate action. Central's Br. filed Oct. 6, 2011, at 6; SEWD's Br. filed Oct. 6, 2011, at 5. Plaintiffs emphasize that Reclamation's annual breaches each constituted partial breaches of their contracts. Central's Br. filed Oct. 6, 2011, at 6; SEWD's Br. filed Oct. 6, 2011, at 3. Because those breaches occurred annually, they could not have been brought in the 1993 Complaint or 1995 Amended Complaint.

The court rules that plaintiffs' 2004 Amended Complaint is not a supplemental complaint filed pursuant to RCFC 15(d). Although titled as an amended complaint in accordance with RCFC 3.1(a)(4), this complaint was the only complaint filed by plaintiffs in the Court of Federal Claims. Consequently, as plaintiffs note, the complaint is the original complaint in all but name. Thus, Black, which held that the filing of a supplemental complaint, in appropriate circumstances, could cure jurisdictional defects, 93 F.3d at 790, is irrelevant. In Black the Federal Circuit juxtaposed cases in which the Supreme Court examined whether the statute at issue contained an express prohibition on jurisdiction, such that a lack of jurisdiction at the time of filing could not be cured by the filing of a supplemental complaint. Id. at 790-91. In Mathews v. Diaz, 426 U.S. 67 (1976), subject matter jurisdiction was defective as to a potential Medicare claimant's claim because he had failed to satisfy the statutorily imposed "nonwaivable condition of jurisdiction" that he apply to the Secretary of Health, Education, and Welfare (the "HEW Secretary") for enrollment in the Medicare program—and thus exhaust avenues of administrative review—before seeking judicial review of a denial of benefits. Id. at 75. 5/ While his suit was pending, the claimant exhausted all avenues of administrative review by filing the appropriate application. Id. Accordingly, the Supreme Court held that the jurisdictional issue did not impede the claimant's ability to obtain judicial review because he could file a supplemental complaint and allege satisfaction of the jurisdictional condition. Id. Important to the outcome in

---

5/ To qualify for enrollment in the Medicare program, aliens, like the Mathews claimant, had to satisfy two requirements: (1) they have been admitted for permanent residence, and (2) they have resided in the United States for a minimum of five years. Mathews, 426 U.S. at 70 n.2 (citing 42 U.S.C. § 1395o(2) (1970)). The claimant, although a permanent resident, did not attempt to enroll because he was unable to meet the residence requirement. Id. at 71. Instead, he was added as a party to a lawsuit brought by other aliens seeking judicial review of the HEW Secretary's denial of their claims. Id. The claimant represented a subclass of aliens who had likewise been admitted for permanent residence but did not meet the five-year residence requirement. Id.

Mathews is that the statute did not contain an express prohibition "forbidding [the] claimant from filing an action prior to the agency's denial of an administrative claim, although the statute barred the claimant from obtaining judicial review before seeking administrative relief." Black, 93 F.3d at 791.

Conversely, in McNeil v. United States, 508 U.S. 106 (1993), and Hallstrom v. Tillamook County, 493 U.S. 20 (1989), the Supreme Court determined that the statutes at issue did contain express prohibitions that barred the plaintiffs from filing suit before exhausting administrative remedies and before expiration of a statutory waiting period, respectively. See Black, 93 F.3d at 790. As in Mathews, however, the plaintiffs in McNeil and Hallstrom exhausted their administrative remedies during the pendency of their lawsuits. See McNeil, 508 U.S. at 108; Hallstrom, 493 U.S. at 23-24. Nonetheless, the Supreme Court in both cases upheld dismissal of the matters for lack of jurisdiction. McNeil, 508 U.S. at 113; Hallstrom, 493 U.S. at 33.

In harmonizing these outcomes, the Black court explained that "it did not do violence to the applicable statute [in Mathews] to permit the plaintiff's case to go forward, even though the exhaustion of administrative remedies occurred after the complaint was filed rather than before." Black, 93 F.3d at 791. The statute in Mathews merely provided preconditions for judicial review of the HEW Secretary's decision—one of which was that the claim be presented to and denied by the HEW Secretary—but it did not bar the plaintiff from filing a claim. In McNeil and Hallstrom, however, the statutes prohibited the actual filing of a claim. The Federal Circuit reasoned that, in light of the foregoing, "it would defeat the purpose of the statutory prohibition to permit a plaintiff to ignore the waiting period, file his complaint during the prohibited period, and then seek to cure the defect by filing a supplemental pleading alleging that the waiting period expires during the pendency of the action." Id. at 790. Noting that "it would be contrary to Congress's intent for a district court to employ a procedural device that would permit a plaintiff to file his complaint within the prohibited period, yet still maintain the action," id. at 790-91, the Federal Circuit cited Keene, indicating that it construes § 1500 as such an express prohibition whose purpose would be frustrated if courts permitted the filing of supplemental complaints as a means to circumvent the jurisdictional bar, see id. at 791. Because the question of whether a supplemental complaint cures the jurisdictional defect imposed by § 1500 is not present in this case, the court need not consider whether § 1500 contains such an express prohibition.

13

The court concludes that § 1500 does not bar the Court of Federal Claims from exercising jurisdiction over the breach of contract claims. 6/  The court recognizes that alleged breaches in certain years, specifically 1994 and 1995, are based on substantially the same operative facts as those alleged in the 1993 and 1995 district court complaints insofar as the alleged breaches resulted from the same conduct complained of in district court—implementation of the newly enacted CVPIA and Reclamation's consequent failure to supply water.  Had this court and the Federal Circuit not resolved claim years 1994 and 1995 against plaintiffs, § 1500 would have barred the Court of Federal Claims from exercising jurisdiction over them.

Claim years 1999 through 2004 are not governed by the earlier breaches alleged in the district court suit.  These are recurring claims that, by their nature, accrue annually as a result of conditions and conduct occurring  subsequent to the district court filing.  In fact, these are independent claims that could have been brought in an entirely separate suit.  See, e.g., Trusted Integration, 2011 WL 4888787, at *9 (finding that § 1500 did not bar plaintiff's claim for breach of license agreement in Court of Federal Claims complaint despite claim for breach of use agreement relating to same software in district court complaint because "the facts that would give rise to breach of either of these agreements are not legally operative for establishing breach of the other").  As such, they are not "for or in respect to" the claims originally filed in federal district court, and § 1500 does not apply.  Defendant's motion to dismiss is denied insofar as it seeks dismissal of plaintiffs' breach of contract claims for 1999 through 2004.

---

6/ In support of its motion to dismiss, defendant contends that, in permitting plaintiffs to amend their Court of Federal Claims complaint to add breach of contract claims, the court determined that "the breach of contract claim ar[o]se out of the same conduct, transaction, or occurrence that was pleaded in support of the takings claim" in the district court complaint.  Stockton, 62 Fed. Cl. at 392.  Therefore, defendant concludes, the breach of contract claims are "for or in respect to" those claims alleged in the district court complaint, and § 1500 forecloses jurisdiction over them in the Court of Federal Claims.  Although the court found that the breach of contract and takings claims were "based on the same set of facts," it made this finding in the context of a motion to amend and not in the context of a motion to dismiss pursuant to § 1500.  Id. at 391-92.  This finding, therefore, is not the law of the case and does not determine whether plaintiffs' breach of contract claims for years not addressed in the district court complaint rely on the same operative facts.  Whether any breaches occurred necessarily requires a year-by-year determination in order to account for varying hydrologic conditions and any effect that those conditions may have had on Reclamation's ability to fulfill its contractual obligations.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion to dismiss is granted in part insofar as plaintiffs' second claim for relief in their 2004 Amended Complaint—taking without just compensation—is dismissed for lack of subject matter jurisdiction, and defendant's motion as to plaintiffs' first claim for relief—breach of contract—is denied.

2. Pursuant to RCFC 54(b), there being no reason for delay, judgment of dismissal without prejudice shall be entered on plaintiffs' takings claim.

3. By November 14, 2011, the parties shall submit a joint proposal for replacement of the discovery schedule vacated by ¶ 2 of order entered on July 25, 2011, and dates for all pretrial and trial proceedings.


/s/ Christine O.C. Miller
_____
**Christine Odell Cook Miller**
Judge

15