# In the United States Court of Federal Claims

No. 04-541C
(Filed: January 27, 2015)

|  |  |
|---|---|
| STOCKTON EAST WATER DISTRICT and CENTRAL SAN JOAQUIN WATER CONSERVATION DISTRICT, | ) ) ) ) ) RCFC 54(b); 28 U.S.C. § 2517; Partial Final Judgment |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |

*Roger J. Marzulla*, *Nancie G. Marzulla*, Marzulla Law, LLC, Washington, D.C., for plaintiff.

*David A. Harrington*, Senior Trial Counsel, *Barbara E. Thomas*, Trial Attorney, Sharon A. Snyder, Trial Attorney, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington D.C., for defendant.  With them were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Bryant G. Snee*, Deputy Director, and *Sophia Y. Kil*, Assistant Regional Solicitor, U.S. Department of the Interior, Office of the Regional Solicitor.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
## FOR PARTIAL FINAL JUDGMENT

**KAPLAN, Judge.**

This breach of contract case is before the Court on remand from the United States Court of Appeals for the Federal Circuit for the second time.  Stockton E. Water Dist. v. United States, 761 F.3d 1344 (Fed. Cir. 2014).  In its most recent decision, the Federal Circuit affirmed this court's award of $149,950 in cost-of-cover damages to the plaintiff, Central San Joaquin Water Conservation District ("Central").  At the same time, it directed this court to reconsider its denial of an award of expectancy damages to Central.  Id. at 1353.

Citing the Federal Circuit's mandate affirming the award of cost-of-cover damages, Central requests that this Court enter partial final judgment for it in the amount of $149,950, pursuant to 28 U.S.C. § 2517 and Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"). The government opposes Central's motion. It contends that the Court lacks the authority to enter partial judgment for the cost-of-cover damages and that, in any event, entry of such judgment is unwarranted.

For the reasons set forth below, the Court finds that the government's arguments lack merit. Accordingly, Central's motion for partial final judgment is **GRANTED**.

## BACKGROUND

The factual and procedural history of this case is set forth at length in the prior decisions of this court and the court of appeals.[1] They are briefly summarized below.

Central is a California state agency that supplies agricultural irrigation water to farmers in the drought-prone Central Valley of California. Stockton E. Water Dist., 70 Fed. Cl. at 517. In 1983, Central entered into a contract with the United States Bureau of Reclamation ("Reclamation") for an appropriation of water from the New Melones Reservoir, one of many water facilities serving the Central Valley Project ("CVP").[2] Stockton E. Water Dist., 761 F.3d at 1346. As set forth in Article 3 of the contract, Reclamation promised to make available to Central, after a ten-year buildup period, a maximum of 80,000 acre-feet and a minimum of 56,000 acre-feet of surface water per year. Id. The contract also provided that Central would submit a schedule each year indicating the amounts of water required per month. Id.

In 1992, Congress enacted the Central Valley Project Improvement Act ("CVPIA"), which required Reclamation to dedicate annually 800,000 acre-feet of water from the CVP for fish, wildlife, and habitat restoration needs. Id. at 1347. In the spring of 1993, Reclamation made announcements indicating that it would not be able to meet the quantity commitments in its contracts because of the competing demands for the water under the CVPIA. Id. at 1346. Central and other water districts filed suit in the United States District Court for the Eastern District of California, alleging that implementation of the CVPIA effected a taking of their water rights under the contracts without just compensation in violation of the Fifth Amendment. Stockton E. Water Dist., 583 F.3d at 1354.

---

[1] Stockton E. Water Dist. v. United States, 761 F.3d 1344 (Fed. Cir. 2014); 109 Fed. Cl. 460 (2013); 583 F.3d 1344 (Fed. Cir. 2009); 76 Fed. Cl. 497 (2007); 76 Fed. Cl. 470 (2007); 75 Fed. Cl. 321 (2007); 70 Fed. Cl. 515 (2006).

[2] Stockton East Water District, another plaintiff in this lawsuit, also entered into a contract with Reclamation for an appropriation of water from the New Melones Reservoir in 1983. Stockton East's damages trial proceeded separately, and this court issued a separate opinion regarding its damages. Stockton E. Water Dist., 109 Fed. Cl. at 465. The court's judgment with respect to Stockton East is not at issue in this opinion.

The case was transferred to this court in 2004, and the plaintiffs amended their complaint to include a breach of contract claim for failure to provide water from 1993 to 2004. Id. After a trial, this court issued an opinion in 2007, finding that, although Reclamation failed to make available the contractually required minimum amounts of water for each year, Reclamation's non-performance was excused because Reclamation validly invoked the shortage provision of Article 9 of the contract. Stockton E. Water Dist., 75 Fed. Cl. at 363-64. Article 9 of the contract provided for a defense in the event of a water shortage "because of drought, or other causes which, in the opinion of the Contracting Officer are beyond the control of the United States." Id. at 356-57. The court further found that Reclamation's determination that Article 9 applied under the circumstances was not arbitrary, capricious, or unreasonable, as required by Article 12 of the contract. Id. at 364.

The Districts appealed this court's 2007 decision, and the Federal Circuit reversed this court's judgment of non-liability for all years except 1994 and 1995. Stockton E. Water Dist., 583 F.3d at 1369. The Federal Circuit remanded the case for a determination of the damages that the districts incurred between 1999 and 2004, the years for which the government was held liable. Id.

In its 2013 opinion on damages, this court found that, between 2002 and 2004, Central mitigated the breach by purchasing 45,000 acre-feet of water from an alternative source for a total of $675,000. Stockton E. Water Dist., 109 Fed. Cl. at 483. Thus, as noted above, the court awarded Central $149,950 in cost-of-cover damages, which the court calculated by subtracting the amount that Central would have paid Reclamation for the 45,000 acre-feet of water, $525,050, from the $675,000 that Central actually paid. Id.

The court, however, denied Central's request for an award of expectancy damages. Id. at 494-96. Central had argued that Reclamation's breach of contract by failing to make minimum amounts of water available had depressed the demand for such water. See id. at 487-88. It contended that absent this breach, there would have been sufficient demand to take at least the minimum amount of water that Reclamation had contracted to make available. Id. Although the court found this theory "credible," it found that "the evidence presented by Central does not permit the court to endorse it." Id. at 490. More specifically, the court found, Central did "not present[] evidence establishing that, in the 'but-for' world, i.e., the world in which Reclamation makes the contractual minimums of New Melones water available during the breach years, Central would have taken more New Melones water from Reclamation than the amounts delivered in the breach world." Id.

Central appealed this denial of expectancy damages, and the Federal Circuit, agreeing with Central, vacated it. Stockton E. Water Dist., 761 F.3d at 1352-53. The Federal Circuit held that this court's characterization of the but-for world was improper. Id. at 1351. According to the Federal Circuit,

> In the circumstances of this case, the question the trial court should have been examining in determining the "but for" non-breach world is: what would have happened had Reclamation not announced in 1993 (and later years) that it would

3

>be unable to meet—to "make available"—the minimum allocations provided for in the contract?

Id.  Therefore, the Federal Circuit held, this court's focus on evidence regarding the conduct of the parties during the breach years, instead of also considering the effect of Reclamation's announcements in 1993 (and afterward) because of the 1992 legislation, was legal error.  Id. at 1353.  The Federal Circuit remanded the case for a reconsideration of expectancy damages based on what demand for New Melones water would have been but for Reclamation's non-performance announcements in 1993, leaving to this court the determination of whether the record needs to be reopened.  Id.

Because the government did not file a cross-appeal, the Federal Circuit rejected arguments made in the government's Brief as Appellee attacking the award of cost-of-cover damages.  Id.  The Federal Circuit held that by failing to file a cross-appeal, the government waived its right to make such arguments.  Id.  Thus, the court affirmed the award of $149,950 in cost-of-cover damages.  Id.

The Federal Circuit's mandate issued on September 25, 2014.  Shortly thereafter, Central filed its motion for entry of partial final judgment in the amount of $149,950, citing RCFC 54(b) and 28 U.S.C. § 2517.

**DISCUSSION**

RCFC 54(b) provides in pertinent part that "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Further, 28 U.S.C. § 2517, which governs the payment of judgments, acknowledges this court's authority to enter partial final judgment against the United States.[3]

The government argues that Central's request for entry of partial judgment does not fall within the terms of RCFC 54(b).  It contends that that Central "does not seek entry of judgment as to one or more of its six breach of contract claims" covering each year from 1999 through 2004. Def.'s Resp. 1.  Instead, the government argues, "Central seeks a 'partial final judgment' as to issues."  Id.  Therefore, the government argues, this Court lacks the authority to enter partial final judgment as to the $149,950 awarded to Central for cost-of-cover damages.

The government's argument that the court lacks the authority to enter a partial final judgment, however, is inconsistent with the Federal Circuit's decision in King Instrument Corp. v. Otari Corp., 814 F.2d 1560 (Fed. Cir. 1987).  That decision clearly recognized that a trial court has the authority on remand to enter partial judgment as to a sum certain in damages for which a

---

[3]  28 U.S.C. § 2517 provides that "every final judgment rendered by the United States Court of Federal Claims against the United States shall be paid out of any general appropriation therefor . . . unless the judgment is designated a partial judgment, in which event only the matters therein shall be discharged."

defendant is liable as a result of the court of appeals's mandate, even if the remand order requires the trial court to adjudicate other requests for damages by plaintiff arising out of the same legal claim.

In King, a patent infringement case, the trial court awarded the plaintiff $2.2 million in lost profits (machine damages) and $430,000 in damages for sale of spare parts. 814 F.2d at 1561. On appeal, the Federal Circuit affirmed the $2.2 million in machine damages but reversed and remanded for retrial the $430,000 spare parts damages award. Id. On remand, the trial court entered a partial judgment ordering payment of the $2.2 million in machine damages, while reserving for a later determination the amount, if any, of spare parts damages. Id. at 1561-62. The defendant appealed, making precisely the same Rule 54(b) argument that the government makes here. As the court of appeals noted:

> The crux of appellant's contention is that the District Court lacks power to order execution on the machine damages, which this court affirmed in the first appeal, while deferring possible damages arising from the sale of spare parts for later determination. Otari says that such an order impermissibly splits a single claim, contrary to Fed. R. Civ. P. 54(b), because all the activity involved the same machine sales and there are no separate or multiple claims relating to the two categories of items. Rule 54(b), we are told, is the only source of authority for finally deciding less than the entire case.

Id. at 1563. But the Federal Circuit rejected this argument. It noted,

> What Otari fails to acknowledge is the posture of this case at the time the Modified Judgment was issued. The District Court ordered execution of the machine sales after this court had considered and affirmed the District Court's determination on those damages.
>
> As the trial court recognized, Rule 54(b), which concerns the power of the trial court before appeal, is not applicable in these circumstances. Here, King has already obtained a single judgment, most of which was affirmed by this court and only a portion of which is controverted on remand. . . . Under the law of the case doctrine, that court was absolutely bound by our affirmance as to the machine damages. It was therefore not incorrect or an abuse of discretion for the trial judge to order execution on that portion of the judgment which was final, while reserving the issue of spare parts.

Id. (internal citations omitted).

Following the reasoning of King, several judges on this court have issued partial final judgments in cases like the present one, where the court of appeals has affirmed an award of damages and remanded the case back to this court for a determination of whether additional damages were warranted. See Bell BCI Co. v. United States, 91 Fed. Cl. 664, 669 (2010); American Sav. Bank, F.A. v. United States, 83 Fed. Cl. 555, 557-59 (2008); Home Sav. of Am., F.S.B. v. United States, 69 Fed. Cl. 187, 192-93 (2005). Thus, the government's argument in

this case, that the Court lacks the authority to order partial final judgment for Central on the portion of its damages claim that the Federal Circuit has upheld, is rejected.

Further, the Court concludes that there is no just reason to delay entry of partial final judgment in the amount of $149,950.  The government's liability for that amount is now fixed.  The case has been pending for more than twenty years.  The breach at issue on remand took place over a decade ago.  The case has now made two trips to the court of appeals in which rulings favoring the government have been at least partially reversed.  Further delay in providing payment to Central appears to the Court unjust, particularly since Central is not entitled to recover any interest on its award.

The Court is not persuaded by the government's argument that entry of partial judgment is not warranted on the grounds that "remand proceedings are likely to reduce the sum owed by the United States."  Def.'s Resp. 13.  The award of $149,950 is now final; there is no way, accordingly, that this amount will be reduced, as the government suggests.  Further, the Court does not believe it would be appropriate to withhold payment on the final judgment for $149,950 based on the government's assertion that Central is now in debt to the government on the contract.  The government has not asserted any counterclaim in this case that would result in an offset against the $149,950 award that is now final and unappealable.  Thus, the government has provided the Court with no legitimate basis not to grant Central's request for an award of partial judgment.

## CONCLUSION

On the basis of the foregoing, plaintiff's motion for entry and payment of partial final judgment is **GRANTED**.  The Clerk is directed to enter partial final judgment for the plaintiff in the amount of $149,950.

In thirty days, on or before February 27, 2015, the parties shall file a joint status report, in which they shall propose a schedule for future proceedings in this case.

**IT IS SO ORDERED.**

                                                     /s/ Elaine D. Kaplan
                                                    ELAINE D. KAPLAN
                                                    Judge